## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VIASAT, INC., | |
| | |
| *Plaintiff,* | C.A. No. 25-cv-56-CFC |
| | |
| v. | |
| | |
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | |
| | |
| *Defendants.* | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF
## MOTION TO DISMISS, STAY, OR TRANSFER

Dated:  February 20, 2025

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Attorneys for Defendants
*Intellectual Ventures I LLC and*
*Intellectual Ventures II LLC*

Of Counsel:

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
Heather S. Kim
John Downing

ThucMinh Nguyen
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Dr., Suite 200
Redwood Shores, CA 94065
Tel: (650) 453-5170
Fax: (650) 362-9302
JWaldrop@kasowitz.com
DJones@kasowitz.com
HKim@kasowitz.com
MBarber@kasowitz.com
JDowning@kasowitz.com
TNguyen@kasowitz.com

Paul G. Williams
KASOWITZ BENSON TORRES LLP
1230 Peachtree Street, N.E., Suite 2445
Atlanta, Georgia 30309
Tel: (404) 260-6080
Fax: (404) 260-6081
PWilliams@kasowitz.com

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ........................................................................1

II.   FACTS .........................................................................................................2

      A.    The Southwest Litigation ..................................................................2

      B.    The American Litigation ...................................................................3

      C.    ViaSat's Declaratory Judgment Action .............................................3

III.  LEGAL STANDARD ..................................................................................4

IV.   ARGUMENT ...............................................................................................5

      A.    The First Filed Rule Requires Dismissal Of This Action In
            Favor Of The First-Filed Texas Litigations ......................................5

            1.    The '326 Patent and '469 Patent are the Subject of Both
                  the First-Filed Texas Litigations. ..........................................5

            2.    Complete Overlap Between the Parties in the Two Actions
                  is Not Required to Apply the First-Filed Rule .......................7

            3.    There are No Exceptions to the First-Filed Rule in this
                  Litigation ................................................................................9

      B.    Alternatively, The Court Should Stay This Case Or Transfer It
            To Texas Under 28 USC § 1404(A) ................................................11

            1.    Venue Would Have Been Proper In The Texas Actions .........12

            2.    ViaSat's Choice of Forum is Not Entitled to Significant
                  Deference ...............................................................................13

            3.    IV's Choice of Forum Should be Entitled to Deference..........14

            4.    ViaSat's Claims Did Not Arise In Delaware ..........................15

            5.    The Convenience of the Parties Weighs in Favor of
                  Transfer .................................................................................16

6.    The Location of Books and Records Favors Transfer ..............17

7.    The Public Interest Factors Also Weigh in Favor of
       Transfer to Texas ....................................................................18

8.    This Action Should Be Stayed....................................................20

V.    CONCLUSION..............................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*,
  295 F. Supp. 2d 393 (D. Del. 2002)...................................................13

*Ballard Med. Prods. v. Concord Lab'ys, Inc.*,
  700 F. Supp. 796 (D. Del. 1988).......................................................18

*Bank of Am. v. S.I.P. Assets, LLC*,
  2007 WL 2698192 (D. Del. Sept. 11, 2007).......................................6

*Bell Tel. Lab'ys, Inc. v. Int'l Bus. Machines Corp.*,
  630 F. Supp. 373 (D. Del. 1984).......................................................14

*Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*,
  2017 WL 1536394 (D. Del. Apr. 27, 2017) ......................................13

*Burstein v. Applied Extrusion Techs., Inc.*,
  829 F. Supp. 106 (D. Del. 1992)..................................................15, 17

*In re Cinemark Holdings, Inc.*,
  839 Fed. App'x 476 (Fed. Cir. 2020) .................................................7

*Cellectis S.A. v. Precision Biosciences, Inc.*,
  881 F. Supp. 2d 609 (D. Del. 2012)....................................................5

*Clopay Corp. v. Newell Companies, Inc.*,
  527 F. Supp. 733 (D. Del. 1981).......................................................17

*Comcast Cable Commc'ns, LLC v. USA Video Tech. Corp.*,
  2008 WL 1908612 (D. Del. Apr. 29, 2008) ........................................4

*Corixa Corp. v. IDEC Pharms. Corp.*,
  2002 WL 265094 (D. Del. Feb. 25, 2002).................................5, 8, 16

*Dippold-Harmon Enter., Inc. v. Lowe's Cos., Inc.*,
  2001 WL 1414868 (D. Del. Nov. 13, 2001)....................................6, 18

*Fleet Connect Sols., LLC v. Precision Drilling Corp.*,
  2022 WL 2373711 (W.D. Tex. June 30, 2022) ..............................7, 11

*Freedom Mortg. Corp. v. Irwin Fin. Corp.*,
    2009 WL 763899 (D. Del. Mar. 23, 2009) ................................................5, 8, 11

*Fuisz Pharma LLC v. Theranos, Inc.*,
    2012 WL 1820642 (D. Del. May 18, 2012) ......................................................20

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) .........................................................................17

*Genentech, Inc. v. Eli Lilly & Co.*,
    998 F.2d 931 (Fed. Cir. 1993) ...........................................................................4

*Intellectual Ventures I LLC et.al. v. American Airlines Inc.*,
    No. 4:24-cv-00980 (Ex. 4 (AA Complaint)) ......................................................3

*Intellectual Ventures I LLC et al. v. Southwest Airlines Co.*,
    Case No. 7:24-cv-00277-ADA ...........................................................................9

*Intellectual Ventures I LLC et. al. v. Southwest Airlines Co.*,
    No. 7:24-cv-00277 ............................................................................................2

*Ivoclar Vivadent AG v. 3M Co.*,
    2012 WL 2374657 (D. Del. June 22, 2012) ......................................................20

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir.1995) ........................................................................*passim*

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
    330 U.S. 518 (1947)..........................................................................................14

*In re Link A Media Devices Corp.*,
    662 F.3d 1221 (Fed. Cir. 2011) .........................................................................13

*Microchip Tech., Inc. v. Motorola, Inc.*,
    2002 WL 32332753 (D. Del., May 28, 2002) ...................................................20

*Mitek Sys., Inc. v. United Servs. Auto. Ass'n*,
    2012 WL 3777423 (D. Del. Aug. 30, 2012)................................................12, 16

*MoneyCat Ltd. v. PayPal Inc.*,
    2014 WL 2042699 (D. Del. May 15, 2014) ......................................................13

*Nexans Inc. v. Belden Inc.*,
   966 F.Supp.2d 396 (D. Del. 2013)..........................................................................9

*Reisman v. Van Wagoner Funds, Inc.*,
   2002 WL 1459384 (D. Del. June 7, 2002) ......................................................11

*Schering Corp. v. Amgen Inc.*,
   969 F. Supp. 258 (D. Del. 1997)........................................................................14

*Time Warner Cable, Inc. v. GPNE Corp.*,
   497 F. Supp. 2d 584 (D. Del. 2007)...................................................................8

*Time Warner Cable, Inc. v. USA Video Tech. Corp.*,
   520 F. Supp. 2d (D. Del. 2007)..........................................................................8

*Woodbolt Distribution, LLC v. Nat. Alternatives. Int'l, Inc.*,
   2013 WL 247041 (D. Del. Jan. 23, 2013) ........................................................9

## Statutes

28 U.S.C. § 1400 (b) ...........................................................................................12

28 U.S.C. § 1404................................................................................................1

28 USC § 1404(A) .......................................................................................11, 19

## Other Authorities

Fed. R. Civ. P 12(b)(1)........................................................................................1

Defendants Intellectual Ventures I LLC, and Intellectual Ventures II LLC ("IV") respectfully submit this Motion to Dismiss or, in the Alternative, Stay or Transfer Plaintiff ViaSat, Inc.'s ("ViaSat") Complaint for Declaratory Judgment ("Complaint"), pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. § 1404.[1]

## I.     PRELIMINARY STATEMENT

This litigation is a coordinated attempt by ViaSat and its customers to prevent IV from protecting its patent rights in the forum of its choice. In November 2024, IV filed two lawsuits in Texas Federal Courts against companies (Southwest Airlines and American Airlines) that are infringing six of IV's patents (the "Texas Litigations"). However, two months later, even though ViaSat's principal place of business is in Carlsbad, California, ViaSat filed this lawsuit, before this Court, purporting to seek a declaratory judgment for two of the six patents – arguing that *ViaSat* has not infringed two patents involved in the Texas Litigations. As shown below, the issues ViaSat purportedly seeks to resolve through its declaratory judgment action substantially overlap with issues that will be presented and decided in the first-filed Texas Litigations. Allowing ViaSat's action to go forward here would violate settled law, inefficiently use Court resources, increase the burden on

---

[1] Submitted herewith is the February 20, 2025 Declaration of Jonathan K. Waldrop ("Waldrop Decl."), with exhibits thereto ("Ex. __").

the parties, risk inconsistent judgments, and interfere with IV's right to enforce its patents. Accordingly, this action should be dismissed, stayed, or transferred to Texas, where the individual actions are proceeding.

## II.    FACTS

### A.    The Southwest Litigation

On November 11, 2024, IV filed a patent infringement case in the Western District of Texas against Southwest Airlines ("Southwest"), *Intellectual Ventures I LLC et. al. v. Southwest Airlines Co*., No. 7:24-cv-00277 ("the Southwest Litigation") Ex. 1 (Southwest Complaint). In that case, IV alleges that Southwest infringes six patents: United States Patent Nos. 8,332,844 (the "'844 Patent"); 8,407,722 (the "'722 Patent"); 8,027,326 (the "'326 Patent"); 7,324,469 (the "'469 Patent"); 7,257,582 (the "'582 Patent"); and 7,949,785 (the "'785 Patent"), Ex. 1 (Southwest Complaint).

On January 27, 2025, Southwest filed a motion to dismiss the Southwest Litigation, arguing that the '844 Patent and '582 Patent claim ineligible subject matter, and that IV failed to state claims of direct and indirect infringement. Ex. 2 (Southwest's Motion to Dismiss)[2] On February 12, 2025, Southwest filed a motion to stay and sever two of the six patents-in-suit, the '326 and '469 patents based on

---

[2] IV response to Southwest's motion to dismiss is not due until March 12, 2025.

the pendency of this later filed declaratory judgment action. Ex. 3 (Southwest's Motion to Stay and Sever).

### B.    The American Litigation

On November 11, 2024, IV filed a patent infringement case against American Airlines ("American") in the Eastern District of Texas. *Intellectual Ventures I LLC et.al. v. American Airlines Inc.,* No. 4:24-cv-00980 (the "AA Litigation") (Ex. 4 (AA Complaint)) IV alleges in the AA Litigation that American infringes the same six patents. On January 27, 2025, American filed a motion to dismiss, asserting that IV failed to state a claim of infringement for the '844, '722, '785 and '582 patents. Ex. 5 (American's Motion to Dismiss). On January 31, 2025, IV filed a notice of readiness for a scheduling conference. Ex. 6 (AA Notice of Case Readiness). On February 3, 2025, the Court in the AA Litigation issued an order governing proceedings, *inter alia*, setting a discovery schedule. Ex. 7 (AA Order Governing Proceedings). On February 14, 2025, American also filed a motion to stay and sever the '326 and '469 patents based on the pendency of this later filed declaratory judgment action. Ex. 8 (American's Motion to Stay and Sever).

### C.    ViaSat's Declaratory Judgment Action

On January 14, 2025, ViaSat filed this case, seeking a declaratory judgment with regards to the '326 and '469 Patents. *See* D.I. 1. ViaSat's complaint does not address the other four patents involved in the Texas Litigations. ViaSat claims that

the Texas Litigations "directly accuse[] ViaSat's in-flight connectivity systems of patent infringement, impacting ViaSat's business and relationships with its customers" and that IV's allegations are barred by patent exhaustion. *Id*. at ¶ 9. ViaSat's complaint does not allege that it is the exclusive provider of the accused functionality or that it has possession, custody, and control of all the relevant hardware and software relevant to both American and Southwest (nor could it, as there are several other providers, including at least Anuvu and Intelsat, that provide at least portions of the accused hardware and software to Southwest). *See* D.I. 1; Ex. 9 (Anuvu Complaint). There have been no other filings in this action.

## III.    LEGAL STANDARD

The Federal Circuit and this Court have long recognized and applied the "first-filed" rule, under which "the forum of the first-filed case is favored, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." *Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed. Cir. 1993). Generally, "where two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference absent special circumstances." *Comcast Cable Commc'ns, LLC v. USA Video Tech. Corp.,* 2008 WL 1908612, at *1 (D. Del. Apr. 29, 2008). If this Court finds that the first-filed rule applies, a decision, whether to dismiss, stay or transfer "must be entered to allow the [second-filed court] to

effectuate the rule, *i.e.*, to determine whether exceptions to the first-filed rule apply.*"* *Cellectis S.A. v. Precision Biosciences, Inc.*, 881 F. Supp. 2d 609, 613 (D. Del. 2012).

## IV.    ARGUMENT

### A.    The First Filed Rule Requires Dismissal Of This Action In Favor Of The First-Filed Texas Litigations

#### 1.    The '326 Patent and '469 Patent are the Subject of Both the First-Filed Texas Litigations.

The first-filed rule requires dismissal of this action because the Texas Litigations involve infringement of, among others, the same patents ViaSat seeks to litigate here. Because ViaSat only seeks adjudication of a *subset* of the patents asserted in the Texas Litigation (namely ViaSat has only asserted the '326 and '469 Patents), judicial efficiency weighs in favor of adjudicating in all patents in the Texas Litigations. As this Court has held, "having two separate trials in mirror image cases would defeat the purposes of the first-filed rule, namely, sound judicial administration and comity among federal courts of equal rank." *Corixa Corp. v. IDEC Pharms. Corp.*, 2002 WL 265094, at *1 (D. Del. Feb. 25, 2002).

As shown above, the Texas Litigations are indisputably the first-filed actions. Moreover, that ViaSat's lawsuit does not pertain to *all* the patents involved in the Texas Litigations does not preclude application of the first-filed rule. That rule applies "where the claims all pertain to the subject matter of another dispute already before a competent court." *Freedom Mortg. Corp. v. Irwin Fin. Corp.*, 2009 WL

763899, at *4 (D. Del. Mar. 23, 2009). *See also Dippold-Harmon Enter., Inc. v. Lowe's Cos., Inc.*, 2001 WL 1414868, at *5 (D. Del. Nov. 13, 2001) (applying first-filed rule where resolution of first action would "bear directly" on later-filed action).

In this action and the Texas Litigations, the issues that ViaSat seeks to resolve here (*i.e.*, whether its in-flight connectivity systems directly or indirectly infringe any claims of the '326 Patent and '469 Patent) will be resolved. Indeed, in the Texas Litigations, infringement of the '326 Patent, and '469 Patent are central issues. *See* Ex. 1 (Southwest Complaint) at ¶¶ 86-101, 102-117 and Ex. 4 (American Complaint) at ¶¶ 85-99, 100-115. The Texas Litigations will be dispositive of all or nearly all issues in this case. Allowing all cases to proceed concurrently would be both inconvenient to the parties and an inefficient use of judicial resources. *See Bank of Am. v. S.I.P. Assets, LLC*, 2007 WL 2698192, at *3 (D. Del. Sept. 11, 2007).

Moreover, both actions will almost certainly involve overlapping witnesses and evidence. These actions will involve many of the same third parties, such as the inventors of the patents, and witnesses to the alleged infringement occurring in Texas. Rather than maintain three substantially similar litigations in three separate courts, this Court should dismiss or stay this action in favor of the first-filed Texas Litigations or sever and transfer this case to the Western District of Texas

(Southwest) and the Eastern District of Texas (American).[3] Additionally, this case will not resolve the Texas Litigations, since ViaSat is only one of the providers of the Accused Functionality. *See* Ex. 9 (Anuvu Complaint). Lastly, ViaSat never alleges that it is the sole provider of the software and hardware for the '326 and '469 patents, such that ViaSat provides more than only a component of the '326 and '469 patents. *In re Cinemark Holdings, Inc.*, 839 Fed. App'x 476, 478-479 (Fed. Cir. 2020) (denying *Mandamus* Petition when multiple technologies were accused) *Fleet Connect Sols., LLC v. Precision Drilling Corp.*, 2022 WL 2373711, *2–*4 (W.D. Tex. June 30, 2022) (denying motion when component was not infringed by merely being used off-the-shelf, also noting that as to asserted system claims the accused infringer supplied its own component products that it combined with the accused product to create the accused system.)  Lastly, ViaSat does not state that it will indemnify Southwest and American, if it is found to infringe, therefore IV will have to again litigate these patents with Southwest and American. Allowing this case to proceed would encourage waves of declaratory judgment suits.

### 2.    Complete Overlap Between the Parties in the Two Actions is Not Required to Apply the First-Filed Rule

Though ViaSat was not named in the Texas litigations, "the Third Circuit applies the first-filed rule to litigation that involves the same subject matter, not

---

[3] To the extent that ViaSat argues that venue is not proper in either judicial district, the Court should use its discretion to dismiss or stay the cases in favor of the first-filed Texas cases.

necessarily the same parties." *Time Warner Cable, Inc. v. USA Video Tech. Corp.*, 520 F. Supp. 2d at 585 (D. Del. 2007); *see also Time Warner Cable, Inc. v. GPNE Corp.,* 497 F. Supp. 2d 584, 589 (D. Del. 2007) (the 3rd Circuit applies the first-filed rule to "cases involving the same issues" where the parties are not identical). Indeed, ViaSat alleges that "[t]he litigation brought by Intellectual Ventures I and Intellectual Ventures II against Southwest and American directly accuses ViaSat's in-flight connectivity systems of patent infringement, impacting ViaSat's business and relationships with its customers." D.I. 1 at ¶ 1. Even if there were a requirement that the parties in the two actions be the same, which there is not, because ViaSat clearly acknowledges that its interests are aligned with the interests of Southwest and American, the first-filed rule would still govern. *See Freedom Mortg.*, 2009 WL 763899, at *13 (applying first-filed rule where interests of parties in earlier-filed suit aligned with those in later-filed suit); *see also Corixa*, 2002 WL 265094, at *2 (applying first-filed rule when a party in the second filed suit was not a party to the first-filed litigation).

Therefore, that ViaSat is not a party to the first-filed Texas Litigations is immaterial. Because of the Texas Actions initially had jurisdiction over the subject of this case, IV's choice of forum should be shown deference and ViaSat's action should be dismissed. *See GPNE*, 497 F. Supp. 2d 589-90. (The first-filed rule

"turn[s] 'on which court first obtains possession of the subject of the dispute, not the parties of the dispute.'")

### 3. There are No Exceptions to the First-Filed Rule in this Litigation

There are no exceptions to the first-filed rule that apply here, and dismissal of this action is thus appropriate. "Factors that have been regarded as proper bases for departing from the first-filed rule include bad faith, forum shopping, when the second-filed action has 'developed further than the initial suit,' and 'when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum.'" *Nexans Inc. v. Belden Inc.*, 966 F.Supp.2d 396, 403 (D. Del. 2013) (citations omitted). To apply these factors, "[c]ourts must be presented with *exceptional circumstances*" *Id*. at 403-04.

ViaSat makes no allegations of bad faith. Moreover, neither Southwest nor American have contested venue at this time. Further, the instant action is not anticipatory because the parties in this action were not engaged in discussions prior to filing of the Texas Litigations, and there were no indications of suit being brought by IV (nor has IV brought suit against ViaSat). *See Woodbolt Distribution, LLC v. Nat. Alternatives. Int'l, Inc.*, 2013 WL 247041, at *4 (D. Del. Jan. 23, 2013). Finally, this litigation has not developed further than either of the Texas Litigations.[4]

---

4 For example, in *Intellectual Ventures I LLC et al. v. Southwest Airlines Co*., Case No. 7:24-cv-00277-ADA, the parties have already filed a Joint Case Readiness Status Report and IV has served Preliminary Infringement Contentions.

Further, ViaSat has not alleged it is the exclusive provider of in-flight connectivity ("IFC") services to American and Southwest. *See* D.I. 1 at ¶ 48. Accordingly, the Texas Litigations will proceed on the same patents in this case on all other American and Southwest IFC providers.

Moreover, ViaSat's second-filed litigation will not resolve all issues between IV and Southwest as to the '326 Patent and '469 Patent because the patents at issue recite elements that are specific to Southwest. For example, IV alleges infringement of claim 24 of the '469 Patent:

> An internet hotspot comprising:
>
> a satellite dish communicating with the Internet via one or more data links with a satellite; …
>
> and
>
> *a web ready device operatively coupled to the at least one router*, the web read device..,
>
> wherein the satellite dish, … are located in a remote location a experiencing a relatively high volume of transient traffic;
>
> wherein *the user may authenticate the subscription account and access the Internet at the remote location by establishing a data connection between the web-ready device and the router*.

Ex. 10 at 8:24-43 (emphasis added). That Claim includes limitations that ViaSat fails to contend that it provides to Southwest or American. For example, ViaSat is silent as to its responsibility with respect to the authentication step ("*the user may authenticate the subscription account…*"). *See* Ex. 11 at 16, 24. Thus, IV's complaint involves claims that touch upon how Southwest specifically enables its

10

passengers to access in-flight Wi-Fi through authentication on Southwest's web portal, which involves steps and components that go beyond ViaSat's in-flight Wi-Fi systems. *See Fleet Connect Sols.,* 2022 WL 2373711, *2-4 (denying customer suit when component was not used "off-the-shelf".) Accordingly, this action should be dismissed.

### B.    Alternatively, The Court Should Stay This Case Or Transfer It To Texas Under 28 USC § 1404(A)

Even if the Court declines to dismiss this action, it should sever and transfer this action to the Western District of Texas (Southwest) and Eastern District of Texas (American) or, at a minimum, stay the case pending resolution of the Texas Litigations. *See Freedom Mortg.*, 2009 WL 763899, at *5-7; *Reisman v. Van Wagoner Funds, Inc.*, 2002 WL 1459384, at *1 (D. Del. June 7, 2002) (the "second filed action should be stayed or transferred to the court where the first filed action is pending").

As the Third Circuit has explained, Section 1404(a) "was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir.1995). The court engages in a two-step inquiry: first asking whether the action could have been brought originally in the proposed transferee court and then asking whether the "balance of convenience" factors favor transfer. *Id*. Private interest factors include: (i) plaintiff's

11

forum preference as manifested in the original choice; (ii) the defendant's preference; (iii) whether the claim arose elsewhere; (iv) the convenience of the parties as indicated by their relative physical and financial condition; (v) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (vi) and the location of books and records. *Id*. at 879. Here, the private interest factors weigh in favor of transfer.

### 1.     Venue Would Have Been Proper In The Texas Actions

ViaSat's action could have been brought in WDTX or EDTX. "[T]he court may only order transfer to the [transferee court] if that district court would have had proper personal jurisdiction, subject matter jurisdiction, and venue." *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 2012 WL 3777423, at *4 (D. Del. Aug. 30, 2012). A case may be brought in any court "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400 (b). IV has alleged acts of infringement stemming from Southwest's and American's use of wi-fi systems technology in their airplanes, and those companies are located in the Western and Eastern Districts of Texas, respectively. Exs. 1, 4. Moreover, ViaSat has two offices in the Western District of Texas. *See* Ex. 12 (https://www.ViaSat.com/about/who-we-are/locations/ (last accessed February 20, 2025)). Accordingly, ViaSat is subject to personal jurisdiction in the Western District of Texas. Viasat is subject to personal jurisdiction in the

EDTX because it provides satellite internet and, on information and belief, has employees and representatives in the EDTX. *See* Ex. 13 (https://viasatprovider.com/states/satellite-internet-texas/ (last accessed February 20, 2025)) Because ViaSat brought this action against IV in Texas, the *Jumara* private and public factors, which weigh in favor of transfer, must be analyzed.

### 2.    ViaSat's Choice of Forum is Not Entitled to Significant Deference

ViaSat's choice of forum is not relevant. First, the only connection between ViaSat and Delaware is that ViaSat is incorporated in Delaware. Indeed, ViaSat admits that its principal place of business is in California. D.I. 1 at ¶ 2. Mere incorporation in Delaware is entitled little weight. *See In re Link A Media Devices Corp.*, 662 F.3d 1221, 1223-24 (Fed. Cir. 2011) (reversing denial of transfer motion, *inter alia*, because district court gave too much weight to state of incorporation); *Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*, 2017 WL 1536394, at *3 (D. Del. Apr. 27, 2017) (incorporation in Delaware given reduced deference where "Delaware is not home to [plaintiff's] principal place of business"); *MoneyCat Ltd. v. PayPal Inc.*, 2014 WL 2042699, at *6 (D. Del. May 15,, 2014) (declining to give "significant weight" to defendant's incorporation in Delaware and finding transfer appropriate where "neither party has a significant physical connection to Delaware"); *APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 398-99 (D. Del. 2002) (incorporation in Delaware was not dispositive "where an

alternative forum is more convenient and has more substantial connections with the litigation").

Further, because ViaSat's case will be adjudicated according to the same patent laws regardless of where the case is heard, ViaSat cannot claim an interest in the benefits of Delaware incorporation. When a corporation obtains a charter from a state but conducts its activities elsewhere, the "[p]lace of corporate domicile in such circumstances might be entitled to little consideration under the doctrine of forum non conveniens" *Koster v. (Am.) Lumbermens Mut. Cas. Co*., 330 U.S. 518, 527-28 (1947)." Thus, considering other factors, although ViaSat is a Delaware entity in terms of incorporation, its preference for Delaware should be given less deference.

### 3.    IV's Choice of Forum Should be Entitled to Deference

The first-filed rule dictates that the plaintiff *in the first-filed action* is the party whose forum choice is entitled to "plaintiff" deference. *See Schering Corp. v. Amgen Inc.,* 969 F. Supp. 258, 268 (D. Del. 1997) ("[The first-filed plaintiff] filed the original complaint; as the plaintiff, its choice of forum is 'a paramount consideration' and 'should not be lightly disturbed.'") (quoting *Schutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970); *Bell Tel. Lab'ys, Inc. v. Int'l Bus. Machines Corp*., 630 F. Supp. 373, 377 (D. Del. 1984) ("[The second-filed plaintiff] thus had ample opportunity to become aware of the [first-filed] action before it filed in Delaware but instead it brought a new action in a forum that has little, if any,

14

connection with the subject matter of this litigation. Under these circumstances, the balance of equities favors awarding [the first-filing plaintiff], as the first to file, its choice of forum.").

Because IV first filed the Texas Litigations, IV is entitled to its choice of forum to litigate the claims related to the '326 and '469 patents.

### 4. ViaSat's Claims Did Not Arise In Delaware

Another relevant *Jumara* factor is whether the claim arose elsewhere. *See Jumara,* 55 F.3d at 879. This factor also favors transferring to Texas. ViaSat filed this action because, it alleges, "this litigation campaign directly accuses ViaSat's products of patent infringement, impacting ViaSat's business and relationships with its customers." D.I. 1 at ¶ 1. Clearly this action is based off the Texas Litigations which focuses on acts of infringement in Texas by companies with their places of business in Texas. *See* Ex. 1 (Southwest Complaint) Ex. 4 (American Complaint). ViaSat's claim "arose elsewhere," not in Delaware.

ViaSat does not – because it cannot – claim that there are acts of either ViaSat or IV in Delaware giving rise to this lawsuit. "Where Delaware's connection to the acts giving rise to a lawsuit are insubstantial," transfer is warranted. *See Burstein v. Applied Extrusion Techs., Inc.,* 829 F. Supp. 106 (D. Del. 1992). In contrast, there are several connections between ViaSat's infringement of the patents and the Western District of Texas. As mentioned above, ViaSat maintains offices in the

Western District of Texas, as opposed to *none* in Delaware. Neither party is alleged to maintain an office in Delaware or employs individuals in Delaware. This factor weighs in favor of transfer.

### 5.    The Convenience of the Parties Weighs in Favor of Transfer

The fourth private interest *Jumara* factor is the "convenience of the parties as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 889. In considering this factor, courts have looked to several elements, including: the parties' physical location; and the relative ability of each party to bear these costs in light of its size and financial wherewithal. *Mitek Sys*, 2012 WL 3777423, at *6. IV would be highly inconvenienced should this case proceed in Delaware when two cases concerning the exact same patents are already underway in Texas. Additionally, because ViaSat is but one of the providers of the Wi-Fi systems used by Southwest and American, ViaSat would already have to prepare for litigation in Texas anyway. *See* Ex. 3. (Southwest Motion Sever and Stay). "Bringing witnesses and relevant documents to only one location, [Texas,] would minimize the level of disruption caused to all parties by the litigation." *Corixa*, 2002 WL 265094, at *3. Transferring this case to Texas would present a "more economical and efficient result than having each party moving witnesses and documents between two states, depending on which of these related actions is being litigated at that time." *Id*.

When the plaintiff has chosen to bring suit in a district that has no connection to any of the acts giving rise to the lawsuit, "the convenience to the plaintiff is 'not as great as it would be where [he] litigating at or near [his] principal place of business or at the site of the activities at issue in the lawsuit.'" *Burstein*, 829 F. Supp. at 110 (internal citations omitted); Consequently, the "'quantum of inconvenience to defendant needed to tip the balance strongly in favor of transfer' is concomitantly reduced." *Clopay Corp. v. Newell Companies, Inc.*, 527 F. Supp. 733, 736 (D. Del. 1981) (internal citations omitted).

Lastly, ViaSat is a multinational company (*see* Ex. 12 (https://www.ViaSat.com/about/who-we-are/locations/ (last accessed February 20, 2025)) and will not unreasonably suffer if the case proceeds in Texas.

### 6.    The Location of Books and Records Favors Transfer

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quoting *Neil Bros. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). But the Court gives weight to this factor only "to the extent that the files [and other evidence] could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. The location of documentary evidence favors transfer when relevant documents will already be available in the

17

forum of the first-filed litigation. *See Dippold-Harmon Enter.*, 2001 WL 1414868, at *7.

Here, because of the first-filed Texas Litigations, documentary evidence of Southwest and American's use of the infringing technology would already be available in Texas. Further, ViaSat's documents, which are highly unlikely to be in Delaware as its principal place of business is in California, could just as easily be produced in Texas as in Delaware. Therefore, the location of the books and records factor also favors transfer.

### 7. The Public Interest Factors Also Weigh in Favor of Transfer to Texas

The public interest factors include, but are not limited to: (i) the enforceability of the judgment; (ii) practical considerations that could make the trial easy, expeditious, or inexpensive; (iii) the relative administrative difficulty in the two fora resulting from court congestion; (iv) the local interest in deciding local controversies at home; (v) the public policies of the fora; and (vi) the familiarity of the trial judge with the applicable state law in diversity cases. *See Jumara*, 55 F.3d at 879.

The public interest *Jumara* factors either favor transfer or are neutral. It is well established that, "the court should litigate all issues arising relating to patents in one place." *Ballard Med. Prods. v. Concord Lab'ys, Inc.*, 700 F. Supp. 796, 801 (D. Del. 1988). IV will continue with the Texas Litigations regardless of whether this action is transferred to Texas. But since both suits raise overlapping factual and legal issues,

permitting the Texas Litigations and this case to proceed simultaneously, in different states, would "produce the waste of time, energy, and money that § 1404(a) was designed to prevent." *Id*. More likely than not, all the litigations will involve many of the same witnesses, experts and documents regarding infringement, such that litigating here would not make the trial "easy, expeditious, or inexpensive." *Id*. If this action is not stayed or transferred, the parties will have to litigate in several fora, while ViaSat's dispute could easily, and will necessarily, be resolved in the Texas Litigations. Continuing to litigate in multiple districts would be a costly exercise for the parties, and a burdensome exercise for the Court. For example, there will be a need for third-party discovery from Southwest and American that already would be taking place in Texas. Additionally, to fully adjudicate this case in Delaware, it would be necessary to address everything in Texas, including issues such as the other declaratory action[5], the software in involved and licensing issues. Therefore, practical considerations generally weigh in favor of transfer to Texas.

Another factor that favors transfer is the administrative difficulty factor. According to federal judicial caseload statistics,[6] Texas district courts are generally faster to trial than Delaware courts. The other public factors are either neutral or

---

5 On January 25, 2024, Anuvu Corp. filed a complaint for declaratory judgment based on the '326 Patent and '469 Patent.
6 U.S. District Courts–Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending March 31, 2024, February 17, 2025, https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables.

irrelevant. For example, the judgment would be enforceable in both jurisdictions regardless of where the case proceeds. Additionally, the public policies of the two fora are insignificant because this is a patent case that "implicates federal law and national public policies." *Ivoclar Vivadent AG v. 3M Co.*, 2012 WL 2374657, at *14 (D. Del. June 22, 2012). To the extent the local interest factor applies, the accused companies, are being sued in their home fora for infringing activities carried out in those fora. Such local disputes should be resolved in those fora. *See, e.g.*, *Fuisz Pharma LLC v. Theranos, Inc*., 2012 WL 1820642, at *17 (D. Del. May 18, 2012), ("The [transferee district] nevertheless has a local interest regarding this action, in that this suit relates to infringement that allegedly occurred in that district, by []employees who work in that district.) The last *Jumara* factor is irrelevant. "[P]atent claims are governed by federal law, and as such both [courts are] capable of applying patent law to infringement claims." *Ivoclar Vivadent AG*, 2012 WL 2374657, at *13 (internal citations omitted)). Consequently, the public interest *Jumara* factors either favor transfer or are neutral.

### 8.    This Action Should Be Stayed

The Court should dismiss or transfer this litigation. Nevertheless, should the Court decline to do so, the first-filed rule also vests the Court with the authority to stay the instant suit until the Texas courts issue a final judgment. *See Microchip Tech., Inc. v. Motorola, Inc.*, 2002 WL 32332753, at *8 (D. Del., May 28, 2002).

20

Here, considerations of comity and wise judicial administration warrant the Court staying this action to allow the Texas courts to determine the application of the first-to-file rule. IV respectfully requests that the Court stay this action, until the Texas courts issue their decisions.

## V.    CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety or, in the alternative, stayed or transferred to Texas.

Dated:  February 20, 2025

Respectfully submitted,

FARNAN LLP

Of Counsel:

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
John Downing
Heather S. Kim
ThucMinh Nguyen
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Dr., Suite 200
Redwood Shores, CA 94065
Tel: (650) 453-5170
Fax: (650) 362-9302
JWaldrop@kasowitz.com
DJones@kasowitz.com
MBarber@kasowitz.com
JDowning@kasowitz.com
HKim@kasowitz.com
TNguyen@kasowitz.com

*/s/ Brian E. Farnan*
 Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Attorneys for Defendants
*Intellectual Ventures I LLC and*
*Intellectual Ventures II LLC*

21

Paul G. Williams
KASOWITZ BENSON TORRES LLP
1230 Peachtree Street, N.E., Suite 2445
Atlanta, Georgia 30309
Tel: (404) 260-6080
Fax: (404) 260-6081
PWilliams@kasowitz.com

## <u>CERTIFICATION OF COMPLIANCE</u>

The foregoing document complies with the type-volume limitation of this Court's November 10, 2022 Standing Order regarding Briefing in All Cases.  The text of this brief, including footnotes, was prepared in Times New Roman, 14 point. According to the word processing system used to prepare it, the brief contains 4,926 words, excluding the case caption, signature block, table of contents and table of authorities.


 /s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)

Dated: February 20, 2025