# EXHIBIT 13

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **INTELLECTUAL VENTURES I LLC AND INTELLECTUAL VENTURES II LLC,**<br><br>Plaintiff,<br><br>vs.<br><br>**AMERICAN AIRLINES, INC.,**<br><br>Defendant. | Civil Action No. 4:24-cv-00980<br><br>**JURY TRIAL** |

**MOTION TO SEVER AND STAY CLAIMS
AGAINST VIASAT'S IN-FLIGHT CONNECTIVITY
<u>SYSTEMS BY DEFENDANT AMERICAN AIRLINES, INC.</u>**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ....................................................................................................................2

      A.    Intellectual Ventures' Duplicative Allegations Against Viasat In-Flight Connectivity Systems ...........................................................................2

      B.    Viasat's Declaratory Judgment Action for Non-Infringement ..................3

      C.    American Airlines' Agreement to Be Bound..............................................3

ARGUMENT..........................................................................................................................3

    I.    The Court Should Stay Claims Regarding Viasat's In-Flight Connectivity Systems Under the Customer-Suit Exception .........................................................4

      A.    American Airlines is a Mere User of Viasat's In-Flight Connectivity Systems .................................................................................5

      B.    American Airlines Agrees to be Bound by the Delaware Court's Decision .....................................................................................................7

      C.    Viasat is the Sole Provider of its Accused In-Flight Connectivity Systems, Infringement by Which is a "Major Issue" in This Action ..........7

    II.    The Court Should Also Stay Claims Against Viasat's In-Flight Connectivity Systems Pending Resolution of Viasat's Delaware Action Under Traditional Stay Factors..............................................................................8

      A.    A Stay Will Not Prejudice or Otherwise Present a Tactical Disadvantage to Intellectual Ventures; It Will Instead Reduce Costs and be More Efficient for All Parties Involved ...............................8

      B.    A Stay Will Simplify this Action and Avoid Duplicative or Inconsistent Litigation of Identical Issues ..................................................9

            1.    The Delaware Actions Will Fully Resolve the Issues of Infringement of Accused Viasat Products, Reducing the Issues Before This Court................................................................9

            2.    A Stay Will Streamline Discovery in this Action.........................10

            3.    A Stay Will Avoid Inconsistent Judgments .................................10

      C.    Discovery Has Not Begun, And Trial Has Not Been Set.........................11

CONCLUSION....................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*CyWee Grp. Ltd. v. Huawei Device Co.*,
  No. 17-495, 2018 WL 4002776 (E.D. Tex. Aug. 22, 2018) ........................................... passim

*I.V. v. Southwest Airlines*,
  Docket No. 1-11, *and* Docket No. 1-13 ..................................................................... 3, 5

*I.V. v. Southwest Airlines*,
  Docket No. 1-12 ............................................................................................................ 3, 5

*I.V. v. Southwest Airlines*,
  Docket Nos. 1-11 ................................................................................................................ 2

*In re Google Inc.*,
  588 F. App'x 988 (Fed. Cir. 2014) ................................................................................. 7, 11

*In re Nintendo of Am., Inc.*,
  756 F.3d 1363 (Fed. Cir. 2014) ........................................................................................ 1, 4

*Intellectual Ventures v. Southwest Airlines Co.*,
  No. 24-277, Docket No. 1 (W.D. Tex. Nov. 2, 2024) ......................................................... 2

*Lighthouse Consulting Grp., LLC v. Bank of Am., N.A.*,
  No. 19-250, 2020 WL 6781978 (E.D. Tex. Mar. 26, 2020) ............................................ 4, 10

*Lighthouse Consulting Grp., LLC v. Truist Bank*,
  No. 19-340, 2020 WL 6781977 (E.D. Tex. Apr. 7, 2020) ........................................... 7, 9, 11

*Network Sys. Techs., LLC v. Samsung Elecs. Co.*,
  No. 22-481, 2023 WL 7649372 (E.D. Tex. Nov. 14, 2023) .................................... 6, 7, 8, 10

*SITO Mobile R&D IP, LLC v. SFA Holdings Inc.*,
  No. 23-688, 2024 WL 3843804 (W.D. Tex. Apr. 19, 2024) ................................................ 6

*Soverain Software LLC v. Amazon.com, Inc.*,
  356 F. Supp. 2d 660 (E.D. Tex. 2005) ................................................................................. 4

*Sys. Stormseal PTY LTD. v. SRS Distrib., Inc.*,
  No. 23-391, 2024 WL 1995432 (E.D. Tex. May 6, 2024) ................................................ 7, 9

*Viasat v. I.V.*,
  Docket No. 1 ..................................................................................................................... 3, 8

*Viasat, Inc. v. Intellectual Ventures*,
  No. 24-56 ............................................................................................................................ 11

*Viasat, Inc. v. Intellectual Ventures*,
 No. 25-56, Docket No. 1 (D. Del. Jan. 14, 2025) ................................................................... 3

*Wapp Tech Ltd. P'ship v. Hewlett-Packard Enter. Co.*,
 No. 18-468, 2019 WL 3818761 (E.D. Tex. Aug. 14, 2019) .......................................... 5, 7, 10

*Westport Fuel Sys. Canada, Inc. v. Ford Motor Co.*,
 No. 21-453, 2023 WL 318466 (E.D. Tex. Jan. 19, 2023) .............................................. passim

**INTRODUCTION**

This motion seeks to eliminate needlessly duplicative litigation of identical issues pending before three different courts. Although it declined to file suit against Viasat directly, Intellectual Ventures has filed (so far) two complaints against Viasat's airline customers—one before this Court, and one against Southwest Airlines before the Western District of Texas—alleging identical claims of infringement by Viasat in-flight connectivity products for two of the six patents asserted in each action. American Airlines does not design, manufacture, control, or modify the in-flight connectivity systems in its aircraft. Instead, American Airlines contracts with three third-party suppliers, Viasat, Panasonic, and Intelsat. Only Viasat products are accused in both actions, as Viasat provides in-flight connectivity systems to American Airlines, Southwest Airlines, and all major airlines in the United States.

To protect its customers and to avoid inconsistent rulings, Viasat has filed a declaratory judgment action for non-infringement in the District of Delaware, where Viasat and Intellectual Ventures both reside. Viasat's declaratory judgment action will resolve Intellectual Ventures' claims of infringement against Viasat products, thus avoiding inconsistent rulings between this Court and its sister court in the Western District. The Federal Circuit has instructed that a supplier's declaratory judgment action should take precedence over a patent owner's suit against customers that merely use the accused products, as American Airlines does here. *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014). And for good reason: a stay will streamline discovery in this action and conserve judicial and party resources by resolving infringement with Viasat as a party. And a stay will avoid duplicative litigation and inconsistent rulings concerning infringement of the same products. American Airlines thus respectfully requests that this Court sever and stay Intellectual Ventures' claims of infringement of U.S. Patent Nos. 7,324,469 and 8,027,326.

1

## BACKGROUND

A. **Intellectual Ventures' Duplicative Allegations Against Viasat In-Flight Connectivity Systems**

On November 2, 2024, plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "Intellectual Ventures") filed this action against American Airlines, asserting infringement of six patents, including U.S. Patent Nos. 7,324,469 (the "'469 patent") and 8,027,326 (the "'326 patent"). Docket No. 1. Also on November 2, 2024, Intellectual Ventures filed suit against Southwest Airlines in the Western District of Texas, asserting infringement of the same six patents. *Intellectual Ventures v. Southwest Airlines Co.*, No. 24-277, Docket No. 1 (W.D. Tex. Nov. 2, 2024). Intellectual Ventures accuses American Airlines of infringing the '469 and '326 patents by using Viasat, Panasonic, and Intelsat products in commercial aircraft.[1] Docket No. 1 ¶¶ 85-99, 101-115.

In both actions, Intellectual Ventures asserts infringement of the '469 and '326 patents against Viasat products and systems. Docket Nos. 1-12; 1-13; *I.V. v. Southwest Airlines*, Docket Nos. 1-11; 1-12. Viasat, Inc. is a global communications company with significant expertise in engineering satellite and connectivity solutions. Among other products and services, Viasat provides in-flight connectivity systems to every major U.S. commercial airline, including American Airlines. Viasat is a Delaware corporation with headquarters in Carlsbad, California.

---

[1] In its allegations regarding the '469 patent, Docket No. 1-13, Intellectual Ventures also references "GoGo," but Intelsat bought Gogo's commercial aviation business in 2020. *See Gogo Completes Sale of Commercial Aviation Business to Intelsat*, https://ir.gogoair.com/static-files /e6906c22-a8d4-4332-8718-3558f4da9940; *Gogo Commercial Aviation is Now Intelsat*, https://www.intelsat.com/newsroom/gogo-commercial-aviation-is-now-intelsat/. At one point, Intellectual Ventures cites to an undated brochure hosted on gogoair.com (Docket No. 1-13 at 6). But that site concerns only Gogo's business after the Intelsat transaction. Today, Gogo does not offer services to commercial airlines such as American Airlines, and thus gogoair.com has no ongoing relevance to this action.

2

Intellectual Ventures does not allege that American Airlines modifies or adapts the manufacturers' in-flight connectivity systems for its own use, nor does it allege that American Airlines modifies any of the specifically accused hardware components they provide to American Airlines. Although Intellectual Ventures highlights different "exemplary" products, in both actions Intellectual Ventures makes the same infringement allegations against the same functionality in Viasat's in-flight connectivity systems. *Compare* Docket No. 1-12 at 9 *with I.V. v. Southwest Airlines*, Docket No. 1-11 at 8, *and* Docket No. 1-13 at 7 *with I.V. v. Southwest Airlines*, Docket No. 1-12 at 4. In both actions, Intellectual Ventures supports its allegations of infringement with extensive discussion of Viasat's products and citation to Viasat's documents. *See, e.g.*, Docket No. 1-12 at 3-6, 12; Docket No. 1-13 at 5.

### B. Viasat's Declaratory Judgment Action for Non-Infringement

On January 14, 2025, Viasat filed a complaint for declaratory judgment in the District of Delaware, seeking a declaration that its products do not infringe the '326 and '469 patents. *Viasat, Inc. v. Intellectual Ventures*, No. 25-56, Docket No. 1 (D. Del. Jan. 14, 2025) (the "Delaware Action"). For the convenience of the Court, American Airlines attaches the complaint in *Viasat v. I.V.*, Docket No. 1, as Exhibit 1. As set forth in the Delaware Action, Intellectual Ventures directly accuses Viasat's products of patent infringement, creating a controversy between them.

### C. American Airlines' Agreement to Be Bound

American Airlines agrees to be bound by any judgment in the Delaware Action on Viasat's declaratory judgment claims against Intellectual Ventures.

### ARGUMENT

This Court "has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "When a patent owner files an

3

infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally take[s] precedence." *In re Nintendo*, 756 F.3d at 1365. The Court should apply its discretion to sever and stay claims regarding alleged infringement by Viasat in-flight connectivity systems until resolution of the Delaware Action.

I.  **THE COURT SHOULD STAY CLAIMS REGARDING VIASAT'S IN-FLIGHT CONNECTIVITY SYSTEMS UNDER THE CUSTOMER-SUIT EXCEPTION**

"The customer suit exception is an exception to the general rule that favors the forum of the first-filed action; it provides that where a manufacturer and its customer have both been sued, the action against the manufacturer should ordinarily proceed first, regardless of which action was first filed." *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 17-495, 2018 WL 4002776, at *4 (E.D. Tex. Aug. 22, 2018). The exception is "based on a manufacturer's presumed greater interest in defending its actions against charges of patent infringement, and the exception is also in place to guard against possibility of abuse." *Lighthouse Consulting Grp., LLC v. Bank of Am., N.A.*, No. 19-250, 2020 WL 6781978, at *1 (E.D. Tex. Mar. 26, 2020). The customer-suit exception is guided by the principles of efficiency and judicial economy. *See id*.

> In determining whether the customer suit exception applies, the court analyzes three factors: (1) whether the customer-defendant in the earlier-filed case is merely a reseller; (2) whether the customer-defendant agrees to be bound by any decision in the later-filed case that is in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product.

*CyWee*, 2018 WL 4002776 at *5 (quotation omitted). Courts do not apply the factors "in a mechanical or precise manner and instead adopt[] a flexible approach in order to assess whether judicial resources will be saved." *Id*. (quotations omitted); *see also Wapp Tech Ltd. P'ship v. Hewlett-Packard Enter. Co.*, No. 18-468, 2019 WL 3818761, at *2 (E.D. Tex. Aug. 14, 2019).

4

### A. American Airlines is a Mere User of Viasat's In-Flight Connectivity Systems

The first factor favors a stay of claims asserted against Viasat's products. Intellectual Ventures alleges that American Airlines infringes by virtue of the Viasat-provided systems, and not by any downstream product. Indeed, Intellectual Ventures identifies Viasat products as exemplary both here and in the Western District.[2] Intellectual Ventures alleges that infringement of the '326 patent occurs wholly within the Viasat Select Router, identifying no contributions by American Airlines beyond purchasing the router from Viasat.[3] Likewise, Intellectual Ventures alleges infringement of the '469 patent by in-flight connectivity systems, citing Viasat documentation and again identifying no contributions by American Airlines beyond that of a mere

---

[2] Docket No. 1 ¶¶ 85-99, 101-115. Although Intellectual Ventures also accuses other in-flight connectivity systems, it identifies Viasat parts and products as "exemplary" across cases. *Compare* Docket No. 1-12 at 9 ("On information and belief, American Airlines provides in flight Wi-Fi connectivity through provider equipment, such as the Viasat Select Router and Panasonic modem. This equipment is compliant with Wi-Fi 802.11n and 802.11ac protocols. For example, the Viasat Select Router is compliant with the Wi-Fi 802.11n and 802.11ac protocols.") *with I.V. v. Southwest Airlines*, Docket No. 1-11 at 8 ("On information and belief, Southwest provides in flight Wi-Fi connectivity through provider equipment provided by Viasat and Anuvu. This equipment is compliant with Wi-Fi 802.11n and 802.11ac protocols. For example, the Viasat equipment and Anuvu equipment is compliant with the Wi-Fi 802.11n and 802.11ac protocols."); *and* Docket No. 1-13 at 7 ("On information and belief, American Airlines has partnered with Intelsat, Viasat, GoGo, and Panasonic to provide its passengers with in-flight Wi-Fi connectivity. American Airline's aircrafts are equipped with Intelsat, Viasat, GoGo, and Panasonic's In-Flight Connectivity system.") *with I.V. v. Southwest Airlines*, Docket No. 1-12 at 4 ("On information and belief, Southwest has partnered with Viasat and Anuvu to provide its passengers with in-flight Wi-Fi connectivity. Southwest aircraft are equipped with Viasat and Anuvu's In-Flight Connectivity system.").

[3] Docket No. 1-12 at 5-6, 12 (citing *Viasat Select Router*, https://www.viasat.com/content/dam/us-site/aviation/documents/Viasat_Select_Router-datasheet.pdf); *see also id.* at 3-4 (citing *ViaSat Unveils Second Generation Mobility Equipment to Deliver Fastest Speeds from a Satellite to an Aircraft*, https://news.viasat.com/newsroom/press-releases/viasat-unveils-second-generation-mobility-equipment-to-deliver-fastest-speeds-from-a-satellite-to-an-aircraft; *100 planes and counting: Behind the scenes installing the best Wi-Fi in the sky*, https://news.viasat.com/blog/gem/100-planes-and-counting-behind-the-scenes-installing-the-best-wi-fi-in-the-sky).

5

purchaser.[4] This is no surprise: Viasat provides all of the necessary hardware, software, and connectivity services to American Airlines, and American Airlines is not involved in the design or manufacture of any Viasat in-flight connectivity system. *See* Riffe Decl. ¶ 6. American Airlines relies on Viasat for providing and implementing Viasat in-flight connectivity systems including any relevant code or technical documentation. *See* Riffe Decl. ¶¶ 6-7.

"Courts in the Fifth Circuit have consistently found that the first customer-suit exception factor weighs in favor of a stay where a customer-defendant is accused of merely using, operating, or promoting an accused product that had been developed and supplied by a third-party." *SITO Mobile R&D IP, LLC v. SFA Holdings Inc.*, No. 23-688, 2024 WL 3843804, at *3 (W.D. Tex. Apr. 19, 2024) (citing *Lighthouse Consulting Grp., LLC v. Truist Bank*, No. 19-340, 2020 WL 6781977, at *2 (E.D. Tex. Apr. 7, 2020)), *report and recommendation adopted*, 2024 WL 3843784 (W.D. Tex. May 23, 2024). Courts in this District have routinely held this factor favors staying of the customer suit where, as here, the complaint alleges a defendant simply "utilize[s]" the allegedly infringing product. *Westport Fuel Sys. Canada, Inc. v. Ford Motor Co.*, No. 21-453, 2023 WL 318466, at *2 (E.D. Tex. Jan. 19, 2023) ("[T]he underlying functionalities of the accused product as alleged in the infringement contentions are independent of Ford's particular use[.]"); *Network Sys. Techs., LLC v. Samsung Elecs. Co.*, No. 22-481, 2023 WL 7649372, at *5 (E.D. Tex. Nov. 14, 2023) ("NST's failure to allege that OnePlus modifies or adapts Qualcomm Chips for use in OnePlus products strengthens the Court's conclusion."); *Truist Bank*, 2020 WL 6781977, at *1 ("Here, Truist and Citizens are equivalent to 'resellers.' Neither Truist nor Citizens developed or created the mobile deposit technology at issue in this case . . . Truist and Citizens merely license

---

[4] Docket No. 1-13 at 5 (citing *Viasat In-Flight Connectivity Solutions*, https://www.viasat.com/content/dam/us-site/aviation/documents/565522_In-flight_Connectivity_011_aag.pdf).

that technology from NCR—the developer and supplier of the technology.'") (citation omitted); *see also In re Google Inc.*, 588 F. App'x 988, 990 (Fed. Cir. 2014) (finding exception applies where contentions "rely almost exclusively on the underlying functionalities provided in the base Android source code provided by Google").

### B. American Airlines Agrees to be Bound by the Delaware Court's Decision

The second factor favors a stay. American Airlines agrees to be bound by the determination in the Delaware Action regarding infringement of any Viasat products, leaving nothing for this Court to adjudicate regarding these products. "An 'agreement to be bound by an infringement determination in a separate suit, that will leave little left for the court to adjudicate in the current suit, weighs heavily in favor of' a stay." *Network Sys. Techs.*, 2023 WL 7649372, at *7 (quoting *Wapp Tech*, 2019 WL 3818761, at *4); *see, e.g.*, *Sys. Stormseal PTY LTD. v. SRS Distrib., Inc.*, No. 23-391, 2024 WL 1995432, at *5 (E.D. Tex. May 6, 2024) ("Based upon Defendant's agreement to be bound by the Florida Action's determination on validity, the Court agrees that a stay would simplify this issue."); *see also Wapp Tech*, 2019 WL 3818761, at *4. Therefore, this factor favors a stay. *CyWee*, 2018 WL 4002776, at *4; *see also Westport*, 2023 WL 318466, at *3 ("[A] decision that Bosch does infringe, binding on Ford by its stipulation, greatly simplifies the issues in this case.").

### C. Viasat is the Sole Provider of its Accused In-Flight Connectivity Systems, Infringement by Which is a "Major Issue" in This Action

This factor favors a stay. Intellectual Ventures' two Texas lawsuits both allege infringement of the same Viasat in-flight connectivity systems, of which Viasat is the sole source. Docket No. 1 ¶¶ 85-99, 101-115; Docket Nos. 1-12, 1-13; *I.V. v. Southwest Airlines*, Docket No. 1 ¶¶ 87-101, 103-117; *id.*, Docket Nos. 1-11, 1-12. Intellectual Ventures' infringement contentions make clear that a stay of claims will resolve "'major issues' concerning the claims against" American Airlines. *Network Sys. Techs.*, 2023 WL 7649372, at *2 (quoting *Spread*

7

*Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011)). This Court has held that, where, as here, other issues will remain to be tried in this Court, it can nevertheless grant a manufacturer's motion to stay where "granting the motion to stay would simplify the issues in this case, without adding to the burden on the court in the Delaware case." *CyWee*, 2018 WL 4002776, at *4.

## II. THE COURT SHOULD ALSO STAY CLAIMS AGAINST VIASAT'S IN-FLIGHT CONNECTIVITY SYSTEMS PENDING RESOLUTION OF VIASAT'S DELAWARE ACTION UNDER TRADITIONAL STAY FACTORS

When faced with a motion to stay such as this one, this Court considers:

(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issue in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

*CyWee*, 2018 WL 4002776, at *3 (quoting *Soverain*, 356 F. Supp. 2d at 662); *see also Westport*, 2023 WL 318466, at *2. Each of the traditional stay factors also favor a stay of Intellectual Ventures' claims of infringement against Viasat in-flight connectivity systems.

### A. A Stay Will Not Prejudice or Otherwise Present a Tactical Disadvantage to Intellectual Ventures; It Will Instead Reduce Costs and be More Efficient for All Parties Involved

Intellectual Ventures will not suffer any prejudice, let alone undue prejudice, if the Court grants a stay. This action is in its infancy; Intellectual Ventures filed the complaint this past November. The complaint seeks exclusively monetary damages, which Intellectual Ventures can obtain, if justified, from the District of Delaware as from this Court. Docket No. 1 at 34-35. Nor can Intellectual Ventures complain of forum shopping; it is incorporated in Delaware, and is itself a frequent litigant before the District of Delaware. The two plaintiffs in this action have filed over forty cases in the District of Delaware, many of them for patent infringement. Ex. 2.

8

Indeed, a stay would benefit Intellectual Ventures as well as American Airlines, Viasat and the Court by allowing Intellectual Ventures an opportunity to press its claims that Viasat products infringe its patents in the District of Delaware, where Viasat is a party, thus permitting Intellectual Ventures to compel necessary Viasat witnesses to appear at trial, which it could not do in this action under Rule 45. Intellectual Ventures will further benefit from a stay in favor of Viasat's case, where it will have "full access to relevant discovery regarding the accused technology directly from the developer and supplier." *Truist Bank*, 2020 WL 6781977, at *2.

### B. A Stay Will Simplify this Action and Avoid Duplicative or Inconsistent Litigation of Identical Issues

Resolving the claims regarding Viasat in Delaware will simplify the issues in this case and streamline any trial in this Court. Viasat's declaratory judgment action will resolve the question of infringement by the accused Viasat in-flight connectivity systems, thus obviating the existing need for (at least) two juries—one here, and one in the Western District—to consider it. *Westport*, 2023 WL 318466, at *4 ("Any decision whether for or against Westport in the declaratory judgment action would simplify the issues against Ford."); *see also Sys. Stormseal*, 2024 WL 1995432, at *5-6.

#### 1. The Delaware Actions Will Fully Resolve the Issues of Infringement of Accused Viasat Products, Reducing the Issues Before This Court

In this action, Intellectual Ventures accuses systems from three different vendors—Viasat, Intelsat, and Panasonic—of infringing the '469 and '326 patents, thus requiring the Court to supervise discovery regarding three vendors and the jury to consider infringement arguments regarding three vendors. Docket Nos. 1-12, 1-13. Because American Airlines has agreed to be bound by infringement rulings in the Delaware Action, resolving the claims regarding Viasat in Delaware will remove one of those three vendors, reducing the complexity of this case and preserving judicial resources by hearing all claims regarding Viasat in one forum. *See, e.g.*,

9

*CyWee*, 2018 WL 4002776, at *4 ("[O]nce the Delaware action is resolved, there presumably will be nothing left for this Court to adjudicate as to whether the Nexus 6P infringes the '438 and '978 patents. Huawei has thus shown that granting the motion to stay would simplify the issues in this case, without adding to the burden on the court in the Delaware case."); *see also Wapp Tech*, 2019 WL 3818761, at *4.

### 2. A Stay Will Streamline Discovery in this Action

A stay will further simplify discovery in this action, as Viasat "possesses all of the evidence concerning" the accused in-flight connectivity systems and "[t]hus, a stay would seem to simplify the resolution of discovery disputes in these cases." *Bank of Am.*, 2020 WL 6781978, at *3. Absent a stay, Intellectual Ventures would need to seek the bulk of evidence—if not all evidence—relating to the accused in-flight connectivity systems through third-party subpoenas. *See Network Sys. Techs.*, 2023 WL 7649372, at *9 ("NST will not be unduly prejudiced in this case by a severance and stay of the claims against OnePlus because discovery in this matter focuses on Qualcomm as the 'true defendant.'").

### 3. A Stay Will Avoid Inconsistent Judgments

A stay will further preserve judicial resources by obviating the need for Intellectual Ventures' two cases to proceed on identical issues. Intellectual Ventures currently presses the same infringement theory against Viasat products in this Court and in the Western District. "The only potential results of adjudicating these cases in parallel fashion would be the [two Texas courts] agree on the major issues of the litigation, thus producing wasteful and unnecessary litigation, or the courts disagree, thus producing conflicting decisions." *In re Google*, 588 F. App'x at 990. And resolution of Viasat's declaratory judgment action will obviate the need for still more Courts and juries to consider the same claims, as Viasat supplies in-flight connectivity services to all major U.S. airlines. The Court should consider the likelihood that Intellectual Ventures will

assert the same patents against Viasat's other customers in any number of other courts, compounding needlessly duplicative litigation of the same claims against the same products.

### C. Discovery Has Not Begun, And Trial Has Not Been Set

The final factor, "whether discovery is complete and whether a trial date has been set," similarly supports a stay. Intellectual Ventures filed this action and its Western District action just three months ago; this Court has accordingly held no proceedings, substantive or otherwise. This Court only recently set an initial case management conference for April 8, 2025, but the discovery schedule, and trial date remain pending. Docket No. 17. When a motion to stay and sever claims is filed "prior to the scheduling conference setting forth discovery deadlines and a trial," and is "clearly within its infancy," this factor warrants a stay. *Westport*, 2023 WL 318466, at *4; *see also Truist Bank*, 2020 WL 6781977, at *2.

### **CONCLUSION**

For the foregoing reasons, American Airlines respectfully requests that the Court sever and stay Intellectual Ventures' claims regarding Viasat's in-flight connectivity systems until final resolution of *Viasat, Inc. v. Intellectual Ventures*, No. 24-56, in the District of Delaware.

Date: February 14, 2025

Respectfully submitted,

**MCKOOL SMITH, P.C.**
*/s/ John B. Campbell*
John B. Campbell
Texas State Bar No. 24036314
jcampbell@McKoolSmith.com
Kyle N. Ryman
Texas State Bar No. 24125394
kryman@McKoolSmith.com
Kenneth M. Scott
Texas State Bar No. 24137497
kscott@McKoolSmith.com
**MCKOOL SMITH, P.C.**
303 Colorado Street, Suite 2100
Austin, TX 78701

11

Telephone: (512) 692-8700
Telecopier: (512) 692-8744

Emily Tannenbaum
New York State Bar No. 5928130
etannenbaum@McKoolSmith.com
**MCKOOL SMITH, P.C.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 402-9400
Telecopier: (212) 402-9444

ATTORNEYS FOR DEFENDANT
AMERICAN AIRLINES, INC.

12

## CERTIFICATE OF CONFERENCE

I, the undersigned counsel, hereby certify that counsel for American Airlines has complied with the meet and confer requirement in Local Rule CV-7(h) and that this motion is opposed. On February 5, 2025, counsel for American Airlines asked counsel for Intellectual Ventures to meet and confer on the issues raised in this motion. Counsel for Intellectual Ventures acknowledged the request to meet and confer on February 10, but did not provide available dates for doing so. Counsel for American Airlines followed up the same day, on February 10, and again on February 11 and February 12 requesting counsel for Intellectual Ventures availability to meet and confer. Counsel for Intellectual Ventures responded the same day, on February 12, and proposed a time to meet and confer on Thursday, February 13. Counsel for American Airlines accepted that proposed date and time. The parties then held their meet and confer, the personal conference required by Local Rule CV-7(h), on February 13, 2025 via videoconference. The following counsel for Intellectual Ventures attended: Jonathan Waldrop, Jeceaca An, John Downing, Howard Bressler, and Allen Gardner. The following counsel for American Airlines attended: Kyle Ryman and Emily Tannenbaum.

The issues raised in this motion were meaningfully discussed by counsel, but no agreement could be reached. Specifically, counsel for Intellectual Ventures could not confirm whether Intellectual Ventures would or would not oppose this Motion, and asked for additional time to confer with its client, but also noted that it was unlikely that Intellectual Ventures would not oppose this Motion. Counsel for American asked if counsel for Intellectual Ventures could confirm its client's position on or before Friday, February 14, 2025 so that American Airlines could file this week should no agreement be reached. Counsel for Intellectual Ventures would not commit to doing so, despite having already opposed Southwest Airlines' substantively similar motion in *Intellectual Ventures I LLC et al. v. Southwest Airlines Co.*, which was filed on February 12. No.

13

7:24-cv-277-ADA (W.D. Tex.) (Dkt. 17). At the time of this filing, it is past 5:00pm on Friday, February 14, 2025 and counsel for American Airlines has yet to hear back from counsel for Intellectual Ventures. Thus, counsel for American Airlines must assume the parties' discussions on the issues raised in this Motion have conclusively ended in an impasse, leaving them open for the Court to resolve.

/s/ <i>John B. Campbell</i><br>
John B. Campbell

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 14, 2025, the foregoing document has been served on all counsel of record via the Court's CM/ECF system.

/s/ <i>John B. Campbell</i><br>
John B. Campbell

14