# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **VIASAT, INC.,** | |
| *Plaintiff,* | C.A. No. 25-cv-56-CFC |
| v. | |
| **INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC,** | |
| *Defendants.* | |

## <u>DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS, TRANSFER OR STAY</u>

Dated:  March 17, 2025

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Attorneys for Defendants
*Intellectual Ventures I LLC and*
*Intellectual Ventures II LLC*

Of Counsel:

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
John Downing

Heather S. Kim
ThucMinh Nguyen
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Dr., Suite 200
Redwood Shores, CA 94065
Tel. (650) 453-5170
Fax. (650) 362-9302
JWaldrop@kasowitz.com
DJones@kasowitz.com
MBarber@kasowitz.com
JDowning@kasowitz.com
HKim@kasowitz.com
TNguyen@kasowitz.com

Paul G. Williams
KASOWITZ BENSON TORRES LLP
1230 Peachtree Street, N.E., Suite 2445
Atlanta, Georgia 30309
Tel. (404) 260-6080
Fax. (404) 260-6081
PWilliams@kasowitz.com

# **TABLE OF CONTENTS**

Page

I.    ARGUMENT ..................................................................................................1

  A.  The Customer Suit Exception Does Not Apply ...............................................1

  B.  The Court Should Stay This Case or Transfer It To Texas Under 28 USC § 1404(A)........................................................................................................6

    1.  Plaintiff's Choice of Forum ........................................................................7

    2.  Whether the Claim Arose Elsewhere Weighs in Favor of Transfer ...........8

    3.  The Convenience of the Parties Still Weighs in Favor of Transfer............9

    4.  Public Interest Factors Favor Transfer......................................................10

    5.  The Location of Books and Records, Local Interests, and Public Policy..10

    6.  Practical Considerations.............................................................................10

    7.  Relative Administrative Difficulty Due to Court Congestion...................10

    8.  Other Factors .............................................................................................11

II.   CONCLUSION .............................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Prods. and Chemicals, Inc. v. MG Nitrogen Servs., Inc.*,
    133 F. Supp. 2d 354 (D. Del. 2001) ..................................................2, 5

*APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*,
    295 F. Supp. 2d 393 (D. Del. 2002) .................................................9

*Citrix Syss., Inc. v. Parallel Networks Licensing, LLC*,
    2020 WL 2309073 (D. Del. May 8, 2020) .......................................5, 8

*Crosley Corp. v. Westinghouse Elec. & Mfg. Co.*,
    130 F.2d 474 (3d Cir. 1941) ...............................................................1

*Fleet Connect Sols., LLC v. Precision Drilling Corp.*,
    No. 6:21-CV-00987-ADA, 2022 WL 2373711 (W.D. Tex. June 30,
    2022) ...............................................................................................2, 4

*Futurewei Techs., Inc. v. Acacia Research Corp.*,
    737 F.3d 704 (Fed. Cir. 2013) ..........................................................1

*In re Google Inc.*,
    588 F. App'x 988 (Fed. Cir. 2014).............................................3, 4, 10

*Hum. Genome Scis., Inc. v. Genentech, Inc.*,
    No. CA 11-082-LPS, 2011 WL 2911797 (D. Del. July 18, 2011)......7

*Kahn v. General Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989) .........................................................2

*Kennedy v. Walmart, Inc.*,
    No. 18-1270-RGA, 2019 WL 2052350 (D. Del. May 9, 2019) ..........6

*Motion Offense, LLC v. Sprouts Farmers Mkt., Inc.*,
    No. 6:19-CV-00417-ADA, 2020 WL 4561594 (W.D. Tex. Jan. 26
    2020) ...................................................................................................6

*Smith v. Comenity Bank*,
    No. 19-2164-RGA, 2020 WL 1975140 (D. Del. Apr. 24, 2020) ........6

*Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*,
    676 F. Supp. 2d 321 (D. Del 2009)........................................................................5

*Time Warner Cable, Inc. v. GPNE Corp.*,
    497 F. Supp. 2d 584 (D. Del. 2007)......................................................................8

*TSMC Tech., Inc. v. Zond, LLC*,
    No. 14–721–LPS–CJB, 2014 WL 7251188 (D. Del. Dec. 19, 2014) .................8

## I.    ARGUMENT

### A.    The Customer Suit Exception Does Not Apply

Contrary to ViaSat's Opposition ("Op."), the customer-suit exception does not apply.  ViaSat argues that this declaratory judgment ("DJ") action should proceed in tandem with the Texas lawsuits against customers, Southwest Airlines and American Airlines, which include other (non-ViaSat) in-flight Wi-Fi technology providers and four unrelated patents not included in this DJ action.  The Texas actions thus *will proceed* parallel to this action.

ViaSat's arguments centers around: (i) whether Southwest and American Airlines, the defendants in the first-filed actions (American in the Eastern District of Texas and Southwest in the Western District of Texas), are mere "resellers" of the technology; and (ii) whether proceeding in parallel with the Texas actions promotes efficiency.[1]  The focus is on the technology asserted in the first-filed patent litigation

---

[1] ViaSat's arguments about the applicable caselaw are red herrings. ViaSat does not identify any substantive differences between the Federal and Third Circuit's first-filed rules because there are none. *Compare Futurewei Techs., Inc. v. Acacia Research Corp*., 737 F.3d 704, 708 (Fed. Cir. 2013) ("When two actions that sufficiently overlap are filed in different federal district courts, one for infringement and the other for declaratory relief, the declaratory judgment action, if filed later, generally is to be stayed, dismissed, or transferred to the forum of the infringement action") *with Crosley Corp. v. Westinghouse Elec. & Mfg. Co*., 130 F.2d 474, 475 (3d Cir. 1941) ("the district court first obtaining jurisdiction of the parties and issues in a patent cause on a complaint seeking declaratory relief should ordinarily proceed to adjudicate the controversy and should restrain the parties from seeking in the interim in a later suit in another district court to duplicate that adjudication"). Similarly, ViaSat's mirror-image argument (Op. at 7-8) is irrelevant because IV's cases concern the actual issue at hand—whether the first-filed rule applies.

to determine which competing litigation promotes efficiency and convenience (not simply whether a manufacturer seeks declaratory relief, Op. at 2)). *See Kahn v. General Motors Corp.,* 889 F.2d 1078, 1081, (Fed. Cir. 1989) (denying customer suit exception); *Air Prods. and Chemicals, Inc. v. MG Nitrogen Servs., Inc.,* 133 F. Supp. 2d 354, 357 (D. Del. 2001) (transferring manufacturer's DJ action to Texas, finding action involving same patents and overlapping parties should not proceed simultaneously in different courts); *Fleet Connect Sols., LLC v. Precision Drilling Corp.*, No. 6:21-CV-00987-ADA, 2022 WL 2373711, at *3 (W.D. Tex. June 30, 2022) (denying stay based on customer suit exception where accused system was incomplete without customer's input).

ViaSat's opposition and complaint do not provide sufficient facts warranting allowing this case to proceed. ViaSat argues that it provides "the accused in-flight connectivity systems." (Op. at 4.) ViaSat, however, fails to account for the components made by others and whether it has possession of witnesses and documents that would promote convenience and efficiency for evaluating infringement and invalidity. To the contrary, ViaSat alleges that other (non-ViaSat) third-parties provide components related to the infringement allegations, so ViaSat may not be a true "manufacturer." D.I. 1 at ¶ 48 (according to ViaSat "Wi-Fi base stations, which [IV] accuses of infringement, [are] *originally sold by Aruba Networks, LLC*"). ViaSat does not identify or represent it possesses core technical

2

documents and witnesses needed to assess the Accused Functionality or that such documents/witnesses are located close to Delaware such that proceeding here promotes efficiency. ViaSat simply argues that Delaware is "home" to both ViaSat and IV (Op. 14), although neither has offices or employees here. But ViaSat, Southwest, and American Airlines all have office locations in the EDTX and/or WDTX. D.I. 15-12 (https://www.viasat.com/about/who-we-are/locations/); D.I. 15-1 (Southwest Complaint) at ¶ 6; D.I. 15-4 (American Complaint) at ¶ 6.

ViaSat argues that declarations filed by Southwest and American Airlines (Op. at 3-4). confirm that ViaSat is responsible for the accused in-flight connectivity systems, but they are also insufficient. As explained above, ViaSat does not account for all relevant hardware and software implicated by IV's infringement allegations or show that litigating this parallel action promotes efficiency. *See In re Google Infra.* Indeed, in the Southwest action, Judge Albright has allowed IV to take discovery to address the customer suit arguments and Southwest's declaration. That discovery is imperative to confirm whether the customer-suit exception applies.[2]

As IV showed, there are claim limitations which appear to require hardware and software in combination with the technology provided by ViaSat, negating the argument that Southwest and American Airlines are unnecessary for the

---

[2] In the alternative, the Court may hold this motion in abeyance until that discovery is completed and allow IV to supplement its motion with that discovery.

infringement determination.  D.I. 14 at 10-11.  *Fleet Connect Sols*., 2022 WL 2373711, *2-4 (denying customer suit exception when component was not used "off-the-shelf").

*In re Google Inc*., 588 F. App'x 988 (Fed. Cir. 2014) ("*Google*") does not support ViaSat.  There, the Court found the accusations at issue related to Android functionality and that the infringement contentions all relied on Google-created base Android source code.  *Id.* at 990.  Further, knowledgeable witnesses and records were in or near Google's California headquarters.  *Id.* at 991.  Accordingly, in *Google*, the actual technology was provided exclusively by the purported manufacturer.  ViaSat makes no such showing here.

Moreover, "the determination of the infringement issues here would [not] likely be dispositive of the other cases" because ViaSat (unlike Google) is not the only manufacturer of the Accused Functionality.  *See* Ex. 1 at ¶ 5 (referencing manufacturers Panasonic Avionics, and Intelsat), Ex. 2 at ¶ 5 (ViaSat and Anuvu).  Accordingly, IV requested from ViaSat, *inter alia*, an itemization of what of the accused technology ViaSat itself provides. Ex. 3. Tellingly, *IV received no response.*

Thus, it is at most unclear whether Southwest and/or American Airlines are mere resellers and ViaSat has not shown the documents and witnesses are substantially located in one location (Southwest recently filed a motion to transfer

to the Northern District of Texas as "clearly the more convenient forum"). Ex. 4 at 1.

Because IV's infringement allegations against American and Southwest Airlines go well beyond their roles as purported users of ViaSat's products, the customer-suit exception does not apply. *See, e.g., Teleconference Sys. v. Proctor & Gamble Pharms., Inc*., 676 F. Supp. 2d 321, 327 (D. Del 2009) (customer-suit exception inapplicable where defendant alleged that manufacturer's customers were direct infringers of defendant's patents); *Air Prods.,* 133 F. Supp. 2d at 357 (transferring manufacturer's declaratory judgment claim to first-filed Texas infringement action where customer sued in Texas was not "merely a reseller" of manufacturer's products, but incorporated them into the customer's infringing product).

Finally, the customer-suit exception does not apply where "the manufacturer could have been named a defendant where the first suit was brought." *Air Prods., supra*; *see also Citrix Syss., Inc. v. Parallel Networks Licensing, LLC*, 2020 WL 2309073, at *9 (D. Del. May 8, 2020) (transferring DJ action because "absent circumstances where the supplier cannot be joined as a defendant in the customer suit, the [Supreme Court's] formulation of the customer-suit exception does not apply."). Here, ViaSat *could* have been named as a defendant in the Eastern and/or Western Districts of Texas. 42 U.S.C. § 1391(b)(2), which ViaSat insists applies

(Op.), provides that venue is proper in a district "in which a substantial part of the events giving rise to the claim occurred."[3] ViaSat's claim arises from IV's claims in the Texas actions, and ViaSat could have been joined as a defendant in those cases.

Further, ViaSat has multiple offices, and services customers headquartered, in Texas. No party has an office in Delaware. *Motion Offense, LLC v. Sprouts Farmers Mkt., Inc.*, No. 6:19-CV-00417-ADA, 2020 WL 4561594, *2–*3 (W.D. Tex. Jan. 26, 2020) (denying stay when no offices in Delaware). The customer suit exception does not apply for these reasons as well.

Accordingly, the first-filed rule applies, and ViaSat's arguments fail (and the Court need not reach § 1404(a)).

## B.    The Court Should Stay This Case or Transfer It To Texas Under 28 USC § 1404(A)

ViaSat incorrectly claims IV conducted an incorrect analysis concerning personal jurisdiction and venue. IV's legal analysis, which asserted "ViaSat's action could have been brought in the WDTX or EDTX" (Mot. at 12) was correct. ViaSat could have brought this action in Texas provided there was jurisdiction over IV, which there was with regards to the patents asserted by IV there. *See Hum. Genome*

---

[3] ViaSat's argument that IV "waived" reliance on §1391(b)(2) (Op.) is of no moment. The Court may consider the applicability of that section to the facts here regardless. *See, e.g., Smith v. Comenity Bank*, No. 19-2164-RGA, 2020 WL 1975140, at *2 (D. Del. Apr. 24, 2020) ("The Court may raise venue and issue a Section 1404(a) transfer order sua sponte"); *Kennedy v. Walmart, Inc.*, No. 18-1270-RGA, 2019 WL 2052350, at *1 (D. Del. May 9, 2019) (same).

*Scis., Inc. v. Genentech, Inc*., No. CA 11-082-LPS, 2011 WL 2911797, at *3 (D. Del. July 18, 2011) ("As the plaintiff, [plaintiff] had the option to sue Defendants in the [transferee district], as there is personal jurisdiction over Defendants there. This is so even assuming the [transferee district] lacks personal jurisdiction over [the plaintiff]"). With regards to convenience, ViaSat has corporate locations in Austin Texas and other Texas locations. D.I. 15-12 ([https://www.viasat.com/about/who-we-are/locations/](https://www.viasat.com/about/who-we-are/locations/)). Southwest and American Airlines also have locations in the relevant jurisdictions. D.I. 15-1 and D.I. 15-4. ViaSat also has *its own* pending patent litigation in the Western District of Texas. *See* 6:21-cv-01231; 6:21-cv-01230. These facts weigh in favor of transfer. No witnesses or documents have been identified in Delaware and there is no offices for the alleged Wi-Fi functionality providers (ViaSat, Anuvu, Panasonic and Intelsat) in Delaware. Rather, most have connections to the WDTX or EDTX or offices in Texas.

### 1.    Plaintiff's Choice of Forum

As IV showed (D.I. 14), *its* choice of forum (in Texas) should be accorded significant weight. ViaSat does not even address the case law IV cites in support of its argument (instead seeking to distinguish *Shutte*, one of the cases cited by IV's cases) and argues that ViaSat's choice of forum must be given "paramount" consideration. Op. at 15-16. However, as the Court noted in rejecting that argument

in a case involving a request to transfer a Delaware declaratory judgment to Texas federal court:

> [I]t cannot be the case that a plaintiff's choice in the second-filed action is always 'paramount.' I recognize, of course, that the declaratory judgment plaintiff here is not a defendant in the Texas action. But to give the first *Jumara* factor dispositive weight under circumstances like these would not promote the interests of justice, because it would essentially promote litigating the same or similar issues in two districts at once.

*Citrix Sys.*, *Inc*., 2020 WL 2309073, at *6. *Cf. Time Warner Cable, Inc. v. GPNE Corp*., 497 F. Supp. 2d 584, 590 (D. Del. 2007) (focusing on first-filed action plaintiff in noting that "[a] plaintiff's choice of forum should be upheld unless there are rare or extraordinary circumstances that would mandate dismissal or transfer."). Indeed, adopting ViaSat's approach would contravene the "historic respect accorded the first-filed plaintiff's choice of forum." *TSMC Tech., Inc. v. Zond*, *LLC*, No. 14–721–LPS–CJB, 2014 WL 7251188, at 21 (D. Del. Dec. 19, 2014).[4]

## 2. Whether the Claim Arose Elsewhere Weighs in Favor of Transfer

ViaSat brought this action because "the litigation …against Southwest…and American" directly "accuses ViaSat's in-flight connectivity systems of patent infringement, impacting ViaSat's business and relationships with its customers," yet ViaSat untenably simultaneously claims that the direct infringement of its customers

---

[4] None of ViaSat's inapposite cases (Op. at 15-16) involved a first-filed action against a defendant. Rather, they focus on whether there is an actual presence in the district, including documents and witnesses.

is "irrelevant." D.I. 1 at 3 (ViaSat Complaint); Op. at 3.  ViaSat also does not deny that it maintains offices in the Western District of Texas and that its technology is utilized throughout Texas.  This factor favors transfer.

### 3.    The Convenience of the Parties Still Weighs in Favor of Transfer[5]

This factor weighs in favor of transfer.  As shown above, ViaSat ignores IV's argument that ViaSat is but one of the Wi-Fi system providers used by Southwest and American Airlines and, therefore, ViaSat would already have to prepare for litigation in Texas anyway.  As discussed above, ViaSat does not address where specifically the witnesses and relevant documents are located and whether it has possession, custody and control of the necessary witnesses and documents.  Instead, ViaSat focuses only on its and IV's Delaware incorporation, which is not enough in itself to favor transfer. *See APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 398-99 (D. Del. 2002) (incorporation in Delaware was not dispositive "where an alternative forum is more convenient and has more substantial connections with the litigation").  ViaSat ignores the document and witness analysis contained in *In re Google* and ignores its reference to third-party components in its DJ complaint.  *See supra.*

---

[5] Practical considerations and the convenience of the witnesses are factors that are addressed by IV's arguments regarding the customer-suit exception.

### 4.    Public Interest Factors Favor Transfer

ViaSat states no support for the argument that Delaware should decide this action because it is IV's home court.  As explained above, ViaSat has pending patent litigation against other companies as the Plaintiff pending in the Western District of Texas.  Accordingly, this Court should transfer this action to the Western and Eastern Districts of Texas.

### 5.    The Location of Books and Records, Local Interests, and Public Policy

ViaSat is wrong that these factors oppose transfer.  Indeed, Books and Records are likely to be in Texas as parties have offices there. D.I. 15-12 (https://www.viasat.com/about/who-we-are/locations/);    D.I.    15-1    (Southwest Complaint) at ¶ 6; D.I. 15-4 (American Complaint) at ¶ 6.

### 6.    Practical Considerations

ViaSat's argument is wrong.  The proper forum to resolve all issues is Texas. As explained above, other manufacturers and other patents are involved in the Texas actions that are not at issue here.

### 7.    Relative Administrative Difficulty Due to Court Congestion

ViaSat does not dispute that trial in Texas will likely be as fast or faster and less administratively difficult. Op. at 19.  Indeed, at least one Texas action has already heard a motion to compel and granted discovery on this very issue.  While

ViaSat references the number of assigned judges, the time-to-trial statistics IV cited show that that makes no difference.

### 8.  Other Factors

ViaSat does not support any of the remainder of its cited factors, but just glosses over them in a conclusory fashion.  Accordingly, the Court should disregard those arguments.

## II.  CONCLUSION

For the foregoing reasons, IV's motion to dismiss, transfer or stay should be granted.

Dated:  March 17, 2025                     Respectfully submitted,

                                           FARNAN LLP

Of Counsel:                                */s/ Brian E. Farnan*
                                           Brian E. Farnan (Bar No. 4089)
Jonathan K. Waldrop                        Michael J. Farnan (Bar No. 5165)
Darcy L. Jones                             919 N. Market St., 12th Floor
Marcus A. Barber                           Wilmington, DE 19801
John Downing                               Tel: (302) 777-0300
Heather S. Kim                             bfarnan@farnanlaw.com
ThucMinh Nguyen                            mfarnan@farnanlaw.com
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Dr., Suite 200            Attorneys for Defendants
Redwood Shores, CA 94065                   *Intellectual Ventures I LLC and*
Tel. (650) 453-5170                        *Intellectual Ventures II LLC*
Fax. (650) 362-9302
JWaldrop@kasowitz.com
DJones@kasowitz.com
MBarber@kasowitz.com
JDowning@kasowitz.com

HKim@kasowitz.com
TNguyen@kasowitz.com

Paul G. Williams
KASOWITZ BENSON TORRES LLP
1230 Peachtree Street, N.E., Suite 2445
Atlanta, Georgia 30309
Tel. (404) 260-6080
Fax. (404) 260-6081
PWilliams@kasowitz.com

## <u>CERTIFICATION OF COMPLIANCE</u>

The foregoing document complies with the type-volume limitation of this Court's November 10, 2022 Standing Order regarding Briefing in All Cases. The text of this brief, including footnotes, was prepared in Times New Roman, 14 point. According to the word processing system used to prepare it, the brief contains 2,447 words, excluding the case caption, signature block, table of contents and table of authorities.

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)

Dated: March 17, 2025