IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VIASAT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-056-CFC |
| | ) | |
| INTELLECTUAL VENTURES I LLC | ) | |
| and INTELLECTUAL VENTURES II | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
BARRING DUPLICATIVE CLAIMS AGAINST VIASAT'S CUSTOMERS
<u>PENDING RESOLUTION OF THIS MANUFACTURER ACTION</u>**

OF COUNSEL:
Matthew S. Warren
Erika H. Warren
Madeline A. Woodall
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, CA, 94114
(415) 895-2940

Dated: March 28, 2025

Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiff*

**<u>TABLE OF CONTENTS</u>**

**Pages**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.    I.V. Files Two Lawsuits Against Viasat's Customers, Accusing Viasat's
       In-Flight Connectivity Systems of Infringing the Patents-in-Suit . . . . . . . . 2

       i.    The '326 Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       ii.   The '469 Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

B.    Viasat Files This Manufacturer Action, and its Customers Seeks Stays . . . . 6

C.    I.V. Resists Litigating Against Viasat in This Court at Every Turn . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.    The Court Should Enjoin I.V. From Prosecuting Its Customer Cases
      Accusing Viasat's Systems Under the Customer-Suit Exception . . . . . . . . . 7

      A.    When the Exception Applies, the Court Should Enjoin Duplicative
             Customer Suits Without Considering the Four-Factor Test . . . . . . . . . 7

      B.    Because the Exception Applies Here, the Court Should Enjoin I.V.
             From Prosecuting Customer Claims Against Viasat Systems . . . . . . . 8

II.   Even Under the Traditional Preliminary Injunction Standard, I.V.'s
      Texas Claims Against Viasat's Products Should Be Enjoined . . . . . . . . . . 14

      A.    Viasat Will Succeed in Showing the Customer-Suit Exception . . . . . 15

      B.    Viasat Will Suffer Irreparable Harm If the Customer Suits
             Proceed Against Its Products in Texas . . . . . . . . . . . . . . . . . . . . . . . 16

## **TABLE OF CONTENTS**
*(continued)*

**Pages**

C.    The Balance of Equities Favors Granting an Injunction . . . . . . . . . . 17

D.    The Public Interest Favors a Preliminary Injunction . . . . . . . . . . . . 17

III.    The Court Should Not Required a Bond . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## <u>TABLE OF AUTHORITIES</u>

*Cases*                                      **Pages**

*Amazon.com, Inc. v. Corydoras Techs., LLC*,
   No. 19-1095, 2020 WL 1644005 (W.D. Tex. Apr. 2, 2020) . . . . . . . . . . . . . . . . 8

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
   664 F.3d 922 (Fed. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Cont'l Oil v. Frontier Refinery*,
   338 F.2d 780 (10th Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Elecs. for Imaging, Inc. v. Coyle*,
   394 F.3d 1341 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Finisar Corp. v. Cheetah Omni, LLC*,
   No. 11-15625, 2012 WL 12931575 (E.D. Mich. Nov. 19, 2012). . . .10, 14, 16-19

*In re Google Inc.*,
   588 F. App'x 988 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11, 14

*Interdigital Tech. Corp. v. Pegatron Corp.*,
   No. 15-2584, 2015 WL 3958257 (N.D. Cal. June 29, 2015) . . . . . . . . . . . . . . 20

*Int'l Controls v. Vesco*,
   490 F.2d 1334 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

*Jorgensen v. Cassiday*,
   320 F.3d 906, 919 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Katz v. Lear Siegler, Inc.*,
   909 F.2d 1459 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8, 13-14

# TABLE OF AUTHORITIES

*(continued)*

| *Cases* | **Pages** |
|---|---|

*Lab'y Corp. of Am. Holdings v. Chiron Corp.*,
384 F.3d 1326 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*,
No. 17-1973, 2024 WL 1254127 (N.D. Ill. Mar. 25, 2024) . . . . . . . . . . . . . . . 20

*Natera, Inc. v. NeoGenomics Lab'ys, Inc.*,
106 F.4th 1369 (Fed. Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-17

*Nevro Corp. v. Stimwave Techs., Inc.*,
No. 19-325, 2019 WL 3322368 (D. Del. July 24, 2019) . . . . . . . . . . . . . . . 15-18

*In re Nintendo of Am., Inc.*,
756 F.3d 1363 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 18

*ProBatter Sports, LLC v. Joyner Techs., Inc.*,
463 F. Supp. 2d 949 (N.D. Iowa 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 19

*Puff Corp. v. KandyPens, Inc.*,
No. 20-976, 2020 WL 6318708 (D. Del. Oct. 28, 2020) . . . . . . . . . . . . . . . .14-15

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
657 F.3d 1359 (Fed. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Temple Univ. v. White*,
941 F.2d 201 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Tinnus Enters., LLC v. Telebrands Corp.*,
846 F.3d 1190 (Fed. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Urbain v. Knapp Brothers Mfg.*,
217 F.2d 810 (6th Cir. 1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## <u>TABLE OF AUTHORITIES</u>
*(continued)*

*Other Authorities*                                    **Pages**

*Finisar Corp. v. Cheetah Omni, LLC,*
    No. 11-15625, D.I. 22 (E.D. Mich. Mar. 26, 2012) . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Google Inc.,*
    No. 14-147, D.I. 20-1 (Fed. Cir. Aug. 22, 2014) . . . . . . . . . . . . . . . . . . . . . . . .9-11

## NATURE AND STAGE OF THE PROCEEDINGS

In this declaratory action, Viasat seeks to resolve Intellectual Ventures' infringement claims against Viasat's in-flight connectivity systems.  Although this Court is I.V.'s home jurisdiction and Viasat is the manufacturer of the accused systems, I.V. insists on litigating not here and not against Viasat, but only in Texas and only against Viasat's airline customers.

I.V. has resisted Viasat's defense of its products at every turn:  it has moved to dismiss this action, fought the airlines' attempts to stay the customer suits against them, and refused to open discovery in this matter.  And I.V. has refused to forebear from bringing still more cases against still more Viasat customers, reserving its right to bring additional and additionally duplicative litigation.  I.V. has done everything it can to avoid this Court and avoid facing Viasat, so it can litigate in its preferred courts, 2,000 miles from its headquarters and 1,500 miles from its Delaware place of incorporation.  This motion seeks to end I.V.'s forum-shopping tactics and move to resolution of the merits of this dispute.

## SUMMARY OF ARGUMENT

1.     The Court should enjoin I.V. from prosecuting its current customer suits against Viasat's systems, or bringing additional customer suits against those systems, until resolution of this matter.  Doing so will enable this Court to resolve

this action on the merits.  I.V. will suffer no prejudice, except to its ability to forum shop.  Courts hearing customer suits have granted similar injunctions since at least 1990; this Court should do so here.

## STATEMENT OF FACTS

**A.    I.V. Files Two Lawsuits Against Viasat's Customers, Accusing Viasat's In-Flight Connectivity Systems of Infringing the Patents-in-Suit**

Viasat is a leading provider of in-flight connectivity; *every* major U.S. airline and a significant number of international airlines that operate in the United States are Viasat customers.  On November 2, 2024, I.V. sued Viasat customers Southwest Airlines and American Airlines in the Western and Eastern Districts of Texas. D.I. 1-4; D.I. 1-6.  In both actions, I.V. accused Viasat's in-flight connectivity systems of infringing two patents, U.S. Patent No. 8,027,326 (the "'326 patent") and U.S. Patent No. 7,324,469 (the "'469 patent").

### i.    The '326 Patent

The '326 patent concerns "a method and system for high data rate multi-channel wireless communications."  D.I. 1-1 at 1:16-17; Compl. ¶ 15. Claim 1 recites:

> A method for increasing data rates and data throughput in a network, the method comprising:
>
> selecting at least a first channel and a second channel, wherein the first channel and the second channel are adjacent without any other channels

there between, wherein the first channel and the second channel each have a plurality of data subcarriers, wherein the data subcarriers of the first channel and the data subcarriers of the second channel are separated by a frequency gap corresponding to one or more guard bands between the first and second channels;

partially filling the frequency gap between the first channel and the second channel by adding one or more data subcarriers into the frequency gap such that the one or more guard bands are at least partially filled with at least some of the one or more data subcarriers using full spectral synthesis capability of a fast fourier transform or an inverse fast fourier transform;

combining the first channel and the second channel using channel bonding with orthogonal frequency division multiplexing (OFDM); and

transmitting data subcarriers occupying the first channel, the second channel, and the frequency gap in parallel to a receiver.

*Id.* at 17:26-49; Compl. ¶ 15.  I.V. claims infringement based on "complian[ce]

with Wi-Fi 802.11n and 802.11ac protocols."  D.I. 1-5 at 8; *see also id.* at 5, 12-64;

D.I. 1-7 at 9; *see also id.* at 6, 15-65; D.I. 18-1 at 9; *see also id.* at 13-69, 74-81;

Compl. ¶ 27.  According to I.V., infringement occurs within an 802.11n or

802.11ac Wi-Fi base station.  *See*

*id.*  The accused base station, I.V.'s

contentions confirm, is part of the

Viasat Select Router.  *E.g.*, D.I. 1-5

at 4.  I.V. claims the Viasat Select

Router "incorporates" a Wi-Fi

**Viasat Select Router**

Redefining the in-flight connectivity experience

D.I. 1-5 at 4, 9; D.I. 1-7 at 5, 12; D.I. 18-1 at 10, 71.

The router incorporates an 802.11ac Wi-Fi access point for easy in-cabin wireless connectivity for passengers, crew and ground operations.  Additional antennas can be added to ensure optimal signal strength inside the cabin as necessary.

D.I. 1-5 at 4; D.I. 1-7 at 5; D.I. 18-1 at 6.

The Viasat Select Router, coupled with Viasat's latest generation satellite terminal, delivers a fully managed internet connectivity network inside the cabin that promises to deliver maximum speed and capabilities from Viasat's high-capacity satellite network.

D.I. 1-5 at 4, 9; D.I. 1-7 at 5, 12; D.I. 18-1 at 10, 71.

access point, and thus accuses it of infringement. *See generally* D.I. 1-5; D.I. 1-7; D.I. 18-1; Compl. ¶¶ 25-27.

### ii.    The '469 Patent

The '469 patent concerns a system that "provides rural 'Hotspots'" for use "in areas that experience high volume transient traffic, such as rest areas, restaurants, truck stops, rural hotels, conference centers, motels and state park lodges." D.I. 1-2 at 1:34, 1:41-44; Compl. ¶ 55. Claim 24 recites:

> An Internet Hotspot comprising:
>
> a satellite dish communicating with the Internet via one or more data links with a satellite;
>
> at least one router operatively coupled to the satellite dish;
>
> a subscriber access unit operatively coupled between the satellite dish and the at least one router, the subscriber access unit being capable of authenticating a subscription account associated with a user prior to allowing the user access to the Internet; and
>
> a web-ready device operatively coupled to the at least one router, the web-read device having a browser application operating thereon for accessing the Internet;
>
> wherein the satellite dish, at least one router and the subscriber access unit are located in a remote location a [sic] experiencing a relatively high volume of transient traffic;
>
> wherein the user may authenticate the subscription account and access the Internet at the remote location by establishing a data connection between the web-ready device and the router.

*Id.* at 8:24-43; Compl. ¶ 55. Infringement thus requires "a satellite dish," "at least one router," a "subscriber access unit operatively coupled between the satellite dish and the at least one router," and "a web-ready device operatively coupled to the at least one router, the web-ready device having a browser application operating thereon for accessing the Internet." *Id.* I.V. claims that the "web-ready device" can be anything, including users' personal "devices that include a browser application for Internet accessibility," such as a mobile phone. D.I. 1-8 at 18; D.I. 18-2 at 20; *see* D.I. 1-9 at 23. For the other three elements of accused functionality, I.V.

accuses Viasat's in-flight connectivity system. I.V.'s infringement contentions repeatedly reproduce a Viasat graphic entitled "Viasat equipment and network," and use that graphic, highlighted in various ways, to show the accused "satellite dish" (D.I. 1-8 at 11); "router" (*id.* at 11,



D.I. 1-8 at 20; *see id.* at 8, 11, 16; D.I. 18-2 at 22; *see id.* at 10, 13, 18, 37.

*see id.* at 10-12); and "subscriber access unit" (*id.* at 16, *see id.* at 14-15).

**B.    Viasat Files This Manufacturer Action, and its Customers Seek Stays**

Although I.V.'s complaints and infringement contentions accuse Viasat's

systems of infringement, *see supra*, I.V. chose not to sue Viasat, the maker of those

systems.  So Viasat rose in defense of its customers by filing this action.  D.I. 1.

Viasat's customers moved to stay I.V.'s claims regarding Viasat's systems,

D.I. 18-3; D.I. 18-4, and filed declarations confirming that Viasat is the true

defendant.  D.I. 18-5; D.I. 18-6; *see* D.I. 1-5; D.I. 1-7; D.I. 1-8; D.I. 1-9; D.I. 18-1;

D.I. 18-2.  Both Southwest and American have agreed to be bound by any

infringement finding in this action.  D.I. 18-3 at 10; D.I. 18-4 at 3.

**C.    I.V. Resists Litigating Against Viasat in This Court at Every Turn**

The I.V. defendants are Delaware limited liability companies; this Court is

their home Court.  They have begrudgingly admitted as much, D.I. 21 at 10, but

continue to fight at every turn any litigation against Viasat, and any litigation in this

Court.  I.V. has moved to dismiss this action, D.I. 13; opposed the airline

customer's motions to stay I.V.'s suits against them, Ex. 1 & Ex. 2;[1] and has even

refused to open discovery in this matter.  D.I. 24.  And, perhaps most tellingly,

although Viasat raised the issue of possible additional suits against additional

airline customers, D.I. 17 at 19, I.V. declined to make any commitment not to sue

---

[1] Exhibits 1 through 2 are attached to the concurrently filed Declaration of
Matthew S. Warren.

those customers despite an opportunity to do so.  *See* D.I. 21.  I.V. thus reserves the

right to bring still more cases against still more Viasat customers in any court it

chooses, while continuing to refuse to litigate this case in its home Court.

## ARGUMENT

I.    **The Court Should Enjoin I.V. From Prosecuting Its Customer Cases Accusing Viasat's Systems Under the Customer-Suit Exception**

A.    **When the Exception Applies, the Court Should Enjoin Duplicative Customer Suits Without Considering the Four-Factor Test**

Under Federal Circuit law, the customer-suit exception is, by itself, sufficient

to justify an injunction against prosecution of duplicative customer suits.[2]  In *Katz*

*v. Lear Siegler, Inc.,* 909 F.2d 1459 (Fed. Cir. 1990), the District Court enjoined

patentee Katz from prosecuting a customer suit until resolution of the manufacturer

suit.  *Id.* at 1461.  Katz appealed, arguing "that the enjoinder of concurrent

litigation must meet the traditional four-part test for entitlement to a preliminary

injunction."  *Id.* at 1462.  The Court disagreed:

> [W]e agree with the district court that this standard, which was developed to
> test the grant of the requested remedy before the case has been tried on the
> merits, does not apply to the different question of whether to enjoin the
> prosecution of concurrent litigation.  In the latter case it is not controlling

---

[2] Federal Circuit law controls this question.  "Because of the importance of national uniformity in patent cases, we hold that injunctions arbitrating between co-pending patent declaratory judgment and infringement cases in different district courts are reviewed under the law of the Federal Circuit."  *Lab'y Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1331 (Fed. Cir. 2004).

whether the plaintiff is likely to succeed on the merits.  Instead, a primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other.

*Id.* at 1463.  The Court found that the customer-suit exception applied, and thus "affirm[ed] the district court's action enjoining continuation" of the customer suit "pending resolution" of the manufacturer suit.  *Katz*, 909 F.2d at 1464.

*Katz* remains good law and is binding precedent.  The Federal Circuit has not revisited it, and district courts continue to apply it.  *See, e.g.*, *Amazon.com, Inc. v. Corydoras Techs., LLC*, No. 19-1095, 2020 WL 1644005, at *4 (W.D. Tex. Apr. 2, 2020) (citing *Katz* for the holding that "the traditional preliminary injunction standard does not apply to a manufacturer's request to enjoin"); *ProBatter Sports, LLC v. Joyner Techs., Inc.*, 463 F. Supp. 2d 949, 955-56 (N.D. Iowa 2006) (citing *Katz* for the holding that "a party seeking an antisuit injunction need not satisfy the traditional four-part test for entitlement to a preliminary injunction").  This Court should follow suit.

## B.    Because the Exception Applies Here, the Court Should Enjoin I.V. From Prosecuting Customer Claims Against Viasat Systems

"[L]itigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer."  *Katz*, 909 F.2d at 1464.  As Viasat explained in its opposition to I.V.'s motion to dismiss, D.I. 17 at 4-7, the customer-suit exception applies here,

and I.V.'s Texas cases (and any future cases asserting these patents against Viasat customers) should yield to this manufacturer case.

I.V.'s attempts to avoid the customer-suit exception are without merit.  In this case and in its two Texas cases, I.V. has made three arguments against application of the exception; the Court should reject all of them.  First, I.V. argues that, because it also accuses other manufacturers' systems, the customer-suit exception does not apply.  D.I. 14 at 10; Ex. 1 at 7-8; Ex. 2 at 7-8.  But if this were so, the customer-suit exception would mean nothing, as any patentee could always avoid it simply by adding additional claims.  And indeed it is not so:  the Federal Circuit rejected this argument in *In re Google Inc.*, 588 F. App'x 988 (Fed. Cir. 2014).  There, patentee Rockstar filed five complaints against Android device makers in the Eastern District of Texas; the manufacturer of Android, Google, rose to defend its customers with a declaratory action in the Northern District of California.  *Id.* at 989.  The cases arrived at the Federal Circuit on Google's petition for mandamus reversing the Eastern District's decision declining to stay or transfer the customer cases.  *Id.* at 989-90.  Rockstar argued that mandamus should not issue because it had included in its customer cases claims under U.S. Patent No. 5,838,551, which "covers *only* hardware (shielding of components), which has nothing whatsoever to do with Android" and for which Google was not the manufacturer.  *In re Google*

*Inc.*, No. 14-147, D.I. 20-1 at 4-5 (Fed. Cir. Aug. 22, 2014) (emphasis in original). The Federal Circuit acknowledged that the '551 patent was not related to Android and therefore claims regarding it would not overlap with Google's declaratory case, 588 F. App'x at 989, but issued mandamus anyway, finding "a classic case for a stay" because the California case would resolve "the major issues of the litigation." *Id.* at 990. I.V.'s attempt to avoid the customer-suit exception based on the existence of other claims cannot survive *Google*; if I.V.'s argument were correct, *Google* would have denied mandamus on this ground. Viasat here does not seek to bar all claims in Texas, as the Federal Circuit did in *Google*; it seeks only to resolve claims regarding its own systems in this Court. But *Google* confirms that the mere presence of other claims in I.V.'s customer cases is not a 'get out of jail free' card for I.V. that bars this Court from applying the customer-suit exception.[3]

---

[3] Although decided before *Google*, the district court in *Finisar Corp. v. Cheetah Omni, LLC*, No. 11-15625, 2012 WL 12931575 (E.D. Mich. Nov. 19, 2012), similarly ruled against the same argument. In *Finisar*, which concerned claims of infringement by Wavelength Selective Switches or WSSs, patentee Cheetah Omni argued that "Finisar is not the only WSS supplier to the Texas defendants," and that "[o]f the seven Cheetah patents asserted in the Texas Litigation, only two relate to Finisar's WSSs. The other five patents cover ROADMs with CoAdna or JDSU WSSs." *Id.*, D.I. 22 at 2 (E.D. Mich. Mar. 26, 2012); *see id.* at 5-7. Thus, Cheetah Omni concluded, "disposition of the Michigan action will not be 'dispositive' of the Texas Litigation because that case involves many more patents, products, and parties." *Id.* at 7. The Court disagreed, enjoining Cheetah Omni from prosecuting the two patents asserted against Finisar products. *Finisar*, *supra*, 2012 WL 12931575 at *6. I.V.'s argument here is the same as Cheetah Omni's in *Finisar*; the result should be the same as well.

I.V. next makes two specific arguments regarding the two patents-in-suit.

Regarding the '326 patent, and in Texas although so far not before this Court, I.V. argues that, because Viasat sources parts for its systems from other vendors, Viasat cannot be the manufacturer of its systems. Ex. 1 at 4, 7; Ex. 2 at 1-2, 7. Again, if this were so, the customer-suit exception would mean nothing, as modern systems invariably involve integration of hardware and software from various sources. Again, it is not so; again, the Federal Circuit confirmed this in *Google*, 588 F. App'x 988. There, patentee Rockstar argued that "Android is an open-source software project managed by Google, but contributed to by many other entities and individuals, including Samsung, other device manufacturers, and even members of the public." *Google*, D.I. 20-1 at 5. If I.V.'s argument in Texas were correct, the Federal Circuit would have denied mandamus because Google was not the manufacturer of Android. But the Court granted mandamus and credited Google as the manufacturer. 588 F. App'x at 991-92. Like Google in *Google*, Viasat integrates all components into its systems, including Aruba 802.11 equipment it installs on aircraft; Viasat configures the WiFi used by its in-flight connectivity systems; and Viasat is responsible for those systems to its customers. Compl. ¶ 48; Declaration of Christopher Michael ¶ 5. Just like the presence of other claims, the

modern reality of supply-chain sourcing does not give I.V. a 'get out of jail free' card to avoid this Court's application of the customer-suit exception.

Finally, regarding the '469 patent, I.V. argues that "ViaSat is silent as to its responsibility with respect to the authentication step ('the user may authenticate the subscription account . . .')." D.I. 14 at 10. But as Viasat explained in its opposition, this representation is "both misleading and false." D.I. 17 at 9. I.V.'s Texas contentions are "not 'silent' about the authentication step" as they "cite Viasat documentation to accuse Viasat hardware" of infringing the "authentication step," and Viasat's complaint explicitly addresses this step, claiming non-infringement because in Viasat's accused in-flight connectivity systems, "any 'authenticat[ion]' of a 'subscription account' is handled by terrestrial systems" off the airplane." *Id.* at 9-10 (quoting Compl. ¶ 61).

In its Texas cases, I.V. similarly argued that because login screens for different airlines can show the airline customers' logo and branding, they are not "off the shelf" products and the airlines are not "mere resellers." Ex. 1 at 5; *see also* Ex. 2 at 5. But this argument contradicts I.V.'s own infringement contentions, which accuse Viasat hardware of infringement. Under element "[24.c]," I.V. accuses as the "subscriber access unit" an "onboard server that hosts information passenger-focused services." D.I. 1-8 at 14. It illustrates this claim using a Viasat

graphic, drawing a red box around hardware for "Network management" and

"Monitoring/statistics."

*Id.* at 15.  That is Viasat

hardware, as Viasat

installs, configures, and

controls all hardware and



software on the aircraft related to the in-flight connectivity system.  D.I. 18-5; D.I.

18-6; Michael Decl. ¶ 5.  I.V. does not claim the login screen itself infringes, but

instead alleges infringement by *enabling* authentication, which its own contentions

allege is performed by hardware and software from Viasat.  D.I. 18-2 at 16-18.

I.V.'s argument boils down to claiming that Southwest infringes differently from

American because its login screen includes a heart logo, while American's includes

an eagle.  But I.V. cannot escape its own infringement contentions, which claim

infringement by Viasat's system.

Like *Katz*, "this case fits the 'customer suit' exception, whereby litigation

against or brought by the manufacturer of infringing goods takes precedence over a

suit by the patent owner against customers of the manufacturer."  *Katz*, 909 F.2d at

1464.  There, the Federal Circuit "affirm[ed] the district court's action enjoining

continuation of the [customer] action pending resolution" of the manufacturer's

suit because "resolution of the major issues before that court, including patent infringement, patent validity, and Mr. Katz' capacity to sue, will resolve these issues as to their customers." *Id.*  The same is true here, and so the Court should enjoin I.V. from pursuing claims against Viasat systems in Texas or elsewhere.

## II.    Even Under the Traditional Preliminary Injunction Standard, I.V.'s Texas Claims Against Viasat's Products Should Be Enjoined

Despite *Katz*, at least one court has found that, following *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), courts should apply "familiar equitable principles" to motions for customer-suit injunctions.  *Finisar*, 2012 WL 12931575, at *3.  This view misapplies *eBay*, which dealt with the standard for a permanent injunction barring infringement, and followed copyright law to overrule the Court of Appeal's view that the "statutory right to exclude alone justifies its general rule in favor of permanent injunctive relief."  547 U.S. at 392.  *eBay* does not apply to a request to stay customer claims until resolution of a manufacturer suit.  To decide that question, as the Federal Circuit has reaffirmed since *eBay*, courts need only determine whether the customer-suit exception applies.  *Google*, 588 F. App'x at 990; *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014).  *Katz* remains binding precedent on this Court, and the Court should follow it.  *cf. Puff Corp. v. KandyPens, Inc.*, No. 20-976, 2020 WL 6318708, at *2 (D. Del. Oct. 28, 2020) (treating *Shutte* as "binding Third Circuit law" because "[t]he

parties have not cited and I am not aware of any Third Circuit or United States Supreme Court case that overruled *Shutte*.").

But even if the Court considers traditional equitable factors in deciding this motion, those factors favor a preliminary injunction. A district court may grant a preliminary injunction if the moving party demonstrates that "(1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm if the injunction is not granted, (3) that the balance of equities between the parties tips in its favor, and (4) that an injunction is in the public interest." *Nevro Corp. v. Stimwave Techs., Inc.*, No. 19-325, 2019 WL 3322368, at *3 (D. Del. July 24, 2019); *see Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th 1369, 1375 (Fed. Cir. 2024). All four of these factors favor entry of an injunction here.[4]

### A.    Viasat Will Succeed in Showing the Customer-Suit Exception

To the extent that the Court evaluates likelihood of success, it should consider Viasat's likelihood of success in showing the customer-suit exception applies, rather than its likelihood of ultimately prevailing on the merits, because the

---

[4] Courts "review preliminary injunctions using the law of the regional circuit," but "the Federal Circuit has itself built a body of precedent applying the general preliminary injunction considerations to a large number of factually variant patent cases, and gives dominant effect to Federal Circuit precedent insofar as it reflects considerations specific to patent issues." *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1202-03 (Fed. Cir. 2017). The customer-suit exception is just such a "consideration[] specific to patent issues." *Id.* at 1203; *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345-46 (Fed. Cir. 2005); *see* D.I. 17 at 5.

injunction will affect the Court hearing Viasat's claims, but will not determine the outcome of those claims.[5]  Viasat will succeed in showing the exception applies to this case.  *See supra* § I.B.

### B. Viasat Will Suffer Irreparable Harm If the Customer Suits Proceed Against Its Products in Texas

Viasat will "suffer irreparable harm if the injunction is not granted."  *Nevro*, 2019 WL 3322368, at *3.  "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm."  *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).  I.V.'s "litigation campaign directly accuses Viasat's products of patent infringement, impacting Viasat's business and relationships with its customers."  Compl. ¶ 1; *see also id.* ¶ 9.  Absent a preliminary injunction, Viasat will be irreparably harmed by I.V.'s accusations and claims against its customers.  *See Finisar*, 2012 WL 12931575, at *4.  "Where the alleged injury is not quantifiable, the harm cannot be adequately compensated and is irreparable."  *Natera*, 106 F.4th at 1378.  This factor favors an injunction against I.V. continuing to pursue claims against Viasat's customers for using Viasat's products.

---

[5]  In *Finisar*, the Court applied a different four-factor test that did not consider likelihood of success.  2012 WL 12931575, at *3-4.

### C.    The Balance of Equities Favors Granting an Injunction

The "balance of equities between the parties tips" toward Viasat. *Nevro*, 2019 WL 3322368, at *3. To consider this factor, "[t]he district court must weigh the harm to the moving party if the injunction is not granted against the harm to the non-moving party if the injunction is granted." *Id.* at *16 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Without an injunction Viasat will continue to face I.V.'s allegations against its technology, *see supra* § II.B; but with an injunction I.V. will face no harm to anything except its ability to forum-shop. I.V. must pay for litigation, but it will face no "irreparable harm" from an injunction "since it is not competing with [Viasat] and has pointed to no loss of business that could not be accounted for with money damages." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1359 (Fed. Cir. 2011). Finally, the balance of equities favors Viasat where, "[a]s a practical matter, the Texas case inherently questions the validity of [Viasat's] ongoing [in-flight-connectivity]-related business activity and, relatedly, the value of those products." *Finisar*, 2012 WL 12931575, at *5.

### D.    The Public Interest Favors a Preliminary Injunction

Finally, "an injunction is in the public interest." *Nevro*, 2019 WL 3322368, at *3. The customer-suit exception "exists to avoid, if possible, imposing the

burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *Nintendo*, 756 F.3d at 1365. "[T]he public interest will be served if Plaintiff is permitted to proceed in this Court and determine whether its customer's use of its products infringes Defendant's patents." *Finisar*, 2012 WL 12931575, at *6. And the "public interest in determining the rights of intellectual property rights holders is not impeded if Defendant is enjoined from prosecuting" claims against Viasat systems "in the Texas action[s], because those same claims will be fully adjudicated in this Court." *Id.* Finally, Viasat's request for injunctive relief is "narrowly tailored" to I.V.'s claims against Viasat's products, and favors the public interest by simplifying all three pending actions. *See Nevro*, 2019 WL 3322368, at *16; *see also Finisar*, 2012 WL 12931575, at *6.

## III.    The Court Should Not Require a Bond

The Court should not require Viasat to post a bond. "While Rule 65(c) does state that a plaintiff shall post a security bond before a district court may grant a preliminary injunction, we have acknowledged, on several occasions, that there may be instances in which a strict reading of Rule 65(c) would be inappropriate." *Temple Univ. v. White*, 941 F.2d 201, 219 (3d Cir. 1991). One of those "instances" occurs when there is no risk of harm to the enjoined party. *See, e.g.*, *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) ("[t]he district court may dispense

with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct") (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)); *Int'l Controls v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974); *Cont'l Oil v. Frontier Refinery*, 338 F.2d 780, 782-83 (10th Cir. 1964); *Urbain v. Knapp Brothers Mfg.*, 217 F.2d 810, 816 (6th Cir. 1954).

This case falls in that category, as Viasat's proposed injunction would pose no risk of harm to I.V. The only result of an injunction would be a stay of I.V.'s claims in Texas against Viasat's systems, which might happen anyway depending on the Texas courts' rulings on the airlines' motions, and would not result in a bond if it did. And that stay would not harm I.V. in any event: if Viasat's systems do not infringe any valid patent, I.V. will take nothing; if they do, I.V. will recover the proper amount of damages calculated by the Court. Either way, I.V. will be whole. Actually I.V. will be better off, as its litigation costs will decrease once it can avoid duplication of effort between this matter and across its two Texas cases. I.V. will lose only the ability to forum shop, which is not a cognizable harm.

Given these facts, it is not surprising that past injunctions of customer suits have not included a bond. *See ProBatter*, 463 F. Supp. 2d at 958; *Finisar*, 2012 WL 12931575, at *6. Nor have other injunctions staying litigation pending results

of other actions. *See, e.g.*, *Interdigital Tech. Corp. v. Pegatron Corp.*, No. 15-2584, 2015 WL 3958257, at *11 (N.D. Cal. June 29, 2015) ("the Court finds there is no likelihood of harm to Pegatron should the preliminary injunction be later found to have issued in error. Thus, the Court will not impose a bond."); *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, No. 17-1973, 2024 WL 1254127, at *14 (N.D. Ill. Mar. 25, 2024) ("no bond is required under Rule 65(c), because the antisuit injunction will prevent gratuitously duplicative parallel litigation").

## **<u>CONCLUSION</u>**

The Court should enjoin the I.V. defendants from prosecuting their claims against Viasat's in-flight connectivity systems in their current cases in the Eastern or Western District of Texas, or against any other defendant in any venue, until resolution of this manufacturer action.

OF COUNSEL:
Matthew S. Warren
Erika H. Warren
Madeline A. Woodall
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, CA, 94114
(415) 895-2940

Dated: March 28, 2025

*/s/ Karen E. Keller*
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby confirm that this brief complies with the type and number limitations set forth in the November 10, 2022 Standing Order Regarding Briefing in All Cases. I certify that this document contains 4,647 words, which were counted using the word count feature in Microsoft Word, in 14-point Times font. The word count does not include the cover page, tables, or the counsel blocks.

<u>*/s/ Karen E. Keller*</u>
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiff*

– 21 –