# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# MIDLAND/ODESSA DIVISION

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC and<br>INTELLECTUAL VENTURES II LLC,<br><br>*Plaintiffs,*<br><br>v.<br><br>SOUTHWEST AIRLINES CO.,<br><br>*Defendant.* | Civil Action No. 7:24-cv-00277-ADA<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO SEVER AND STAY CLAIMS AGAINST IN-FLIGHT CONNECTIVITY SYSTEMS BASED ON THE <u>CUSTOMER-SUIT EXCEPTION</u>**

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ....................................................................................... 1

II. BACKGROUND ............................................................................................................... 2

III. ARGUMENT ..................................................................................................................... 4

    A. The Customer Suit Exception Does Not Apply. ..................................................... 4

    B. The Traditional Stay Factors Do Not Warrant A Stay ............................................ 8

    C. The Court Should Order Limited Discovery ........................................................ 10

IV. CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Corydoras Techs., LLC v. Best Buy Co.*,
  No. 2:19-cv-00304-JRG-RSP, 2020 WL 1275782 (E.D. Tex. Mar. 17, 2020) ........................9

*Dali Wireless, Inc. v. Ericcson, Inc.*,
  6:22-CV-01313-ADA, 2023 WL 1423990 (W.D. Tex. Jan. 30, 2023) ................................6, 7

*Delta Elecs., Inc. v. Vicor Corp.*,
  724 F. Supp. 3d 645 (W.D. Tex. 2024) ....................................................................................10

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
  No. 2:15-CV-1202-WCB, 2016 WL 1659924 (E.D. Tex. Apr. 26, 2016) ................................7

*Fleet Connect Sols., LLC v. Precision Drilling Corp.*,
  No. 6:21-CV-00987-ADA, 2022 WL 2373711 (W.D. Tex. June 30, 2022) .................4, 6, 8, 9

*Liberty Access Techs. Licensing LLC v. Wyndham Hotels and Resorts, Inc.*,
  No. 2:24-CV-00125-JRG, 2024 WL 4729750 (E.D. Tex. Nov. 8, 2024) ....................7, 8, 9, 10

*New Berry Inc. v. Smith*,
  No. 2:19-CV-159 JD, 2021 WL 411154 (N.D. Ind. Feb. 5, 2021) ..........................................10

*Rembrandt Wireless Techs., LP v. Apple Inc.*,
  No. 2:19-CV-00025-JRG, 2019 WL 6344471 (E.D. Tex. Nov. 27, 2019) ................................7

*SITO Mobile R&D IP, LLC v. SFA Holdings, Inc.*,
  2024 WL 3843804 (W.D. Tex. Apr. 19, 2024) .........................................................................8

*STC.UNM v. TP-Link Techs. Co.*,
  No. W-19-CV-00262-ADA, 2020 WL 10758856 (W.D. Tex. Jan. 2, 2020) ..........................10

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*,
  458 F.3d 1335 (Fed. Cir. 2006) .................................................................................................8

*Topia Tech., Inc. v. Dropbox, Inc.*,
  6:21-CV-01373-ADA, 2022 WL 18109619 (W.D. Tex. Dec. 29, 2022) ..................................8

*Wapp Tech. Ltd. Partnership v. Bank of America Corp.*,
  No. 4:18-CV-00519, 2019 WL 3890171 (E.D. Tex. Aug. 19, 2019) ........................................7

I.   **PRELIMINARY STATEMENT**[1]

Faced with Plaintiffs' ("IV") allegations regarding Defendant's ("Southwest") infringement of several IV patents, Southwest seeks to sever and stay IV's claims for two of six patents relating to Southwest's incorporation and provision of in-flight Wi-Fi connectivity to its customers in deference to Delaware declaratory judgment actions filed well after this suit. These cases were filed by the manufacturers of certain components used in those in-flight connectivity systems. Southwest's motion, however, confirms that there is no valid basis or efficiency to sever two of the six patents and allow the case to proceed in Delaware.

*First*, while Southwest invokes the "customer suit exception" to the first-filed rule, it cannot meet the requirements of that exception because the systems at issue involve more than Southwest's mere resale or use of another manufacturer's product and the manufacturers are not the only source of infringement. Southwest uses at least two suppliers for the Accused Functionality (and potentially other suppliers as well), both of which have filed DJ actions in Delaware, and possibly uses (or has used) other companies and technologies. Southwest incorporates those manufacturers' products into Southwest's airplanes to provide specific services to Southwest's customers through Southwest's internet portal, which involves infringement extending beyond the subject manufacturers.[2] Accordingly, Southwest is not a mere "reseller," and the manufacturers are not the sole infringers. Moreover, the purported manufacturers' DJ complaints do not contend that they are responsible for the design and development of the specific technology accused in this matter, which instead indicate it is provided by third parties.

---

[1] Submitted herewith is the February 19, 2025 declaration of Jonathan K. Waldrop, with exhibits ("Ex. __").

[2] A complete determination of all the components that provide for Southwest's infringement of IV's patents during the damage time period is currently unknown and requires discovery. IV has requested limited discovery related to Southwest's motion and the declaration that Southwest submitted in support from its technical employee. Southwest has refused IV's request.

1

*Second*, a stay would not simplify the litigation and is inconvenient. Staying and severing would force IV to litigate its infringement claims against Southwest in separate courts in two different states (IV has not sued Viasat or Anuvu for infringement, as it is not merely the components they provide that is accused, but rather Southwest's incorporation and provision of those components in its airplanes to provide services to its customers). Staying and severing certain of IV's claims would deprive IV of its chosen forum and interfere with the expeditious enforcement of its patents against Southwest. Further, Southwest's motion points to no connection to the state of Delaware. Indeed, Southwest has made it known that it plans to move to transfer the case to the Northern District of Texas, which Southwest contends is more convenient.

*Third*, a stay is not convenient with regards to the parties. Southwest's motion points to no connection to the state of Delaware. Indeed, Southwest has indicated that it plans to move to transfer the case to the Northern District of Texas, which Southwest contends is more convenient.

## II. BACKGROUND

On November 11, 2024, IV filed this action, alleging that Southwest infringes six patents for which IV owns all rights, title and interest, including United States Patent Nos. 8,027,326 (the "'326 Patent"), entitled "Method and System for High Data Rate Multi-Channel WLAN Architecture," and 7,324,469 (the "'469 Patent"), entitled "Satellite Distributed High Speed Internet Access."[3] On January 27, 2025, Southwest filed a motion to dismiss, arguing the '844 Patent and '582 Patent claim ineligible subject matter, and that IV's direct and indirect infringement claims are implausible. Dkt. 11.[4] On February 3, 2025, the parties filed a status report in advance of the initial Case Management Conference. Dkt. 15. On February 10, 2025, IV served

---

[3] The other patents involved in this action are United States Patent Nos. 8,332,844 (the "'844 Patent"); 8,407,722 (the "'722 Patent"); 7,949,785 (the "'785 Patent"); and 7,257,582 (the "'582 Patent"). Southwest does not seek to sever or stay this action for those patents.

[4] IV has until March 12, 2025, to respond to Southwest's motion to dismiss. Dkt. 16.

its Preliminary Infringement Contentions. Ex. A. On February 12, 2025, Southwest filed the instant motion to sever and stay IV's claims relating only to the '326 and '469 Patents, based on the pendency of competing declaratory judgment actions in Delaware.

Meanwhile, on January 14, 2025, Viasat, Inc. ("Viasat") brought suit against IV in the United States District Court for the District of Delaware, seeking a declaratory judgment that its products do not infringe the '326 Patent and the '469 Patent and that IV's infringement claims regarding the '326 Patent are exhausted. Ex. B. Viasat alleges that IV's claims here "directly accuse[] Viasat's in-flight connectivity systems of patent infringement, impacting Viasat's business and relationships with its customer." *Id*. at ¶ 9. Viasat also alleges that certain of its products do not infringe the '326 Patent and the '469 Patent and further alleges that IV's infringement allegations relating to the '326 Patent are barred by patent exhaustion. *Id*. at ¶¶ 45, 46, 64. Viasat does not contend it is the exclusive provider of Wi-Fi services to Southwest (nor could it, as there are other providers including at least Anuvu). Additionally, Viasat alleges that its in-flight connectivity systems "exclusively uses Wi-Fi base stations." *Id*. at 48.

On January 30, 2025, Anuvu filed a complaint in the Delaware District Court also seeking declaratory judgment of noninfringement for the '326 Patent and the '469 Patent and exhaustion for the '326 Patent. Ex. C. Anuvu alleges that IV's claims here "directly accuse[] Anuvu's products of patent infringement, impacting Anuvu's business and relationships with its customers" and that IV's infringement allegations are barred because Anuvu's products allegedly do not infringe the '326 Patent and '469 Patent and IV's claims relating to the '326 Patent claim are barred by patent exhaustion. *Id*. at ¶¶ 1, 9, 69-81. Anuvu alleges further that the component it provides to Southwest to allow it to operate its in-flight Wi-Fi connectivity are "wireless point cards." *Id*. at ¶ 48. Like Viasat, Anuvu does not allege that it is the sole supplier of Wi-Fi services to Southwest.

3

### III.     ARGUMENT

#### A.     The Customer Suit Exception Does Not Apply.

The customer suit exception to the first to file rule is inapplicable here. As this Court has noted, this exception is applied to "avoid wasteful expenditure of resources" and in a manner that "substantial savings of litigation resources can be expected." *Fleet Connect Sols., LLC v. Precision Drilling Corp.*, No. 6:21-CV-00987-ADA, 2022 WL 2373711, at *2 (W.D. Tex. June 30, 2022) ("*Fleet*"). Indeed, Southwest concedes that the "guiding principles in the customer suit exception cases are efficiency and judicial economy," Mot. at 8, principles which are not achieved here. In deciding whether to apply the customer suit exception, the Court analyzes: "(1) whether the customer-defendant in the earlier-filed case is merely a reseller; (2) whether the customer-defendant agrees to be bound by any decision in the later-filed case that is in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product." *Id*. Southwest cannot meet this test because it is not "merely a reseller" and because the relevant manufacturers are *not* the only sources of infringement for the '326 Patent and '469 Patent. Moreover, with regards to convenience, Southwest, ViaSat, and Anuvu are silent with regards to who has possession, custody, and control of relevant documents and witnesses related to how the Accused Functionality operates. To the contrary, ViaSat and Anuvu alleges third parties provide at least some of the accused functionality. Ex. B at 48; Ex. C at 48.

*First*, Southwest is not a reseller or user of Viasat and Anuvu systems because Southwest does not merely purchase and utilize those products in their "off the shelf" condition. *Fleet* at *3. Rather, Southwest incorporates those products into its aircraft for "in flight" passenger use. *See, e.g.*, Dkt. 1-11 at 2 ("The Accused Systems and Services *include without limitation Southwest systems and services* that provide Wi-Fi access points …") (emphasis added); *id*. at 7-8

4

("Southwest provides in flight Wi-Fi connectivity through provider equipment provided by Viasat and Anuvu"); *id.* at 9 (Viasat's products are used to provide Southwest's "inside the cabin" connectivity services); Dkt. 1-12 at 2 ("The Accused Systems and Services include without limitation Southwest systems and services that provide onboard Wi-Fi in its airplanes").

For example, IV alleges infringement specifically of claim 24 of the '469 Patent, which recites elements that Anuvu and Viasat's complaints do not address. Claim 24 recites in part "<u>*a web-ready device*</u> operatively coupled to the at least one router … having a browser application operating thereon" and "wherein <u>*the user may authenticate the subscription account*</u> and access the Internet." Dkt. 1-5 at 8:33-35 (emphasis added). Anuvu and Viasat do not allege that they provide all elements recited in this claim. For example, the "web ready device operatively coupled to the at least one router [having] a browser application …." *See generally* Exs. B and C. Southwest's declarant does not address this claim element or identify the hardware and software that Southwest contends is related to the asserted claims. *See* Dkt. 17-1 at ¶¶ 2-5. As another example, Viasat and Anuvu are silent on the authentication step of this claim, which relates to Southwest's web portal technology. *See* Dkt. 1-12 at 16, 24 ("Southwest passengers authenticate themselves on the SouthwestWifi.com web portal to access in-flight WiFi using on-board server(s)."). Certainly, a customer portal designed specifically for Southwest is not an "off the shelf" product, even if Viasat and Anuvu are involved somehow in its design. Thus, IV's complaint involves allegations of how *Southwest* enables its passengers to access in-flight Wi-Fi through steps and components that go beyond Viasat and Anuvu's "in-flight Wi-Fi systems."

Even assuming *arguendo* Viasat's and Anuvu's products alone directly infringe the '469 Patent, that does not mean Southwest's conduct and services do not directly and indirectly infringe that patent, for example in the context of web-ready devices that are not provided by

5

Viasat and Anuvu. While staying and severing in favor of the Delaware declaratory judgment actions may perhaps resolve certain issues, the *major* ones, *e.g.*, Southwest's direct and indirect infringement, will not be resolved by doing so. *See Fleet* at *2 ("to warrant a stay of the customer suit," manufacturer case must have the potential to resolve the 'major issues' concerning the claims against the customer"). Severing and staying will not "avoid wasteful expenditure of resources," the *sine qua non* of the customer suit exception. *See id.* at *2-3 (denying motion to stay under customer suit exception where plaintiff advanced claims that would not be resolved in manufacturer's declaratory judgment action).[5] Because the DJ complaints do not seek declarations related to invalidity, the Court will have to address these issues serially and inefficiently.

Indeed, in *Fleet*, this Court rejected the customer suit exception because plaintiff contended defendant "infringes the system claims by combining [the manufacturer's] products with 'components, including smartphones, vehicles, and data' provided by Defendant and its personnel." *Id*. Thus, the accused systems were "incomplete without components supplied by Defendant … This suggests that Defendant is more than a mere user." *Id*. So too here. While the accused products/services may include Viasat's and Anuvu's technology, they are incomplete without incorporation by Southwest of those components in its airplanes, along with other hardware/software necessary for the system to allow passengers to utilize in-flight Wi-Fi. Southwest is thus not a mere user or reseller of Viasat and/or Anuvu products. *See Dali Wireless, Inc. v. Ericcson, Inc.,* 6:22-CV-01313-ADA, 2023 WL 1423990, at *3 (W.D. Tex. Jan. 30, 2023) (customer was not mere reseller where customer "incorporates [manufacturer's] product into

---

[5] Because an infringement determination in the Delaware actions will not necessarily resolve the direct infringement claims against Southwest, Southwest's representation that it "agrees to be bound" (Mot. at 3, 10) by the Delaware determinations is meaningless.

6

[customer's] own systems");[6] *Liberty Access Techs. Licensing LLC v. Wyndham Hotels and Resorts, Inc.*, No. 2:24-CV-00125-JRG, 2024 WL 4729750, at *2 (E.D. Tex. Nov. 8, 2024) (rejecting customer suit exception where "Plaintiff's infringement theory relies on a combination of [manufacturer's] and [defendant's] functionalities"); *Rembrandt Wireless Techs., LP v. Apple Inc.*, No. 2:19-CV-00025-JRG, 2019 WL 6344471, at *3-4 (E.D. Tex. Nov. 27, 2019) (denying motion to stay under customer suit exception where Apple incorporated chipsets of manufacturers in accused Apple products); *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2016 WL 1659924, at *3 (E.D. Tex. Apr. 26, 2016) (customer use exception inapplicable where customer did not infringe by using manufacturer's product "off the shelf").

Southwest relies on the declaration of Christopher Muhich, its "Managing Director of Aircraft Engineering," for the proposition that the in-flight WiFi systems used on Southwest aircraft are "designed, supplied and managed by" Viasat and Anuvu and that Southwest does not maintain relevant source code or technical documentation for those systems. Dkt. 17-1. However, IV has had no opportunity to depose Mr. Muhich or investigate his contentions, including whether there are additional suppliers of necessary components. Moreover, Mr. Muhich does not identify what hardware and software is involved and stops well short of confirming that ViaSat has possession, custody, and control of the discovery and witnesses that are relevant to this patent suit. Indeed, both ViaSat and Anuvu DJ complaints have identified components supplied by third parties as relevant to the accused technology. Ex. B at 48; Ex. C at 48. At a minimum, IV should be allowed to investigate Southwest's contentions before the Court rules on Southwest's motion. *See, e.g.*, *Wapp Tech. Ltd. Partnership v. Bank of America Corp.*, No. 4:18-CV-00519, 2019 WL

---

[6] Although the court granted a stay in *Dali*, it did so because "[plaintiff] does not allege that any of the claim limitations are met by an act or component from [customer]." *Id*. Here, in contrast, specific claim limitations, including authentication, are met by Southwest. *Dali*, unlike this case, also involved only one manufacturer of infringing products. *Id*. at *4.

7

3890171, at *3 (E.D. Tex. Aug. 19, 2019) (denying as premature motion to stay to allow discovery on applicability of customer use exception).[7]

Further, neither Viasat nor Anuvu is the "only source of the infringing product." On its face, Southwest's motion makes clear that the infringing products come from at least *both* Viasat and Anuvu. *See* Dkt. 1-12 at 4 n. 2 ("Based on publicly available information, Plaintiffs have identified Viasat and Anuvu as Wi-Fi and/or In-Flight Connectivity providers for Southwest. To the extent Southwest has used other IFC providers … Plaintiffs reserve the right to investigate such use"). Accordingly, Southwest also cannot satisfy the third customer suit exception prong. *See Fleet, supra*; *see also Liberty Access,* 2024 WL 4729750, at *3 (finding customer suit exception did not apply where the purported customer "relies on a combination of functionality provided by [purported manufacturer] and [it]'s own platforms, systems, and mobile application," and explaining that software interface that is provided by the customer weighs against a stay); *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006) (declining to apply customer suit exception where there are other sources of the accused software functionality, explaining that the alleged manufacturer "is not the only source of the software used in the phones alleged to infringe.")[8]

### B. The Traditional Stay Factors Do Not Warrant A Stay

A stay is also not warranted under the traditional stay factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a

---

[7] Indeed, staying this action absent discovery would expose IV to numerous, duplicative declaratory judgment actions as additional providers are identified.

[8] This fact distinguishes this case from Southwest's cases. *See, e.g., Topia Tech., Inc. v. Dropbox, Inc.*, 6:21-CV-01373-ADA, 2022 WL 18109619, at *4 (W.D. Tex. Dec. 29, 2022) ("infringement allegations are directed only against Dropbox's software"); *SITO Mobile R&D IP, LLC v. SFA Holdings, Inc.*, 2024 WL 3843804, at *3 (W.D. Tex. Apr. 19, 2024) (exception applied where only one manufacturer supplied accused technology and stay would simplify case because parallel action involved "the same six patents asserted in this case").

stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set." *Fleet, supra*, at *2.

Staying this action would prejudice IV because a stay would delay enforcement of its patents and risk spoliation of infringement evidence.[9] Indeed, because the customer suit stay factors are not met, the traditional stay factors are also not met. *See Fleet*, *supra*, at *4 ("in failing to show that it is a mere reseller, [defendant] has not shown that the issues of direct infringement are clearly common between these cases or that [ViaSat] has possession, custody, and control of the discovery and witnesses needed to address the issues of infringement. [I]t is unlikely that a stay will simplify the issues in this Action. This is typically the most important factor in the stay analysis … All a stay would accomplish is delay [plaintiff] from seeking vindication of its hard-won patent rights …."); *see also Liberty Access*, 2024 WL 4729750, at *3 (where customer suit exception did not apply, "a stay would unduly delay Plaintiff's right to seek timely enforcement of its intellectual property rights before a court of law [and] would not mitigate Plaintiff's concerns about spoliation of evidence, which is a reasonable risk with any delay.")

Litigating these issues in Delaware would also prejudice IV because "(1) [IV] would not be able to address issues related to [Southwest] along with all of the related issues and (2) any favorable relief for [IV] could be substantially delayed if this case were stayed." *See Corydoras Techs., LLC v. Best Buy Co.*, No. 2:19-cv-00304-JRG-RSP, 2020 WL 1275782, at *5 (E.D. Tex. Mar. 17, 2020) (concluding that the prejudice factor "weighed against a stay because of the increased expense and delay.") Additionally, because these actions involve the same technology, IV would have to transport documentary evidence of Southwest's use of the infringing technology,

---

[9] Southwest's contention that IV will not be prejudiced because it can obtain its monetary damages in the Delaware actions (Mot. at 4) is misguided. IV *has no claim* pending in either of those actions, which in any event seek only declaratory relief.

9

which Southwest has represented to be in Texas, not Delaware. Moreover, a stay in this litigation pending the Delaware actions will not resolve issues here. *See supra,* Section III.A. Thus, a stay is not warranted under the second traditional factor. *See Liberty Access*, 2024 WL 4729750, at *3 (stay unwarranted where declaratory judgment action would leave certain major issues unresolved).

### C. The Court Should Order Limited Discovery

If the Court needs more factual development regarding Southwest's Motion, IV respectfully requests that this Court grant IV leave to conduct limited discovery to supplement the record. IV requires further information from Southwest regarding its motion and statements made by Southwest's declarant. This Court has granted limited discovery in similar situations, including testing the veracity of declarations submitted with motions. *See, e.g., Delta Elecs., Inc. v. Vicor Corp.*, 724 F. Supp. 3d 645, 658 (W.D. Tex. 2024) (allowing limited venue discovery to help "the Court to rule on [defendant's motion to dismiss]"); *STC.UNM v. TP-Link Techs. Co.*, No. W-19-CV-00262-ADA, 2020 WL 10758856, at *1 (W.D. Tex. Jan. 2, 2020) (granting leave for "limited discovery in order to determine the relationship between [defendant] and its domestic subsidiary"); *New Berry Inc. v. Smith*, No. 2:19-CV-159 JD, 2021 WL 411154, at *4 (N.D. Ind. Feb. 5, 2021) (granting leave to conduct limited discovery to assess personal jurisdiction and venue and noting that a court "risks abusing its discretion if it does not allow at least some limited discovery").

### IV. CONCLUSION

For the foregoing reasons, Southwest's motion to stay should be denied in its entirety.

Dated: February 19, 2025                        RESPECTFULLY SUBMITTED,

By: */s/ Jonathan K. Waldrop*
    Jonathan K. Waldrop (CA Bar No. 297903)
    (Admitted in this District)
    jwaldrop@kasowitz.com
    Darcy L. Jones (CA Bar No. 309474)
    (Admitted in this District)
    djones@kasowitz.com
    Marcus A. Barber (CA Bar No. 307361)
    (Admitted in this District)
    mbarber@kasowitz.com
    John W. Downing (CA Bar No. 252850)
    (Admitted in this District)
    jdowning@kasowitz.com
    Heather S. Kim (CA Bar No. 277686)
    (Admitted in this District)
    hkim@kasowitz.com
    ThucMinh Nguyen (CA Bar No. 304382)
    (Admitted in this District)
    tnguyen@kasowitz.com
    **KASOWITZ BENSON TORRES LLP**
    333 Twin Dolphin Drive, Suite 200
    Redwood Shores, California 94065
    Telephone: (650) 453-5170
    Facsimile: (650) 453-5171

    Mark D. Siegmund (TX Bar No. 24117055)
    msiegmund@cjsjlaw.com
    Cherry Johnson Siegmund James PLLC
    7901 Fish Pond Rd., 2nd Floor
    Waco, Texas 76710
    Telephone: 254-732-2242
    Facsimile: 866-627-3509

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served on all parties who have appeared in this case on February 19, 2025, via the Court's CM/ECF system.

                                                */s/ Jonathan K. Waldrop*
                                                Jonathan K. Waldrop (CA Bar No. 297903)