## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VIASAT, INC., | |
| *Plaintiff*, | C.A. No. 25-cv-56-CFC |
| v. | |
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | |
| *Defendants*. | |

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Dated:  April 14, 2025

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Attorneys for Defendants
*Intellectual Ventures I LLC and*
*Intellectual Ventures II LLC*

Of Counsel:

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
John Downing
Heather S. Kim
ThucMinh Nguyen

KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Dr., Suite 200
Redwood Shores, CA 94065
Tel: (650) 453-5170
Fax: (650) 362-9302
JWaldrop@kasowitz.com
DJones@kasowitz.com
MBarber@kasowitz.com
JDowning@kasowitz.com
HKim@kasowitz.com
TNguyen@kasowitz.com

Paul G. Williams
KASOWITZ BENSON TORRES LLP
1230 Peachtree Street, N.E., Suite 2445
Atlanta, Georgia 30309
Tel: (404) 260-6080
Fax: (404) 260-6081
PWilliams@kasowitz.com

## **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ........................................................1

II.   FACTS ...............................................................................3

    A.    The Southwest Litigation ...................................................3

    B.    The American Litigation ....................................................4

    C.    Viasat's Declaratory Judgment Action ..............................5

III.  LEGAL STANDARD ...............................................................6

IV.   ARGUMENT ........................................................................8

    A.    The Customer Suit Exception Does Not Apply ...................8

    B.    Viasat Has Not Met Its Burden To Obtain A Preliminary
        Injunction.........................................................................12

        1.    Viasat Has Not Shown That It Is Likely To Prevail On
              The Merits Of Its Declaratory Judgment Claim. ......................12

        2.    Viasat Has Not Shown It Will Suffer Irreparable Harm..........13

        3.    Granting Injunctive Relief Will Cause IV Significant Harm ...16

        4.    The Public Interest Weighs Against An Injunction.................18

        5.    Viasat Should Be Compelled To Post A Bond.........................19

V.    CONCLUSION .....................................................................19

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Micro Devices, Inc. v. S3 Graphics Co., Ltd.*,
No. 11–965–LPS, 2011 WL 5402667 (D. Del. Nov. 8, 2011) ..........................14

*Air Prods. and Chems., Inc. v. MG Nitrogen Servs., Inc.*,
133 F. Supp. 2d 354 (D. Del. 2001) ................................................................8, 11

*Butamax Advanced Biofuels LLC v. Gevo, Inc.*,
868 F. Supp. 2d 359 (D. Del. 2012) ................................................................6, 7

*Fleet Connect Sols., LLC v. Precision Drilling Corp.*,
No. 6:21-CV-00987-ADA, 2022 WL 2373711 (W.D. Tex. June 30,
2022) ................................................................................................................9, 10

*Golden Fortune Imp. & Exp. Corp. v. Mei-Xin Ltd.*,
No. 22-1710, 2022 WL 3536494 (3d Cir. Aug. 5, 2022) ....................................14

*GOLO LLC v. Goli Nutrition Inc.*,
No. 20-667-RGA, 2020 WL 5203601 (D. Del. Sept. 1, 2020) ..........................16

*In re Google Inc.*,
588 F. App'x 988 (Fed. Cir. 2014) ..............................................................10, 11

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
397 F. Supp. 2d 537 (D. Del. 2005) ....................................................................17

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
882 F.2d 797 (3d Cir. 1989) ...............................................................................14

*Insulet Corp. v. EOFlow Co., Ltd.*,
104 F.4th 873 (Fed. Cir. 2024) ...........................................................................13

*Intellectual Ventures I LLC and Intellectual Ventures II LLC v.
American Airlines Inc.*,
No. 4:24-cv-00980-ALM ......................................................................................4

*Intellectual Ventures I LLC and Intellectual Ventures II LLC v. Southwest Airlines Co.*,
No. 7:24-cv-00277-ADA ...................................................................3

*Kahn v. General Motors Corp.*,
889 F.2d 1078 (Fed. Cir. 1989) ...........................................................8

*Katz v. Lear Siegler, Inc.*,
909 F.2d 1459 (Fed. Cir. 1990) .....................................................7, 11

*Manganaro v. Interoptec Corp.*,
874 F. Supp. 660 (E.D. Pa. 1995)......................................................14

*Metropolitan Life Ins. Co. v. Scott*,
587 F.Supp. 451 (W.D. Pa. 1984).......................................................7

*Motion Offense, LLC v. Sprouts Farmers Mkt., Inc.*,
No. 6:19-CV-00417-ADA, 2020 WL 4561594
(W.D. Tex. Jan. 26, 2020)................................................................12

*P.C. Yonkers, Inc. v. Celebrations, the Party and Seasonal Superstore, LLC*, 428 F.3d 504 (3d Cir. 2005) ...............................................7

*Takeda Pharms. U.S.A., Inc. v. Mylan Pharms., Inc.*,
967 F.3d 1339 (Fed. Cir. 2020) .........................................................15

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*,
458 F.3d 1335 (Fed. Cir. 2006) ...........................................................6

*Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*,
676 F. Supp. 2d 321 (D. Del 2009)....................................................11

*United Therapeutics Corp. v. Liquidia Techs., Inc.*,
No. 23-975-RGA, 2024 U.S. Dist. LEXIS 97445
(D. Del. May 31, 2024)....................................................................15

## Statutes

35 U.S.C. § 284..............................................................................16

Defendants Intellectual Ventures I LLC, and Intellectual Ventures II LLC ("IV") respectfully submit this Opposition to Plaintiff Viasat, Inc.'s ("Viasat") Motion for a Preliminary Injunction ("Motion").[1]

## I.     PRELIMINARY STATEMENT

This litigation is a coordinated attempt by Viasat and its customers to prevent IV from protecting its patent rights in the forum of its choice. While Viasat claims to be seeking to avoid litigation redundancy, its Motion is an exercise in exactly that, in that it pursues the same arguments it already presented to this Court in response to IV's motion to dismiss.

In November 2024, IV filed two lawsuits in Texas Federal Courts against companies (Southwest Airlines and American Airlines) that are infringing six of IV's patents (the "Texas Cases"). Two months later, Viasat filed this lawsuit, seeking a declaratory judgment for two of the six patents – arguing that *Viasat* has not infringed two patents involved in the Texas Cases. Viasat attempts to frame its Motion (and indeed this case) as if IV sued the airlines in Texas only on Viasat's systems, but that is far from the truth. In reality, Viasat's products are a small part of the Texas Cases as its in-flight connectivity systems are implicated in only two of the six patents-in-suit in the Texas Cases and Viasat is only one of multiple suppliers

---

1 Submitted herewith is the April 14, 2025 Declaration of Jonathan K. Waldrop ("Waldrop Decl."), with exhibits thereto ("Ex. _").

that provide products involved in infringement. Viasat's Motion – and this case – will only cause judicial inefficiencies because all of the same patents and infringement issues still will need to be addressed in the Texas Cases even if this Motion is granted.

IV moved to dismiss, transfer or stay this action in light of the first-filed Texas actions. (D.I. 14.) Viasat opposed, arguing that the "customer suit" exception to the first-filed rule applies to override IV's choice of forum.

Viasat essentially regurgitates that argument in its Motion, and asks the Court to go a substantial step further: it seeks a preliminary injunction barring IV, the holder of all right, title and interest in the infringed patents, not only from prosecuting the Texas Cases with regard to the '326 and '469 Patents,[2] but also from bringing any further actions to enforce IV's patent rights. In essence, Viasat insists that IV be deprived of its patent rights and that IV's rights to protect its interests be put on ice, pending a determination of infringement in this Court. Viasat's Motion should be denied. Viasat falsely asserts that "I.V. will suffer no prejudice." (Motion at 2.)

First, as IV showed, and as shown below, the "customer suit" exception on which Viasat's Motion primarily relies, does not apply. As further shown below,

---

[2] U.S. Patent No. 8,027,326 ("'326 Patent") and U.S. Patent No. 7,324,469 ("'469 Patent").

Viasat does not – because it cannot – demonstrate that it meets the requirements for the imposition of a preliminary injunction against IV. Further, despite claiming it is pursuing this action on behalf of its customers, Viasat has not asserted that it has any obligation to defend or indemnify either Southwest or American Airlines.

## II.    FACTS

### A.    The Southwest Litigation

On November 11, 2024, IV filed a patent infringement case in the Western District of Texas against Southwest Airlines ("Southwest"), *Intellectual Ventures I LLC and Intellectual Ventures II LLC v. Southwest Airlines Co.*, No. 7:24-cv-00277-ADA ("the Southwest Litigation") (Ex. 1.) In that case, IV alleges that Southwest infringes six patents: United States Patent Nos. 8,332,844 (the "'844 Patent"); 8,407,722 (the "'722 Patent"); 8,027,326 (the "'326 Patent"); 7,324,469 (the "'469 Patent"); 7,257,582 (the "'582 Patent"); and 7,949,785 (the "'785 Patent"). *See generally*, Ex. 1.

On January 27, 2025, Southwest filed a motion to dismiss the Southwest Litigation, arguing that the '844 Patent and '582 Patent claim ineligible subject matter, and that IV failed to state claims of direct and indirect infringement. (Ex. 2.) On February 12, 2025, Southwest filed a motion to stay and sever two of the six patents-in-suit, the '326 and '469 Patents based on the pendency of this later filed declaratory judgment action from Viasat. (Ex. 3.) On March 28, 2025, IV amended

its infringement contentions against Southwest to explicitly state that it is not accusing any products licensed under certain agreements IV has with other parties, which should negate Viasat's claims under Count II of its Complaint. (D.I. 1 at ¶¶ 69-73.)

**B.    The American Litigation**

On November 2, 2024, IV filed a patent infringement case against American Airlines ("American") in the Eastern District of Texas. *Intellectual Ventures I LLC and Intellectual Ventures II LLC v. American Airlines Inc.,* No. 4:24-cv-00980-ALM (the "AA Litigation") (Ex. 4). IV alleges in the AA Litigation that American infringes the same six patents. On January 27, 2025, American filed a motion to dismiss, asserting that IV failed to state a claim of infringement for the '844, '722, '785 and '582 Patents. (Ex. 5.) On January 31, 2025, IV filed a notice of readiness for a scheduling conference. (Ex. 6.) On February 3, 2025, the Court in the AA Litigation issued an order governing proceedings, *inter alia*, setting a discovery schedule. (Ex. 7.) On February 14, 2025, American also filed a motion to stay and sever the '326 and '469 Patents based on the pendency of this later filed declaratory judgment action. (Ex. 8.) On March 28, 2025, IV similarly amended its infringement contentions against American to explicitly state that it is not accusing any products licensed under certain agreements IV has with other parties, which should negate Viasat's claims under Count II of its Complaint. (D.I. 1 at ¶¶ 69-73.)

### C.    Viasat's Declaratory Judgment Action

On January 14, 2025, Viasat filed this case, seeking a declaratory judgment of non-infringement[3] with regards to the '326 and '469 Patents. (*See* D.I. 1.) Viasat claims that the Texas Litigations "directly accuse[] Viasat's in-flight connectivity systems of patent infringement, impacting Viasat's business and relationships with its customers" and that IV's allegations are barred by patent exhaustion. (*Id*. at ¶ 9.) In its Motion, Viasat complains that "I.V. chose not to sue Viasat, the maker of those systems" (Motion at 6), but neither Viasat's Complaint nor the Motion address any of the other four patents involved in the Texas Cases or the fact that there are in-flight connectivity systems other than those manufactured by Viasat accused of infringing the '326 and '469 Patents. Viasat claims it rose in defense of its customers by filing this action (Motion at 6), but it did not intervene in the Texas Cases to defend them there; indeed, it does not assert it has a duty either to defend or indemnify. Further, Viasat does not even allege that its actions will resolve IV's infringement claims under the six patents-in-suit in the Texas Cases – merely that it could potentially resolve some issues related to the subset of in-flight connectivity systems that Viasat (as opposed to Anuvu or other manufacturers) purportedly manufactures[4] at issue in two of the six patents-in-suit. (Motion at 6.) Viasat's

---

[3] Viasat's complaint does not contain any counts related to validity of the patents.

[4] As noted in IV's Reply Brief in Support of Their Motion to Dismiss, Transfer or Stay, Viasat may not be the actual manufacturer as it admits in its complaint that

Complaint does not seek injunctive relief, and it waited until after briefing on IV's motion to dismiss was complete – almost two months after filing its Complaint and more than four months after IV filed its Texas Cases – before filing the instant Motion; clearly Viasat did not consider the instant Motion to be urgent.

## III.    LEGAL STANDARD

The decision to grant or deny injunctive relief "'is an act of equitable discretion by the district court.'" *Butamax Advanced Biofuels LLC v. Gevo, Inc.*, 868 F. Supp. 2d 359, 365 (D. Del. 2012) (citations omitted). The grant of a preliminary injunction is considered an "extraordinary remedy" that should be granted only in "limited circumstances." *Id., citing Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

The "guiding principles in [applying] the customer suit exception" are "efficiency and judicial economy." *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006). The exception applies where: (i) the infringing customers are "mere resellers" of infringing products; (ii) the customer agrees to be bound by the outcome of the manufacturer's action; and (iii) the manufacturer is the only source of the infringing product. *Id*. As Viasat acknowledges, the "primary question is whether the issues and parties are such that

---

"[i]n building in-flight connectivity systems, Viasat exclusively uses Wi-Fi base stations, which Intellectual Ventures I accuses of infringement, *originally sold by Aruba Networks, LLC*." (D.I. 21 at 2 (quoting D.I. 1 at ¶ 48.)

the disposition of one case would be dispositive of the other." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 at 1463 (Fed. Cir. 1990).

The party seeking injunctive relief under traditional factors must establish: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Id*. (citation omitted). The burden lies with the moving party to establish every element in its favor or the grant of a preliminary injunction is inappropriate. *Butamax, supra*, citing *See P.C. Yonkers, Inc. v. Celebrations, the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005). Moreover, "[i]f either or both of the fundamental requirements—likelihood of success on the merits and probability of irreparable harm if relief is not granted—are absent, an injunction cannot issue." *Id., citing McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 523 (3d Cir. 1994).

Moreover, "a federal court should not undertake lightly to enjoin proceedings in another federal court." *Metropolitan Life Ins. Co. v. Scott*, 587 F.Supp. 451, 452 (W.D. Pa. 1984). Viasat cannot satisfy the requirements for issuing a preliminary injunction.

## IV.    ARGUMENT

### A.    The Customer Suit Exception Does Not Apply

Viasat's injunction motion is based primarily on its insistence that the customer suit exception to the first-filed rule applies and that, therefore, this case should proceed while the parallel Texas infringement cases (and any other infringement case IV might bring regarding the '326 and '469 Patents) should be enjoined. In this respect, Viasat's Motion is more akin to an improper, unrequested sur-reply brief on IV's motion to dismiss. As set forth at length in IV's reply brief on that motion, the customer suit exception simply does not apply here. (*See* D.I. 21 at 1-6.)

In essence, Viasat's arguments center around: (i) whether Southwest and American, the defendants in the first-filed actions (American in the Eastern District of Texas and Southwest in the Western District of Texas), are mere "resellers" of the technology; and (ii) whether proceeding in parallel with the Texas Cases promotes efficiency. The focus is on the technology asserted in the first-filed patent litigation to determine which competing litigation promotes efficiency and convenience – not simply whether a manufacturer seeks declaratory relief in its preferred venue. *See Kahn v. General Motors Corp.,* 889 F.2d 1078, 1081, (Fed. Cir. 1989) (denying customer suit exception); *Air Prods. and Chems., Inc. v. MG Nitrogen Servs., Inc.,* 133 F. Supp. 2d 354, 357 (D. Del. 2001) (transferring

manufacturer's declaratory judgment action to Texas, finding action involving same patents and overlapping parties should not proceed simultaneously in different courts); *Fleet Connect Sols., LLC v. Precision Drilling Corp*., No. 6:21-CV-00987-ADA, 2022 WL 2373711, at *3 (W.D. Tex. June 30, 2022) (denying stay based on customer suit exception where accused system was incomplete without customer's input).

While Viasat argues that it provides the accused in-flight connectivity systems, it fails to account for the components made by others and whether it has possession of witnesses and documents that would promote convenience and efficiency for evaluating infringement and invalidity.[5] To the contrary, Viasat concedes that other (non-Viasat) third-parties provide components related to the infringement allegations, so Viasat may not be a true "manufacturer." (D.I. 1 at ¶ 48) (according to Viasat "Wi-Fi base stations, which [IV] accuses of infringement, [are] *originally sold by Aruba Networks, LLC*"); *see also* D.I. 28 at ¶ 5.) Viasat does not identify or represent that it possesses core technical documents and witnesses needed to assess the Accused Functionality or that such documents/witnesses are located close to Delaware such that proceeding here promotes efficiency. Viasat simply argues that Delaware is IV's "home court" (Motion at 6-7), although neither IV nor

---

[5] While Viasat is not challenging validity in the instant case, the airlines have asserted invalidity defenses in the Texas Cases – issues that still will need to be resolved if Viasat fails to prevail on infringement in this case.

Viasat has offices or employees here. But Viasat, Southwest, and American all have office locations in Texas. (D.I. 15-12 (https://www.viasat.com/about/who-we-are/locations/); Ex. 1 at ¶ 6; Ex. 4 at ¶ 6.

Thus, while Viasat repeatedly complains about IV's supposed forum shopping, IV has sued the airline defendants *where they do business/have their headquarters*, which is the *natural choice* for a suit against those companies. In contrast, instead of simply intervening in those Texas Cases, which it could have done (and still should), *Viasat* sought another forum where it could be divorced from the allegations concerning how its products were incorporated into other companies' infringing products. If anyone is guilty of "forum-shopping" here, it is Viasat.

As IV showed, there are claim limitations which appear to require hardware and software in combination with the technology provided by Viasat, negating the argument that Southwest and American are unnecessary for the infringement determination. D.I. 14 at 10-11. *Fleet Connect Sols*., 2022 WL 2373711, at *2-4 (denying customer suit exception when component was not used "off-the-shelf").

*In re Google Inc*., 588 F. App'x 988 (Fed. Cir. 2014) ("*Google*"), upon which Viasat relies extensively, does not support Viasat. There, the Court found the accusations at issue related to Android functionality and that the infringement contentions all relied on Google-created base Android source code. *Id.* at 990. Further, knowledgeable witnesses and records were in or near Google's California

headquarters. *Id.* at 991. Accordingly, in *Google*, the actual technology was provided exclusively by Google, the purported manufacturer. Viasat makes no such showing here, as indeed it cannot since other manufacturers (including, but not limited to, Anuvu) are accused of providing the infringing technology.

As Viasat acknowledges, in determining whether the customer suit exception applies, the "primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Katz*, 909 F.2d at 1463. Determination of the infringement issues here would *not* be dispositive of the other cases" because Viasat (unlike Google) is not the only manufacturer of the Accused Functionality. (*See, e.g.*, Ex. 3 at 8, n. 1 (referencing manufacturers Panasonic and Intelsat); Ex. 8 at 1-2, 5, n. 2, 9 (referencing manufacturers Panasonic and Intelsat).

Because IV's infringement allegations against American and Southwest go well beyond their roles as purported users of Viasat's products, the customer suit exception does not apply. *See, e.g., Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321, 327 (D. Del 2009) (customer-suit exception inapplicable where defendant alleged that manufacturer's customers were direct infringers of defendant's patents); *Air Prods.*, 133 F. Supp. 2d at 357 (transferring manufacturer's declaratory judgment claim to first-filed Texas infringement action where customer sued in Texas was not "merely a reseller" of manufacturer's products, but incorporated them into the customer's infringing product).

Further, Viasat has multiple offices, and services customers headquartered, in Texas. No party has an office in Delaware. *See Motion Offense, LLC v. Sprouts Farmers Mkt., Inc*., No. 6:19-CV-00417-ADA, 2020 WL 4561594, at *2–3 (W.D. Tex. Jan. 26, 2020) (denying stay when no offices in Delaware). The customer suit exception does not apply for these reasons as well.

Because the customer suit exception does not apply, Viasat's request for an injunction under that rule crumbles.

**B.    Viasat Has Not Met Its Burden To Obtain A Preliminary Injunction**

**1.    Viasat Has Not Shown That It Is Likely To Prevail On The Merits Of Its Declaratory Judgment Claim.**

First, Viasat cannot show (as it must, *see supra* at Section III), that it is likely to prevail on the merits of its declaratory judgment claim. Indeed, Viasat does not even *try* to make that showing. Rather, it circularly argues that, contrary to the express terms of the preliminary injunction test, it does *not* need to show a likelihood of success *on the merits* of its declaratory judgment claims, but only that it is likely to prevail on its "customer suit" exception argument. (Motion at 15-16.) Viasat offers *no support* for that deviation from the well-settled preliminary injunction standard. Having failed to even *argue* that it is likely to prevail on its declaratory judgment claim, Viasat *a fortiori* has not met its burden to show a substantial likelihood of success "on the merits" of that claim.

Viasat's contention (Motion at 16) that the injunction it seeks "will affect the Court hearing Viasat's claim, but will not determine the outcome of those claims" is nonsensical and misleading. Viasat seeks to enjoin IV from pursuing the Texas Cases **_and any future cases_** involving the '326 and '469 Patents, not until this Court decides whether the customer suit exception applies, *but until it finally determines Viasat's declaratory judgment claim*, *i.e.*, until a decision on the merits. (*See* Motion at 1 (arguing that "[t]he Court should enjoin IV from prosecuting its current customer suits against Viasat's systems, or bringing additional customer suits against those systems, *until resolution of this matter*").) Viasat must be held to the standard the law requires for imposition of an injunction; likelihood of success *on the merits* – which Viasat does not even *attempt* to show.

### 2.     Viasat Has Not Shown It Will Suffer Irreparable Harm

Nor can Viasat meet the second prong for injunctive relief. Even if a plaintiff "demonstrates a strong likelihood of prevailing on the merits, a preliminary injunction may only be entered if the plaintiff further establishes that irreparable injury is likely in the absence of an injunction." *Insulet Corp. v. EOFlow Co., Ltd.*, 104 F.4th 873, 883 (Fed. Cir. 2024). To demonstrate irreparable harm, a movant must demonstrate "something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Id.*

But that is *all* Viasat has. It cites only its conclusory complaint allegations that IV's actions "impact" Viasat's business and relationships with its customers. (Motion at 16.) Viasat's purported "irreparable harm" is simply too speculative to support injunctive relief. *See, e.g., Advanced Micro Devices, Inc. v. S3 Graphics Co., Ltd*., No. 11–965–LPS, 2011 WL 5402667, at *2 (D. Del. Nov. 8, 2011) (denying injunctive relief where "no one knows what the outcome of the [concurrent] proceeding will be" and, accordingly, "Plaintiffs' concerns are simply too remote and speculative to establish irreparable harm.").

In any event, Viasat's vague allegations of harm to Viasat's relationships with its customers, even if supported (which they are not), would be insufficient to satisfy this prong. *See, e.g., Golden Fortune Imp. & Exp. Corp. v. Mei-Xin Ltd.,* No. 22-1710, 2022 WL 3536494, at *6-7 (3d Cir. Aug. 5, 2022) (reversing preliminary injunction where plaintiff claimed it would lose customers, sales and good will because money damages sufficed to compensate plaintiff for its claimed losses); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (plaintiff's claim "[its] business will be completely destroyed, its employees and jobs will be lost and its goodwill and business reputation will be ruined.... [and that it] will be forced to lay off most, if not all, of its 70 employees and will lose everything it has built over the past two decades" was not "irreparable harm" when money damages for such losses could be recovered); *Manganaro v. Interoptec Corp.*, 874

F. Supp. 660, 662 (E.D. Pa. 1995) (harm to the customer relationship, including loss of sales and damage to reputation, are harms which can be legally remedied and do not support injunctive relief).[6] Moreover, if Viasat truly wants to stand behind and support its customers, it would intervene in the actions where its customers were sued, *i.e.*, the Texas Cases.

Viasat does not allege that it has a duty to indemnify or defend either Southwest or American in the Texas Cases. Viasat's argument that "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm" (Motion at 16) is insufficient in the face of Viasat's paltry allegations. Although "price erosion and loss of market share may in some cases be irreparable injuries … a bare assertion of irreparable harm is *never sufficient* to prove such harm or justify the 'extraordinary remedy' of a preliminary injunction." *Takeda Pharms. U.S.A., Inc. v. Mylan Pharms., Inc.*, 967 F.3d 1339, 1349 (Fed. Cir. 2020) (affirming denial of preliminary injunction where, inter alia, "[plaintiff's] nonspecific and unsupported assertion that [defendant's] sales 'likely

---

[6] Viasat contends that "where the alleged injury is not quantifiable, the harm cannot be adequately compensated and is irreparable." (Motion at 16.) But Viasat does not even argue, other than in this conclusory manner, that its alleged injuries would be unquantifiable. Such issues as lost sales, market share and good will are all quantifiable. *See, e.g., United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 23-975-RGA, 2024 U.S. Dist. LEXIS 97445, at *27 (D. Del. May 31, 2024) ("Even if I assume that Plaintiff has established a sufficiently strong causal nexus between the alleged harm and the allegedly infringing acts, I conclude that Plaintiff has not shown a likelihood of irreparable harm based on price erosion, sales, market share, research and development, reputation, or Defendant's ability to pay damages.").

will cause' irreparable harm falls far short of establishing that irreparable harm has occurred, or will likely occur, absent a preliminary injunction."). *See also GOLO LLC v. Goli Nutrition Inc*., No. 20-667-RGA, 2020 WL 5203601, at *14-15 (D. Del. Sept. 1, 2020) (denying preliminary injunction, noting that "Plaintiff needs to make a 'clear showing' of harm to reputation and goodwill to constitute irreparable harm, such that the 'extraordinary remedy' of preliminary injunctive relief is warranted" and "[t]he Supreme Court has made clear that a 'possibility' standard of irreparable harm is 'too lenient' and is 'inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief'", whereas "Plaintiff has not shown any lost sales as a result of any activity of Defendant nor any harm in the marketplace, or any injury amounting to irreparable harm.") (citations omitted). Here, we are not dealing with an unknown market or customer. We are dealing with two of Viasat's customers and any losses related to those customers are easily calculated.

### 3.    Granting Injunctive Relief Will Cause IV Significant Harm

By contrast, granting Viasat's motion would cause substantial harm to IV. IV is the owner of all right, title and interest in the '326 and '469 Patents. Enjoining IV from enforcing those patents indefinitely (perhaps for years), would deprive it of a central right to patent ownership; the right to enforce patents and seek damages from actors that infringe those patents. *See, e.g.*, 35 U.S.C. § 284. Southwest and

American are already infringing those patents, and will continue to do so if IV is enjoined from pursing them. Further, Viasat seeks to enjoin IV not only in the Texas Cases, but "against any other defendant in any venue, until resolution of this manufacturer action." (Motion at 20.) An injunction here would significantly harm IV because patents have a life of only twenty years and patent infringement claims allow damages only going back six years. Delaware courts have held that "the finite nature of a patent" pertains to the harm analysis. *See Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp*., 397 F. Supp. 2d 537, 543 (D. Del. 2005). Thus, the longer IV is enjoined from enforcing its patent rights, the more potential damages it will be precluded from recovering and the more infringing companies will be able to get away with their illegal conduct. That is far more than the phantom "forum shopping" of which Viasat complains. (Motion at 2.) The whole notion of IV forum shopping is insupportable. Southwest and American are making money every day on virtually every flight exploiting IV's patent rights. The real money is being made by the airlines, not Viasat. IV has a right to collect damages for that wrongful conduct. There is nothing wrong with IV suing the entities inflicting the most harm (the airlines) so that it can be fully compensated. IV's pursuit of the airlines is justice, not forum shopping.

Viasat, in contrast, has identified *no actual injury* it will incur if its injunction motion is denied. Indeed, Viasat could still seek to intervene in the Texas Cases and

pursue its claims and defenses there, but it simply does not want to present its case in Texas. Indeed, while Viasat accuses IV of "forum shopping" for bringing suit against Southwest and American where those defendants actually do business, *Viasat* is the only party seeking to proceed in a forum in which none of the parties have actual places of business.

### 4. The Public Interest Weighs Against An Injunction

Viasat incorrectly argues that the public interest will be served if the customer suit exception is applied because Viasat, as a manufacturer, is the true defendant in the Texas Cases. (Motion at 17-18.) As discussed above, the customer suit exception does not apply here, and the airlines are the true defendants given their superior profiting off the inventions. IV will still be litigating Southwest and American's infringement of the '326 and '469 Patents in the Texas Cases because Viasat is not the only the manufacturer of the accused technologies – a fact that Viasat does not dispute even while it pretends that fact is irrelevant. As discussed in IV's motion to dismiss, transfer or stay this action (D.I. 14), forcing IV to litigate the infringement of the '326 and '469 Patents in this Court while parallel litigation continues would cause judicial inefficiency; enjoining IV from pursuing the Texas Cases with regard to Viasat-related products while the litigation continues regarding other manufacturers of the accused technologies would exacerbate that inefficiency. Contrary to Viasat's argument, the public interest favors resolving all issues

18

regarding the '326 and '469 Patents in as few cases as possible. That can only happen in the Texas Cases.

### 5.    Viasat Should Be Compelled To Post A Bond

Not only does Viasat want an injunction, it wants one cost-free. To wit, it contends that, if an injunction is granted, it should not be compelled to even post a bond. Viasat is wrong. As discussed at IV.B.3, *supra*, IV will be harmed by the proposed injunction. Contrary to Viasat's assertion, an injunction here would not decrease IV's costs "once it can avoid duplication of effort between this matter and across its two Texas Cases," because IV will still need to litigate the '326 and '469 Patents against Anuvu and other manufacturers while the injunction is in place. Moreover, should IV prevail in the instant case, it will not just "recover the proper amount of damages calculated by the Court" as Viasat blithely asserts; IV will still need to return to the Texas Cases to litigate its damages claims against the airlines (which far surpasses any liability of Viasat) and oppose the invalidity defenses asserted by the airlines – issues that are not at issue in this case. These inefficiencies cause significant harm to IV and Viasat should be required to post a bond if the Court grants an injunction.

## V.    CONCLUSION

For the foregoing reasons, Viasat's motion for a preliminary injunction should be denied in its entirety.

19

Dated:  April 14, 2025

Respectfully submitted,

FARNAN LLP

Of Counsel:

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
John Downing
Heather S. Kim
ThucMinh Nguyen
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Dr., Suite 200
Redwood Shores, CA 94065
Tel: (650) 453-5170
Fax: (650) 362-9302
JWaldrop@kasowitz.com
DJones@kasowitz.com
MBarber@kasowitz.com
JDowning@kasowitz.com
HKim@kasowitz.com
TNguyen@kasowitz.com

Paul G. Williams
KASOWITZ BENSON TORRES LLP
1230 Peachtree Street, N.E., Suite 2445
Atlanta, Georgia 30309
Tel: (404) 260-6080
Fax: (404) 260-6081
PWilliams@kasowitz.com

*/s/ Brian E. Farnan*
 Brian E. Farnan (Bar No. 4089)
 Michael J. Farnan (Bar No. 5165)
 919 N. Market St., 12th Floor
 Wilmington, DE 19801
 Tel: (302) 777-0300
 bfarnan@farnanlaw.com
 mfarnan@farnanlaw.com

Attorneys for Defendants
*Intellectual Ventures I LLC and*
*Intellectual Ventures II LLC*

## <u>CERTIFICATION OF COMPLIANCE</u>

The foregoing document complies with the type-volume limitation of this Court's November 10, 2022 Standing Order regarding Briefing in All Cases. The text of this brief, including footnotes, was prepared in Times New Roman, 14 point. According to the word processing system used to prepare it, the brief contains 4,663 words, excluding the case caption, signature block, table of contents and table of authorities.

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)

Dated: April 14, 2025