1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF DELAWARE

3    VIASAT, INC.,                    )
                                      )
4              Plaintiff,             )
                                      )   C.A. No. 25-056-CFC
5       v.                            )
                                      )
6    INTELLECTUAL VENTURES I LLC      )
     AND INTELLECTUAL VENTURES II     )
7    LLC,                             )
                                      )
8              Defendant.             )
                                      )

9

10

11                   Friday, July 11, 2025
                           9:04 a.m.
12                       Oral Argument

13

14                     844 King Street
                    Wilmington, Delaware
15

16    BEFORE: THE HONORABLE COLM F. CONNOLLY
      United States District Court Judge
17

18

19    APPEARANCES:

20

              SHAW KELLER
21            BY:  KAREN E. KELLER, ESQ.
              BY:  NATHAN HOESCHEN, ESQ.
22
              -and-
23

24

25

APPEARANCES CONTINUED:


                    WARREN KASH WARREN LLP
                    BY:  MATTHEW S. WARREN, ESQ.
                    BY:  ERIKA H. WARREN, ESQ.
                    BY:  MADELINE A. WOODALL, ESQ.


                           Counsel for the Plaintiff



                    FARNAN LLP
                    BY:  BRIAN E. FARNAN, ESQ.

                    -and-

                    KASOWITZ LLP
                    BY:  JONATHAN K. WALDROP, ESQ.
                    BY:  JOHN DOWNING, ESQ.

                           Counsel for the Defendants




                    _ _ _ _ _ _ _ _ _


                    P R O C E E D I N G S


        (Proceedings commenced in the courtroom beginning at

9:04 a.m.)

                THE COURT:  Good morning.  Please be seated.

                MR. HOESCHEN:  Good morning, Your Honor.

1    Nathan Hoeschen from Shaw Keller here on behalf of

2    plaintiff, Viasat, Inc., and with me at counsel table is

3    Matthew Warren and Erika Warren from Warren Kash Warren,

4    and behind them is Madeline Woodall, also from Warren

5    Kash Warren, and my partner, Karen Keller.

6            **THE COURT:**  All right.  Good morning.

7    Mr. Farnan.

8            **MR. FARNAN:**  Good morning, Your Honor.

9            **THE COURT:**  Good morning.

10           **MR. FARNAN:**  Brian Farnan on behalf of

11   Intellectual Ventures.  With me today is John Downing.

12   John Waldrop all from Kasowitz

13           **THE COURT:**  Thank you.

14           So the first thing I need to tackle is the

15   disclosure order.  It does not meet, the disclosure

16   statement does not satisfy my disclosure order.  And this

17   is a good example of a case that shows that my disclosure

18   order is not purely academic.

19           The disclosure statement, and I'm talking

20   about of the defendant, it does disclose some ownership.

21   For instance, it discloses corporations that are in the,

22   quote, "ultimate parent," I'm quoting the disclosure

23   statement, that own more than 10 percent of the

24   particular either limited partnership or non-managing

25   member of the LLC, in the case of the two different

1    defendants.

2            One of the corporations is Microsoft.  This

3    case was filed in 2025.  I had stock in Microsoft for a

4    very brief period of time in September of 2024.  I

5    acquired stock from one of my children and gave it to a

6    charity.  But for that few days, I owned Microsoft.  And

7    so had this case been pending before me, I would have had

8    a conflict.

9            So this is not purely an academic exercise.

10   Now, what makes it less than ideal for me to kind of jump

11   into enforcing the disclosure order is you are the

12   defendant, and I'm sympathetic to entities that are

13   hauled into court, particularly when they've brought a

14   lawsuit in another forum that's related to this.

15           So what do you want to do about it, plaintiff?

16   And let's hear from the plaintiff.

17           **MS. WARREN:**  Thank you, Your Honor.  You

18   know, from my client's perspective, one of the concerns

19   that we have because IV is the defendant in this case.

20           **THE COURT:**  Why don't you come to the podium.

21           **MS. WARREN:**  Oh, of course I will.  Sorry.

22   I'm a loud talker.  Thank you.

23           So, you know, the issue for us here is that

24   because IV is not in compliance with Your Honor's order,

25   the ordinary course for this Court would be to take time

1    to enforce the order and have them come into compliance,

2    either by staying this case or having some period of time

3    for them to proceed to actually make the disclosures that

4    are required.

5            Here, we are before the Court seeking a

6    declaratory judgment before Your Honor.  The defendant

7    would like nothing more than to take more time to go

8    through the disclosures process and delay --

9            **THE COURT:**  Do me a favor.

10           **MS. WARREN:**  Yeah.

11           **THE COURT:**  Instead of kind of figuring out

12   their intent, just tell me.  Because my question was:

13   What do you want to do about it?  That's the question.

14   You don't have to cast aspersion on them.

15           **MS. WARREN:**  Sure.

16           **THE COURT:**  What do you want to do about it?

17           **MS. WARREN:**  I believe Your Honor should

18   order their disclosures within a few business days.

19           **THE COURT:**  I'm not going to do that.

20           **MS. WARREN:**  Okay.

21           **THE COURT:**  Here is what's going to happen.

22   If you wanted me to order their disclosure, we're going

23   to litigate this because I think they're going to

24   probably challenge my disclosure order.  They're

25   probably going to want to raise arguments that have been

1  raised in other cases.

2          Mr. Farnan has been part of a team of lawyers

3  that, in *VLSI*, for instance, started to litigate the

4  validity of my order.  I'm convinced it is valid, don't

5  get me wrong, but this is novel.  And although my rule is

6  copied from local rules of other courts, the reality is

7  no one has really litigated this.  And as Mr. Farnan's

8  team in the *VLSI* case pointed out, mine is a standing

9  order and there are at least arguments to be made that

10  that is distinct from a local rule.

11          So it's a complicated issue.  Now, what

12  happened, remarkably, in the case that Mr. Farnan

13  participated in, even though there was a many

14  billion-dollar claim at issue, when it came time for oral

15  argument on the issue of disclosure, his client walked

16  away from the case.  So we never got to fully litigate

17  it.

18          But I'm going to guess, and we'll ask

19  Intellectual Ventures, if we started to order a

20  compulsion order, are you going to want to litigate that?

21          **MR. FARNAN:**  Yes, Your Honor.

22          **THE COURT:**  That's what I figured.

23          So if you want to litigate it, that's fine,

24  and I'm happy to do that, but I'm not considering

25  anything in this case until that's resolved.

1          So that's what you want to do?

2          **MS. WARREN:**  Well, Your Honor, I have two

3   comments to that.  And, one is, I'm a little bit

4   surprised to hear that IV does want to litigate this

5   issue because IV has made the fulsome disclosure, I

6   believe in compliance with this Court's order, in

7   another Court.  Now, that was many years ago, but they

8   have done it.  And so it is somewhat surprising to me

9   that they are here before Your Honor saying, no, no, we

10  just can't do it here.

11         **THE COURT:**  Okay.  But I just said, what do

12  you want to do?  Again, you started reading their

13  intent.  I just want to know what you want to do.

14         **MS. WARREN:**  So, if Your Honor is disinclined

15  to order compliance now, and rather to have --

16         **THE COURT:**  No, no.  Here's what I'll do.  I

17  will order compliance, but I think they'll stand up and

18  say, "We want to challenge the order."  And then, that's

19  fine, we're going to challenge it.

20         I'm going to give both sides plenty of time to

21  brief it.  It's something I want to study.  That's all

22  I'm saying.  I'm saying just be careful what you ask for.

23         **MS. WARREN:**  Absolutely.

24         **THE COURT:**  If you want, I'll issue an order

25  that's going to say they have, and I would want to talk

1    with them about how long it would take to get the papers

2    ready, but I'll do it.  I'm going to hold off ruling on

3    any of the substantive or procedural discovery motions

4    pending before me, and we'll litigate.  We'll litigate

5    the order.

6              And you are right, though.  I mean, maybe they

7    decide, you know what, it's just cheaper, we'll submit

8    it.  But my instincts were kind of along with what

9    Mr. Farnan just said, that that's what would happen.

10            **MS. WARREN:**  Yeah.

11            **THE COURT:**  So that's what you want, you want

12    me to order their compulsion for them to comply with my

13    discovery order, rather my disclosure order, within a

14    certain amount of time, and then we won't rule on any of

15    the other motions today?

16            **MS. WARREN:**  Well, add to that, Your Honor,

17    that in order to maintain the status quo that we have

18    here now, I would submit that the Court should also

19    order a preliminary injunction along the lines --

20            **THE COURT:**  I can't.  I can't.  A main

21    purpose of my discovery order, my disclosure order, is

22    so that I don't have a conflict.

23            I am not touching the merits of this case

24    unless either we resolve the disclosure order or you say,

25    you know what, we'll waive all concerns about conflicts,

1  and we will never, ever challenge my participation in

2  this case at a later date.  That's the decision you have

3  to make.

4        Sounds like what you made was, let's go

5  forward and compel disclosure.

6        **MS. WARREN:**  Well, Your Honor --

7        **THE COURT:**  Because I've had other cases

8  where what happens is the plaintiff says, you know what,

9  we are so desirous of a quick adjudication, like you,

10  they had a preliminary injunction pending, that they

11  were willing to waive any and all conflicts and they

12  would never, ever question the legitimacy of my

13  adjudication of the case.  Those are really the two

14  choices for you.

15        **MS. WARREN:**  Understood, Your Honor.

16        And if those are my two choices, then my

17  client does waive any objection to Your Honor's presiding

18  over this case.

19        **THE COURT:**  Okay.

20        **MS. WARREN:**  That is not an issue.

21        **THE COURT:**  In that case, I'm not going to

22  compel further disclosure, and then I will, in this

23  case, because there's a defendant at issue as opposed to

24  a plaintiff, I am willing to move forward with the

25  understanding that it will not require further

1    disclosure, and no one is going to question the

2    legitimacy of my adjudication of the case.

3              All right.  Great.

4         **MS. WARREN:**  Thank you, Your Honor.

5         **THE COURT:**  In that case, we've got a motion

6    to compel to address.

7         **MR. HOESCHEN:**  Good morning, Your Honor.

8         **THE COURT:**  Good morning.

9         **MR. HOESCHEN:**  Nathan Hoeschen again on

10   behalf of plaintiff Viasat.  I will be handling the

11   discovery disputes today.

12             Unless Your Honor has another preference, I

13   was just going to go in the order they were briefed,

14   beginning with the license production issue.  We also had

15   a protective order dispute.

16        **THE COURT:**  Yeah.  The license production

17   issue, let's do that.

18        **MR. HOESCHEN:**  Okay.

19        **THE COURT:**  Let me ask you this, because what

20   this case has made me realize is that I have, in a way,

21   contributed to the dispute, perhaps, because I realize I

22   really don't have a form scheduling order that addresses

23   this type of case.

24        **MR. HOESCHEN:**  Yes, I don't believe any of

25   the judges have a particular declaratory judgment

1    scheduling order.

2              **THE COURT:**  Right.  I thought I did.  That's

3    the funny thing.  Because when I issued my scheduling

4    order, I didn't have a lot of experience in patent

5    cases.

6              So I had intended that my form order for

7    non-*Hatch-Waxman* cases in which only the invalidity is

8    alleged, I had intended that to be the appropriate

9    scheduling form for a case like this because I didn't

10   know enough to think, well, somebody may, like you, your

11   client, seek a DJ for non-infringement.  And I realize

12   that there's a gap.  So I've got to correct that.

13             Did you all discuss that when you kind of

14   figured out what kind of form order to use?

15             **MR. HOESCHEN:**  Well, we had -- as Your Honor

16   is aware, we did base this -- it exactly mirrors your

17   normal non-*Hatch-Waxman* case where infringement is

18   alleged.

19             **THE COURT:**  Right.

20             **MR. HOESCHEN:**  And given that it was -- you

21   know, our DJ is for non-infringement, we think the only

22   sensible manner to go forward was to have infringement

23   contentions first.

24             **THE COURT:**  My reaction is, no, what we

25   should have had is non-infringement contentions first

1    because you've got the burden, right?  You're the

2    plaintiff.

3              **MR. HOESCHEN:**  So that is true that

4    non-infringement -- but the -- essentially, it's almost

5    impossible to come up with a, here's why we don't

6    infringe, unless you have a procedure for why we do

7    infringe.

8              **THE COURT:**  Well, you brought a case; you

9    must have a theory why you don't infringe.

10             **MR. HOESCHEN:**  Of course we do, Your Honor.

11             **THE COURT:**  So then why couldn't you issue

12    non-infringement contentions?

13             **MR. HOESCHEN:**  Your Honor, they have an

14    Interrogatory on that very issue.  And the parties

15    certainly could have agreed to that schedule, now that

16    you bring it up.

17             But the fact of the matter is that the parties

18    agreed to a schedule where there would be infringement

19    contentions and then invalidity contentions in the normal

20    course, just like the case had been brought by the

21    patentee against the --

22             **THE COURT:**  Right, but the order does, and I

23    signed the order because, you know, if I get parties to

24    agree to something, especially in a patent case, I'm

25    inclined to sign it.  But, you know, my order says bring

1    in a claim.  They don't have a claim of infringement.

2            **MR. HOESCHEN:**  Well, there's two points on

3    that, Your Honor.  The first is that we're not actually

4    compelling them to provide infringement contentions.

5    They already did that.  And those infringement

6    contentions accuse us, in no uncertain times, of

7    accusing -- of infringing directly and indirectly via

8    various accused products.

9            Second, the Paragraph 4 of your order says

10   that these various disclosures which we're asking for,

11   and most important to us now is the production of all

12   agreements, including licenses, transferring interest in

13   the certain patent.  That section is very clear.  That's

14   due at the same time as the contentions.  They provided

15   the contentions, but they didn't provide the late

16   disclosure.

17           **THE COURT:**  I know.  They were just so

18   generous they decided we don't really have to do this,

19   but we will, and they did.  I mean, you know, the order

20   says if you're bringing a claim of infringement, you've

21   got to do these things.

22           Let me ask you this:  Do you dispute or is it

23   your position that even if they don't have a claim for

24   infringement, they are required under the order to

25   provide infringement contentions?

1          **MR. HOESCHEN:**  Yes.

2          **THE COURT:**  It is your position.

3          **MR. HOESCHEN:**  If they are intending to

4    assert infringement in this action, which they appear to

5    be, in which I understood to be the agreement the

6    parties have reached.  Because, just for a moment, the

7    counterfactual here is their contention that the parties

8    put in this date for infringement contentions of, at the

9    time, less than a month in the future from when it was

10   ordered.

11          Their apparent position is that this date had

12   no meaning.  The parties never intended to serve

13   infringement contentions, never intended to do these

14   initial disclosures that would allow us to assess the

15   value of the case and make, you know, initial

16   determinations about standing, exhaustion, with regard to

17   resolution.

18          Our contention is that this date meant exactly

19   what it said, that the parties -- we understood that they

20   clearly contend that these products infringe.  They

21   brought suit in other courts contending that they

22   infringe.  They served contentions saying that your

23   products infringe.

24          We think that the only central reading of what

25   the parties intended at the time and what the Court

1    subsequently ordered is that that deadline was meant to

2    mean something, and that by not serving those disclosures

3    at the same time as the contentions, that they violated

4    that order in the parties' agreement.

5              And just as a further note, there's no other

6    date for these disclosures in the scheduling order.  The

7    only date -- the only date is relative to the service of

8    the infringement contentions.  Under IV's current theory,

9    these are never due.  They've already served contentions,

10   and these are just up in the air somewhere.

11             **THE COURT:**  Give me a second.

12             Your point being that we've got the June 12,

13   2025 date, and that's the only date.  It does say "unless

14   otherwise agreed to."

15             **MR. HOESCHEN:**  But Paragraph 4 does not have

16   the "otherwise agreed to" language.  It simply says that

17   the document production accompanying disclosure is

18   served with the disclosure of asserted claims and

19   infringement contentions.

20             **THE COURT:**  Yeah.  I think the problem I have

21   is with the premise, though.  So the premise is, and has

22   to be under the terms of the scheduling order, that the

23   disclosure of asserted claims and infringement

24   contentions required under Paragraph 3 of the scheduling

25   order is only triggered if you have a party claiming

1  patent infringement.  We don't have that.

2       **MR. HOESCHEN:**  I mean, I understand Your

3  Honor's position, but I think if you read the

4  infringement contentions they served, it's quite clear

5  they are claiming infringement.

6       **THE COURT:**  Well, they are not claiming

7  infringement; they're telling you that you infringe.  I

8  mean, claiming infringement means you file a claim.

9  They haven't.  I mean, regardless of what you all

10  intended, that's what I thought this scheduling order

11  covered, my form orders, I mean.

12       Now, I opened the hearing, or the substantive

13  part of the hearing, saying this case brought to my

14  attention that I've got gaps in my form orders.

15       All right.  Anything else you want to say?

16  I'll hear from them.

17       **MR. HOESCHEN:**  I just wanted to point out,

18  Your Honor, that this is a dispute that if this is what

19  IV wanted, it's something that should have been raised

20  when the parties were planning the scheduling order.

21  They could have requested a date in this, per Paragraph

22  3 and 4 that was 30 days after the a party answers.

23  Instead --

24       **THE COURT:**  After it answers?

25       **MR. HOESCHEN:**  Or after asserts a

1    counterclaim, relevant counterclaim.  They didn't.

2    Instead, they picked a date certain that was only 28

3    days in the future, a date when they knew they would not

4    have a counterclaim asserted.  And I do not think that

5    can be squared with their argument now and their

6    decision to serve these on -- to serve the actual

7    contentions on the 12th.

8         **THE COURT:**  Okay.

9              Trying to find your proposed order.  I don't

10   know where I put it.

11        **MR. HOESCHEN:**  I believe it was Exhibit 3 to

12   our letter.

13        **THE COURT:**  Got it.  Thank you.

14             Anything else you want to say?

15        **MR. HOESCHEN:**  Just, Your Honor, that the

16   same reasoning that, you know, supports the inclusion of

17   these in your normal form scheduling order in the normal

18   course, where a patentee --

19        **THE COURT:**  You mean all the licenses?  What

20   do you mean?

21        **MR. HOESCHEN:**  Yeah.  The disclosure

22   requirement in Section 4 of your form order.  That

23   animates the requirement to disclose these in the normal

24   course where a patentee sues a manufacturer applies

25   here.

1          We are asking for documents that allow us to

2    assess threshold legal issues early in the case, you

3    know, to drive this case towards resolution as promptly

4    as possible.

5          There is as much reason to do that in a case

6    where a DJ of non-infringement is requested as in a case

7    where infringement is at issue.

8          **THE COURT:**  Okay.  Thank you.

9          **MR. HOESCHEN:**  Thank you, Your Honor.

10         **MR. FARNAN:**  Good morning, Your Honor.  Brian

11   Farnan on behalf of Intellectual Ventures.

12         Mr. Downing will address any substantive

13   questions, but I want to just give you background and

14   procedure because Your Honor hit the nail on the head.

15         This was something -- well, first, to start,

16   they demanded that we have the 26(f) conference at the

17   start of discovery while our motion to dismiss was

18   pending.  We opposed it.  And I think you saw during that

19   exchange there were some exchanges with the Court about

20   cooperation among counsel.  Things weren't going so well.

21         And so we then had a meet-and-confer, and we

22   told them we wanted non-infringement contentions, and

23   they said no.

24         Then we raised this in his e-mails, like, this

25   doesn't make sense.  We're not asserting a claim.  You're

1    not asserting invalidity here.  Like, what's going on?

2              And we didn't want to bring our dispute to the

3    Court.  We didn't think the order applied.  So we decided

4    we're not going to keep writing the Court, having

5    problems.  You told us to enter the form order, so we did

6    it.  We're going to comply.

7              Then when it came time to do it, we didn't

8    think it applied, truth.  But they had DJs for certain

9    patents.  We're like, well, we can get contentions on

10   those DJs to keep things moving.  The Court clearly wants

11   discovery to go forward.  We don't want to just, you

12   know, be a stick in the wheels.  So we did that.

13             We were trying to get along.  We were trying

14   to move the case forward, give them an idea of what we

15   would say in the DJ claims, but we had answered.  There

16   may be more to come, right?  And we thought, well, the

17   best we can do is show our hand, what we think we've got,

18   and then when the Court orders on the motion on

19   disclosure -- because we think the case should be

20   dismissed -- then that's the other thing.  We moved to

21   dismiss.

22             They filed this case, and they waited until

23   after briefing on the motion to dismiss was complete to

24   move to enjoin us.  They delayed for that.  Then, also,

25   there was a rush to get to discovery.  When they couldn't

1    move to enjoin when they filed the suit, they let us go

2    all through the motion to dismiss briefing, then they had

3    this new argument.  Then they said, well, now we want to

4    do discovery.

5            But we weren't trying to bring things to the

6    Court.  We were going to let things play out.  But we

7    thought -- we previewed what we were doing, and the Court

8    held us here, denied our motion, then we could come back

9    and say, okay, we answered.  Here's what we're going to

10   do now, and we could add stuff.  But it wouldn't be

11   starting anew, and we comply with Your Honor's intent.

12   And that's how we tried to do it.

13           There's no game playing; there's no hiding.

14   And on a license, we said, hey, we'll meet with you; tell

15   us what you want, but the confines of this case aren't

16   known.  But we'll give you stuff to keep it moving, but

17   this isn't your normal case.  And the order you wanted --

18   they asked for the order.  They got it.  It's just -- not

19   to be -- it doesn't make sense.  No one's fault, it's

20   just incongruent here.  And so we did the best we could.

21   We're happy to do more, if the case stays here, but

22   that's how we got here.

23           **THE COURT:**  Okay.  Thank you.

24           **MR. FARNAN:**  Thank you.

25           **THE COURT:**  I'm not going to require further

1    argument.  I mean, you know, Mr. Hoeschen, in terms of

2    the threshold issues, there's no threshold.  We don't

3    have counterclaims yet.

4           Now, what I will do is, if we get to the point

5    where there are counterclaims asserted, we will move

6    quickly because, you know, I actually appreciate what

7    Mr. Farnan said.  And, Mr. Hoeschen, and I know you and

8    Ms. Keller as well, are known for being civil, civil

9    litigators, and are conscious of the burdens on the

10   Court.

11          So I think in this case, given the counsel, or

12   the Delaware counsel, whom I know at least, that if we

13   get to the point where there are asserted counterclaims,

14   we need to move fast.  And, frankly, if we get asserted

15   counterclaims, all the licenses have to be turned over,

16   and expeditiously, so that we can address standing issues

17   very quickly.

18          Is that understood?

19          **MR. DOWNING:**  Yes, Your Honor.

20          **THE COURT:**  Okay.  Thank you.

21          **MR. DOWNING:**  And, Your Honor, we've also

22   produced some standing documents just to move things

23   along, as Mr. Farnan said.

24          **THE COURT:**  Right.  But as Mr. Farnan noted,

25   you know, there could be other patents that all of a

1    sudden, or other claims or other issues that are

2    asserted.  And that's why it's premature at this point

3    to require these considerations of standing, I think,

4    right now.  We don't have claims yet.

5            So I'm going to take it piecemeal, and that's

6    how we're going to do it.  And, you know, look, I

7    actually want to give kudos to the parties.  They spotted

8    this inadequacy on my part, you know, failure to issue an

9    appropriate order to deal with these kinds of DJs.  If I

10   can get to it, I will issue another one.

11           Spread the word, if you will, that, you know,

12   I'm aware that I don't have a form scheduling order that

13   addresses a DJ for non-infringement.

14           Frankly, I realize now, really, I ought to

15   just change the nature of my form orders to deal with DJ

16   actions, and I'm going to do that going forward.  Okay?

17           I don't see any real prejudice to the

18   plaintiff.  If anything, they've gotten these materials

19   very early in the game and then when counterclaims are

20   served, we'll have the time under the rules to respond

21   appropriately.  All right?  So I'm going to deny that

22   application.

23           All right.  Now let's deal with the protective

24   order.

25           **MR. HOESCHEN:**  Hello again, Your Honor.

1        On the protective order, the parties, as we

2   mentioned in the briefing, have two disputes.  The first

3   is Viasat would like an acquisition bar that prevents

4   lawyers seeing our confidential information, from

5   acquiring patents within the field of the invention for a

6   period of three years after the termination of this

7   action.

8        We think the risk here is exactly the same as

9   in the prosecution bar context.  Our worry here,

10  especially with like Intellectual Ventures, sort of a

11  preeminent acquirer of patents, is that, you know, the

12  lawyers here, with the best of intentions, are walking

13  around knowing exactly how Viasat's projects -- products

14  work and exactly how much they're worth to us.

15       They'll have our most important financial

16  information and all those schematics to know exactly

17  which patents they're looking at might read upon our

18  products.

19       **THE COURT:**  Actually, so a couple of things,

20  if you would.  Is what you just said, the information

21  that's most important to you, and you said financial

22  information?

23       **MR. HOESCHEN:**  And technical information.

24       **THE COURT:**  And by "tech information," I

25  think you said "schematics."  That's very broad tech

1    information.  So, you know, what specifically did you

2    have in mind?

3              **MR. HOESCHEN:**  Source code will be at issue

4    in this case.

5              **THE COURT:**  Right.

6              **MR. HOESCHEN:**  Technical diagrams for how the

7    systems work.

8              **THE COURT:**  Yeah.  Now, those would be deemed

9    by you to be highly confidential, I take it.

10             **MR. HOESCHEN:**  Yes.  Most of this information

11   would be highly confidential.

12             **THE COURT:**  All right.  Now, under the

13   undisputed terms that you've got in the draft --

14             **MR. HOESCHEN:**  Yes.

15             **THE COURT:**  -- who has access to the highly

16   confidential information on their side?

17             **MR. HOESCHEN:**  I believe it's just outside

18   counsel, but there may be a provision for one or two --

19             **THE COURT:**  I think it's outside counsel

20   only.  And you can go check.  But they're nodding their

21   head.

22             So I'm just trying to, you think these guys,

23   the outside lawyers, are engaged in patent acquisition

24   or, in other words, who...

25             I mean, in the disclosure statement, I guess

1    there's four or five individuals that are named as the

2    managing members of the LLC and the general partner.

3            Are they the same four or five?  I can't

4    remember.

5                    **MR. WALDROP:**  Yes, Your Honor.

6                    **THE COURT:**  There's how many, four or five?

7                    **MR. DOWNING:**  I believe it's four.

8                    **THE COURT:**  Four.  So there are four guys who

9    are behind this.  Presumably they are guiding the ship

10   when it comes to, you know, patent acquisition.

11           Do you think these lawyers are involved in

12   that?

13                   **MR. HOESCHEN:**  Well, Your Honor, I have no

14   way of knowing that.  To the extent they are not, then

15   this order poses zero burden on them.

16                   **THE COURT:**  Well, actually, I don't know if

17   that's true.  Let's look at the language you've got.

18           You want to point me actually where?

19           You know what, before we go any further, I

20   think the disputed language is found on Tab 5, Page 17,

21   to Page 18; is that right?

22                   **MR. HOESCHEN:**  Yes.

23                   **THE COURT:**  That's where the nub of the

24   dispute is.

25                   **MR. HOESCHEN:**  That is correct.

1          **THE COURT:**  Okay.  And then the first is,

2    basically, you want to add the phrase, seven lines up

3    from the bottom, beginning with "any individual who

4    receives access," right?  That's what you want, and they

5    don't want that sentence, correct?

6          **MR. HOESCHEN:**  Yes.

7          **THE COURT:**  Okay.  So it says, "Any

8    individual who receives access to protected material."

9          Okay.  How is "protected material" defined?

10         **MR. HOESCHEN:**  That would include both

11   confidential and highly confidential.

12         **THE COURT:**  Right.  But, see, what you said

13   this morning was, it sounds like what you're really

14   concerned about is "highly confidential."

15         **MR. HOESCHEN:**  That's certainly the area of

16   the most concern.

17         **THE COURT:**  Right.  Well, you said financial

18   info and technical info.  We do want to be cognizant

19   here of, I'll tell you what.  Let's, for argument's

20   sake, let's deal solely with highly confidential

21   information to begin with.  Okay?

22         You've already said that that information can

23   only go to outside counsel, correct?

24         **MR. HOESCHEN:**  Yes.

25         **THE COURT:**  All right.  So let's say instead

1    of having protected material, we just insert here in its

2    place, highly confidential material.  All right?

3              **MR. HOESCHEN:**  Yes, Your Honor.

4              **THE COURT:**  So then you want the following

5    words, "Any individual who receives access to highly

6    confidential material produced by plaintiff, or by any

7    nonparty to this action, shall not be involved in

8    activity related to the acquisition of patents or patent

9    applications relating to the subject matter of this

10   action."

11             By the way, what is the subject matter of this

12   action?

13             **MR. HOESCHEN:**  That would be in-flight Wi-Fi

14   systems and related -- it's not just in-flight, also in

15   boats and vehicles.

16             **THE COURT:**  So what do you want to call it?

17             **MR. HOESCHEN:**  Mr. Warren?

18             **MR. WARREN:**  Related to -- excuse me.

19             Your Honor is looking for a description of

20   what we will call the subject matter of this action?

21             **THE COURT:**  Yes.

22             **MR. WARREN:**  I guess I would say Viasat's --

23   can I peg this, Your Honor to Viasat's accused products

24   or do you want --

25             **THE COURT:**  You can peg it however you want.

1   I mean, you are the ones asking for the language.  I

2   mean...

3           **MR. WARREN:**  We thought the subject matter of

4   this action was clear and was not something that would

5   be unduly vague.  It sounds like Your Honor doesn't like

6   that.

7           So I guess my response would be to modify it

8   either to suggest related to Viasat's accused products in

9   the action, which I think is very clear because they're

10  going to know what is accused what we produced.

11          If the Court doesn't like that, then I think I

12  would say "related to provision of communication services

13  via satellite"  I'm coming up with that on the fly.

14          My suggestion to Your Honor is if Your Honor

15  is inclined to enter this provision subject to this

16  language and the specificity of this language, that Your

17  Honor simply rule in that direction and the parties can

18  try to negotiate regarding this language, and I suspect

19  we can come up with something.

20          **THE COURT:**  I mean, look, what my fear is, I

21  think where the rubber hits the road, it's only highly

22  confidential information we're talking about and the

23  only people that are affected by that are the outside

24  lawyers and yet, let's suppose I read it, for instance,

25  to say "provision of" ... what did you call it,

1    services?  Communications received by satellite?

2              **MR. WARREN:**  I can no longer remember what I

3    said two minutes ago, Your Honor.  Luckily someone wrote

4    it down.

5              **THE COURT:**  Provision of communication

6    received by satellite.

7              **MR. WARREN:**  Yeah, that's probably too broad,

8    Your Honor.

9              **THE COURT:**  It is pretty broad.

10             **MR. WARREN:**  Yeah.  Which is why we actually

11   thought it was better to talk about the subject matter

12   of the action.

13             **THE COURT:**  And then fight about it, and let

14   me decide?

15             **MR. WARREN:**  Well --

16             **THE COURT:**  Actually, let me ask you this, is

17   there any temporal bar on this?

18             **MR. WARREN:**  Three years after the close of

19   the action.  Right?  I believe it's further down.

20             **THE COURT:**  Hold up.  Hold up.

21             **MR. WARREN:**  It's further down, Your Honor.

22   It says both provisions --

23             **THE COURT:**  It says both.  Yeah.  The

24   provision.  Yeah.  And it says, by the way, it not only

25   would prohibit outside counsel from consulting with

1    Intellectual Ventures about this, but it would be any

2    client.

3            **MR. WARREN:**  Yes, that's correct, Your Honor.

4    Again, as Mr. Hoeschen said, we didn't think this was

5    going to be particularly burdensome due to the fact --

6            **THE COURT:**  On outside counsel?

7            **MR. WARREN:**  I mean, I don't know.  Most

8    litigation counsel don't also engage in patent

9    acquisition.  I don't know what's going on --

10           **THE COURT:**  No.  It's actually not just, it's

11   advising clients.  It would be advising them in

12   connection with patent acquisition.

13           So somebody walks in their firm and says, I'm

14   thinking about buying this patent, it's got to do with

15   some satellite going with a cell phone, and they're

16   supposed to go, oh --

17           I mean, actually, how are they supposed to

18   enforce this?  Are they supposed to put out, like, a memo

19   that they keep in their conflicts, you know, the bar

20   that --

21           **MR. WARREN:**  So --

22           **THE COURT:**  Sorry, not in the bar, but in

23   their conflicts computer --

24           **MR. WARREN:**  This is only related --

25           **THE COURT:**  -- so if God forbid, they --

 1              **MR. WARREN:**  Sorry to interrupt, Your Honor.

 2   This is only related to individual attorneys.  And so it

 3   would not pose a bar to the firm.  We certainly did not

 4   intend for that.  I believe, and I don't have the

 5   language --

 6              **THE COURT:**  It does say any individual.

 7              **MR. WARREN:**  Any individual who has

 8   reviewed --

 9              **THE COURT:**  Okay.  But even that, I mean,

10   they're supposed to, for two years, remember some guy

11   walks in the door or their partner comes down the

12   hallway and says, what do you think about this?  What do

13   you think about this patent?  And they don't even know.

14              Are they supposed to say, hey, before I tell

15   you anything about that patent, I've got to know, are you

16   advising a client about potentially acquiring such a

17   patent because, otherwise, I can't talk to you?

18              **MR. WARREN:**  I mean, that does not sound

19   particularly burdensome to me, Your Honor.  I am subject

20   to multiple protective orders all the time.  I'm subject

21   to multiple client confidentiality obligations all the

22   time.

23              And when someone comes into my office, I make

24   sure that all of those obligations are cleared.  So I

25   don't feel that that is particularly --

1           **THE COURT:**  Do you know of any case where a

2     Court imposed an acquisition bar against outside

3     counsel?

4           **MR. WARREN:**  I will defer to Mr. Hoeschen on

5     that issue.

6           **MR. HOESCHEN:**  Yes, Your Honor.  We cited one

7     in our brief.  It was Judge Stark's opinion in

8     *Intellectual Ventures versus Altera.*

9           **THE COURT:**  Can you show me?  That's in the

10    transcript?  And outside counsel was prohibited there?

11          **MR. HOESCHEN:**  It is the final exhibit to our

12    brief.  And this is on the -- begins on the

13    second-to-last Page 29 and goes on.

14          **THE COURT:**  It says, "With respect to the

15    patent acquisition bar."

16          Where does it say, though, I didn't read it

17    here.  For starters, when you cited this in your letter,

18    you directed me to Pages 28 through 30.  I looked at

19    that.  I find a lot on page 29.  I think that's where the

20    real language is from Judge Stark.

21          **MR. HOESCHEN:**  Yes, Your Honor.

22          **THE COURT:**  You know with respect to the

23    patent acquisition bar, can you tell me, what was that?

24    What was the requested patent acquisition bar?  Where

25    can I see that?

1          **MR. HOESCHEN:**  It's not included here, Your

2    Honor.

3          **THE COURT:**  But you're positive it goes to

4    outside counsel?

5          **MR. HOESCHEN:**  I reviewed it before, and I am

6    sure it goes to outside counsel.  It may have also gone

7    to inside counsel as well.

8          **THE COURT:**  I guess I would really like to

9    see what it is.

10          **MR. HOESCHEN:**  We can certainly provide it to

11    Your Honor after the hearing.

12          **THE COURT:**  The Morris Nichols firm, for

13    instance, all those folks from Morris Nichols who appear

14    in 300 patent cases and probably consult with clients

15    all over the world.  You're telling me that they were

16    barred from three... Jack Blumenfeld, who's on the

17    papers here, he was barred for three years from advising

18    a client about the potential acquisition?  What was the

19    subject matter in that case?

20          **MR. HOESCHEN:**  This was telecommunications, I

21    believe.

22          **THE COURT:**  Wow.  My God.  That's a broad

23    prohibition on Mr. Blumenfeld.

24          **MR. HOESCHEN:**  Or, no it's semiconductors,

25    Your Honor.

1          **THE COURT:**  Oh, it's even broader.  My

2     goodness.  That seems pretty extreme.

3          **MR. HOESCHEN:**  I mean -- I understand what

4     you are saying, Your Honor, but from my own practice, it

5     would affect me not at all, and I think for most

6     litigators,  the acquisition of patents is frequently a

7     totally different side of the practice.

8               This is aimed at the very narrow situation, in

9     which someone who is involved in litigation and receives

10     highly confidential information that might let them know

11     in advanced that a patent that is otherwise sitting

12     unused could be asserted against a particular entity, and

13     how much they can make from asserting that.  In those --

14          **THE COURT:**  Wait.  Where do you get the last

15     part?  It's not asserted against the particular entity.

16     I mean, and maybe that's how you do it.  If what you are

17     looking for is they cannot engage in this activity to

18     acquire patents to be asserted against Viasat, is that

19     really all you are looking for?

20          **MR. HOESCHEN:**  If there would be -- if you

21     are proposing something like a --

22          **THE COURT:**  I am not proposing anything.

23     What is it that you are really concerned about?  Because

24     the way it reads, it would prevent them from having any

25     kind of discussions with any client related to a very

1  broad technological area that could be asserted

2  against...  It would have nothing to do with you.

3          I mean, that's part of the problem with

4  subject matter.  You are not limiting it to just what you

5  currently do.  You are going to incorporate

6  telecommunications.  I mean, I would imagine most

7  telecommunications these days involve a satellite.  Maybe

8  I'm wrong about that, but I am going to think a lot of

9  them would, in some way.  You know, I mean any phone with

10  a GPS on it, it's going to be using a satellite, I think.

11          Just seems incredibly broad.

12          **MR. HOESCHEN:**  Well, Your Honor, this is why

13  we sort of -- Mr. Warren sort of proposed a -- related

14  to the products, the accused products, in this case, and

15  pinning it in that matter.

16          But, yeah, the issue really is that -- so, if

17  you are asking what we are most concerned about, then it

18  is that they will acquire patents, and we will be sued on

19  them.

20          But the reason that, you know, they would

21  acquire patents, especially for someone like Intellectual

22  Ventures, for which the attorneys that Kasowitz routinely

23  served as outside counsel, is because they will be

24  asserted.  That is the entire business model is that they

25  acquire patents that are not being monetized, and then

1    they monetize them by suing.

2              And if, to the extent that they receive a

3    patent directed to a product like Viasat's, having

4    already sued on these exact same products, they will

5    immediately recognize that that is what they could be

6    used for, if they are first found by people knowledgeable

7    about exactly how our products work and how valuable they

8    are.  That's what we are trying to prevent.  To the

9    extent this could maybe also be ameliorated by something

10   like a covenant not to sue on any patent they are

11   involved in, prosecute in acquiring, that's something we

12   could consider.

13             But I -- that strikes me as even more

14   burdensome than what we have proposed here -- which,

15   again, I have not heard anywhere in the briefing, or from

16   them, or in our meet and confers, that any of them do

17   regularly participate in this, so it should not present

18   any particular burden.

19             It is just to go on the odd chance that they

20   be asked to do it in this particular field, in which

21   case, we would say that the danger there is greater than

22   the potential burden on them of having to, you know, once

23   in a blue moon say, oh, I know too much about potential

24   target for this patent that I got only because of

25   litigation, so you are left to ask, you know, Frank next

 1    door, who didn't work on Viasat.

 2             **THE COURT:**  All right.  Hold on a second.

 3             So, you know, one thing going on with the

 4    Stark hearing was, John Desmarais was involved.  He was

 5    known to acquire patents.  I don't know anything about

 6    this law firm.

 7             **MR. HOESCHEN:**  I don't either, Your Honor.

 8    That's the issue.  We know about the client.  We know

 9    the patents and blueprints --

10             **THE COURT:**  Well, first of all, the client

11    was the same.  Intelligent Ventures was the client,

12    right?  This says Mr. Desmarais on the side did his own

13    patent acquisition.

14             Okay.  Anything else?

15             **MR. HOESCHEN:**  Not on this issue, Your Honor.

16    We did have one further protective order to dispute, if

17    you wanted --

18             **THE COURT:**  No, let's deal with this one

19    first.  Let's hear from the other side.

20             **MR. FARNAN:**  Thank you, Your Honor.  Brian

21    Farnan on behalf of Intellectual Ventures.

22             Your Honor has a really good grasp of the

23    issues, so I will just give a little context.

24             We started seeing acquisition bars -- it was

25    around 2012.  It was like a new thing, and Judge Stark

1    did grant one in that first IV case.  Since then, I'm not

2    aware of any Court in this district granting one.  We

3    cite several decisions in our letter -- and there are

4    more -- just because of the space constraints, we

5    couldn't fit them all in.

6            I think we have been involved in 13, maybe 17

7    cases where they have all been denied for the all the

8    reasons Your Honor articulated, and it became a dead

9    thing.  I haven't seen one since 2019.  No one has

10   proposed it because everyone knows --

11           **THE COURT:**  I think it's because nobody has

12   ever brought one before me.

13           **MR. FARNAN:**  Yeah, it stopped.

14           **THE COURT:**  So they're like a test case.

15           **MR. FARNAN:**  It stopped in 2019 because

16   everyone knew they were losers.  There's no case you can

17   cite.

18           The case they cite from Judge Stark, he then

19   later -- in two later decisions, said, hey, I got it

20   wrong.  I didn't really look at it in that case.  It

21   wasn't the prime issue before me.

22           I looked at it now, and it is not appropriate.

23   And so, that is the history of acquisition bars in the

24   district.  And Your Honor gave all -- all the reasons

25   why, it's impingent on the practice of law.  It is really

1      aimed at lawyers, that's what it's aimed at.

2              And their proposal says, "The subject matter

3      relating to anyone in the world."  It is trying to tie

4      your hands behind your back because they are trying to

5      gets lawyers to stop taking cases.  People are trying to

6      make it tough for plaintiff lawyers to represent patent

7      assertion entities.  That was the goal.

8          **THE COURT:**  And can I just, is there language

9      in this particular agreement that would preclude the use

10     of information gained in this case, in any other matter?

11         **MR. FARNAN:**  That's what I was going to hit

12     next.  Exactly -- that is the whole point.  The

13     protective order says, you can only use protected

14     information for this case.  So if they have any idea

15     what they are saying, you violated a court order.

16             What lawyer is going to risk violating a Court

17     order?  I mean, it is a court order, and so, that's one

18     of things all the courts relied on -- saying, hey, the

19     order already says you can't use this information.  Why

20     do you want an acquisition bar -- and especially to make

21     it expensive just to stop your practice.  You couldn't

22     even use non-protected information to do your practice.

23             As Mr. Warren said, he abides by protective

24     orders every day.  Lawyers do it every day.  You know

25     what you can and can't do, and you have got to

1  compartmentalize and that's what you do.  That's just the

2  practice.

3          So when you look at the history -- the

4  provision Your Honor just mentioned -- there really isn't

5  a basis.  And they have the burden.  They have the burden

6  to propose a reasonable scope.  They didn't do it.  They

7  had a burden to show that these five lawyers here are

8  going to violate Court order, so you need to bar us.

9  They just haven't met it, and it is extreme thing that we

10 haven't seen since 2019.

11         **THE COURT:**  All right.  Thank you.

12 Mr. Hoeschen, you don't dispute that, even without this

13 acquisition bar, or any of these lawyers sitting over

14 there to use confidential information gained during this

15 case in connection with another matter, they would

16 violate the order?

17         **MR. HOESCHEN:**  Yes, Your Honor, but the same

18 is true of prosecution bars.

19         **THE COURT:**  I just want to make sure, you

20 don't dispute that?

21         **MR. HOESCHEN:**  No, not at all.

22         **THE COURT:**  All right.  I am going to deny

23 the application for an acquisition bar.  And there may

24 be a day when I would approve one, but I don't think the

25 burden has been met here, and I think it's just very

1    problematic to define the subject matter in a way that I

2    would grant an acquisition bar in a narrow enough way

3    that it would be helpful because, at the end of the day,

4    we've got lawyers, and there's no reason to suggest that

5    any of the lawyers are engaged, personally, in patent

6    acquisition, and/or that they would violate the order.

7           And, frankly, for them to use the confidential

8    information gained in this matter in connection with the

9    acquisition of patents, they'd violate the order, and I

10   just don't see it.

11          I also might change my mind.  It depends like,

12   who is the recipient of the highly confidential

13   information?  Which is where I do think you've got

14   legitimate concerns, but it is limited to outside

15   counsel.  So, I am content with that.  All right.

16          **MR. HOESCHEN:**  Understood, Your Honor.

17          **THE COURT:**  Okay.  Go ahead.  Next issue.

18          **MR. HOESCHEN:**  The final issue on the

19   protective order is the scope of the prosecution bar.

20   Essentially, the dispute here is regarding the extent to

21   participation in post-grant proceedings.

22          We essentially say there should be no

23   participation within field of the prosecution bar, and

24   they say there should be participation so long as there

25   is no activity in the amending of claims.  Our issue here

1    is that we think that this distinction they proposed is,

2    essentially, too narrow to be really workable.

3           The idea, I guess, is that, you know, one of

4    the people at counsel table would be part of a team on an

5    IPR, they would work with them on petitioner responses

6    and everything else.  They would share their opinions,

7    and, you know -- again, this is under the prosecution bar

8    logic that, you know, we understand they are not

9    intentionally using confidential information with people

10   who are not meant to have it, but, you know, there is a

11   switch in their head where they know and it's very

12   difficult to compartmentalize and it turn off.

13          And so, the idea that they propose is,

14   essentially, once there is a discrete decision made to

15   amend a claim in a narrow way, that they will leave the

16   room and their influence would die with that.  And then,

17   when they return back then, you know, that influence will

18   have had no affect and everything can go on as normal.

19          And, essentially, we think this is an

20   unworkable proposition and that the additional burden of

21   avoiding this whole procedure is relatively slight.  And

22   just to illustrate the dangers of these sorts of things,

23   I wanted to point out an opinion that IV actually

24   attached to their brief, but did not include this portion

25   of it.  This is the --

1        **THE COURT:**  Do you have a copy of it?

2        **MR. HOESCHEN:**  Yes, Your Honor.

3        And you will see this is a transcript of a

4   hearing on a protective order in Intellectual Ventures

5   versus AT&T Mobility.  I believe this was attached in

6   part as Exhibit G to the Intellectual Ventures' opening

7   brief, or answering letter.  And if I can direct you to

8   Page 33 -- or I'm sorry 34.

9        **THE COURT:**  Okay.

10        **MR. HOESCHEN:**  And the second paragraph, the

11   Intellectual Ventures is describing their proposal for

12   the prosecution bar, and they are saying, "We have said,

13   we will not have any discussions or be involved in any

14   way with respect to claim amendment," which Your Honor

15   knows is limited in IPR's narrowing amendments.  But

16   even so -- let's take that off the table.  That's off

17   limits.  We are not going to talk about that.

18        So the issue there, which is exactly the issue

19   here -- in fact, they actually proposed a slightly more

20   limited involvement, where they said they would only be

21   involved in analyzing prior art and claim construction in

22   the IPR.  And the defendants there were proposing,

23   essentially, the identical provision we have proposed

24   here.

25        And if you turn to Page 37, Judge Stark is

1    questioning Intellectual Ventures on this, and he goes

2    on, "So help me" -- and this is about halfway down the

3    page beginning with the Court on 37 again -- "So help me.

4    My concern has been with this, at least potential risk

5    was strategic narrowing of claim scope.  The claim comes

6    out of the IPR, is amended and be narrowed to a point

7    where it's stronger, in terms of validity, but it still

8    comes out of IPR -- my hypothetical -- but still broad

9    enough to make an infringement claim against defendants."

10         And then, on the next page, "Even in the

11   circumstance we have here, we would not be expressly

12   discussing amendment, but you would be expressly

13   discussing the scope of claims, in terms of claim

14   construction, prior art analysis.  Why shouldn't I have

15   the concern that, in your mind, despite everyone's best

16   efforts, you would know the position you are suggesting

17   IPR counsel take on claim construction dispute, for

18   instance, you would know, given your access to the

19   confidential information of defendants, you would know it

20   may ultimately lead to a claim coming out of an IPR that

21   would still allow to you to press your infringement

22   claim."  There's a few more along those lines.

23         **THE COURT:**  Well, let me also ask you this as

24   a legal matter.

25         Do the proceedings before the IPR, for

1    instance, is that part of prosecution history?

2              **MR. HOESCHEN:**  Yes, it can be part of the --

3    like, for the purposes of claim construction, it's part

4    of the intrinsic record.

5              **THE COURT:**  I'm sorry?

6              **MR. HOESCHEN:**  It's part of the intrinsic

7    record for claim construction.

8              **THE COURT:**  Of the infringement record?

9              **MR. HOESCHEN:**  The intrinsic record.

10             **THE COURT:**  Intrinsic, sorry.

11             All right.  So, yeah, so, it counts at

12   prosecution history.

13             **MR. HOESCHEN:**  Yes.

14             **THE COURT:**  I mean, people put it up on

15   screens all the time during *Markman* hearings to me, to

16   look at what was said during these proceedings to

17   influence my construction of the patent.

18             **MR. HOESCHEN:**  Yes, Your Honor.

19             And just to continue on, it concludes on -- it

20   concludes on Page 49 by saying, "Finally, on the question

21   of the prosecution bar" -- and he misspeaks here and

22   says, "Plaintiff's Proposal."  He means Defendant's

23   Proposal, but he accepts it.

24             He makes that change on the next page -- "I

25   have concern about the risk of strategic narrowing

1    amendments, given the post-grant review and IPR.  I just

2    think there is -- even under the circumstances here --

3    there is a risk that those conversations at litigation

4    counsel wish to have the freedom to have with IPR

5    counsel -- could you be informed by confidential

6    information of defendants that litigation counsel have

7    had access to, which could ultimately lead to the type of

8    strategic narrowing that I am concerned with.  And so, I

9    think with that risk, I think that warrants the

10   protections that defendants have proposed."

11           And so, he ordered -- I have a copy of that

12   ultimately issued protective order, if Your Honor would

13   like to see it.

14           **THE COURT:**  Yeah, you could hand that up.

15           **MR. HOESCHEN:**  Sorry, Your Honor.  I just

16   have to take it out of my pile of papers here.

17           The relevant provision is there.  I have one

18   for you guys too.

19           **THE COURT:**  All right.  Anything else?

20           **MR. HOESCHEN:**  No, Your Honor.  That's all I

21   have at this point.

22           **THE COURT:**  All right.  Thank you.  Just give

23   me a second.

24           All right.

25           **MR. FARNAN:**  Good morning, Your Honor.  Brian

1    Farnan for Intellectual Ventures.

2          Your Honor, this whole idea of a prosecution

3    bar -- what this would be a pretty -- well, given the

4    prevalence of IPRs now, and what's going on in patent

5    litigation, it's universally stipulated in protective

6    orders.

7          If you would look at the ones that come across

8    your desk, there is a carve-out for IPRs, that people can

9    participate, because the order they want you to enter --

10   every time a plaintiff filed a case, their counsel

11   couldn't be involved in IPRs.

12         And with people filing, three, four, five,

13   six, seven IPRs, litigation counsel would be walled off.

14   They would have to hire another law firm.  There would be

15   no coordination.  It's clear tactical advantage.  And so,

16   this is, again, another thing where people just stipulate

17   because they know it's so unfair, and there have been

18   decisions.

19         They didn't cite this in their letter, but I

20   could find so many examples of carve-out.  It is just a

21   practice that you carve-out IPRs, but you don't allow

22   amendment because that would be unfair.  But to say that

23   every time a plaintiff files a lawsuit in District Court,

24   and then the AIA gives defendants the power to file these

25   IPRs -- that you choose your counsel, you lose them

1    because you file in District Court, they can't

2    participate in the IPR where the validity of your patent

3    is being challenged, and sometimes, three, four, five,

4    six, seven times.

5         It's just not fair.  And the risk is very

6    minute and the risk is known, it's if you amend claims.

7    So if anything should be a violation, it would only be

8    when someone amends the claims, and that rarely happens

9    anymore in IPRs.  But if it does, it can be scrutinized

10   because it is a known thing, right?

11        Like, okay, you amended your claims.  How did

12   you get there?  Who participated?  You could have

13   discovery on that.  And then, you'd violate protective

14   order again, because you can't -- you said you can't

15   participate in amending claims, and that's the only

16   concern.

17        So this, again, given like -- it's really

18   prevalence of IPRs, and it is a problem.  If you granted

19   this order, every plaintiff that came here, the lawyers

20   they picked, they are on the sidelines for IPRs, and we

21   stay cases for IPRs, for years, because that's how

22   important it is.

23        So you say, okay, defendant, you get to keep

24   your counsel all through the IPRs, develop your claim

25   construction, develop all your theories; plaintiff, no.

1    You're going to have two theories then, because you've

2    got two different law firms that can't talk.

3              I mean, it's just -- it's so lopsided, it's

4    just not fair.  So you weigh that and, again, they have

5    the burden.  You have to do the balancing test.  You

6    weigh that, which is clearly unfair, versus the risk.

7    It's a known risk.  It's only amendments.  So it only

8    arises if there is an amendment.  And if someone did

9    something kind of funny on the amendments, you could pry

10   into that and figure out what happened.

11             So, we submit it's just -- it's just not an

12   appropriate thing.  And that's also reflected in the

13   practice, and I wouldn't represent this if I didn't know

14   if it was true.  If you look at the ones coming across

15   your desk, you're going to see carve-outs for IPRs.

16             **THE COURT:**  Okay.  Thank you.

17             Actually, one thing, it sounds like there's

18   going to be fewer IPRs going forward so that this may not

19   be an issue anyway, right?  You don't have to answer

20   that.

21             Now, am I correct that in terms of citing the

22   legal authority, you rely on the Burke decision, you rely

23   on the Bryson decision?  Is that kind of how it cuts?

24             **MR. FARNAN:**  We rely on the Judge Bryson

25   decision.

1    THE COURT:  No, IV, yeah, you're right.  You

2    rely on Bryson's decision.  Sorry.  It's Viasat relies

3    on the *Walmart* decision, right?

4        MR. HOESCHEN:  That and the one.

5        THE COURT:  And the one you just brought in

6    front of me, which is also from 2014.

7        Mr. Hoeschen, do you dispute that what

8    Mr. Farnan says that the carve-outs are routinely

9    included in prosecution, in terms of, in protective

10   orders that I sign off on.

11       MR. HOESCHEN:  They are sometimes.  I would

12   dispute that it was the vast majority, but it certainly

13   happens.

14       THE COURT:  The Judge Bryson decision, did he

15   address the participation in IPRs, or did he just hold

16   that you can't participate in the amendment claim, the

17   claim.

18       MR. FARNAN:  I think that was just understood

19   that that's the reason you were participating.

20       THE COURT:  Right.  In other words, you cite

21   that for the proposition that the real harm here is the

22   amendment of complaints.  But what I'm getting at is,

23   Judge Bryson did not address the issue that's before me.

24   He just affirmed that principle that he was willing...

25   that the concern is amendment of claims.

1        **MR. FARNAN:**  That's right, to be allowed to

2    participate in the IPRs.

3        **THE COURT:**  Well, that's what I want to make

4    sure.  Was it explicit that he allowed the participation

5    in the IPR?

6        **MR. FARNAN:**  Yes.  Let me --

7        **THE COURT:**  Why don't you check.

8        I can check.

9        Yes, he did allow litigation counsel to

10    participate in post-granted administrative proceedings,

11    so that would include IPRs.

12        **MR. FARNAN:**  Yes.

13        **THE COURT:**  Did you want to say anything

14    else, either of you?

15        **MR. HOESCHEN:**  Just briefly, Your Honor, on

16    the point about this order, essentially, requiring IV to

17    have to get a different IPR counsel from their

18    litigation counsel.  That's what IV already does.

19        I checked the docket for the last six months,

20    and every paper filed in IPR has been by a different

21    firm, so any burden on IV should be...

22        **THE COURT:**  I think Mr. Farnan would say the

23    coordination is an issue, right?  That's...

24        **MR. DOWNING:**  Your Honor, if I may address

25    that point.

1          **THE COURT:** Okay. Come to the podium.

2          **MR. DOWNING:** Our firm has represented

3     clients in the past, on IPR decisions. It's a

4     client-choice, in some cases, and so we do both

5     represent clients in front of the PTAB, and we also are

6     litigation counsel.

7          **THE COURT:** All right. I will grant the

8     prosecution bar. I just think... I'm persuaded, as

9     Judge Stark was, that it's just too fine a line to

10    distinguish between the actual amendment and the

11    drafting of the claims during the course of these

12    post-grant administrative processes, which do, often, if

13    there is an amendment, come to my attention when there

14    is a discussion of prosecution history of the patent, to

15    me, it shows just how intertwined these things are.

16          And I would also note, although I kind of said

17    it jokingly to Mr. Farnan about, it looks like we are

18    going to see less of these. I do think there's been a

19    lot of literature, in the last few weeks, given the

20    developments of the PTO, that suggest that, in fact, we

21    are going to see less IPR activity, and I think that goes

22    to the burden, which suggests that the burden is not as

23    undue as it might be, historically.

24          So, when I balance all the considerations, it

25    seems to me it would be appropriate to have a prosecution

1    bar, and I'm mindful it makes it potentially a little bit

2    more difficult for the defendant in this case, in terms

3    of, you know, ensuring it doesn't take inconsistent

4    positions, but overall, I think it's appropriate.  I just

5    don't want to be trying to parse what was done to amend

6    or narrow a claim versus what was done to prevail an IPR

7    or post-grant administrative proceeding.

8            I am going allow, or actually I am going to

9    grant the motion insofar as it seeks Viasat's language as

10   far as the prosecution bar.  Okay.  All right.

11           Now, we have a couple other things pending.

12   Why don't we talk about them.  I am going to ask you,

13   then, just to submit a revised protective order,

14   consistent with the rulings that I've made today.  All

15   right.

16                   **MR. HOESCHEN:**  Yes, Your Honor.

17                   **MR. FARNAN:**  Yes, Your Honor.  Thank you.

18                   **THE COURT:**  Thank you.

19           All right.  So we've got the motion to

20   dismiss, stay, or transfer.  We've got the motion for

21   preliminary injunction.  Anything else that's pending?

22           Why don't we talk about the motion to dismiss

23   in the alternative to stay or transfer.

24                   **MR. WALDROP:**  Good morning, Your Honor.

25                   **THE COURT:**  Good morning.

1          **MR. WALDROP:**  May it please the Court.  My

2     name is Jonathan Waldrop.  And I represent the IV

3     defendants in this case, Your Honor.

4          And it is our position that IV's motion to

5     dismiss, stay, or transfer should be granted because

6     Viasat cannot meet the factors necessary and the showing

7     for this case to proceed in light of the facts.

8          As Mr. Farnan indicated, this is a unique

9     case, Your Honor, as we've been talking about for the

10    last hour or so.  And that uniqueness, Your Honor, I

11    think, is fatal to this case proceeding in the posture

12    that the DJ plaintiff would like, Your Honor.

13         If I may, Your Honor, I have some slides, Your

14    Honor, that I think are important, Your Honor, for the

15    Court's education.  And may I approach to pass them up?

16         **THE COURT:**  Yes, please.

17         **MR. WALDROP:**  Can we also show them on the

18    screen, Your Honor?

19         **THE COURT:**  Oh, yes, please.

20         **MR. WALDROP:**  Thank you, Your Honor.

21         **THE COURT:**  Go ahead.

22         **MR. WALDROP:**  I also wanted to say, this is

23    my first time being able to present in front of you

24    live, Your Honor.  I wanted to thank you for the

25    opportunity to be here, Your Honor, in front of you.

1  It's an honor.

2          **THE COURT:**  Have you been in Delaware Courts,

3  our district court?

4          **MR. WALDROP:**  Yes, Your Honor.  I have been

5  in Delaware District Court, Your Honor.  But it is great

6  to be in front of you, Your Honor.

7          **THE COURT:**  That's a good thing to stay.  I

8  mean it, facetiously.  All right.  Go ahead.

9          **MR. WALDROP:**  Your Honor, so if I may, if I

10  can orient the Court just by the procedure, Your Honor.

11  If we are on Slide 2, Your Honor, and I think this is

12  important because this will delve into -- and set the

13  stage for the second motion, but it's important for this

14  motion as well -- is, Your Honor -- and while it's being

15  projected on the screen, hopefully it works.

16          **THE COURT:**  Oh, it may be here.  It may be

17  here.

18          Let's take a couple minute break, and we will

19  call IT and get them up here.  We will get the IT person

20  up here probably 10:30.  You all can use the restroom,

21  and we will get started again.

22      (Whereupon, a recess is taken.)

23          **THE COURT:**  Please be seated.

24          All right.  Go ahead.

25          **MR. WALDROP:**  Thank you, Your Honor.  As I

1    was indicating, Your Honor, we wanted to set the

2    background for this motion, and why it should be granted

3    as to IV's motion to dismiss, stay, or transfer.

4              On Slide 2, Your Honor, we are setting for the

5    scheduling of what has happened previously, Your Honor,

6    and this is important, Your Honor.  If you'll notice,

7    Your Honor, it states clearly here on November 11, 2024,

8    the two actions by IV were asserted against Southwest

9    Airlines and American -- there were six patents alleged

10   in those cases, Your Honor.

11             You will see that, about two months later,

12   Viasat filed a declaratory judgment of non-infringement

13   for two of the six, Your Honor, which are the ones

14   sitting before you, Your Honor, and that's the '326

15   patent and the '469 patent.

16             Thereafter, Your Honor, Southwest and

17   American, back in Texas, filed motions to stay and sever

18   related to those two patents, Your Honor, on February 12

19   and 14, 2025.  Thereafter, Your Honor, IV filed a motion

20   to dismiss, stay, or transfer the DJ complaint, Your

21   Honor, which had been filed back in January, Your Honor.

22   Viasat waited for that briefing to be completed, Your

23   Honor, and in March 28, they filed their motion for a

24   preliminary injunction, seeking to enjoin the Texas cases

25   and future cases, Your Honor.

1          Now, the Western District of Texas has not

2    decided Southwest's motion to stay or sever.  So, we have

3    multiple duplicative motions all on the same issue in

4    multiple courts, Your Honor.

5          And if you'll see it, it's been about

6    nine months or so, Your Honor, since IV instituted the

7    actions against Southwest and American and we're nine

8    months later, and it's been about 60 days or so --

9    70 days or so, Your Honor, until Viasat had filed its PI

10   motion.

11         So, I just wanted to set the table, Your

12   Honor.  As the Court knows very well, the first-to-file

13   rule applies in these cases and is the operative rule.

14   It can only be undermined, under a few exceptions, Your

15   Honor, as you know, the one that's relied upon by Viasat,

16   is the customer suit exception.

17         Slide 3.  For reasons Your Honor laid out in

18   the briefing, the first-to-file exception is not meant by

19   Viasat, because they cannot meet the three factors that

20   are required under *Comcast* and *Genentech*, Your Honor.

21   And that's namely that the customer defended in the

22   earlier filed cases merely reseller.  Southwest and

23   American are not merely resellers.  They have agency in

24   the alleged infringement.

25         Two, Your Honor, the customer defendant,

1    meaning Southwest and American, agreed to be bound by

2    decisions in the later filed case that is in the favor of

3    the patent owner.  We will talk about that, Your Honor.

4           And third, Your Honor, which I think is the

5    fatal issue, Your Honor, is that the manufacturer is the

6    only source of the infringing product.

7           Making this case unique, Your Honor, unlike

8    the cases that they rely on, there's four sources of

9    infringing products.  They are one of the four.

10   Resolving their issue will not resolve the entire

11   controversy as it relates to this case, and that was

12   central in the *In re Google* case, Your Honor, which they

13   rely upon heavily, which I am very familiar with, Your

14   Honor.

15          In that case, Google is the source of Android.

16   It was the expert.  It is the source of all things

17   Android, the infringing product.

18          In this case, Your Honor, there's four sources

19   and they are but one and the cases will continue as to

20   those patents for non-Viasat related infringing activity.

21          I think that is fatal, Your Honor.  We can

22   stop there, because that's been admitted to, but for

23   completeness of the record, Your Honor, we will walk

24   through each of these three, Your Honor.

25          So --

1          **THE COURT:** But let me just ask you, then,

2    your interpretation of the law.  It's your position that

3    there are four factors; is that right?

4          **MR. WALDROP:** Essentially, Your Honor, three

5    factors plus additional factors related to convenience,

6    yes, Your Honor.

7          **THE COURT:** Right.  And all of them you would

8    put into the convenience?

9          **MR. WALDROP:** Yes, Your Honor.

10         **THE COURT:** All right.  Now, and that law you

11   get from the *Comcast* case; is that right?

12         **MR. WALDROP:** And the *Genentech* case, but

13   yes, the *Comcast* case, yes.

14         **THE COURT:** Now, this is Third Circuit law?

15         **MR. WALDROP:** Yes, Your Honor.

16         **THE COURT:** Okay.

17         Just let me ask the other side.  Do you

18   dispute that these are the relevant, legal criteria by

19   which I should make the decision?

20         **MR. WARREN:** Yes, we do, Your Honor.  The

21   relevant law is the Federal Circuit law, and the

22   relevant analysis is the analysis that the Federal

23   Circuit has done in the cases that we have set forth in

24   our brief.

25         And I could explain why we win under that, but

1    I think Your Honor just wanted a precise answer to that

2    question.

3              **THE COURT:**  I did.  All right.

4              So, can you address why Third Circuit, as

5    opposed to Federal Circuit law, governs this resolution

6    of the motion?

7              **MR. WALDROP:**  Your Honor, there's no

8    distinction between the three, Your Honor.  We win under

9    both, Your Honor.  There is no distinguish in terms of

10   what they are making, Your Honor.

11             The first-to-file principle applies.  The

12   deference should be given to that, and it can only be

13   undermined by the customer suit exception, and we win

14   under both the Federal Circuit law, and on the Third

15   Circuit, Your Honor, which we cite.

16             **THE COURT:**  Do you understand, again, I'm

17   oversimplifying by condensing the convenience factors, I

18   realize that.  But let's just, for argument's sake, just

19   call it the four factors.

20             Is it your understanding that, well, I infer

21   from what you just said, that you say that these are the

22   same four factors that the Federal Circuit considers; is

23   that right?

24             **MR. WALDROP:**  Yes, Your Honor.

25             **THE COURT:**  Okay.  But you dispute that,

1    correct?

2              **MR. WARREN:**  Yes, Your Honor.

3              The Federal Circuit doesn't really look at

4    this, in terms of factors.  As far as we can tell, the

5    Federal Circuit, essentially, looks at whether or not the

6    bulk of the issues are going to be resolved by the

7    declaratory judgment -- the manufacturer case.

8              Obviously, our key contention here is, is that

9    all of the issues regarding our products will be resolved

10   by this action and that will occur in one court -- this

11   court.  This is the only way that we can resolve all of

12   the issues regarding our products in this court.

13             I will note that they have now indicated, in

14   their infringement contentions -- we can set aside

15   whether or not their infringement contentions were due --

16   they did give them to us.  And in those infringement

17   contentions, they now accuse Viasat systems that occur in

18   vehicles and boats --

19             **THE COURT:**  You are going off.  Try to cut

20   your answers shorter.  Okay?

21             **MR. WARREN:**  Sorry.

22             **THE COURT:**  I like to proceed incrementally

23   and let's resolve things.

24             So, we have an initial threshold dispute you

25   are telling me about, A, what law applies?  And you say,

1   you think Federal Circuit law is different than Third

2   Circuit law, from this?

3         **MR. WALDROP:**  For the Customer-Suit

4   Exception, I do, Your Honor, because the Customer-Suit

5   Exception is a creature unique to patent law, and it was

6   crafted by the Federal Circuit, and it is specifically

7   meant to be an exception to the first-to-file analysis.

8         And when the Federal Circuit looks at and

9   finds that a manufacturer case, like our case, is going

10  to resolve the bulk of the issues that were presented on

11  the same products in the customer case, the Federal

12  Circuit says that is sufficient.  And that's true for

13  *Katz* as well.

14        **THE COURT:**  Now, I haven't read your briefs

15  in a long time, to be honest, but do you have, in your

16  brief, a case from the Federal Circuit where the Federal

17  Circuit says, point blank that Federal Circuit law

18  governs this?

19        **MR. WARREN:**  We do, Your Honor.  I can find

20  it.  It might take me a second, but we absolutely do.

21        **THE COURT:**  All right.  And then can you find

22  a case, in your brief, that tells me that Third Circuit

23  law governs?

24        **MR. WARREN:**  Your Honor, I am ready to

25  respond, if that's okay.

1              **THE COURT:**  Go ahead.  Point me in your

2      brief.

3              **MR. WARREN:**  We say it multiple times, but

4      D.I. 17, which is our opposition to the motion to

5      dismiss.

6              **THE COURT:**  Which I have.

7              **MR. WARREN:**  Page 5.  Subject heading:  A

8      Federal Circuit Laws Controls, not Third Circuit Law.

9              **THE COURT:**  Okay.

10             Want to say anything on that?

11             **MR. WALDROP:**  Yes, Your Honor.  I will cite

12     the Court to Footnote 1 in our brief, Your Honor, in our

13     I reply brief, Your Honor, where we said there's no

14     meaningful distinction.  Federal Circuit law does apply.

15     Your Honor, but the distinction and the conflict

16     between -- reported conflict between -- the two

17     jurisdictions is a red herring, Your Honor.  And there's

18     no substantive difference between Federal and Third

19     Circuit law regarding first-filed actions, Your Honor.

20     They are the same.

21             And we think analysis under each -- either

22     one -- will get to, then our motion to dismiss should be

23     granted, Your Honor.  We will just point the Court to the

24     footnote -- on Footnote 1 in our reply, Your Honor, which

25     addresses this issue.

1              **THE COURT:** Okay.

2              All right.  So, I'm going to make a finding.

3    That in patent cases, Federal Circuit law governs the

4    application of the first-filed or first-to-file rule.  I

5    will point you to electronics for *Imaging*, *Inc. against*

6    *Coyle* 394 F.3d Page 1345 to 46.  The case begins at

7    Page 1341.  It is a Federal Circuit case decision from

8    2005.

9              And the Federal Circuit says that, "The

10   'first-to-file' rule is a doctrine of federal comity,

11   intended to avoid conflicting decisions and to promote

12   judicial efficiency."

13             I get that from *Merial Ltd against Cipla, Ltd*,

14   681 F.3d 1283 at page 1299.  It's a Federal Circuit

15   decision from 2012.

16             "The rule permits a district court to 'stay,

17   transfer, or dismiss a duplicative later-filed action.'

18   It is not, however, to be 'rigidly or mechanically

19   applied.'  The general rule is that 'the first-filed

20   action is preferred" ... "unless considerations of

21   judicial and litigant economy, and the just and effective

22   disposition of disputes require, otherwise."

23             That's from a Federal Circuit case called

24   *Serco Servs. Co., L.P. against Kelley Co., Inc.* found at

25   51 F.3d 1037, specifically at Page 1039, which is a

1    Federal Circuit decision from 1995.

2            So, that's the law I'm going to apply, and I'm

3    going to look at.  And I've asked you to focus in your

4    argument on what considerations I should consider.

5            Now, your colleague across the aisle says, I

6    think he used the "bulk," and I get that.  But you've got

7    specific factors, and I am curious, and you should be

8    prepared to tell me why the discussion of these specific

9    factors isn't entailed within this, quote, "bulk

10   approach," to the issue.

11           All right?  Go ahead.

12           **MR. WALDROP:**  Thank you, Your Honor.  And I

13   think -- thank you for raising that.  I think that the

14   factors that I am going to discuss will address the bulk

15   concern, Your Honor.  And I will take it head-on, Your

16   Honor, specifically because he addressed that point.

17           We will move to Slide 7, Your Honor, which is

18   the case in which defendants -- or Plaintiff -- focuses

19   on the *In re Google* case, Your Honor.

20           We believe Your Honor, for purposes of their

21   position, this is the case that's most favorable.  This

22   would be the case under which the facts, Your Honor, we

23   believe in which our motion should be denied.  But they

24   are not met, so our motion should be granted, Your Honor.

25   It is the *In re Google* case.

1          I am very familiar with this case, Your Honor.

2     They are very familiar with this case.

3          This is a case in which, as I said before,

4     which I think fatal to their position, the infringement

5     related to base Android functionality across all the

6     purported customer exception individuals, Your Honor, it

7     was provided exclusively by Google.

8          Google had all the documents, had all the

9     witnesses.  Everything that was needed to resolve this

10    issue was in Google's California headquarters.  And the

11    Federal Circuit allowed this to be to me the testament

12    case for how do you deal with the customer suit exception

13    for purposes of staying other cases.  That is not the

14    case here, Your Honor.

15         In fact, as I said before, we can just talk

16    about that.  And that's why his bulk argument fails, Your

17    Honor, because it is not the bulk of the infringement,

18    Your Honor.

19         In fact, there are four sources of infringing

20    products.  And that is why we could stop right there,

21    Your Honor, and talk about the bulk before I get to my

22    other factors, which I think lay credence to where we

23    are.  First, talk about bulk.

24         Viasat is not the bulk of the controversy

25    pending in the Texas cases.  Now, they may say, as it

1    relates to us, but it's not just them, Your Honor.  They

2    are other entities involved.  In fact, Your Honor, if I

3    could point the Court to Slide 4, which I think is

4    relevant, so that the Court understands, that there are

5    four suppliers of in-flight connectivity involved in the

6    Texas actions.  There's Viasat, there's Anuvu, there's

7    Panasonic Avionics, and Intelsat in both Southwest and

8    American actions.  This is known.  This is not disputed.

9         Your Honor, there may actually come out to be

10   even more than the four.  So my math is one-fourth, at

11   best.  Not 100 percent, like in *Google.*

12        Moreover, Your Honor, we think that leads to

13   judicial litigant economy.  That deals with his bulk

14   statement, Your Honor, which I think is fatal to it

15   because the DJ case, the case that we're here today in

16   front of you on, Your Honor, is only one of the four.

17   The Texas case will continue as to the other

18   three-fourths of the infringing products, Your Honor.

19   There are overlapping issues of infringement, validity,

20   claim construction, in the Texas and DJ actions the IPRs

21   that are to come and are coming, Your Honor.

22        Third, Your Honor third-party discovery.

23   Unlike in the *In re Google*, Your Honor, which I think is

24   the case that you want to live in for them to win, Viasat

25   has not confirmed that it has the witnesses, all the

1    witnesses, all the documents in its possession, custody,

2    or control to resolve the entire dispute.  And that is

3    notable, Your Honor.  They could make that statement, and

4    maybe they will make it after I finish, but we have not

5    heard that.

6            So it does not fit within the contours of what

7    the Federal Circuit would say is the bulk, right?  It's

8    not the bulk.  By my math, it's one-fourth, 25 percent.

9    There's three-quarters of this and maybe more that will

10   continue.

11           So I will stop there, Your Honor, I will go to

12   my other factors, too, which I think are relevant, for

13   the Court's edification and consideration, but just the

14   bulk, no.  Bulk is 100 percent or close to it, and they

15   don't have it.

16           **THE COURT:**  All right.

17           **MR. WALDROP:**  Now, Your Honor, so we set

18   aside that on the Federal Circuit part.  But I also

19   think there are other factors that the Court should

20   consider that I think the Third Circuit has talked

21   about, which I think are illustrative.  They kind of get

22   to this and they help the Court kind of wrestle with it.

23           On Slide 5, Your Honor --

24           **THE COURT:**  So, by the way, you know, if we

25   were starting from scratch or if I were in the Federal

1    Circuit, I might think that the Third Circuit law should

2    govern because we are talking procedure here.  We're

3    talking about in the context of a motion to transfer.

4            The Federal Circuit has been very explicit and

5    this case, if it were appealed, would be appealed to the

6    Federal Circuit, so I think I'm best to do what the

7    Federal Circuit says.

8            Now, given that, why should I even pay

9    attention to what the Third Circuit says about this?

10           **MR. WALDROP:**  Your Honor, because, one, it's

11   not explicitly -- it's not explicitly barred from you

12   considering that, Your Honor, and it goes to the

13   judicial economy.

14           What the Federal Circuit was focused on is

15   duplicative litigation, inefficiency, Your Honor.  And

16   many of the things that the Third Circuit discusses are

17   things that lead to inefficiency, Your Honor.  And so the

18   consideration of that in the context of bulk I think is

19   important, Your Honor.

20           Now, I would just like to touch on these

21   because I think they go to the inefficiency that is being

22   created by this litigation, Your Honor.

23           **THE COURT:**  Okay.

24           **MR. WALDROP:**  So some of the inefficiencies,

25   and I will route it or root it in that, Your Honor, is

1    that on Slide 5, Your Honor, the technology at issue is

2    Wi-Fi hotspot technology in the Texas cases, Your Honor.

3    That's what we're fighting over.

4          Viasat provides some of the instrumentalities

5    around that.  That is being litigated in Texas.  However,

6    it's unclear what limitations are provided by Viasat

7    versus their customers, Your Honor.  It appears to be not

8    just an off-the-shelf implementation.

9          So, Your Honor, so there is a world in which

10   even if you resolved what is related to Viasat, it

11   doesn't resolve the entire dispute because, if you can

12   see on Slide 5, there are limitations in at least one of

13   these claims where -- and it's highlighted, Your Honor --

14   we don't know who does which of those.  It may be Viasat;

15   it may be American or Southwest, and there's no clear,

16   definitive answer from Viasat that they do it all.

17         So that is an inefficiency that the Court will

18   have to deal with if it proceeds on this DJ action, Your

19   Honor.

20         **THE COURT:**  All right.  Now, just so I

21   understand, this comes from which patent?

22         **MR. WALDROP:**  This is the '469 patent, Your

23   Honor.

24         **THE COURT:**  Asserted here?

25         **MR. WALDROP:**  That's one of the DJ.

1          **THE COURT:**  One of the DJ, and you're saying

2     it's covered by... this is not one of the four, because

3     there are six in Texas, correct, and only two of the

4     patents that are at issue in Texas are covered by this

5     DJ action?

6          **MR. WALDROP:**  Yes, Your Honor.  So this --

7          **THE COURT:**  This is one of them?

8          **MR. WALDROP:**  Yes, sir.  This is one of them.

9          **THE COURT:**  All right.

10          **MR. WALDROP:**  This is one that is both in

11     Texas and will be before you and is before you now.  So

12     multiplicity not -- not promoting judicial economy, as

13     you see on Slide 5, Your Honor.

14          Now, on Slide 6, Your Honor, another thing

15     which goes to duplicative, lack of judicial economy, is

16     that the customer defendant, Southwest and American, have

17     only agreed to be bound with respect to infringement in

18     this case, right?

19          They're saying, look, we know we're standing

20     under the umbrella of Viasat, but only with respect to

21     infringement.

22          **THE COURT:**  Right.  But I only have a DJ with

23     respect to non-infringement, correct?

24          **MR. WALDROP:**  That is exactly right because

25     they only moved on non-infringement, Your Honor.

1    **THE COURT:** Right. But, I mean, they didn't

2    move for invalidity, so it is coextensive with what's in

3    Texas.

4    **MR. WALDROP:** But in Texas we'll deal with

5    validity as well, Your Honor. So there is inconsistent

6    results, potential inconsistent positions.

7    And, moreover, Your Honor, and we have this

8    here --

9    **THE COURT:** I guess I'm at a loss why that

10   favors you. Invalidity is a defense in the Texas case.

11   **MR. WALDROP:** Yes, Your Honor.

12   **THE COURT:** Okay. And I guess your point

13   would be that if we proceeded in this case first and

14   there were a finding of infringement, the plaintiff

15   lost, then you are back to Texas is your point.

16   **MR. WALDROP:** Yes, Your Honor.

17   And moreover, Your Honor, I think it's

18   illustrative, too, because on Slide 6 we have this bullet

19   here where we're saying even in the Western District of

20   Texas, for example, they only stay cases where the

21   customer defendant agrees to be bound by both, Your

22   Honor. And we're talking about comity, Your Honor. But

23   in the Western District of Texas, they are only granting

24   stays under a customer-suit exception, like what's being

25   asserted here, only if the customer defendant is willing

1    to say I'm bound by infringement and validity as to the

2    other action.

3            **THE COURT:**  That's what your position is, but

4    has Judge Albright ruled yet?

5            **MR. WALDROP:**  Not yet, Your Honor.

6            **THE COURT:**  Okay.  So, you know, this is an

7    argument you've made before him.  He didn't buy it

8    enough to just rule in your favor.

9            **MR. WALDROP:**  We think he's ultimately going

10   to.  But we think this is fatal -- we think this is

11   fatal to Southwest's motion to stay, Your Honor.  He's

12   not going to stay that action.

13           They're going to lose that because they're

14   only being bound by infringement and not validity.

15           **THE COURT:**  Now, he's heard oral argument on

16   it; is that right?

17           **MR. WALDROP:**  Not yet, Your Honor.

18           **THE COURT:**  Has he scheduled it?

19           **MR. WALDROP:**  I don't think it's scheduled

20   either, Your Honor, no.

21           **THE COURT:**  Okay.  And then what about Judge

22   Mazzant?  I know it's a different case.

23           **MR. WALDROP:**  It's not schedule either, Your

24   Honor.

25           And we feel pretty confident, Your Honor, that

1    these cases are going to go forward, primarily because of

2    the *In re google* issue, the bulk issue which we talked

3    about, but also their unwillingness to be bound by

4    infringement and validity.

5              **THE COURT:**  Okay.

6              **MR. WALDROP:**  Now, none of the customer-suit

7    exceptions, Your Honor, that people talk about as to why

8    you would not defer to bad faith, forum shopping, that

9    we ran to Texas in anticipation of an imminent filing,

10   none of that is present here, Your Honor.  So there's no

11   bad faith, Your Honor, or gaming of the system, Your

12   Honor.

13             And, in fact, when you don't have those

14   factors, we believe that the first-filed action should be

15   respected for deference because it addresses the things

16   that the Third Circuit talks about, broadly, judicial

17   economy, and the same things the Federal Circuit is

18   concerned about with bulk.  We don't think the bulk

19   requirement can be met here, even as they put it forth,

20   Your Honor.

21             So there's two positions, Your Honor.  We

22   submit that the Court can do three things, but, one, stay

23   or dismiss, which we just talked about.  We think it

24   should be dismissed because they don't meet the

25   requirements on the first-filed action.

1          You can stay it, Your Honor, and see what

2    happens to promote judicial economy, in terms of what

3    happens in the Texas actions.  Or, Your Honor, second

4    bulk, you can just transfer it and have everything be

5    resolved in either the District Court in the Western

6    District and/or the Eastern District of Texas.

7          So I've addressed, Your Honor, I think the

8    stay/dismiss points, before I get to the transfer issues,

9    but before I get there, I want to make sure that I've

10    addressed your stay/dismiss issues.

11          **THE COURT:**  Let's go to transfer.

12          **MR. WALDROP:**  Yes, Your Honor.  Thank you,

13    Your Honor.

14          Under transfer, Your Honor, you are very

15    familiar, under Slide 8, of the 1404 factors, Your Honor.

16    They are present there on Slide 8, Your Honor.  I think

17    the thing that is most telling, Your Honor, is the

18    plaintiff's platform should be given deference, Your

19    Honor, the original choice.  There's a defendant's

20    presence in that jurisdiction, Your Honor, and the

21    actions could have been brought in Texas, Eastern or

22    Western District.

23          So we'll talk about that broadly, Your Honor,

24    but I think that it would be -- promote judicial economy,

25    Your Honor, if the Court was inclined to transfer this.

1    And we'll walk through why that is.

2            But most importantly, Your Honor, is Viasat is

3    no stranger to Texas, Your Honor.  They have corporate

4    offices in Austin and other Texas locations.  Southwest

5    and American Airlines are there.

6            The reason why we're in Texas is your own *TC*

7    *Heartland*, Your Honor, which is greatly constricted where

8    these case can be brought, and we respect that, Your

9    Honor.  And we know that Viasat has a presence there,

10   Your Honor, so that they can live in Texas and be in

11   Texas for purposes of this litigation, which we think

12   they are comfortable, Your Honor, being in.

13           Now, if we move through these factors, Your

14   Honor, on Slide 9, Viasat could have intervened in the

15   Eastern and Western District of Texas; they did not.

16   They have offices in the Western District.  They're

17   subject to personal jurisdiction in EDTX, and they

18   provide Internet services and have employees and

19   representative in the Eastern District of Texas.

20           So the Court can easily transfer them because

21   there's personal jurisdiction, subject matter, and the

22   like in venue, in those -- both jurisdictions to

23   transfer, Your Honor, so that would not be a concern,

24   Your Honor.

25           Slide 10, Your Honor.  Moreover, Your Honor,

1    the only connection to Delaware for Viasat is that they

2    are incorporated here.  We know that's a significant

3    event, Your Honor, but there is no known office here,

4    Your Honor.  And as this Court has noted --

5              **THE COURT:**  So, you know, can we go back to

6    the original, go back two slides.

7              **MR. WALDROP:**  Yes, Your Honor.

8              Slide 8.

9              **THE COURT:**  And the next slide.

10             So you are talking about, here, Viasat.  The

11   focus should be on whether Intellectual Ventures can be

12   sued in Texas or want to transfer the case there?

13             **MR. WALDROP:**  Yes, Your Honor.

14             **THE COURT:**  No.  No.  Sorry.  Yeah.  So if

15   Viasat can sue you because you're a Delaware entity,

16   right, here in Texas.

17             **MR. WALDROP:**  Yes, Your Honor.

18             **THE COURT:**  Could Viasat have sued you in

19   Texas?

20             **MR. WALDROP:**  Yes, Your Honor.

21             **THE COURT:**  How?

22             **MR. WALDROP:**  Viasat can intervene in the

23   Texas cases, Your Honor.  They can intervene because

24   they are seeking to cover and/or deal --

25             **THE COURT:**  Seeking a transfer.  So the

1    question is, under the case law, it's under the first

2    instance, could they have brought this case in Texas

3    against Intellectual Ventures, right?

4              **MR. WALDROP:**  Yes, Your Honor.

5              **THE COURT:**  So how could they have done that?

6              **MR. WALDROP:**  I think under -- by

7    intervention, Your Honor, they could have intervened in

8    the case, Your Honor.  And that is completely

9    permissible to intervene.

10             I understand the Court's point about personal

11   jurisdiction over IV in Texas, Your Honor.

12             We would consent to that, Your Honor.  We

13   would have consented to that, Your Honor, if they wanted

14   to intervene, for purposes of not proceeding with this

15   case, Your Honor.

16             **THE COURT:**  Okay.  You didn't say that in

17   your papers, right, that you consent?

18             **MR. WALDROP:**  We did not, Your Honor.  We

19   think it should be dismissed.

20             **THE COURT:**  You moved to transfer.  I get

21   that.

22             **MR. WALDROP:**  We're willing to do it, Your

23   Honor, if that's a gating issue for the Court.  If the

24   Court is inclined to transfer this and that's a gating

25   issue, Your Honor, we can address that.

1          We think it should be dismissed.  We think we

2    get there first, Your Honor.  But if that's the issue,

3    Your Honor, we would entertain that, Your Honor.

4          **THE COURT:**  Okay.  Go ahead.

5          **MR. WALDROP:**  So, Your Honor, if I may, Your

6    Honor, return to this Slide 10, Your Honor, like I said

7    before, Delaware is relevant, Your Honor, only for

8    purposes of a corporation.  There are no known offices.

9    Delaware is not the home of the plaintiff's place of

10   business, and Viasat's principal place of business is in

11   California.

12          In fact, Your Honor --

13          **THE COURT:**  Mr. Farnan knows this.  I don't

14   buy this argument.

15          **MR. WALDROP:**  Okay.

16          **THE COURT:**  I've written many times under the

17   case law, Third Circuit case law, their choice of

18   deference is, they are entitled to a very, very

19   significant, substantial deference, and I don't buy the

20   fact that they're not a Delaware entity or you're not a

21   Delaware entity.  It has nothing to do with it.  I've

22   written on this many times.

23          Next factor.

24          **MR. WALDROP:**  Slide 11, Your Honor.

25   Moreover, Your Honor, the claims don't arise in

1    Delaware, Your Honor.  I think that's important, Your

2    Honor.  It's rooted in Texas.  The bulk of infringing

3    activity relates to infringement happens in Texas, not

4    in Delaware, Your Honor.

5              And on Slide 13, Your Honor, we talk about

6    this, that it's based on Texas actions and by companies

7    in Texas, Your Honor, and that Viasat brought this action

8    because of litigation against Southwest and American

9    directly accuses Viasat's in-flight connectivity, Your

10   Honor.

11             And then, Your Honor, third bullet, this

12   action is based off the Texas litigations, which focuses

13   on acts of infringement in Texas by companies with their

14   places of business in Texas.  Viasat has Texas offices,

15   Your Honor.  We think this favors in the way of transfer,

16   Your Honor.

17             Slide 14.  The convenience of the parties

18   favors transfer here as well, Your Honor.  We think IV

19   would be inconvenienced, Your Honor, if this proceeded in

20   Delaware, given that there are two cases in Texas pending

21   on the exact same patents already underway and would

22   proceed regardless because there are multiple additional

23   suppliers.  The bulk issue that we discussed, Your Honor,

24   bringing witnesses and documents to only one location

25   would minimize the level of disruption, Your Honor.  And

1    so we think that militates in favor.

2              Also, Your Honor, we think judicial economy

3    and efficiency is promoted by being in Texas, where

4    Viasat focuses and says that the -- IV's Delaware

5    corporation status is enough to satisfy in favor of

6    transferring.  We think this weighs in favor of

7    transferring, Your Honor.

8              Now, Your Honor, on Slide 15, Your Honor,

9    Factors 5 and 6, the convenience of the witnesses and the

10   location of books and records, Your Honor.  And as to

11   Federal Circuit law, you know, as you know, third-party

12   witnesses are, by far, the most important factor in the

13   transfer analysis and we think this is also dispositive,

14   Your Honor.

15             Documentary evidence of Southwest and

16   American's use of infringing technology is in Texas.

17   Viasat's documents, Your Honor, where it maintains an

18   office can be produced in Texas.  Viasat's motion does

19   not identify where relevant witnesses and relevant

20   documents are located.  Whether it's in possession,

21   custody, or control, unlike in the *In re Google* case,

22   Your Honor.  And the third parties with respect to this

23   case, Your Honor, meaning Southwest and American

24   employees, they are in Texas, Your Honor.

25             So we think the third-party witnesses issues

1    and convenience of the witnesses issues supports

2    transfer, Your Honor, to Texas or the action proceeding

3    in Texas for purposes of judicial economy.

4         On Slide 16, we have additional factors, Your

5    Honor, which are the public interest factors, Your Honor,

6    all weigh in favor of transfer, which is the multiple

7    proceedings, Your Honor.  Potential countless DJs on top

8    of the Texas actions covering the very same patents,

9    addressing the same issues of claim construction,

10    infringement and the like.  This litigation will be

11    burdensome and costly.  We think the considerations of

12    comity, which the Court alluded to are best served by --

13    if not dismissing the case or staying the case, Your

14    Honor, and the Court's focused on transfer, it would be

15    for this -- resolution of this case to occur in Texas and

16    stick with the first-to-file rule, Your Honor.

17         So we respectfully request that the Court, you

18    know, either dismiss or stay this action, Your Honor, I

19    think is the best course.  But if the Court is not

20    inclined to do that, to transfer it.

21         But I believe, Your Honor, we think that the

22    best course of action is to dismiss, because they cannot

23    meet the customer-suit exception because the bulk of the

24    controversy would not be resolved by their action, but if

25    the Court doesn't want to do that, the Court could stay

1    this action pending resolution of what happens in Texas.

2          And then, third, Your Honor, you could

3    transfer, and we can talk about the mechanism where the

4    Court could accomplish that remedy or that relief, Your

5    Honor, in terms of the things the Court is focused on.

6    We think that's where the Court should land.

7          Now, they have a listing of cases in Slide 17

8    that I just want to talk about, Your Honor.  None of the

9    cases that the DJ plaintiffs puts forth actually address

10   the issue, Your Honor.  They focus on issues that I think

11   are fatal.

12         One is they don't address the bulk issue, as

13   it relates to the facts in this case, meaning you have

14   multiple sources of infringement activity.

15         They don't address the fact that there will be

16   duplicative litigation and comity, Your Honor.

17         And they don't address the fact that the

18   litigation here was first started against the customers,

19   Your Honor, and they have the opportunity to intervene.

20         So I think there case law is indistinguishable

21   -- is distinguishable, Your Honor, but the fatal issue

22   is, Your Honor, the bulk issue.

23         **THE COURT:**  Okay.

24         **MR. WALDROP:**  I don't think they can address,

25   Your Honor.

1          **THE COURT:**  All right.  Thank you very much.

2     Let's have them address that.

3          **MR. WARREN:**  Good morning, Your Honor.  Matt

4     Warren from Warren Kash Warren for Viasat.

5          Bunch of things to do.  I have some specific

6     responses to what Mr. Waldrop said, but I want to start

7     with two sort of overarching issues.

8          The first issue is, is that there's only one

9     Court in which we can resolve all claims regarding

10    Viasat's technology.  That's this Court.  They keep

11    saying we should have intervened in two cases.  We didn't

12    want to be in two cases; we wanted to be in one case.  We

13    chose the option that got us one case.  We sued them in

14    their home forum.  I understand that they object to that,

15    but that was our logic.

16         The second thing is, is that we now know that

17    IV's claims against Viasat are greater than those that

18    will be resolved in Texas.  And so they are indicating

19    that this Court should dismiss this case because the

20    Texas cases will go forward and that will resolve IV's

21    claims of infringement.  That is not so.

22         We moved -- you know, our complaint in this

23    case is for a declaratory judgment of non-infringement.

24    They have now given us the scope of their view of our

25    infringement in their infringement contentions, setting

 1    aside whatever procedural meshugaas occurred there.  We

 2    now know what their view is.  And their view is, is that

 3    airlines, vehicles, and ships infringe.  Airlines,

 4    vehicles, and ships.  Not Southwest and American.  Not

 5    limited to --

 6             **THE COURT:**  Not just Southwest and American.

 7             **MR. WARREN:**  I apologize.

 8             **THE COURT:**  Let's be clear.  I just want to

 9    make sure of that, right?

10             **MR. WARREN:**  Yes, that's correct, Your Honor.

11    Yes.  Absolutely correct.  Yes.  Not just Southwest and

12    American.

13             And so, you know, in light of that, it would

14    be unjust to dismiss this case because it would prevent

15    us from clearing the air, which is the purpose of a

16    declaratory judgment.  You know, we saw them accuse our

17    technology.  We saw their infringement contentions accuse

18    our technology in the Texas case.  We brought this case.

19    They've now told us that their claims are broader.

20             **THE COURT:**  They served theirs when?

21             **MR. WARREN:**  June 12, Your Honor.

22             **THE COURT:**  And none of this is in the

23    briefing?

24             **MR. WARREN:**  None of this is in the briefing.

25    I apologize for that.

1          **THE COURT:**  You don't need to apologize.

2          Intellectual Ventures, do you dispute that?

3     Do you dispute that?

4          **MR. WALDROP:**  Dispute?  I'm sorry, Your

5     Honor.

6          **THE COURT:**  That, in fact, your contentions

7     go beyond the airlines and that your contention is that

8     there's infringement of the asserted patents.  When I

9     say "asserted patents," the patents at issue in this

10    case, goes beyond Viasat's provision of the accused

11    products in airlines.  That it, in fact, also addresses

12    boats and, was it automobiles?  That's in your

13    contentions; is that right?

14         **MR. DOWNING:**  Yes, I'd like to answer that

15    briefly in two ways, Your Honor.

16         Our contentions do mention boats, vehicles.

17    Basically, the systems that infringe -- infringe some

18    way.  We don't know what that is at this point.

19         **THE COURT:**  Okay.  But that's what you've

20    said.  I want to make sure that's clear.

21         **MR. DOWNING:**  That's clear.

22         **THE COURT:**  Okay.  All right.  Thank you.

23         **MR. WALDROP:**  For purposes of this, Your

24    Honor, we're not alleging -- we have not accused other

25    Viasat customers, Your Honor, for which --

1          **THE COURT:**  I get it.

2          But you've said that their patents, to the

3     extent they're employed in automobiles and boats, would

4     infringe the patents at issue in the case?

5          **MR. WALDROP:**  May.  May.

6          **THE COURT:**  All right.

7          **MR. WARREN:**  In light of that, Your Honor, I

8     don't think that there's any justice in dismissing this

9     case because we would then be deprived of a resolution

10    of anything beyond American and Southwest.  That

11    includes all the other airlines and whatever other

12    vehicle or boat-related claims that we want to resolve.

13    We want to resolve everything.  We want to clear the

14    air.

15         Let me quickly turn to the motion --

16         **THE COURT:**  So under that theory, we don't

17    even really have a first-to-file situation.

18         **MR. WARREN:**  I guess I would agree with that,

19    Your Honor.  But I would note that we do very much

20    maintain that even if there is a first-to-file

21    situation, the customer-suit exception allows our

22    manufacturer suit to override whatever else is occurring

23    with the overlap for American and Southwest.

24         **THE COURT:**  Okay.  Go ahead.

25         **MR. WARREN:**  Okay.  So, yes, you are correct,

1    that in that way, we are the first to file.  We are

2    obviously the first to file between Viasat and IV.  They

3    don't contest that.  They simply say that our claims are

4    subsumed in the Texas cases.  And my point is, is that

5    their infringement contentions make that incorrect.

6             **THE COURT:**  All right.  Hold up.  Give me one

7    second.  All right.

8             Okay.  Go ahead.

9             **MR. WARREN:**  Thank you, Your Honor.

10            Turning to the motion to transfer, which I'd

11   like to get rid of before we go back to *In re Google* and

12   some of the meatier stuff, I think I have now heard from

13   IV their agreement that this case could not have been

14   brought in Texas.  They talked a little bit about we

15   could have intervened.

16            But I believe they have now agreed that this

17   case could not have been brought in Texas.  That disposes

18   of the motion to transfer.

19            The Court cannot transfer the case into a

20   jurisdiction where it could not have been brought.  We

21   briefed this in our opposition.  We talked about how, you

22   know, if there's a substantial question as to whether the

23   case could have brought in the forum, then you cannot

24   transfer the case.  And we obviously think there was a

25   substantial question.  We found absolutely no case where

1    any IV entity was a defendant in either the Eastern

2    District or the Western District of Texas.  They were

3    obviously counterclaim defendants, but that's different

4    because once you're the plaintiff --

5             THE COURT:  They're plaintiffs many times.

6             MR. WARREN:  Yes.  Plaintiffs there many

7    times, that's right.

8             But they've never been defendants.  And we

9    looked at this, and we didn't see any way to sue them

10   anywhere other than here.

11            THE COURT:  Well, how about the fact that

12   they've been plaintiffs?

13            MR. WARREN:  I'm sorry?

14            THE COURT:  How about the fact that they've

15   been plaintiffs?

16            MR. WARREN:  That is irrelevant to the

17   personal jurisdiction analysis, Your Honor.  It doesn't

18   -- and believe me, I've argued the opposite side of that

19   issue, and it wasn't a pleasant experience.  But it

20   doesn't --

21            THE COURT:  You've argued that, you've

22   attempted to gain jurisdiction based on a party's

23   plaintiff status?

24            MR. WARREN:  Previous lawsuit in the same

25   court.  Yes, Your Honor.

1          **THE COURT:**  I heard that argument many times

2    here, too.

3          **MR. WARREN:**  I don't recall that moment with

4    particular pride, Your Honor, but I'm not making that

5    argument here today.

6          And so I don't know if the Court wants to go

7    through the *Jumara* factors.

8          **THE COURT:**  I don't want to go through the

9    *Jumara* factors.

10         **MR. WARREN:**  Okay.  It's dispositive.  I will

11   note that they have now, for the first time, offered to

12   consent to jurisdiction.  That is coming up for the

13   first time today.

14         I don't have a case citation because this

15   wasn't an issue, but if the Court researches this, the

16   Court will find that consent jurisdiction is insufficient

17   under 1404(a), presumably for exactly this reason, to

18   prevent, you know, people from consenting when they

19   wanted to --

20         **THE COURT:**  To prevent defendant forum

21   shopping.  Right.

22         **MR. WARREN:**  Exactly.

23         **THE COURT:**  I am familiar with that case law

24   as well.

25         **MR. WARREN:**  Okay.  Great.  Good.  Then I

1    don't have to cite it because I can't.

2            Turning back to the main issue that IV raised

3    on the -- on this motion, which is, you know, *In re*

4    *Google*.  They look at *In re Google*, and they say *In re*

5    *Google* is a case where Viasat should win.  But this case

6    is not *In re Google*.

7            I respectfully disagree, Your Honor.  I think

8    this case is very close to *In re Google*.  *In re Google*

9    was actually my first case, well, my first big case as a

10   partner.  I'm very familiar with it.  And it's very

11   similar.  I will note a couple of things.

12           They say that *In re Google,* Google was the

13   undisputed manufacturer.  That is not so.  It was a

14   hotly-contested issue.

15           And the Rockstar plaintiff said over and over

16   again, no, no, no, no, we're not going after Google,

17   we're going after devices, and those devices have

18   hardware, and the hardware is important and it's -- it

19   could be different.

20           And Android, as Your Honor probably knows, can

21   be customized from various device maker to various device

22   maker.  That was a whole issue of dispute in that case.

23   And we prevailed because --

24           **THE COURT:**  Who is the "we" there?

25           **MR. WARREN:**  I'm sorry.  "We" being Google.

1    Google prevailed.  I apologize.

2            Google prevailed because the Federal Circuit

3    looked at the infringement contentions and said, These

4    infringement contentions accuse the -- the infringement

5    that is occurring in this contentions, and all the

6    infringement contentions were in the record on mandamus

7    before the Federal Circuit.  They said these infringement

8    contentions accuse.  The infringement is complete inside

9    the Android software that Google is providing to the

10   device makers.

11           And that is exactly the case here.  The

12   infringement is complete inside, according to them, both

13   in this court and in Texas, and we briefed this

14   substantially in multiple cases, in multiple briefs,

15   their alleged infringement is complete inside Viasat's

16   system.  And under those circumstances, the Federal

17   Circuit has said that the customer-suit exception

18   applies.

19           Now, IV has talked a little bit about the

20   portal of various things, but it turns out that if Your

21   Honor looks at the patent -- and, again, this is all in

22   our briefing -- the thing that they're talking about is

23   either charted against Viasat -- everything they're

24   talking about is either charted against Viasat, and we

25   provided pictures.  It's actually -- there's better

1    pictures in the motion for preliminary injunction.

2              Everything that they dispute is either charted

3    against Viasat or allows the user to be the web portal.

4    So the patent talks about how your phone can be the web

5    portal, or both.  And under those circumstances, I think

6    *In re Google* does apply.

7              I want to turn also to a couple specific

8    arguments, then I'll get to the bulk, which, I think, was

9    the bulk of the argument from IV.

10              They mentioned, specifically, this doctrine in

11    the Western District of Texas, which is that the Western

12    District of Texas doesn't stay a case unless the customer

13    agrees to be bound to all aspects of the manufacturer's

14    suit.

15              There was, perhaps, a miscommunication there

16    because, as Your Honor noted, we had only sought

17    non-infringement.  Southwest initially agreed to be bound

18    to non-infringement.  They raised this issue in Texas.

19    And in a supplemental brief filed after the close of

20    briefing in this case, Southwest said, "We agree to be

21    bound by non-infringement right now and also invalidity,

22    if it comes up in Delaware."

23              And that is *IV versus Southwest*.  The Case

24    Number is 24-277 D.I. 49 at --

25              **THE COURT:**  Hold on.  Do you dispute this?

1    Either one.  I'm pointing you to you because you're the

2    one who can answer the questions about the Texas

3    litigation.  Mr. Waldrop did the motion, but I'm

4    pointing to you because you seem to be the one who --

5              **MR. DOWNING:**  You're right.  I don't recall.

6    I would have to look into it, Your Honor.  I believe he

7    said Southwest.  I don't know about American or about --

8    Viasat is in both American and Southwest case, but I

9    believe that in those cases, the language said that you

10    have to agree to everything.

11              I know there's a validity contention in that

12    line in our scheduling order that we talked about earlier

13    today.  It's very simple, what you do is you say I'm

14    going to put this -- and step completely into the shoes.

15    I'm going to take responsibility for everything that

16    happens in that case, and we don't believe that that's

17    been done.

18              **THE COURT:**  Well, he just said it has.

19    That's why I'm asking if you would disagree about this

20    filing in Texas, apparently, that occurred afterwards.

21              I'm not sure it's going to matter that much,

22    so let's just move on.

23              **MR. WARREN:**  Fair enough, Your Honor.

24              Okay.  I'll put this over here for a second.

25    Let me also note that IV argued that there was,

1      essentially -- I don't totally understand this argument,

2      but it seems to be that we have some sort of affirmative

3      burden to step forward and show that the documents are in

4      our possession, custody, and control and that we are --

5      you know, we have all the witnesses and all those things.

6                First of all, we do.  I've talked to a bunch

7      of them.  You know, we are the provider of this

8      technology to the airlines.  But Your Honor doesn't have

9      to take it from me.  If Your Honor is worried about that

10     issue, I would direct Your Honor one more time to

11     Southwest's supplemental post discovery.

12               There was discovery into this issue ordered by

13     Judge Albright in the Western District.  And Southwest

14     filed something and, again, I'll just cite to it.  It's

15     the same document that I cited to, case 24-277 D.I. 49,

16     and that document has citations and it has discovery, and

17     it goes in to, over and over again, how they don't know

18     how this works and they depend on us.

19               And, again, the Court doesn't have to take it

20     from me.  There's evidence and briefing in the Southwest

21     case following this discovery ordered by Judge Albright.

22               We did mention -- in one of our briefs, we did

23     mention that there had been some interrogatory responses,

24     but everything after that occurred after the close of

25     briefing here.

1          Okay.  Let me turn to Your Honor's biggest

2     question about the law.  And Your Honor said, how does

3     the Federal Circuit think about it differently from the

4     Third Circuit.

5          **THE COURT:**  Actually, I did posit that

6     question, but I think the bottom line is, and I've

7     already made a finding.  I mean, I think the law is

8     explicit.  Although I asked you the question just to

9     kind of tee up the issue, so I could hear from both

10    sides, but I obviously read into the record something I

11    had written.  I made a finding that the Federal Circuit

12    law applies.

13         **MR. WARREN:**  So, I apologize, Your Honor.  I

14    wasn't rearguing that point.

15         **THE COURT:**  Okay.

16         **MR. WARREN:**  I'm now addressing, essentially,

17    after Your Honor made that finding, IV pivoted, and

18    doing the best they can, said the factors are the same

19    either way.

20         **THE COURT:**  Okay.

21         **MR. WARREN:**  And, that, I disagree with.

22         **THE COURT:**  All right.

23         **MR. WARREN:**  And, there, I would direct Your

24    Honor to Page 6 of Document 17, which is our opposition

25    to the motion to dismiss.

1           **THE COURT:**  All right.  I'm reading it right

2     now.

3           **MR. WARREN:**  Okay.  Section B.  And, you

4     know, down at the bottom it says, "When a case fits the

5     customer-suit exception, courts confirm that litigation

6     against or brought by the manufacturer of infringing

7     goods takes precedence over a suit by the patent owner

8     against the customers and the manufacturer."

9           **THE COURT:**  Right.  So then you should be

10    arguing, I've asked you to argue right away, what is the

11    customer-suit exception and how does it apply here?

12          **MR. WARREN:**  The customer-suit exception is

13    literally --

14          **THE COURT:**  You want to deal with, you know,

15    there are multiple manufacturers, there's more than,

16    there are four other patents that are down there that

17    are addressed that are not part of this case.  Why don't

18    you address those.

19          **MR. WARREN:**  I will address those points,

20    Your Honor.

21          First of all, in *In re Google*, there was

22    another patent at issue.  There's only one, but there was

23    another patent at issue, the '551 patent.  And everybody

24    agreed that Google didn't have anything to do with the

25    '551 patent.

1          And this was a big point of argument on

2    mandamus for Rockstar.  They said what the '551 patent.

3    The poor '551 patent, what's going to happen to it.

4          And the Federal Circuit stayed all those

5    cases, including that patent, to allow the California

6    case to go forward against Google.  And then we don't

7    know what happened after that because the case settled.

8    But the Federal Circuit was perfectly happy doing that.

9          Now, we are not asking for that relief.  Okay?

10   We know there are other patents at issue.  It's important

11   to note that --

12         **THE COURT:**  You're not asking for that relief

13   right now.  Well, let's be clear.  You're not asking for

14   any relief right now.  You are opposing their request

15   for relief.

16         We haven't gotten to the motion for

17   preliminary injunction.  You are asking for relief in

18   another motion.

19         Let's not make it part of this motion.

20         **MR. WARREN:**  Okay.  So then what *In re Google*

21   stands for in that case is the -- and I won't go further

22   because I guess I'll address it on the other motion, but

23   *In re Google* certainly says that just because there's

24   another patent at issue doesn't mean that the

25   manufacturer suit doesn't take precedence.

1          I think I'll rephrase that so I'm not using a

2     double negative.

3          Even when there are other claims at issue, the

4     manufacturer suit takes precedence.

5          **THE COURT:**  And you are relying on *Google* for

6     that?

7          **MR. WARREN:**  I am relying on *Google* for that.

8     I'm relying on the *Finisar* case, which is in the

9     District Court, and I think I'm also relying on one

10    other one, but I'm not sure, and it's in our briefing.

11         **THE COURT:**  By the way, *Google* is

12    non-precedential.

13         **MR. WARREN:**  That's true, Your Honor.

14         **THE COURT:**  Okay.

15         **MR. WARREN:**  It is routine.  I will submit to

16    Your Honor, as a working lawyer, I don't really know

17    what that means.

18         **THE COURT:**  It is means it's not

19    precedential.

20         **MR. WARREN:**  Yeah.  People do cite it all the

21    time.  And the logic of it has been applied by a lot of

22    district courts.

23         **THE COURT:**  Bottom line, you would agree,

24    right, ultimately, this is a discretionary call by me?

25         **MR. WARREN:**  With regard to the preliminary

1     injunction or with regard --

2              THE COURT:  We are not arguing the

3     preliminary injunction right now.  We are arguing the

4     first-to-file rule and the motion to transfer, motion to

5     stay, motion to transfer.  You agree this is a

6     discretionary call on my part?

7              MR. WARREN:  I think with the exception of

8     the motion to transfer, which I do think would be an

9     error of law.

10             THE COURT:  Because of the 1404(a).

11             MR. WARREN:  Because of 1404(a).

12             THE COURT:  Yeah.  But put that aside.  Yeah,

13    because you would say I don't have discretion to

14    transfer.

15             MR. WARREN:  Correct, Your Honor.

16             THE COURT:  Because they don't meet the

17    statutory requirements of 1404(a).

18             Let's then leave it, the motion to stay and

19    the motion to dismiss, you would agree are discretionary

20    calls.

21             MR. WARREN:  Again, I will make a slight

22    exception with regard to the fact that we all now know,

23    and this wasn't in the briefing because --

24             THE COURT:  Put aside.  A general thing of

25    just, I know what you're going to argue, that --

1          Well, actually, so how, even given that now,

2    the June 12 contentions go beyond the scope of the case

3    in Texas --

4          **MR. WARREN:**  Yes.

5          **THE COURT:**  -- you're going to say that it's

6    no longer discretion, but as a matter of law, I have to

7    proceed with this case?

8          **MR. WARREN:**  I don't think I am going to say

9    that, Your Honor, because the Discretion Judgment Act

10   does include an element of discretion.  I am a little

11   over my skis here because, again, this wasn't an issue

12   that --

13         **THE COURT:**  Right.  So I thought you would

14   have just agreed, yeah, this is a discretionary call.

15         **MR. WARREN:**  I think I am agreeing with Your

16   Honor, after putting myself through some torture, I

17   think is the answer to that question.

18         **THE COURT:**  You hit a mogul pretty hard.  Go

19   ahead.

20         **MR. WARREN:**  So -- okay.

21         **THE COURT:**  Since that, let's just deal with,

22   there's four manufacturers.  Do you dispute that?

23         **MR. WARREN:**  There are four manufacturers.

24   There's a little bit more nuance to this than I think IV

25   has given, which is that there are two manufacturers for

1    Southwest, Viasat and Anuvu.

2                Anuvu has also filed a declaratory judgment

3    case that is before Your Honor.

4                **THE COURT:**  Right.

5                **MR. WARREN:**  Unlike us, they haven't pressed

6    the issue forward.  I think as soon as we get a ruling

7    on this case, they will presumably act in consonant with

8    that ruling, although I don't know, I don't represent

9    them.

10               But if the Anuvu case and the Viasat case go

11   forward in this court, then the allegations on these

12   patents against Southwest would go away.

13               And so -- because there are no other

14   manufacturers --

15               **THE COURT:**  Wait, wait, wait.  Sorry.

16               Why is that?

17               **MR. WARREN:**  Because there are no other

18   manufacturers alleged for Southwest.

19               Well, I apologize, Your Honor.  I'm assuming,

20   in this case, that there's some sort of judicial ruling

21   that this case should go forward and those cases should

22   not, to the extent they overlap.

23               **THE COURT:**  Again, we are not dealing with

24   the preliminary injunction.

25               **MR. WARREN:**  Okay.  I apologize.

1          **THE COURT:**  I have to tell you, I'm very

2     disinclined to enjoin another district court judge from

3     doing anything, for what it's worth.

4          So I view these as very, very discrete motions

5     that are before me.

6          **MR. WARREN:**  Understood, Your Honor.

7          **THE COURT:**  All right.

8          **MR. WARREN:**  And so I will just say Viasat

9     and Anuvu are the suppliers for Southwest.  Viasat,

10    Panasonic, and I believe, Intelsat are the suppliers for

11    American.  I had to think about that.

12         **THE COURT:**  All right.

13         **MR. WARREN:**  And, again, in this situation,

14    in *In re Google*, right, there were other suppliers.

15    There were suppliers of the hardware that was accused in

16    the '551 patent.  And so, to me, when I looked at the

17    Federal Circuit resolution of *In re Google,* I see that

18    and I say, well, you know that's, essentially, the same

19    thing that happened here.

20         I will also direct the Court to the *Finisar*

21    case where there were even more -- the numbers were a

22    little different.  I don't recall the numbers off the top

23    of my head, but in the *Finisar* case, there were even more

24    suppliers than were occurring in the *Google* case.  Right?

25         There was -- there were -- I think by the time

1    that case went up on mandamus, two of the cases might

2    have settled, but there were at least five cases left.

3          So at that point, there were five hardware

4    suppliers represented by the different defendant groups,

5    you know, Samsung, HTC, ZTE, and so on and so forth.  So

6    there were multiple hardware suppliers.

7          And it was also a contested issue as to

8    whether Google was the sole software supplier, but that's

9    a different question.

10          **THE COURT:**  All right.  Just for clarity of

11    the record, so there are six patents asserted in both

12    the Southwest and the American case; is that right?

13          **MR. WARREN:**  So that was true as of the time

14    of the briefing.  IV has thrown a bit of a wrench in the

15    works in Texas because they have moved to add additional

16    patents.

17          **THE COURT:**  Okay.  In both cases?

18          **MR. WARREN:**  In both cases.

19          **THE COURT:**  All right.  Is it fair, though,

20    to say that the asserted patents and even the proposed

21    additional patents are the same for both Southwest and

22    American; is that right?

23          **MR. WARREN:**  Yes, Your Honor.

24          **THE COURT:**  Okay.  And then it's also, just

25    to confirm --

1          **MR. WARREN:** One correction, Your Honor.  I

2     think there's one patent missing on the Southwest case.

3          **THE COURT:** Oh.

4          **MR. WARREN:** But that's -- yes.  So the six

5     original patents are the same, and I believe --

6          **THE COURT:** Well, you know what, let's just

7     do that because the bottom line is, even if they are

8     proposed, they are not added yet, right?  So there's six

9     asserted patents right now?

10          **MR. WARREN:** Southwest has agreed to add them

11     in exchange for an extension of their schedule.

12          **THE COURT:** Okay.

13          **MR. WARREN:** American, as far as I can tell,

14     is fighting like the dickens.

15          **THE COURT:** I see.

16          Now, the other thing you'll confirm for the

17     record is that both Southwest and American are being

18     indemnified by your client; is that right?

19          **MR. WARREN:** Yes, Your Honor.

20          **THE COURT:** You can confirm that.  That's on

21     the record already.

22          And then you can confirm that there's only two

23     patents, though, in this case that are asserted in either

24     of the Southwest and American cases, correct?

25          **MR. WARREN:** Yes, Your Honor.

1          THE COURT:  All right.  But it's asserted in

2     both cases?

3          MR. WARREN:  Yes, Your Honor.

4          THE COURT:  Both patents.  Okay.  Anything

5     else you want to add?

6          MR. WARREN:  Not unless Your Honor has any

7     questions.

8          THE COURT:  Very, very brief rebuttal.  I

9     mean like two minutes max.

10         MR. WARREN:  Thank you, Your Honor.

11         THE COURT:  Before you get to anything, you

12    agree this is a discretionary call on my part, correct?

13         MR. WALDROP:  Your Honor, the short answer, I

14    think on the dismissal, Your Honor, I think they don't

15    -- I think as a matter of law -- it is your discretion,

16    Your Honor, but as a matter of law, they can't meet

17    their burden that the customer-suit exception applies.

18    But, yes, Your Honor, you can decide this under your

19    discretion, Your Honor.

20         I think the motion to dismiss --

21         THE COURT:  You're saying as a matter of law,

22    the customer-suit exception doesn't apply?

23         MR. WALDROP:  I do think so, Your Honor.

24         THE COURT:  Do you want to show me a case

25    that says that?

1          **MR. WALDROP:**  I think the -- I'm asking that

2     you live in their world.  *In re Google,* Your Honor, I

3     think in *In re Google*, the bulk --

4          **THE COURT:**  *In re Google*, we just established

5     it's not even a precedential case.

6          **MR. WALDROP:**  Your Honor, but I think that's

7     what they argued in their motion, Your Honor, and what

8     else would the Court look to for purpose of support of

9     their motion?

10          **THE COURT:**  Well, I think we can just go back

11     to the first-to-file rule, rather, that's your argument,

12     rather.

13          **MR. WALDROP:**  Yes, Your Honor.

14          **THE COURT:**  They filed the case in this

15     court.

16          **MR. WALDROP:**  So that's my point, Your Honor.

17     We are the first to file because we have threatened no

18     one with lawsuits outside of Southwest and American.

19          **THE COURT:**  First to file?  You're telling me

20     as a matter of law first to file applies, that I have to

21     stay or dismiss their case as a matter of law?

22          Show me a case that says --

23          **MR. WALDROP:**  Your Honor, it's in your

24     discretion.  I'm saying it's in your discretion.

25          **THE COURT:**  Oh, it is in my discretion?

 1          **MR. WALDROP:** It's in your discretion.  But

 2   I'm saying, Your Honor, if you were to apply the law,

 3   Your Honor, that's what it would lead to.

 4          **THE COURT:**  All right.  Then go ahead.

 5          **MR. WALDROP:**  So just briefly.

 6          One, Your Honor, one, we are first to file.  I

 7   just want to be clear because there is no threat by IV

 8   against any other customer of Viasat, other than

 9   Southwest and American, and we were the first to file

10   against them.

11          We don't even know if they make technology

12   related to boats and automobiles, Your Honor.

13          **THE COURT:**  But you alleged that in your

14   contentions.

15          **MR. WALDROP:**  That the technology relates to

16   boats and automobiles, but we don't even know if they

17   do.  So we are the first to file.  I just I want to make

18   sure, Your Honor, I want to make sure there's no

19   confusion about that we are first to file.  There has

20   been no threats of any litigation outside of Southwest.

21          **THE COURT:**  Can I see...

22          First of all, is your system in anything but

23   airplanes?

24          **MR. WARREN:**  I'm sorry, Your Honor?

25          **THE COURT:**  Do you have the system that your

1    client makes, is it in anything other than airplanes?

2              **MR. WARREN:**  Depends on what Your Honor means

3    by a "system."  We do sell a satellite, remote satellite

4    connectivity solutions in many markets.

5              **THE COURT:**  Are they in boats and in cars?

6              **MR. WARREN:**  I don't know about cars.  I

7    think the answer to boats is yes.

8              **THE COURT:**  All right.

9              **MR. WALDROP:**  We don't know, Your Honor.

10   First we heard it.  We don't know that.

11             **THE COURT:**  First they heard that you were

12   going to incorporate.  You did use boats in your

13   contentions.

14             **MR. WALDROP:**  Yes, Your Honor.

15             **THE COURT:**  Okay.

16             **MR. WALDROP:**  But not any particular customer

17   Viasat, but just the technology, to the extent it is

18   used in those, it would be --

19             **THE COURT:**  Yes, you want to make sure you're

20   covered.

21             **MR. WALDROP:**  Yes, Your Honor.  It's

22   catch-all language, Your Honor.  It's not for purposes

23   of expanding the scope.  It's catch-all language to -- I

24   just want to be very clear on that because that's a

25   very, very important point, Your Honor.

1          We are first to file, and we don't want to

2    give that up just because they are citing to something

3    that's not true.

4          Only two threats of litigation, Your Honor,

5    Southwest and American.  There's nothing beyond that.

6          So I don't even think they could meet the DJ

7    requirement, Your Honor, as a matter of law.  They don't

8    have -- they don't have a threat of litigation such that

9    they could get beyond Southwest and American to prevent

10   application of our first-to-file status, if you

11   understand what I'm saying, Your Honor.

12          **THE COURT:**  Okay.

13          **MR. WALDROP:**  So that isn't movable.  I want

14   to make sure -- just make sure that's clear in the

15   record.

16          **THE COURT:**  Let me ask you this, Viasat, do

17   you sell products to any airlines beyond Southwest and

18   American?

19          **MR. WARREN:**  Yes, Your Honor.  We sell

20   products to every major U.S. airline.  That's on our

21   website.  We put that in our briefing.

22          **THE COURT:**  Thank you.

23          **MR. WALDROP:**  We've made no threats to any of

24   those outside of Southwest and American.

25          **THE COURT:**  Okay.  All right.  Thank you.

1        Anything else?

2            **MR. WALDROP:**  Two, Your Honor.  Southwest

3    did -- I know there's factual things -- this goes to the

4    economy issue, Your Honor.  Southwest has confirmed

5    there are four suppliers, both American and Southwest,

6    four suppliers.  We have a dispute there are four.

7            And then lastly, Your Honor *In re Google*, he

8    stands -- he made my point from our argument.  There was

9    one patent, out of eight or nine in *In re Google,* that

10   didn't apply, that didn't involve Google.  So the bulk

11   issue, I think, proves our point, Your Honor.

12           **THE COURT:**  Right.  But you don't dispute

13   that there was one patent that was beyond the patent at

14   issue --

15           **MR. WALDROP:**  There was one of nine.

16   Exactly.  Exactly.

17           **THE COURT:**  Okay.

18           **MR. WALDROP:**  The bulk --

19           **THE COURT:**  If it was two of nine --

20           **MR. WALDROP:**  Yeah.  It would be the flip

21   side.  So they can't make it here.

22           **THE COURT:**  Okay.

23           **MR. WALDROP:**  If it was four, if it was five

24   of that -- if it was four of six.  If he came and said,

25   look -- it would have to be the flip, Your Honor, is my

1    point.  He actually made my point for me.

2              The Federal Circuit stayed because there was a

3    point of the bulk, the vast majority, 80 percent, 90

4    percent, would be resolved by resolving this.  They can't

5    get there because it's two out of six at the time, and I

6    think there's now, Your Honor, an additional five.  They

7    don't have the bulk there, is my point.  He made my point

8    for me.

9              **THE COURT:**  All right.  Thank you.

10             **MR. WALDROP:**  And I said, Your Honor, if it

11   was *In re Google*, we wouldn't be having -- we would be

12   having a different conversation.

13             **THE COURT:**  Right.  But, again, it's not a

14   precedential opinion.

15             **MR. WALDROP:**  Yeah.  Right.  I'm just living

16   in their world, Your Honor, just trying to address their

17   point.

18             **THE COURT:**  Yeah.  You all can live in the

19   world there but it's a non-precedential opinion.

20             **MR. WALDROP:**  Thank you.

21             **THE COURT:**  But I will take guidance from it,

22   and here is how I'm going to rule.  I'm going to

23   exercise my discretion.  I am going to deny the motion.

24             Let me start with the motion to transfer.  As

25   an initial matter, I do think as a matter of law you have

1   to establish jurisdiction under 1404(a), and that was

2   just not done.  There is not a record.  There is a burden

3   to establish that.  And, if I, frankly, went through the

4   *Jumara* factors, I would, especially given the emphasis in

5   the *Shutte,* the Third Circuit case, that you to have

6   place on the plaintiff's initial choice of forum, I

7   would, and the other factors, it strikes me, do not

8   outweigh, and it has to substantially outweigh that.

9           But since we are on the 1404(a), I am not even

10   to go into the discretionary factors, other than just to

11   give you that broad reading.  So that takes care of the

12   transfer motion.

13          Now, on the motion to stay and motion to

14   dismiss, the threshold question is whether or not we

15   actually have a first to file.  And I am going to find,

16   as an initial matter, that we don't.  So the complaint

17   seeks a declaratory judgment of non-infringement of the

18   '326 patent, in Counts 1 and Counts 2.  And in Counts 3

19   and in Counts 4, or in Count 3, rather, it seeks a

20   declaratory judgment of non-infringement of the '469

21   patent.

22          All right.  The reason why they've got the two

23   counts for the '326 patent is because in Count 2, there's

24   non-infringement based on exhaustion.  All right.

25          What I find important is that in Paragraph 67,

1    in Paragraph 72, and in Paragraph 76, it's made clear

2    that the declaratory judgment sought would be for

3    non-infringement of the patents in question by, quote

4    "Viasat and its products, including Viasat's in-flight

5    connectivity systems," unquote.

6            So the declaratory judgment sought goes beyond

7    the in-flight connectivity systems that are at issue in

8    the litigation in Texas.

9            And then when you add to that the June 12

10   contention, which is a preliminary contention, I get it,

11   that might be brought, there's no more argument.  We've

12   had argument.  It's almost 12:00.  I've been here for

13   almost three hours, I've read the briefs, we've had

14   argument.

15           **MR. WALDROP:**  Yes, Your Honor.

16           **THE COURT:**  Okay.  You can please sit down.

17   Now, I lost my thought.  But basically, I will repeat,

18   then.  I don't think the first-to-file rule even

19   applies.

20           **MR. WALDROP:**  Yes, Your Honor.

21           **THE COURT:**  I think the scope of the DJ

22   sought here is beyond what the infringement would be in

23   Texas, and I think that is confirmed by the June 12

24   contentions, if there were any doubt.

25           And so, first of all, I don't think the

1    first-to-file rule applies.  Had I determined that the

2    first-to-file rule applies, I would still deny the motion

3    because I do think there are great judicial efficiencies

4    with us litigating these, whether or not the Viasat

5    system infringes the two patents in question.  And I

6    think you would avoid, you potentially could avoid

7    conflicting rulings.  We'll see.  And we will get to that

8    because we still have to litigate the preliminary

9    injunction motion.

10          So I think judicial economy would favor the

11   case going forward here, and I think that I am especially

12   persuaded by that, given that there's indemnification of

13   both defendants in the Texas litigation.  And that's a

14   factor that the Federal Circuit considers when it

15   considers the first-to-file rule, and when it considers

16   the manufacturing exception.

17          You know, *Google* is non-precedental, and I

18   don't know of a case that says that just because there's

19   four manufacturers versus one, that should dictate how to

20   resolve the issue before me.  And so it is true there may

21   be.  But when I also look at the record that was provided

22   to me about the assertions in the Texas courts, that

23   clearly focused on Viasat.

24          So, anyway, I'm going to deny the motion to

25   stay and dismiss for those grounds and allow the case to

1    proceed here.

2          All right.  And I'm doing it as a

3    discretionary matter.  I've read *Google,* but find, again,

4    it's non-precedential decision.  I don't think even if it

5    were a precedential decision it dictates a result

6    otherwise in this case.  All right?

7          Now, let's hear the preliminary injunction

8    issue.  Let's be brief because I am very, very reluctant

9    to enjoin two different judges, both of whom are very,

10   very skilled in patent litigation.

11         And, for all I know, you know, they could very

12   well decide a variety of ways to proceed with their case,

13   including staying the cases, staying part of the cases.

14   And, you know, just very reluctant to do it.

15         **MR. WARREN:**  I understand the Court's

16   reluctance.  I will try to be brief, and I will address

17   the Court's point directly.

18         I think the Court is going to say that this is

19   not a distinction that is worth a difference, but the

20   injunction that we are seeking is not an injunction

21   against another Court, it is an injunction to require IV,

22   as a party, to stay action in another Court.

23         **THE COURT:**  Right.  Look, actually, I should

24   have said, I do appreciate that difference.  If you had

25   asked me to enjoin the Court, we wouldn't even have oral

1    argument.  I will just tell you that right now.  As a

2    practical matter, right?

3              **MR. WARREN:**  And I like to think that I would

4    be smart enough not to do that, Your Honor.

5              **THE COURT:**  I've actually had the ITC people

6    have a lawyer in here, had to litigate against somebody

7    who had asked me to enjoin a tribunal.  So it wouldn't

8    be the first time.  So go ahead.

9              **MR. WARREN:**  I will bear in mind that our

10   injunction also has another element, which is enjoining

11   IV from bringing additional cases against Viasat

12   customers.  We have asked them over and over again

13   whether or not they can confirm that they won't do that,

14   and we have been met with resounding silence.

15             **THE COURT:**  Why don't we wait and see.  I

16   think we've got lawyers over here who understand what

17   could occur were they to bring subsequent suits against

18   customers, now that I'm allowing this case to go

19   forward.

20             So it's probably something I don't have to

21   tackle right now.  By the way, were I to deny it, which I

22   think I will, but it's going to be without prejudice.

23   But go ahead.

24             **MR. WARREN:**  I appreciate that.  Let me make

25   two quick points, Your Honor, and then, hopefully, we

1    can all go have lunch.

2    　　　　Your Honor has noted that the, you know,

3    potential preferences of the other judges and that they

4    are, you know, they may be managing their cases.

5    　　　　I hate to go back to *In re Google*, but I have

6    to because there's a very, very on-point thing that

7    happened in that case.

8    　　　　So, in that case -- I'll do a little bit of

9    chronology.  In that case, Rockstar brought seven

10    separate cases in the Eastern District of Texas against

11    HTC, Pantech, LG, ZTE, Huawei, ASUSTeK and Samsung.

12    Google filed a declaratory judgment action against

13    Rockstar in the Northern District of California.

14    Rockstar then amended its complaint against Samsung to

15    add Google.  So Google was now a defendant in the Eastern

16    District of Texas.  Rockstar moved to transfer the

17    California case to Texas.  Google and the other

18    defendants moved to transfer the Texas cases to

19    California.

20    　　　　So we had competing motions to transfer.  The

21    Texas Court ruled first.  On July 1st of 2014, the

22    Eastern District of Texas denied the motion to stay or

23    transfer.

24    　　　　On August 14th, defendants filed a petition

25    for mandamus.  On August 20th, the Northern District

1    issued and order, and it was canned an order deferring

2    ruling.  And the Northern District said I'm not going to

3    rule right now on Rockstar's motion to transfer this case

4    to Texas, but added, quote, "If the customer suits were

5    to proceed in Texas, the Court would likely transfer this

6    action there," close quote.  And that's Docket

7    Number 105, if anyone wants to go look that up.

8         And then two days later, Rockstar's mandamus

9    brief was due in opposition to Google's motion for

10   mandamus, and Rockstar obviously took this and ran with

11   it and they said, quote, "Upon hearing that the Texas

12   Court had decided that the related cases should proceed

13   in the EDTX, the NDCA Court indicated that it is disposed

14   to transfer the NDCA case to that forum.  This is federal

15   comity and judicial efficiency in action."  Close quote.

16        And so the Federal Circuit had squarely before

17   them two judges, one judge who said, I want this and the

18   other judge who said, you take it.  And they ruled, as

19   the Court knows, that it should go to California.  It

20   should go to the judge who said, you take it.

21        **THE COURT:**  All right.  So here's what I will

22   do.  I happen to know Judges Albright and Mazzant.  I

23   think the case should be here, and that's the most

24   judicial efficient way to handle the case.  So I've said

25   it on the record, and you all can bring it to their

1    attention in Texas, and I can get on the phone with

2    them.

3              And I totally respect them, and if they think

4    they want to go forward, and there could be really good

5    reasons to go forward, in part, but on the two patents

6    that have been asserted, I do think it make most sense to

7    litigate them here in Delaware, and I'm prepared to do

8    it.  All right?

9              I just don't see, I think there's too much

10   respect among the three judges, and I think we're all

11   going to want to achieve judicial economy.  And it

12   strikes me that as far as at least the two patents that

13   have been asserted here, it makes most sense to proceed

14   here with those.  Okay?

15             And then, IV, you have a lot of choices in

16   front of you.  You can figure things out.  And my guess

17   is, you know, given the lawyers in the room, the ones I

18   know, at least, probably could work things out.

19             **MR. WARREN:**  Thank you, Your Honor.  Unless

20   Your Honor has any additional questions.

21             **MR. WALDROP:**  I think you have decided, Your

22   Honor, unless you want to hear from me.

23             **THE COURT:**  No.  I mean, you know, I guess

24   you can appeal the denial of a preliminary injunction.

25   If that's what you intend to do, I'm going to lay a

1    bigger record.

2              **MR. WARREN:**  No, Your Honor.

3              **THE COURT:**  All right.  I didn't think you

4    would want to.  So in that case, I'm just going to call

5    it a discretionary call.  I have weighed the four

6    factors, and this is about as purely discretionary as

7    you can get.

8              I am going to deny the motion for preliminary

9    injunction.  I am going to encourage you all to

10   coordinate.  And I would actually, I'm open to, and I

11   don't think there is anything inappropriate, with having

12   discussions directly with Judges Mazzant and Albright, if

13   you think that would be helpful.

14             I thought about doing it before I came into

15   this hearing but decided not to.

16             And so, you know, I would encourage the

17   parties to figure out, to confer with, you know, the two

18   defendants in the Texas matters.  I would encourage there

19   to be conferrals with the parallel case in my court to

20   see whether these shouldn't be consolidated for further

21   judicial economy because, frankly, that's part of when I

22   say I think it could be more judicially efficient, I was

23   anticipating that I would have the parties in the

24   parallel case confer with the parties in this case to see

25   whether we shouldn't just consolidate these two

1    proceedings.

2              **MR. WARREN:**  We would be fine with that, Your

3    Honor.

4              **THE COURT:**  Of course, they need to be

5    brought into the mix, but that strikes me as the most

6    efficient way to proceed.

7              **MR. WARREN:**  Your Honor, at risk of asking

8    one question too many --

9              **THE COURT:**  Go ahead.

10             **MR. WALDROP:**  Don't do it.  Don't do it.

11             **MR. WARREN:**  You mentioned that your denial

12   would be without prejudice.  I assume that is if there

13   is some change in circumstances that --

14             **THE COURT:**  Yeah.  What I mean by that is if

15   IV starts suing customers, you know, if they are suing

16   every single airline, I think these lawyers are pretty

17   smart, I think they know what's going to happen if that

18   occurs, and which it's very likely we will have

19   everybody in this court, so...

20             **MR. WARREN:**  That answers my question

21   perfectly.

22             **THE COURT:**  But it is without prejudice.

23   And, of course, I would have to see.  Maybe they could

24   come up with some really good reasons to justify what

25   the customer-suit exception is designed to avoid, right?

```
1              But maybe they could come up with some really

2     good reasons why it makes sense to have every airline

3     sued, you know, in Chicago, United and Northwest.  They

4     don't exist anymore but, you know what I'm saying.

5              You're good?

6              MR. WARREN:  Thank you, Your Honor.

7              THE COURT:  You're good?

8              MR. WALDROP:  Thank you, Your Honor, for your

9     time.

10             THE COURT:  Thank you all.  Good arguments.

11    Appreciate it.  Have a good day.

12             We will have an oral order just disposing of

13    all the pending motions consistent with my rulings today.

14    All right?

15

16

17

18              (The proceedings concluded at 11:50 a.m.)

19

20

21

22

23

24

25
```

1                CERTIFICATE OF COURT REPORTER

2

3         I hereby certify that the foregoing is a true and

4    accurate transcript from my stenographic notes in the

5    proceeding.

6

7                              /s/ Bonnie R. Archer
                                Bonnie R. Archer, RPR, FCRR
                                Official Court Reporter
8                                U.S. District Court

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**[336]**

**MR. DOWNING: [8]**
21/19 21/21 25/7
51/24 52/2 86/14
86/21 94/5

**MR. FARNAN: [16]**
3/8 3/10 6/21 18/10
20/24 37/20 38/13
38/15 39/11 46/25
49/24 50/18 51/1
51/6 51/12 53/17

**MR. HOESCHEN: [68]**
2/25 10/7 10/9
10/18 10/24 11/15
11/20 12/3 12/10
12/13 13/2 14/1
14/3 15/15 16/2
16/17 16/25 17/11
17/15 17/21 18/9
22/25 23/23 24/3
24/6 24/10 24/14
24/17 25/13 25/22
25/25 26/6 26/10
26/15 26/24 27/3
27/13 27/17 32/6
32/11 32/21 33/1
33/5 33/10 33/20
33/24 34/3 34/20
35/12 37/7 37/15
40/17 40/21 41/16
41/18 43/2 43/10
45/2 45/6 45/9
45/13 45/18 46/15
46/20 50/4 50/11
51/15 53/16

**MR. WALDROP: [82]**
25/5 53/24 54/1
54/17 54/20 54/22
55/4 55/9 55/25
59/4 59/9 59/12
59/15 60/7 60/24
62/3 63/11 65/12
68/17 69/10 69/24
70/22 70/25 71/6
71/8 71/10 71/24
72/4 72/11 72/16
73/5 73/9 73/17
73/19 73/23 74/6
75/12 77/7 77/13
77/17 77/20 77/22
78/4 78/6 78/18
78/22 79/5 79/15
79/24 83/24 86/4
86/23 87/5 106/13
106/23 107/1 107/6
107/13 107/16
107/23 108/1 108/5
108/15 109/9 109/14
109/16 109/21
110/13 110/23 111/2
111/15 111/18
111/20 111/23
112/10 112/15
112/20 114/15
114/20 120/21
122/10 123/8

**MR. WARREN: [98]**
27/18 27/22 28/3
29/2 29/7 29/10
29/15 29/18 29/21
30/3 30/7 30/21
30/24 31/1 31/7
31/18 32/4 59/20
61/2 61/21 62/19
62/24 63/3 63/7

84/3 85/7 85/10
85/13 85/18 86/11
87/18 87/25 88/9
89/6 89/13 89/16
89/24 90/3 90/10
90/22 90/25 91/25
94/23 96/13 96/16
96/21 96/23 97/3
97/12 97/19 98/20
99/7 99/13 99/15
99/20 99/25 100/7
100/11 100/15
100/21 101/4 101/8
101/15 101/20
101/23 102/5 102/17
102/25 103/6 103/8
103/13 104/13
104/18 104/23 105/1
105/4 105/10 105/13
105/19 105/25 106/3
106/6 106/10 108/24
109/2 109/6 110/19
116/15 117/3 117/9
117/24 120/19 121/2
122/2 122/7 122/11
122/20 123/6

**MS. WARREN: [15]**
4/17 4/21 5/10 5/15
5/17 5/20 7/2 7/14
7/23 8/10 8/16 9/6
9/15 9/20 10/4

**THE COURT: [283]**

'
'326 [3]   56/14
113/18 113/23
'469 [3]   56/15
70/22 113/20
'551 [5]   97/23
97/25 98/2 98/3
103/16
'first [1]   64/10
'rigidly [1]   64/18
'stay [1]   64/16
'the [1]   64/19

-
-and [2]   1/22 2/9

/
/s [1]   124/6

0
056 [1]   1/4

1
1 [3]   63/12 63/24
113/18
10 [3]   3/23 76/25
79/6
10 percent [1]   3/23
100 [2]   67/11 68/14
100 percent [2]
67/11 68/14
1037 [1]   64/25
1039 [1]   64/25
105 [1]   119/7
10:30 [1]   55/20
11 [3]   1/11 56/7
79/24
11:50 [1]   123/18
12 [6]   15/12 56/18
85/21 101/2 114/9
114/23
1283 [1]   64/14
1299 [1]   64/14

12:00 [1]   114/12
13 [19]   75/8 80/5
1341 [1]   64/7
1345 [1]   64/6
14 [2]   56/19 80/17
1404 [7]   75/15
90/17 100/10 100/11
100/17 113/1 113/9
14th [1]   118/24
15 [1]   81/8
16 [1]   82/4
17 [5]   25/20 38/6
63/4 83/7 96/24
18 [1]   25/21
1995 [1]   65/1
1st [1]   118/21

2
2 [4]   55/11 56/4
113/18 113/23
2005 [1]   64/8
2012 [2]   37/25
64/15
2014 [2]   50/6
118/21
2019 [3]   38/9 38/15
40/10
2024 [2]   4/4 56/7
2025 [4]   1/11 4/3
15/13 56/19
20th [1]   118/25
24 [2]   93/24 95/15
24-277 [2]   93/24
95/15
25 [2]   1/4 68/8
25 percent [1]   68/8
25-056-CFC [1]   1/4
26 [1]   18/16
277 [2]   93/24 95/15
28 [3]   17/2 32/18
56/23
29 [2]   32/13 32/19

3
3 [6]   15/24 16/22
17/11 57/17 113/18
113/19
30 [2]   16/22 32/18
300 [1]   33/14
33 [1]   43/8
34 [1]   43/8
37 [2]   43/25 44/3
394 [1]   64/6

4
4 [6]   13/9 15/15
16/22 17/22 67/3
113/19
46 [1]   64/6
49 [3]   45/20 93/24
95/15

5
5 [7]   25/20 63/7
68/23 70/1 70/12
71/13 81/9
51 [1]   64/25

6
6 [4]   71/14 72/18
81/9 96/24
60 [1]   57/8
67 [1]   113/25
681 [1]   64/14

35/18 35/21 35/25
7 [1]   65/17
70 [1]   57/9
70 days [1]   57/9
72 [1]   114/1
76 [1]   114/1

8
8 [3]   75/15 75/16
77/8
80 [1]   112/3
80 percent [1]
112/3
844 [1]   1/14

9
9 [1]   76/14
90 [1]   112/3
9:04 [2]   1/11 2/23

A
a.m [3]   1/11 2/23
123/18
abides [1]   39/23
able [1]   54/23
about [80]   3/20
4/15 5/13 5/16 8/1
8/25 14/16 18/19
26/14 28/22 29/11
29/13 30/1 30/14
31/12 31/13 31/15
31/16 33/18 34/23
35/8 35/17 36/7
36/23 37/5 37/8
43/17 44/2 45/25
51/16 52/17 53/12
53/22 54/9 56/11
57/5 57/8 58/3
61/25 66/16 66/21
66/23 68/21 69/3
69/9 72/22 73/21
74/3 74/7 74/16
74/18 74/23 75/23
77/10 78/10 80/5
83/3 83/8 88/14
88/21 89/11 89/14
92/19 92/22 92/24
93/4 94/2 94/7 94/7
94/12 94/19 95/9
96/2 96/3 103/11
108/19 109/6 115/22
121/6 121/14
absolutely [4]   7/23
62/20 85/11 88/25
academic [2]   3/18
4/9
accepts [1]   45/23
access [6]   24/15
26/4 26/8 27/5
44/18 46/7
accompanying [1]
15/17
accomplish [1]   83/4
according [1]   92/12
accurate [1]   124/4
accuse [6]   13/6
61/17 85/16 85/17
92/4 92/8
accused [8]   13/8
27/23 28/8 28/10
35/14 86/10 86/24
103/15
accuses [1]   80/9
accusing [1]   13/7
achieve [1]   120/11
acquire [5]   34/18

35/18 35/21 35/25
acquired [1]   4/5
acquirer [1]   23/11
acquiring [3]   23/5
31/16 36/11
acquisition [21]
23/3 24/23 25/10
27/8 30/9 30/12
32/2 32/15 32/23
32/24 33/18 34/6
37/13 37/24 38/23
39/20 40/13 40/23
41/2 41/6 41/9
across [4]   47/7
49/14 65/5 66/5
act [2]   101/9 102/7
action [29]   14/4
23/7 27/7 27/10
27/12 27/20 28/4
28/9 29/12 29/19
61/10 64/20 70/18
71/5 73/2 73/12
74/14 74/25 80/7
80/12 82/2 82/18
82/22 82/24 83/1
116/22 118/12 119/6
119/15
action.' [1]   64/17
actions [11]   22/16
56/8 57/7 63/19
67/6 67/8 67/20
75/3 75/21 80/6
82/8
activity [7]   27/8
34/17 41/25 52/21
58/20 80/3 83/14
acts [1]   80/13
actual [2]   17/6
52/10
actually [26]   5/3
13/3 21/6 22/7
23/19 25/16 25/18
29/10 29/16 30/10
30/17 42/23 43/19
49/17 53/8 67/9
83/9 91/9 92/25
96/5 101/1 112/1
113/15 116/23 117/5
121/10
add [8]   8/16 20/10
26/2 104/15 105/10
106/5 114/9 118/15
added [2]   105/8
119/4
additional [9]
42/20 59/5 80/22
82/4 104/15 104/21
112/6 117/11 120/20
address [20]   10/6
18/12 21/16 50/15
50/23 51/24 60/4
65/14 78/25 83/9
83/12 83/15 83/17
83/24 84/2 97/18
97/19 98/22 112/16
116/16
addressed [4]   65/16
75/7 75/10 97/17
addresses [5]   10/22
22/13 63/25 74/15
86/11
addressing [2]   82/9
96/16
adjudication [3]
9/9 9/13 10/2

**A**

administrative [3] 51/10 52/12 53/7
admitted [1] 58/22
advanced [1] 34/11
advantage [1] 47/15
advising [4] 30/11 30/11 31/16 33/17
affect [2] 34/5 42/18
affected [1] 28/23
affirmative [1] 95/2
affirmed [1] 50/24
after [16] 16/22 16/24 16/25 19/23 23/6 29/18 33/11 68/4 91/16 91/17 93/19 95/24 95/24 96/17 98/7 101/16
afterwards [1] 94/20
again [25] 7/12 10/9 22/25 30/4 36/15 42/7 44/3 47/16 48/14 48/17 49/4 55/21 60/16 91/16 92/21 95/14 95/17 95/19 100/21 101/11 102/23 103/13 112/13 116/3 117/12
against [32] 12/21 32/2 34/12 34/15 34/18 35/2 44/9 56/8 57/7 64/5 64/13 64/24 78/3 80/8 83/18 84/17 92/23 92/24 93/3 97/6 97/8 98/6 102/12 108/8 108/10 116/21 117/6 117/11 117/17 118/10 118/12 118/14
agency [1] 57/23
ago [2] 7/7 29/3
agree [8] 12/24 87/18 93/20 94/10 99/23 100/5 100/19 106/12
agreed [11] 12/15 12/18 15/14 15/16 58/1 71/17 88/16 93/17 97/24 101/14 105/10
agreeing [1] 101/15
agreement [4] 14/5 15/4 39/9 88/13
agreements [1] 13/12
agrees [2] 72/21 93/13
ahead [14] 41/17 54/21 55/8 55/24 63/1 65/11 79/4 87/24 88/8 101/19 108/4 117/8 117/23 122/9
AIA [1] 47/24
aimed [3] 34/8 39/1 39/1
air [3] 15/10 85/15 87/14
airline [3] 110/20 122/16 123/2
airlines [9] 56/9

76/5 85/3 85/3 86/7 86/7 87/1 87/2 88/2 110/17
airplanes [2] 108/23 109/1
aisle [1] 65/5
Albright [5] 73/4 95/13 95/21 119/22 121/12
all [123] 3/6 3/12 7/21 8/25 9/11 10/3 11/13 13/11 16/9 16/15 17/19 20/2 21/15 21/25 22/21 22/23 23/16 24/12 26/25 27/2 31/20 31/21 31/24 33/13 33/15 34/5 34/19 37/2 37/10 38/5 38/7 38/7 38/24 40/21 40/22 41/15 45/11 45/15 46/19 46/20 46/22 46/24 48/24 48/25 52/7 52/24 53/10 53/14 53/19 55/8 55/20 55/24 57/3 58/16 59/7 59/10 60/3 61/9 61/11 62/21 64/2 65/11 66/5 66/8 66/8 67/25 68/1 68/16 70/16 70/20 71/9 82/6 84/1 84/9 86/22 87/6 87/11 88/6 88/7 92/5 92/21 93/13 95/5 95/5 95/6 96/22 97/1 97/21 98/4 99/20 100/22 103/7 103/12 104/10 104/19 106/1 108/4 108/22 109/8 109/22 109/23 110/25 112/9 112/18 113/22 113/24 114/25 116/2 116/6 116/11 118/1 119/21 119/25 120/8 120/10 121/3 121/9 123/10 123/13 123/14
allegations [1] 102/11
alleged [7] 11/8 11/18 56/9 57/24 92/15 102/18 108/13
alleging [1] 86/24
allow [8] 14/14 18/1 44/21 47/21 51/9 53/8 98/5 115/25
allowed [3] 51/1 51/4 66/11
allowing [1] 117/18
allows [2] 87/21 93/3
alluded [1] 82/10
almost [3] 12/4 114/12 114/13
along [5] 8/8 8/19 19/13 21/23 44/22
already [9] 13/5 15/9 26/22 36/4 39/19 51/18 80/21 96/7 105/21
also [32] 3/4 8/18

10/14 19/24 21/21 36/1 36/11 44/23 49/12 50/6 52/5 52/16 54/17 54/22 68/18 74/3 81/2 81/13 86/11 93/7 93/21 94/25 99/9 102/2 103/20 104/7 104/24 115/21 117/10
Altera [1] 32/8
alternative [1] 53/23
although [4] 6/5 52/16 96/8 102/8
am [30] 8/23 9/24 31/19 33/5 34/22 35/8 40/22 41/15 46/8 49/21 53/8 53/8 53/12 58/13 62/24 65/7 65/14 66/1 90/23 99/7 101/8 101/10 101/15 112/23 113/9 113/15 115/11 116/8 121/8 121/9
ameliorated [1] 36/9
amend [3] 42/15 48/6 53/5
amended [3] 44/6 48/11 118/14
amending [2] 41/25 48/15
amendment [9] 43/14 44/12 47/22 49/8 50/16 50/22 50/25 52/10 52/13
amendments [4] 43/15 46/1 49/7 49/9
amends [1] 48/8
American [31] 56/9 56/17 57/7 57/23 58/1 67/8 70/15 71/16 76/5 80/8 81/23 85/4 85/6 85/12 87/10 87/23 94/7 94/8 103/11 104/12 104/22 105/13 105/17 105/24 107/18 108/9 110/5 110/9 110/18 110/24 111/5
American's [1] 66/10
among [2] 18/20 120/10
amount [1] 8/14
analysis [7] 44/14 59/22 59/22 62/7 63/21 81/13 89/17
analyzing [1] 43/21
Android [5] 58/15 58/17 66/5 91/20 92/9
anew [1] 20/11
another [16] 4/14 7/7 10/12 22/10 40/15 47/14 47/16 71/14 97/22 97/23 98/18 98/24 103/2 116/21 116/22 117/10

answer [8] 49/19 60/7 88/25 92/21 94/2 101/17 106/13 109/7
answered [2] 19/15 20/9
answering [1] 43/7
answers [4] 16/22 16/24 61/20 122/20
anticipating [1] 121/23
anticipation [1] 74/9
Anuvu [5] 67/6 102/1 102/2 102/10 103/9
any [43] 8/3 8/14 9/11 9/17 10/24 18/12 22/17 25/19 26/3 26/7 27/5 27/6 29/17 30/1 31/6 31/7 32/1 34/24 34/25 35/9 36/10 36/16 36/18 38/2 39/10 39/14 40/13 41/5 43/13 43/13 51/21 87/8 89/1 89/9 90/14 106/6 108/8 108/20 109/16 110/17 120/23 114/24 120/20
anymore [2] 48/9 123/4
anyone [2] 39/3 119/7
anything [22] 6/25 16/15 17/14 22/18 31/15 34/22 37/5 37/14 46/19 48/7 51/13 53/21 63/10 87/10 97/24 103/3 106/4 106/11 108/22 109/1 111/1 121/11
anyway [2] 49/19 115/24
anywhere [2] 36/15 89/10
apologize [7] 85/7 85/25 86/1 92/1 96/13 102/19 102/25
apparent [1] 14/11
apparently [1] 94/20
appeal [1] 120/24
appealed [2] 69/5 69/5
appear [2] 14/4 33/13
APPEARANCES [2] 1/19 2/1
appears [1] 70/7
application [4] 22/22 40/23 64/4 110/10
applications [1] 27/9
applied [3] 19/3 89/19 99/21
applied.' [1] 64/19
applies [11] 17/24 57/13 60/11 61/25 92/18 96/12 106/17 107/20 114/19 115/1 115/2
apply [7] 63/14 65/2 93/6 97/11

106/22 108/2 111/10
appreciate [4] 21/6 116/24 117/24 123/11
approach [2] 54/15 65/10
appropriate [6] 11/8 22/9 38/22 49/12 52/25 53/4
appropriately [1] 22/21
approve [1] 40/24
Archer [2] 124/6 124/7
are [187]
area [2] 26/15 35/1
aren't [1] 20/15
argue [2] 97/10 100/25
argued [4] 89/18 89/21 94/25 107/7
arguing [3] 97/10 100/2 100/3
argument [21] 1/12 6/15 17/5 20/3 21/1 65/4 66/16 73/7 73/15 79/14 90/1 90/5 93/9 95/1 98/1 107/11 111/8 114/11 114/12 114/14 117/1
argument's [2] 26/19 60/18
arguments [4] 5/25 6/9 93/8 123/10
arise [1] 79/25
arises [1] 49/8
around [3] 23/13 37/25 70/5
art [2] 43/21 44/14
articulated [1] 38/8
as [90] 6/7 9/23 11/15 13/14 15/3 15/5 18/3 18/4 18/5 18/6 21/8 21/23 21/24 23/1 23/8 25/1 30/4 33/7 35/23 36/13 39/23 41/24 42/18 43/6 44/23 52/8 52/22 52/23 53/9 53/9 53/10 54/8 54/9 55/14 55/25 56/3 57/12 57/15 58/11 58/19 60/4 61/4 61/4 62/13 66/3 66/15 66/25 67/17 71/12 72/5 73/1 74/7 74/19 77/4 80/18 81/10 81/11 83/12 88/22 90/24 91/9 91/20 93/16 99/16 101/6 102/6 102/6 103/4 104/7 104/13 105/13 105/13 106/15 106/16 106/21 107/20 107/21 110/7 112/24 112/25 113/16 116/2 116/22 117/1 119/18 120/12 120/12 121/6 121/6 122/5
aside [1] 61/14 68/18 85/1 100/12 100/24

**A**

ask [11] 6/18 7/22
10/19 13/22 29/16
36/25 44/23 53/12
59/1 59/17 110/16
asked [8] 20/18
36/20 65/3 96/8
97/10 116/25 117/7
117/12
asking [11] 13/10
18/1 28/1 35/17
94/19 98/9 98/12
98/13 98/17 107/1
122/7
aspects [1] 93/13
aspersion [1] 5/14
assert [1] 14/4
asserted [24] 15/18
15/23 17/4 21/5
21/13 21/14 22/2
34/12 34/15 34/18
35/1 35/24 56/8
70/24 72/25 86/8
86/9 104/11 104/20
105/9 105/23 106/1
120/6 120/13
asserting [3] 18/25
19/1 34/13
assertion [1] 39/7
assertions [1]
115/22
asserts [1] 16/25
assess [2] 14/14
18/2
assume [1] 122/12
assuming [1] 102/19
ASUSTeK [1] 118/11
attached [2] 42/24
43/5
attempted [1] 89/22
attention [4] 16/14
52/13 69/9 120/1
attorneys [2] 31/2
35/22
August [2] 118/24
118/25
August 14th [1]
118/24
August 20th [1]
118/25
Austin [1] 76/4
authority [1] 49/22
automobiles [4]
86/12 87/3 108/12
108/16
Avionics [1] 67/7
avoid [4] 64/11
115/6 115/6 122/25
avoiding [1] 42/21
aware [3] 11/16
22/12 38/2
away [3] 6/16 97/10
102/12

**B**

B [1] 97/3
back [12] 20/8 39/4
42/17 56/17 56/21
72/15 77/5 77/6
88/11 91/2 107/10
118/5
background [2]
18/13 56/2
bad [2] 74/8 74/11
balance [1] 52/24
balancing [1] 49/5

bar [24] 23/3 23/9
30/7 31/1 31/1
31/3 32/2 32/15
32/23 32/24 39/20
40/8 40/13 40/23
41/2 41/19 41/23
42/7 43/12 45/21
47/3 52/8 53/1
53/10
barred [3] 33/16
33/17 69/11
bars [3] 37/24
38/23 40/18
base [2] 11/16 66/5
based [4] 80/6
80/12 89/22 113/24
basically [3] 26/2
86/17 114/17
basis [1] 40/5
be [166]
bear [1] 117/9
became [1] 38/8
because [100] 4/19
4/24 5/12 5/23 7/5
9/7 9/23 10/19
10/21 11/3 11/9
12/1 12/23 14/6
18/14 19/19 21/6
28/9 31/17 34/23
35/23 36/24 38/4
38/10 38/11 38/15
39/4 41/3 47/9
47/17 47/22 48/1
48/10 48/14 48/21
49/1 54/5 55/12
57/19 58/22 62/4
65/16 66/17 67/15
69/2 69/10 69/21
70/11 71/2 71/24
72/18 73/13 74/1
74/15 74/24 76/20
77/15 77/23 80/8
80/22 82/22 82/23
84/19 85/14 87/9
89/4 90/14 91/1
91/23 92/2 93/16
94/1 94/4 98/7
98/22 98/23 100/10
100/11 100/13
100/16 100/23 101/9
101/11 102/13
102/17 104/15 105/7
107/17 108/7 109/24
110/2 112/2 112/5
113/23 115/3 115/8
115/18 116/8 118/6
121/21
been [35] 4/7 5/25
6/2 12/20 16/19
38/6 38/7 40/25
44/4 47/17 51/20
52/18 54/9 55/2
55/4 56/21 57/5
57/8 58/22 69/4
75/21 88/13 88/17
88/20 89/8 89/12
89/15 94/17 95/23
99/21 108/20 114/12
117/14 120/6 120/13
before [31] 1/16
4/7 5/5 5/6 7/9 8/4
25/19 31/14 33/5
38/12 38/21 44/25
50/23 56/14 66/3
66/15 66/21 71/11
71/11 73/7 75/8

75/9 79/7 88/11
90/7 104/1 105/20
119/16 121/14
begin [1] 26/21
beginning [4] 2/22
10/14 26/3 44/3
begins [2] 32/12
64/6
behalf [5] 3/1 3/10
10/10 18/11 37/21
behind [3] 3/4 25/9
39/4
being [14] 15/12
21/8 35/25 48/3
54/23 55/14 69/21
70/5 72/24 73/14
76/12 81/3 91/25
105/17
believe [21] 5/17
7/6 10/24 17/11
24/17 25/7 29/19
31/4 33/21 43/5
65/20 65/23 74/14
82/21 88/16 89/18
94/6 94/9 94/16
103/10 105/5
best [10] 19/17
20/20 23/12 44/15
67/11 69/6 82/12
82/19 82/22 96/18
better [2] 29/11
92/25
between [6] 52/10
60/8 63/16 63/16
63/18 88/2
beyond [10] 86/7
86/10 87/10 101/2
110/5 110/9 110/17
111/13 114/6 114/22
big [2] 91/9 98/1
bigger [1] 121/1
biggest [1] 96/1
billion [1] 6/14
billion-dollar [1]
6/14
bit [7] 7/3 53/1
88/14 92/19 101/24
104/14 118/8
blank [1] 62/17
blue [1] 36/23
blueprints [1] 37/9
Blumenfeld [2]
33/16 33/23
boat [1] 87/12
boat-related [1]
87/12
boats [10] 27/15
61/18 86/12 86/16
87/3 108/12 108/16
109/5 109/7 109/12
Bonnie [2] 124/6
124/7
books [1] 81/10
both [25] 7/20
26/10 29/22 29/23
52/4 60/9 60/14
67/7 71/10 72/21
76/22 92/12 93/5
94/8 96/9 104/11
104/21 105/17 106/2
106/4 111/5 115/13
116/9
bottom [5] 26/3
96/6 97/4 99/23

105/7
bound [9] 71/3
71/17 72/21 73/1
73/14 74/3 93/13
93/17 93/21
break [1] 55/18
begin [1] 26/21
BRIAN [5] 2/8 3/10
18/10 37/20 46/25
brief [17] 4/4 7/21
32/7 32/12 42/24
43/7 59/24 62/16
62/22 63/2 63/12
63/13 93/19 106/8
116/8 116/16 119/9
briefed [3] 10/13
88/21 92/13
briefing [16] 19/23
20/2 23/2 36/15
56/22 57/18 85/23
85/24 92/22 93/20
95/20 95/25 99/10
100/23 104/14
110/21
briefly [3] 51/15
86/15 108/5
briefs [4] 62/14
92/14 95/22 114/13
bring [6] 12/16
12/25 19/2 20/5
117/17 119/25
bringing [3] 13/20
80/24 117/11
broad [8] 23/25
29/7 29/9 33/22
35/1 35/11 44/8
113/11
broader [2] 34/1
85/19
broadly [2] 74/16
75/23
brought [20] 4/13
12/8 12/20 14/21
16/13 38/12 50/5
75/21 76/8 78/2
80/7 85/18 88/14
88/17 88/20 88/23
97/6 114/11 118/9
122/7
Bryson [4] 49/23
49/24 50/14 50/23
Bryson's [1] 50/2
bulk [32] 61/6
62/10 65/6 65/9
65/14 66/16 66/17
66/21 66/23 66/24
67/13 68/7 68/8
68/14 68/14 69/18
74/2 74/18 74/18
75/4 80/2 80/23
82/23 83/12 83/22
93/8 93/9 107/3
111/10 111/18 112/3
112/7
bullet [2] 72/18
80/11
bunch [2] 84/5 95/6
burden [16] 12/1
25/15 36/18 36/22
40/5 40/5 40/7
40/25 42/20 49/5
51/21 52/22 52/22
95/3 106/17 113/2
burdens [1] 21/9
burdensome [4] 30/5
31/19 36/14 82/11
Burke [1] 49/22

105/7
71/17 72/21 73/1
73/14 74/3 93/13

business [5] 5/18
9/10 79/10 79/10
80/14
buy [3] 73/7 79/14
79/19
buying [1] 30/14

**C**

C [1] 2/20
C.A [1] 1/4
California [7]
66/10 79/11 98/5
118/13 118/17
118/19 119/19
call [11] 27/16
27/20 28/25 55/19
60/19 99/24 100/6
101/14 106/12 121/4
121/5
called [1] 64/23
calls [1] 100/20
came [5] 6/14 19/7
48/19 111/24 121/14
can [77] 17/5 19/9
19/17 21/16 22/10
24/20 26/22 27/23
27/25 28/17 28/19
29/2 32/9 32/23
32/25 33/10 34/13
38/16 39/8 39/13
39/25 42/18 43/7
45/2 47/8 48/9 51/8
54/17 55/10 55/20
57/14 58/21 60/4
60/12 61/4 61/11
61/14 62/19 62/21
66/15 70/11 74/19
74/22 75/1 75/4
76/8 76/10 76/20
77/5 77/11 77/15
77/22 77/23 78/25
81/18 83/3 83/24
84/9 91/20 93/4
94/2 96/18 105/13
105/20 105/22
106/18 107/10
108/21 112/18
114/16 117/13 118/1
119/25 120/1 120/16
120/24 121/7
can't [16] 7/10
8/20 8/20 25/3
31/17 39/19 39/25
48/1 48/14 48/14
49/2 50/16 91/1
106/16 111/21 112/4
canned [1] 119/1
cannot [6] 34/17
54/6 57/19 82/22
88/19 88/23
care [1] 113/11
careful [1] 7/22
cars [2] 109/5
109/6
carve [5] 47/8
47/20 47/21 49/15
50/8
carve-out [3] 47/8
47/20 47/21
carve-outs [2]
49/15 50/8
case [186]
cases [48] 6/1 9/7
11/5 11/7 33/14
38/7 39/5 48/21
52/4 56/10 56/24

**C**

**cases...** **[37]** 56/25 57/13 57/22 58/8 58/19 59/23 64/3 66/13 66/25 70/2 72/20 74/1 77/23 80/20 83/7 83/9 84/11 84/12 84/20 88/4 92/14 94/9 98/5 102/21 104/1 104/2 104/17 104/18 105/24 106/2 116/13 116/13 117/11 118/4 118/10 118/18 119/12
**cast** **[1]** 5/14
**catch** **[2]** 109/22 109/23
**catch-all** **[2]** 109/22 109/23
**cell** **[1]** 30/15
**central** **[2]** 14/24 58/12
**certain** **[4]** 8/14 13/13 17/2 19/8
**certainly** **[6]** 12/15 26/15 31/3 33/10 50/12 98/23
**CERTIFICATE** **[1]** 124/1
**certify** **[1]** 124/3
**CFC** **[1]** 1/4
**challenge** **[4]** 5/24 7/18 7/19 9/1
**challenged** **[1]** 48/3
**chance** **[1]** 36/19
**change** **[4]** 22/15 41/11 45/24 122/13
**charity** **[1]** 4/6
**charted** **[3]** 92/23 92/24 93/2
**cheaper** **[1]** 8/7
**check** **[3]** 24/20 51/7 51/8
**checked** **[1]** 51/19
**Chicago** **[1]** 123/3
**children** **[1]** 4/5
**choice** **[4]** 52/4 75/19 79/17 113/6
**choices** **[3]** 9/14 9/16 120/15
**choose** **[1]** 47/25
**chose** **[1]** 84/13
**chronology** **[1]** 118/9
**Cipla** **[1]** 64/13
**Circuit** **[58]** 59/14 59/21 59/23 60/4 60/5 60/14 60/15 60/22 61/3 61/5 62/1 62/2 62/6 62/8 62/12 62/16 62/17 62/17 62/22 63/8 63/8 63/14 63/19 64/3 64/7 64/9 64/14 64/23 65/1 66/11 68/7 68/18 68/20 69/1 69/1 69/4 69/6 69/7 69/9 69/14 69/16 74/16 74/17 79/17 81/11 92/2 92/7 92/17 96/3 96/4 96/11 98/4 98/8 103/17 112/2 113/5 115/14 119/16
**circumstance** **[1]**
**circumstances** **[4]** 46/2 92/16 93/5 122/13
**citation** **[1]** 90/14
**citations** **[1]** 95/16
**cite** **[10]** 38/3 38/17 38/18 47/19 50/20 60/15 63/11 91/1 95/14 99/20
**cited** **[3]** 32/6 32/17 95/15
**citing** **[2]** 49/21 110/2
**civil** **[2]** 21/8 21/8
**claim** **[25]** 6/14 13/1 13/1 13/20 13/23 16/8 18/25 42/15 43/14 43/21 44/5 44/5 44/9 44/13 44/17 44/20 44/22 45/3 45/7 48/24 50/16 50/17 53/6 67/20 82/9
**claiming** **[4]** 15/25 16/5 16/6 16/8
**claims** **[22]** 15/18 15/23 19/15 22/1 22/4 41/25 44/13 48/6 48/8 48/11 48/15 50/25 52/11 70/13 79/25 84/9 84/17 84/21 85/19 87/12 88/3 99/3
**clarity** **[1]** 104/10
**clear** **[15]** 13/13 16/4 28/4 28/9 47/15 70/15 85/8 86/20 86/21 87/13 98/13 108/7 109/24 110/14 114/1
**cleared** **[1]** 31/24
**clearing** **[1]** 85/15
**clearly** **[5]** 14/20 19/10 49/6 56/7 115/23
**client** **[14]** 6/15 9/17 11/11 30/2 31/16 31/21 33/18 34/25 37/8 37/10 37/11 52/4 105/18 109/1
**client's** **[1]** 4/18
**client-choice** **[1]** 52/4
**clients** **[4]** 30/11 33/14 52/3 52/5
**close** **[7]** 29/18 68/14 91/8 93/19 95/24 119/6 119/15
**Co** **[2]** 64/24 64/24
**code** **[1]** 24/3
**coextensive** **[1]** 72/2
**cognizant** **[1]** 26/18
**colleague** **[1]** 65/5
**COLM** **[1]** 1/16
**Comcast** **[3]** 57/20 59/11 59/13
**come** **[13]** 4/20 5/1 12/5 19/16 20/8 28/19 47/7 52/1 52/13 67/9 67/21 122/24 123/1
**comes** **[7]** 25/10

31/11 31/23 44/5 50/8 70/24 75/11
**comfortable** **[1]** 76/12
**coming** **[5]** 28/13 44/20 49/14 67/21 90/12
**comity** **[5]** 64/10 72/22 82/12 83/16 119/15
**commenced** **[1]** 2/22
**comments** **[1]** 7/3
**communication** **[2]** 28/12 29/5
**Communications** **[1]** 29/1
**companies** **[2]** 80/6 80/13
**compartmentalize** **[2]** 40/1 42/12
**compel** **[3]** 9/5 9/22 10/6
**compelling** **[1]** 13/4
**competing** **[1]** 118/20
**complaint** **[4]** 56/20 84/22 113/16 118/14
**complaints** **[1]** 50/22
**complete** **[4]** 19/23 92/8 92/12 92/15
**completed** **[1]** 56/22
**completely** **[2]** 78/8 94/14
**completeness** **[1]** 58/23
**compliance** **[4]** 24/24 5/1 7/6 7/15 7/17
**complicated** **[1]** 6/11
**comply** **[3]** 8/12 19/6 20/11
**compulsion** **[2]** 6/20 8/12
**computer** **[1]** 30/23
**concern** **[8]** 26/16 44/4 44/15 45/25 48/16 50/25 65/15 76/23
**concerned** **[5]** 26/14 34/23 35/17 46/8 74/18
**concerns** **[3]** 4/18 8/25 41/14
**concluded** **[1]** 123/18
**concludes** **[2]** 45/19 45/20
**condensing** **[1]** 60/17
**confer** **[3]** 18/21 121/17 121/24
**conference** **[1]** 18/16
**conferrals** **[1]** 121/19
**confers** **[1]** 36/16
**confident** **[1]** 73/25
**confidential** **[18]** 23/4 24/9 24/11 24/16 26/11 26/11 26/14 26/20 27/2 27/6 28/22 34/10 40/14 41/7 41/12 42/9 44/19 46/5
**confidentiality** **[1]**

31/21
**confirmed** **[2]** 90/14
**confirm** **[6]** 97/5 104/25 105/16 105/20 105/22 117/13
**confirmed** **[3]** 67/25 111/4 114/23
**conflict** **[4]** 4/8 8/22 63/15 63/16
**conflicting** **[2]** 64/11 115/7
**conflicts** **[4]** 8/25 9/11 30/19 30/23
**confusion** **[1]** 108/19
**connection** **[4]** 30/12 40/15 41/8 77/1
**connectivity** **[5]** 67/5 80/9 109/4 114/5 114/7
**CONNOLLY** **[1]** 1/16
**conscious** **[1]** 21/9
**consent** **[4]** 78/12 78/17 90/12 90/16
**consented** **[1]** 78/13
**consenting** **[1]** 90/18
**consider** **[3]** 36/12 65/4 68/20
**consideration** **[2]** 68/13 69/18
**considerations** **[5]** 22/3 52/24 64/20 65/4 82/11
**considering** **[2]** 6/24 69/12
**considers** **[4]** 60/22 115/14 115/15 115/15
**consistent** **[2]** 53/14 123/13
**consolidate** **[1]** 121/25
**consolidated** **[1]** 121/20
**consonant** **[1]** 102/7
**constraints** **[1]** 38/4
**constricted** **[1]** 76/7
**construction** **[9]** 43/21 44/14 44/17 45/3 45/7 45/17 48/25 67/20 82/9
**consult** **[1]** 33/14
**consulting** **[1]** 29/25
**contend** **[1]** 14/20
**contending** **[1]** 14/21
**content** **[1]** 41/15
**contention** **[7]** 14/7 14/18 61/8 86/7 94/11 114/10 114/10
**contentions** **[40]** 11/23 11/25 12/12 12/19 12/19 13/4 13/6 13/14 13/15 13/25 14/8 14/13 14/22 15/3 15/8 15/9 15/19 15/24 16/4 17/7 18/22 19/9 61/14 61/15 61/17 84/25 85/17

86/6 86/13 86/16 92/4 92/5 92/4 92/5 92/6 92/8 101/2 108/14 109/13 114/24
**contest** **[1]** 88/3
**contested** **[2]** 91/14 104/7
**context** **[4]** 23/9 37/23 69/3 69/18
**continue** **[4]** 45/19 58/19 67/17 68/10
**CONTINUED** **[1]** 2/1
**contours** **[1]** 68/6
**contributed** **[1]** 10/21
**control** **[3]** 68/2 81/21 95/4
**Controls** **[1]** 63/8
**controversy** **[3]** 58/11 66/24 82/24
**convenience** **[6]** 59/5 59/8 60/17 80/17 81/9 82/1
**conversation** **[1]** 112/12
**conversations** **[1]** 46/3
**convinced** **[1]** 6/4
**cooperation** **[1]** 18/20
**coordinate** **[1]** 121/10
**coordination** **[2]** 47/15 51/23
**copied** **[1]** 6/6
**copy** **[2]** 43/1 46/11
**corporate** **[1]** 76/3
**corporation** **[2]** 79/8 81/5
**corporations** **[2]** 3/21 4/2
**correct** **[15]** 11/12 25/25 26/5 26/23 30/3 49/21 61/1 71/3 71/23 85/10 85/11 87/25 100/15 105/24 106/12
**correction** **[1]** 105/1
**costly** **[1]** 82/11
**could** **[47]** 12/15 16/21 20/8 20/10 20/20 21/25 34/12 35/1 36/5 36/9 36/12 46/5 46/7 46/14 47/20 48/12 49/9 59/25 66/20 67/3 68/3 75/21 76/14 77/18 78/2 78/5 78/7 82/25 83/2 83/4 88/13 88/15 88/17 88/20 88/23 91/19 96/9 110/6 110/9 115/6 116/11 117/17 120/4 120/18 121/22 122/23 123/1
**couldn't** **[5]** 12/11 19/25 38/5 39/21 47/11
**counsel** **[32]** 2/6 2/12 3/2 18/20 21/11 21/12 24/18 24/19 26/23 29/25 30/6 30/8 32/3

**C**

counsel... **[19]**
32/10 33/4 33/6
33/7 35/23 41/15
42/4 44/17 46/4
46/5 46/6 47/10
47/13 47/25 48/24
51/9 51/17 51/18
52/6
**Count [2]** 113/19
113/23
**Count 2 [1]** 113/23
**counterclaim [4]**
17/1 17/1 17/4 89/3
**counterclaims [5]**
21/3 21/5 21/13
21/15 22/19
**counterfactual [1]**
14/7
**countless [1]** 82/7
**counts [6]** 45/11
113/18 113/18
113/18 113/19
113/23
**Counts 1 [1]** 113/18
**Counts 3 [1]** 113/18
**Counts 4 [1]** 113/19
**couple [5]** 23/19
53/11 55/18 91/11
93/7
**course [11]** 4/21
4/25 12/10 12/20
17/18 17/24 52/11
82/19 82/22 122/4
122/23
**court [87]** 1/1 1/16
4/13 4/25 5/5 7/7
8/18 14/25 18/19
19/3 19/4 19/10
19/18 20/6 20/7
21/10 28/11 32/2
38/2 39/15 39/16
39/17 40/8 44/3
47/23 48/1 54/11
55/3 55/5 55/10
57/12 61/10 61/11
61/12 63/12 63/23
64/16 67/3 67/4
68/19 68/22 70/17
74/22 75/5 75/25
76/20 77/4 78/23
78/24 82/12 82/17
82/19 82/25 82/25
83/4 83/5 83/6 84/9
84/10 84/19 88/19
89/25 90/6 90/15
90/16 92/13 95/19
99/9 102/11 103/2
103/20 107/8 107/15
116/18 116/21
116/22 116/25
118/21 119/5 119/12
119/13 119/19
121/19 122/19 124/1
124/7 124/8
**Court's [7]** 7/6
54/15 68/13 78/10
82/14 116/15 116/17
**courtroom [1]** 2/22
**courts [8]** 6/6
14/21 39/18 55/2
57/4 97/5 99/22
115/22
**covenant [1]** 36/10
**cover [1]** 77/24
**covered [4]** 16/11

71/2 71/4 109/20
covering [1] 91/16
**Coyle [1]** 64/6
**crafted [1]** 62/6
**created [1]** 69/22
**creature [1]** 62/5
**credence [1]** 66/22
**criteria [1]** 59/18
**curious [1]** 65/7
**current [1]** 15/8
**currently [1]** 35/5
**custody [3]** 68/1
81/21 95/4
**customer [27]** 57/16
57/21 57/25 60/13
62/3 62/4 62/11
66/6 66/12 71/16
72/21 72/24 72/25
74/6 82/23 87/21
92/17 93/12 97/5
97/11 97/12 106/17
106/22 108/8 109/16
119/4 122/25
**customer-suit [13]**
62/3 62/4 72/24
74/6 82/23 87/21
92/17 97/5 97/11
97/12 106/17 106/22
122/25
**customers [7]** 70/7
83/18 86/25 97/8
117/12 117/18
122/15
**customized [1]**
91/21
**cut [1]** 61/19
**cuts [1]** 49/23

**D**

**D [1]** 2/20
**D.I. [3]** 63/4 93/24
95/15
**D.I. 17 [1]** 63/4
**D.I. 49 [2]** 93/24
95/15
**danger [1]** 36/21
**dangers [1]** 42/22
**date [12]** 9/2 14/8
14/11 14/18 15/6
15/7 15/7 15/13
15/13 16/21 17/2
17/3
**day [5]** 39/24 39/24
40/24 41/3 123/11
**days [8]** 4/6 5/18
16/22 17/3 35/7
57/8 57/9 119/8
**dead [1]** 38/8
**deadline [1]** 15/1
**deal [11]** 22/9
22/15 22/23 26/20
37/18 66/12 70/18
72/4 77/24 97/14
101/21
**dealing [1]** 102/23
**deals [1]** 67/13
**decide [4]** 8/7
29/14 106/18 116/12
**decided [6]** 13/18
19/3 57/2 119/12
120/21 121/15
**decision [15]** 9/2
17/6 42/14 49/22
49/23 49/25 50/2
50/3 50/14 59/19
64/7 64/15 65/1

116/4 116/5
decision... [3] 37/6
38/7 49/18 52/3
58/2 64/11
**declaratory [12]**
5/6 10/25 56/12
61/7 84/23 85/16
102/2 113/17 113/20
114/2 114/6 118/12
**deemed [1]** 24/8
**defendant [16]** 1/8
3/20 4/12 4/19 5/6
9/23 48/23 53/2
57/25 71/16 72/21
72/25 89/1 90/20
104/4 118/15
**defendant's [2]**
45/22 75/19
**defendants [16]**
2/12 4/1 43/22 44/9
44/19 46/6 46/10
47/24 54/3 65/18
89/3 89/8 115/13
118/18 118/24
121/18
**defended [1]** 57/21
**defense [1]** 72/10
**defer [2]** 32/4 74/8
**deference [5]** 60/12
74/15 75/18 79/18
79/19
**deferring [1]** 119/1
**define [1]** 41/1
**defined [1]** 26/9
**definitive [1]**
70/16
**DELAWARE [17]** 1/2
1/14 21/12 55/2
55/5 77/1 77/15
79/7 79/9 79/20
79/21 80/1 80/4
80/20 81/4 93/22
120/7
**delay [1]** 5/8
**delayed [1]** 19/24
**delve [1]** 55/12
**demanded [1]** 18/16
**denial [2]** 120/24
122/11
**denied [4]** 20/8
38/7 65/23 118/22
**deny [7]** 22/21
40/22 112/23 115/2
115/24 117/21 121/8
**depend [1]** 95/18
**depends [2]** 41/11
109/2
**deprived [1]** 87/9
**describing [1]**
43/11
**description [1]**
27/19
**designed [1]** 122/25
**desirous [1]** 9/9
**desk [2]** 47/8 49/15
**Desmarais [2]** 37/4
37/12
**despite [1]** 44/15
**determinations [1]**
14/16
**determined [1]**
115/1
**develop [2]** 48/24
48/25
**developments [1]**
52/20

**device [3]** 91/21
91/7 92/9
**devices [2]** 91/17
91/17
**diagrams [1]** 24/6
**dickens [1]** 105/14
**dictate [1]** 115/19
**dictates [1]** 116/5
**did [32]** 11/2 11/13
11/16 13/5 13/19
19/5 19/12 20/20
24/1 28/25 31/3
37/12 37/16 38/1
42/24 48/11 49/8
50/14 50/15 50/23
51/9 51/13 60/3
61/16 76/15 78/18
94/3 95/22 95/22
96/5 109/12 111/3
**didn't [23]** 11/4
11/9 13/15 17/1
19/2 19/3 19/7 30/4
32/16 37/1 38/20
40/6 47/19 49/13
72/1 73/7 78/16
84/11 89/9 97/24
111/10 111/10 121/3
**die [1]** 42/16
**difference [3]**
63/18 116/19 116/24
**different [14]** 3/25
34/7 49/2 51/17
51/20 62/1 73/22
89/3 91/19 103/22
104/4 104/9 112/12
116/9
**differently [1]**
96/3
**difficult [2]** 42/12
53/2
**direct [4]** 43/7
95/10 96/23 103/20
**directed [2]** 32/18
36/3
**direction [1]** 28/17
**directly [4]** 13/7
80/9 116/17 121/12
**disagree [3]** 91/7
94/19 96/21
**disclose [2]** 3/20
17/23
**discloses [1]** 3/21
**disclosure [24]**
3/15 3/15 3/16 3/17
3/19 3/22 4/11 5/22
5/24 6/15 7/5 8/13
8/21 8/24 9/5 9/22
10/1 13/16 15/17
15/18 15/23 17/21
19/19 24/25
**disclosures [7]** 5/3
5/8 5/18 13/10
14/14 15/2 15/6
**discovery [14]** 8/3
8/13 8/21 10/11
18/17 19/11 19/25
20/4 48/13 67/22
95/11 95/12 95/16
95/21
**discrete [2]** 42/14
103/4
**discretion [1]**
100/13 101/6 101/9
101/10 106/15
106/19 107/24
107/24 107/25 108/1

112/3
dictionary [9]
99/24 100/6 100/19
101/14 106/12
113/10 116/3 121/5
121/6
**discuss [2]** 11/13
65/14
**discussed [1]** 80/23
**discusses [1]** 69/16
**discussing [2]**
44/12 44/13
**discussion [2]**
52/14 65/8
**discussions [3]**
34/25 43/13 121/12
**disinclined [2]**
7/14 103/2
**dismiss [25]** 18/17
19/21 19/23 20/2
53/20 53/22 54/5
56/3 56/20 63/5
63/22 64/17 74/23
75/8 75/10 82/18
82/22 84/19 85/14
96/25 100/19 106/20
107/21 113/14
115/25
**dismissal [1]**
106/14
**dismissed [4]** 19/20
74/24 78/19 79/1
**dismissing [2]**
82/13 87/8
**disposed [1]** 119/13
**disposes [1]** 88/17
**disposing [1]**
123/12
**disposition [1]**
64/22
**dispositive [2]**
81/13 90/10
**dispute [27]** 10/15
10/21 13/22 16/18
19/2 25/24 37/16
40/12 40/20 41/20
44/17 50/7 50/12
59/18 60/25 61/24
68/2 70/11 86/2
86/3 86/4 91/22
93/2 93/25 101/22
111/6 111/12
**disputed [2]** 25/20
67/8
**disputes [3]** 10/11
23/2 64/22
**disruption [1]**
80/25
**distinct [1]** 6/10
**distinction [5]**
42/1 60/8 63/14
63/15 116/19
**distinguish [2]**
52/10 60/9
**distinguishable [1]**
83/21
**district [35]** 1/1
1/2 1/16 38/2 38/24
47/23 48/1 55/3
55/5 57/1 64/16
72/19 72/23 75/5
75/6 75/6 75/22
76/15 76/16 76/19
89/2 89/2 93/11
93/12 95/13 99/9
99/22 103/2 118/10

**D**

**district... [6]**
118/13 118/16
118/22 118/25 119/2
124/8

**DJ [18]** 11/11 11/21
18/6 19/15 22/13
22/15 54/12 56/20
67/15 67/20 70/18
70/25 71/1 71/5
71/22 83/9 110/6
114/21

**DJs [4]** 19/8 19/10
22/9 82/7

**do [111]** 4/15 4/15
5/9 5/13 5/13 5/16
5/16 5/19 6/24 7/1
7/10 7/11 7/12 7/13
7/16 8/2 10/17 12/6
13/12 13/18 13/21
13/22 14/13 17/4
17/20 18/5 19/7
19/17 20/4 20/10
20/12 20/21 21/4
22/6 22/16 25/11
26/18 27/16 27/24
30/14 31/12 31/12
32/1 34/14 34/16
35/2 35/5 36/16
36/20 39/20 39/22
39/24 39/25 40/1
40/6 41/13 43/1
44/25 49/5 50/7
52/4 52/12 52/18
59/17 59/20 60/16
62/4 62/15 62/19
62/20 66/12 69/6
70/16 74/22 78/22
79/21 82/20 82/25
84/5 86/2 86/3
86/16 87/19 93/25
94/13 95/6 97/24
99/20 100/8 101/22
105/7 106/23 106/24
108/17 108/25 109/3
110/16 112/25 113/7
115/3 116/14 116/24
117/4 117/13 118/8
119/22 120/6 120/7
120/25 122/10
122/10

**docket [2]** 51/19
119/6

**doctrine [2]** 64/10
93/10

**document [4]** 15/17
95/15 95/16 96/24

**Documentary [1]**
81/15

**documents [8]** 18/1
21/22 66/8 68/1
80/24 81/17 81/20
95/3

**does [21]** 3/15 3/16
3/20 7/4 9/17 12/22
15/13 15/15 31/6
31/18 32/16 48/9
51/18 63/14 68/6
70/14 81/18 93/6
96/2 97/11 101/10

**doesn't [16]** 18/25
20/19 28/5 28/11
53/3 61/3 70/11
82/25 89/17 89/20
93/12 95/8 95/19
98/24 98/25 106/22

**doing [6]** 20/7
5/4 98/4 100/11
116/2 121/14

**dollar [1]** 6/14

**don't [99]** 4/20
5/14 6/4 8/22 10/22
10/24 12/5 12/9
13/1 13/18 13/23
16/1 17/9 19/11
21/2 22/4 22/12
22/17 25/16 26/5
30/7 30/8 30/9 31/4
31/13 31/25 37/5
37/7 40/12 40/20
40/24 41/10 47/21
49/19 51/7 53/5
53/12 53/22 68/15
70/14 73/19 74/13
74/18 74/24 79/13
79/19 79/25 83/12
83/15 83/17 83/24
86/1 86/18 87/8
87/16 88/3 90/3
90/6 90/8 90/14
91/1 94/5 94/7
94/16 95/1 95/17
97/17 98/6 99/16
100/13 100/16 101/8
102/8 102/8 103/22
106/14 108/11
108/16 109/6 109/9
109/10 110/1 110/6
110/7 110/8 111/12
112/7 113/16 114/18
114/25 115/18 116/4
117/15 117/20 120/9
121/11 122/10
122/10 123/4

**done [7]** 7/8 53/5
53/6 59/23 78/5
94/17 113/2

**door [2]** 31/11 37/1

**double [1]** 99/2

**doubt [1]** 114/24

**down [8]** 29/4 29/19
29/21 31/11 44/2
97/4 97/16 114/16

**DOWNING [3]** 2/11
3/11 18/12

**draft [1]** 24/13

**drafting [1]** 52/11

**drive [1]** 18/3

**due [5]** 13/14 15/9
30/5 61/15 119/9

**duplicative [5]**
57/3 64/17 69/15
71/15 83/16

**during [5]** 18/18
40/14 45/15 45/16
52/11

**E**

**e [5]** 1/21 2/8 2/20
2/20 18/24

**e-mails [1]** 18/24

**each [2]** 58/24
63/21

**earlier [2]** 57/22
94/12

**early [2]** 18/2
22/19

**easily [1]** 76/20

**Eastern [8]** 75/6
75/21 76/15 76/19
89/1 118/10 118/15
118/22

**economy [14]** 64/21
71/19 75/17 75/2
75/24 81/2 82/3
111/4 115/10 120/11
121/21

**edification [1]**
68/13

**EDTX [2]** 76/17
119/13

**education [1]** 54/15

**effective [1]** 64/21

**efficiencies [1]**
115/3

**efficiency [3]**
64/12 81/3 119/15

**efficient [3]**
119/24 121/22 122/6

**efforts [1]** 44/16

**eight [1]** 111/9

**either [18]** 3/24
5/2 8/24 28/8 37/7
51/14 63/21 73/20
73/23 75/5 82/18
89/1 92/23 92/24
93/2 94/1 96/19
105/23

**electronics [1]**
64/5

**element [2]** 101/10
117/10

**else [11]** 16/15
17/14 37/14 42/6
46/19 51/14 53/21
87/22 106/5 107/8
111/1

**emphasis [1]** 113/4

**employed [1]** 87/3

**employees [2]** 76/18
81/24

**encourage [3]** 121/9
121/16 121/18

**end [1]** 41/3

**enforce [2]** 5/1
30/18

**enforcing [1]** 4/11

**engage [2]** 30/8
34/17

**engaged [2]** 24/23
41/5

**enjoin [7]** 19/24
20/1 56/24 103/2
116/9 116/25 117/7

**enjoining [1]**
117/10

**enough [7]** 11/10
41/2 44/9 73/8 81/5
94/23 117/4

**ensuring [1]** 53/3

**entailed [1]** 65/9

**enter [3]** 19/5
28/15 47/9

**entertain [1]** 79/3

**entire [4]** 35/24
58/10 68/2 70/11

**entities [3]** 4/12
39/7 67/2

**entitled [1]** 79/18

**entity [6]** 34/12
34/15 77/15 79/20
79/21 89/1

**ERIKA [2]** 2/4 3/3

**error [1]** 100/9

**especially [6]**
12/24 23/10 35/21
39/20 113/4 115/11

**ESQ [8]** 1/21 1/21
2/3 Page 130 of 142 PageID #:
2/11 2/11

**essentially [13]**
12/4 41/20 41/22
42/2 42/14 42/19
43/23 51/16 59/4
61/5 95/1 96/16
103/18

**establish [2]** 113/1
113/3

**established [1]**
107/4

**even [32]** 6/13
13/23 31/9 31/13
34/1 36/13 39/22
40/12 43/16 44/10
46/2 67/10 69/8
70/10 72/19 74/19
87/17 87/20 99/3
101/1 103/21 103/23
104/20 105/7 107/5
108/11 108/16 110/6
113/9 114/18 116/4
116/25

**event [1]** 77/3

**ever [3]** 9/1 9/12
38/12

**every [9]** 39/24
39/24 47/10 47/23
48/19 51/20 110/20
122/16 123/2

**everybody [2]** 97/23
122/19

**everyone [2]** 38/10
38/16

**everyone's [1]**
44/15

**everything [10]**
42/6 42/18 66/9
75/4 87/13 92/23
93/2 94/10 94/15
95/24

**evidence [2]** 81/15
95/20

**exact [1]** 36/4
80/21

**exactly [15]** 11/16
14/18 23/8 23/13
23/14 23/16 36/7
39/12 43/18 71/24
90/17 90/22 92/11
111/16 111/16

**example [2]** 3/17
72/20

**examples [1]** 47/20

**exception [21]**
57/16 57/18 60/13
62/4 62/5 62/7 66/6
66/12 72/24 82/23
87/21 92/17 97/5
97/11 97/12 100/7
100/22 106/17
106/22 115/16
122/25

**exceptions [2]**
57/14 74/7

**exchange [2]** 18/19
105/11

**exchanges [1]** 18/19

**exclusively [1]**
66/7

**excuse [1]** 27/18

**exercise [2]** 4/9
112/23

**exhaustion [2]**

**14/16 113/24**

**PageID [5]** 17/11
32/11 43/6

**Exhibit 3 [1]** 17/11

**exist [1]** 123/4

**expanding [1]**
109/23

**expeditiously [1]**
21/16

**expensive [1]** 39/21

**experience [2]** 11/4
89/19

**expert [1]** 58/16

**explain [1]** 59/25

**explicit [3]** 51/4
69/4 96/8

**explicitly [2]**
69/11 69/11

**expressly [2]** 44/11
44/12

**extension [1]**
105/11

**extent [7]** 25/14
36/2 36/9 41/20
87/3 102/22 109/17

**extreme [2]** 34/2
40/9

**F**

**f [2]** 1/16 18/16

**F.3d [3]** 64/6 64/14
64/25

**facetiously [1]**
55/8

**fact [17]** 12/17
30/5 43/19 52/20
66/15 66/19 67/2
74/13 79/12 79/20
83/15 83/17 86/6
86/11 89/11 89/14
100/22

**factor [3]** 79/23
81/12 115/14

**factors [28]** 54/6
57/19 59/3 59/5
59/5 60/17 60/19
60/22 61/4 65/7
65/9 65/14 66/22
68/12 68/19 74/14
75/15 76/13 81/9
82/4 82/5 90/7 90/9
96/18 113/4 113/7
113/10 121/6

**facts [3]** 54/7
65/22 83/13

**factual [1]** 111/3

**fails [1]** 66/16

**failure [1]** 22/8

**fair [4]** 48/5 49/4
94/23 104/19

**faith [2]** 74/8
74/11

**familiar [6]** 58/13
66/1 66/2 75/15
90/23 91/10

**far [5]** 53/10 61/4
81/12 105/13 120/12

**FARNAN [18]** 2/8 2/8
3/7 3/10 6/2 6/12
8/9 18/11 21/7
21/23 21/24 37/21
47/1 50/8 51/22
52/17 54/8 79/13

**Farnan's [1]** 6/7

**fast [1]** 21/14

**fatal [9]** 54/11

## F

fatal... [8]   58/5
58/21 66/4 67/14
73/10 73/11 83/11
83/21
fault [1]   20/19
favor [8]   5/9 58/2
73/8 81/1 81/5 81/6
82/6 115/10
favorable [1]   65/21
favors [3]   72/10
80/15 80/18
FCRR [1]   124/7
fear [1]   28/20
February [1]   56/18
February 12 [1]
56/18
federal [46]   59/21
59/22 60/5 60/14
60/22 61/3 61/5
62/1 62/6 62/8
62/11 62/16 62/16
62/17 63/8 63/14
63/18 64/3 64/7
64/9 64/10 64/14
64/23 65/1 66/11
68/7 68/18 68/25
69/4 69/6 69/7
69/14 74/17 81/11
92/2 92/7 92/16
96/3 96/11 98/4
98/8 103/17 112/2
115/14 119/14
119/16
feel [2]   31/25
73/25
few [5]   4/6 5/18
44/22 52/19 57/14
fewer [1]   49/18
Fi [2]   27/13 70/2
field [3]   23/5
36/20 41/23
fight [1]   29/13
fighting [2]   70/3
105/14
figure [3]   49/10
120/16 121/17
figured [2]   6/22
11/14
figuring [1]   5/11
file [29]   16/8
47/24 48/1 57/12
57/18 60/11 62/7
64/4 82/16 87/17
87/20 88/1 88/2
100/4 107/11 107/17
107/19 107/20 108/6
108/9 108/17 108/19
110/1 110/10 113/15
114/18 115/1 115/2
115/15
file' [1]   64/10
filed [25]   4/3
19/22 20/1 47/10
51/20 56/12 56/17
56/19 56/21 56/23
57/9 57/22 58/2
63/19 64/4 64/17
64/19 74/14 74/25
93/19 95/14 102/2
107/14 118/12
118/24
files [1]   47/23
filing [3]   47/12
74/9 94/20
final [2]   32/11

41/18
finally [1]   10/10
financial [3]   23/15
23/21 26/17
find [9]   17/9 32/19
47/20 62/19 62/21
90/16 113/15 113/25
116/3
finding [5]   64/2
72/14 96/7 96/11
96/17
finds [1]   62/9
fine [4]   6/23 7/19
52/9 122/2
Finisar [3]   99/8
103/20 103/23
finish [1]   68/4
firm [7]   30/13 31/3
33/12 37/6 47/14
51/21 52/2
firms [1]   49/2
first [61]   3/14
11/23 11/25 13/3
18/15 23/2 26/1
36/6 37/10 37/19
38/1 54/23 57/12
57/18 60/11 62/7
63/19 64/4 64/4
64/19 66/23 72/13
74/14 74/25 78/1
79/2 82/16 83/18
84/8 87/17 87/20
88/1 88/2 90/11
90/13 91/9 91/9
95/6 97/21 100/4
107/11 107/17
107/19 107/20 108/6
108/9 108/17 108/19
108/22 109/10
109/11 110/1 110/10
113/15 114/18
114/25 115/1 115/2
115/15 117/8 118/21
first-filed [5]
63/19 64/4 64/19
74/14 74/25
fit [2]   38/5 68/6
fits [1]   97/4
five [10]   25/1 25/3
25/6 40/7 47/12
48/3 104/2 104/3
111/23 112/6
flight [6]   27/13
27/14 67/5 80/9
114/4 114/7
flip [2]   111/20
111/25
fly [1]   28/13
focus [3]   65/3
77/11 83/10
focused [4]   69/14
82/14 83/5 115/23
focuses [3]   65/18
80/12 81/4
folks [1]   33/13
following [2]   27/4
95/21
footnote [3]   63/12
63/24 63/24
Footnote 1 [2]
63/12 63/24
forbid [1]   30/25
foregoing [1]   124/3
form [11]   10/22
11/6 11/9 11/14
16/11 16/14 17/17

17/22 19/5 22/12
99/15 119/20 123/4
123/6
forth [6]   59/23
74/19 83/9 104/5
forum [7]   4/14 74/8
84/14 88/23 90/20
113/6 119/14
forward [18]   9/5
9/24 11/22 19/11
19/14 22/16 49/18
74/1 84/20 95/3
98/6 102/6 102/11
102/21 115/11
117/19 120/4 120/5
found [4]   25/20
36/6 64/24 88/25
four [29]   25/1 25/3
25/6 25/7 25/8 25/8
47/12 48/3 58/8
58/9 58/18 59/3
60/19 60/22 66/19
67/5 67/10 67/16
71/2 97/16 101/22
101/23 111/5 111/6
111/6 111/23 111/24
115/19 121/5
fourth [2]   67/10
68/8
fourths [1]   67/18
Frank [1]   36/25
frankly [5]   21/14
22/14 41/7 113/3
121/21
freedom [1]   46/4
frequently [1]   34/6
Friday [1]   1/11
front [7]   50/6 52/5
54/23 54/25 55/6
67/16 120/16
fully [1]   6/16
fulsome [1]   7/5
functionality [1]
66/5
funny [2]   11/3 49/9
further [10]   9/22
9/25 15/5 20/25
25/19 29/19 29/21
37/16 98/21 121/20
future [3]   14/9
17/3 56/25

## G

G [2]   2/20 43/6
gain [1]   89/22
gained [3]   39/10
40/14 41/8
game [2]   20/13
22/19
gaming [1]   74/11
gap [1]   11/12
gaps [1]   16/14
gating [2]   78/23
78/24
gave [2]   4/5 38/24
Genentech [2]   57/20
59/12
general [3]   25/2
64/19 100/24
generous [1]   13/18
get [38]   6/5 8/1
12/23 19/9 19/13
19/25 21/4 21/13
21/14 22/10 34/14
48/12 48/23 51/17
55/19 55/19 55/21
59/11 63/22 64/13

65/6 66/21 68/21
79/2 87/1 88/11
93/8 102/6 106/11
110/9 112/5 114/10
112/1 120/1 121/7
gets [1]   39/5
getting [1]   50/22
give [12]   7/10
15/11 18/13 19/14
20/16 22/7 37/23
46/22 61/16 88/6
102/3 113/11
given [17]   11/20
21/11 44/18 46/1
47/3 48/17 52/19
60/12 69/8 75/18
80/20 84/24 101/1
101/25 113/4 115/12
120/17
gives [1]   47/24
go [53]   5/7 9/4
11/22 19/21 19/11
20/1 24/20 25/19
26/23 30/16 36/19
41/17 42/18 54/21
55/8 55/24 63/1
65/11 68/11 69/21
74/1 75/11 77/5
77/6 79/4 84/20
86/7 87/24 88/8
88/11 90/6 90/8
98/6 98/21 101/2
101/18 102/10
102/12 102/21
107/10 108/4 113/10
117/8 117/18 117/23
118/1 118/5 119/7
119/19 119/20 120/4
120/5 122/9
goal [1]   39/7
God [2]   30/25 33/22
goes [11]   32/13
33/3 33/6 44/1
52/21 69/12 71/15
86/10 95/17 111/3
114/6
going [85]   5/19
5/21 5/22 5/23 5/25
6/18 6/20 7/19 7/20
7/25 8/2 9/21 10/1
10/13 18/20 19/1
19/4 19/6 20/6 20/9
20/25 22/5 22/6
22/16 22/16 22/21
28/10 30/5 30/9
30/15 35/5 35/8
35/10 37/3 39/11
39/16 40/8 40/22
43/17 47/4 49/1
52/18 52/21 53/8
53/8 53/12 61/6
61/19 62/9 64/2
65/2 65/3 65/14
73/9 73/12 73/13
74/1 91/16 91/17
94/14 94/15 94/21
98/3 100/25 101/5
101/8 109/12 112/22
112/22 112/23
113/15 115/11
115/24 116/18
117/22 119/2 120/11
120/25 121/4 121/8
121/9 122/17

65/6 66/21 68/21
79/2 87/1 88/11
93/8 102/6 106/11
110/9 112/5 114/10
112/1 120/1 121/7
gone [1]   33/6
google [39]   2/24 2/25
3/6 3/8 3/9 3/17
10/7 10/8 18/10
37/22 46/25 53/24
53/25 55/7 84/3
90/25 120/4 122/24
123/2 123/5 123/7
123/10 123/11
goodness [1]   34/2
goods [1]   97/7
google [51]   58/12
58/15 65/19 65/25
66/7 66/8 67/11
67/23 74/2 81/21
88/11 91/4 91/4
91/5 91/6 91/8 91/8
91/12 91/12 91/16
91/25 92/1 92/2
92/9 93/6 97/21
97/24 98/6 98/20
98/23 99/5 99/7
99/11 103/14 103/17
103/24 104/8 107/2
107/3 107/4 111/7
111/9 111/10 112/11
115/17 116/3 118/5
118/12 118/15
118/15 118/17
Google's [2]   66/10
119/9
got [27]   6/16 10/5
11/12 12/1 13/21
15/12 16/14 17/13
19/17 20/18 20/22
24/13 25/17 30/14
31/15 36/24 38/19
39/25 41/4 41/13
49/2 53/19 53/20
65/6 84/13 113/22
117/16
gotten [1]   22/18
98/16
govern [1]   69/2
governs [4]   60/5
62/18 62/23 64/3
GPS [1]   35/10
grant [8]   38/1 41/2
41/21 46/1 52/7
52/12 53/7 53/9
granted [6]   48/18
51/10 54/5 56/2
63/23 65/24
granting [2]   38/2
72/23
grasp [1]   37/22
great [4]   10/3 55/5
90/25 115/3
greater [2]   36/21
84/17
greatly [1]   76/7
grounds [1]   115/25
groups [1]   104/4
guess [12]   6/18
24/25 27/22 28/7
33/8 42/3 72/9
72/12 87/18 98/22
120/16 120/23
guidance [1]   112/21
guiding [1]   25/9
guy [1]   31/10
guys [3]   24/22 25/8
46/18

## H

H [1]   2/4

**H**

had [37]    4/3 4/7
4/7 9/7 9/10 10/14
11/6 11/8 11/15
11/25 12/20 14/11
18/21 19/8 19/15
20/2 40/7 42/18
46/7 56/21 57/9
66/8 66/8 93/16
95/23 96/11 103/11
114/12 114/13 115/1
116/24 117/5 117/6
117/7 118/20 119/12
119/16
halfway [1]    44/2
hallway [1]    31/12
hand [2]    19/17
46/14
handle [1]    119/24
handling [1]    10/10
hands [1]    39/4
happen [5]    5/21 8/9
98/3 119/22 122/17
happened [6]    6/12
49/10 56/5 98/7
103/19 118/7
happens [8]    9/8
48/8 50/13 75/2
75/3 80/3 83/1
94/16
happy [3]    6/24
20/21 98/8
hard [1]    101/18
hardware [5]    91/18
91/18 103/15 104/3
104/6
harm [1]    50/21
has [45]    6/2 6/7
7/5 10/12 10/20
15/21 24/15 31/7
37/22 38/9 38/11
40/25 44/4 51/20
52/2 56/5 57/1
59/23 67/25 67/25
68/20 69/4 73/4
73/18 76/9 77/4
79/21 80/14 92/17
92/19 94/18 95/16
95/16 99/21 101/25
102/2 104/14 105/10
106/6 108/19 111/4
113/8 117/10 118/2
120/20
Hatch [2]    11/7
11/17
hate [1]    118/5
hauled [1]    4/13
have [176]
haven't [7]    16/9
38/9 40/9 40/10
62/14 98/16 102/5
having [9]    5/2 19/4
27/1 34/24 36/3
36/22 112/11 112/12
121/11
he [27]    33/17 37/4
38/18 39/23 44/1
45/21 45/22 45/23
45/24 46/11 50/14
50/15 50/24 50/24
51/4 51/9 65/6
65/16 73/7 73/18
94/6 94/18 111/7
111/8 111/24 112/1
112/7
he's [3]    73/9 73/11

73/15
head [3]    120/4
24/21 42/11 65/15
103/23
head-on [1]    65/15
heading [1]    63/7
headquarters [1]
66/10
hear [7]    4/16 7/4
16/16 37/19 96/9
116/7 120/22
heard [7]    36/15
68/5 73/15 88/12
90/1 109/10 109/11
hearing [7]    16/12
16/13 33/11 37/4
43/4 119/11 121/15
hearings [1]    45/15
Heartland [1]    76/7
heavily [1]    58/13
held [1]    20/8
Hello [1]    22/25
help [3]    44/2 44/3
68/22
helpful [2]    41/3
121/13
here [78]    3/1 4/23
5/5 5/21 7/9 7/10
8/18 14/7 17/25
19/1 20/8 20/20
20/21 20/22 23/8
23/9 23/12 26/19
27/1 32/17 33/1
33/17 36/14 40/7
40/25 41/20 41/25
43/19 43/24 44/11
45/21 46/2 46/16
48/19 50/21 54/25
55/16 55/17 55/19
55/20 56/7 61/8
66/14 67/15 69/2
70/24 72/8 72/19
72/25 74/10 74/19
77/2 77/3 77/10
77/16 80/18 83/18
89/10 90/2 90/5
92/11 94/24 95/25
97/11 101/11 103/19
111/21 112/22
114/12 114/22
115/11 116/1 117/6
117/16 119/23 120/7
120/13 120/14
here's [4]    7/16
12/5 20/9 119/21
hereby [1]    124/3
herring [1]    63/17
hey [4]    20/14 31/14
38/19 39/18
hiding [1]    20/13
highlighted [1]
70/13
highly [11]    24/9
24/11 24/15 26/11
26/14 26/20 27/2
27/5 28/21 34/10
41/12
him [1]    73/7
hire [1]    47/14
his [5]    6/15 18/24
37/12 66/16 67/13
historically [1]
52/23
history [5]    38/23
40/3 45/1 45/12
52/14

hit [3]    18/14 39/11
60/14
hits [1]    28/21
HOESCHEN [9]    1/21
3/1 10/9 21/1 21/7
30/4 32/4 40/12
50/7
hold [7]    8/2 29/20
29/20 37/2 50/15
88/6 93/25
home [2]    79/9 84/14
honest [1]    62/15
honor [395]
Honor's [5]    4/24
9/17 16/3 20/11
96/1
HONORABLE [1]    1/16
hopefully [2]    55/15
117/25
hotly [1]    91/14
hotly-contested [1]
91/14
hotspot [1]    70/2
hour [1]    54/10
hours [1]    114/13
how [32]    8/1 20/12
20/22 22/6 23/13
23/14 24/6 25/6
26/9 30/17 34/13
34/16 36/7 36/7
48/11 48/21 49/23
52/15 66/12 77/21
78/5 88/21 89/11
89/14 93/4 95/17
95/18 96/2 97/11
101/1 112/22 115/19
however [3]    27/25
64/18 70/5
HTC [2]    104/5
118/11
Huawei [1]    118/11
hypothetical [1]
44/8

**I**

I [502]
I'd [2]    86/14 88/10
I'll [11]    7/16 7/24
8/2 16/16 26/19
93/8 94/24 95/14
98/22 99/1 118/8
I'm [75]    3/19 3/22
4/12 4/22 5/19 6/4
6/18 6/24 6/24 7/3
7/20 7/22 7/22 8/2
9/21 12/24 20/25
22/5 22/12 22/16
22/21 24/22 28/13
30/13 31/20 35/8
38/1 43/8 45/5
50/22 52/8 53/1
60/16 64/2 65/2
65/2 69/6 72/9 73/1
86/4 89/13 90/4
91/10 91/25 94/1
94/3 94/13 94/15
94/19 94/21 96/16
97/1 99/1 99/8 99/9
99/10 102/19 103/1
107/1 107/24 108/2
108/24 110/11
112/15 112/22
112/22 115/24 116/2
117/18 119/2 120/7
120/25 121/4 121/10
123/4

I've [19]    9/7 11/12
11/15 13/18 16/12
65/3 75/4 77/24
79/16 79/21 89/18
95/6 96/6 97/10
114/12 114/13 116/3
117/5 119/24
idea [5]    19/14
39/14 42/3 42/13
47/2
ideal [1]    4/10
identical [1]    43/23
identify [1]    81/19
II [1]    1/6
illustrate [1]
42/22
illustrative [2]
68/21 72/18
imagine [1]    35/6
Imaging [1]    64/5
immediately [1]
36/5
imminent [1]    74/9
impingent [1]    38/25
implementation [1]
70/8
important [15]
13/11 23/15 23/21
48/22 54/14 55/12
55/13 56/6 69/19
80/1 81/12 91/18
98/10 109/25 113/25
importantly [1]
76/2
imposed [1]    32/2
impossible [1]    12/5
inadequacy [1]    22/8
inappropriate [1]
121/11
INC [4]    1/3 3/2
64/5 64/24
inclined [5]    12/25
28/15 75/25 78/24
82/20
include [4]    26/10
42/24 51/11 101/10
included [2]    33/1
50/9
includes [1]    87/11
including [4]    13/12
98/5 114/4 116/13
inclusion [1]    17/16
incongruent [1]
20/20
inconsistent [3]
53/3 72/5 72/6
inconvenienced [1]
80/19
incorporate [2]
35/5 109/12
incorporated [1]
77/2
incorrect [1]    88/5
incredibly [1]
35/11
incrementally [1]
61/22
indemnification [1]
115/12
indemnified [1]
105/18
indicated [3]    54/8
61/13 119/13
indicating [2]    56/1
84/18
indirectly [1]    13/7

indistinguishable
[1]    73/6
individual [6]    26/3
26/8 27/5 31/2 31/6
31/7
individuals [2]
25/1 66/6
inefficiencies [1]
69/24
inefficiency [4]
69/15 69/17 69/21
70/17
infer [1]    60/20
influence [3]    42/16
42/17 45/17
info [2]    26/18
26/18
information [23]
23/4 23/16 23/20
23/22 23/23 23/24
24/1 24/10 24/16
26/21 26/22 28/22
34/10 39/10 39/14
39/19 39/22 40/14
41/8 41/13 42/9
44/19 46/6
informed [1]    46/5
infringe [11]    12/6
12/7 12/9 14/20
14/22 14/23 16/7
85/3 86/17 86/17
87/4
infringement [75]
11/11 11/17 11/21
11/22 11/25 12/4
12/12 12/18 13/1
13/4 13/5 13/20
13/24 13/25 14/4
14/8 14/13 15/8
15/19 15/23 16/1
16/4 16/5 16/7 16/8
18/6 18/7 18/22
22/13 44/9 44/21
45/8 56/12 57/24
61/14 61/15 61/16
66/4 66/17 67/19
71/17 71/21 71/23
71/25 72/14 73/1
73/14 74/4 80/3
80/13 82/10 83/14
84/21 84/23 84/25
84/25 85/17 86/8
88/5 92/3 92/4 92/4
92/6 92/7 92/8
92/12 92/15 93/17
93/18 93/21 113/17
113/20 113/24 114/3
114/22
infringes [1]    115/5
infringing [10]
13/7 58/6 58/9
58/17 58/20 66/19
67/18 80/2 81/16
97/6
initial [6]    14/14
14/15 61/24 112/25
113/6 113/16
initially [1]    93/17
injunction [17]
8/19 9/10 53/21
56/24 93/1 98/17
100/1 100/3 102/24
115/9 116/7 116/20
116/20 116/21
117/10 120/24 121/9
insert [1]    27/1

**I**

**inside [4]** 33/7 92/8 92/12 92/15

**insofar [1]** 53/9

**instance [7]** 3/21 6/3 28/24 33/13 44/18 45/1 78/2

**instead [4]** 5/11 16/23 17/2 26/25

**instincts [1]** 8/8

**instituted [1]** 57/6

**instrumentalities [1]** 70/4

**insufficient [1]** 90/16

**INTELLECTUAL [18]** 1/6 1/6 3/11 6/19 18/11 23/10 30/1 32/8 35/21 37/21 43/4 43/6 43/11 44/1 47/1 77/11 78/3 86/2

**Intelligent [1]** 37/11

**Intelsat [2]** 67/7 103/10

**intend [2]** 31/4 120/25

**intended [7]** 11/6 11/8 14/12 14/13 14/25 16/10 64/11

**intending [1]** 14/3

**intent [5]** 5/12 7/13 20/11

**intentionally [1]** 42/9

**intentions [1]** 23/12

**interest [2]** 13/12 82/5

**Internet [1]** 76/18

**interpretation [1]** 59/2

**interrogatory [2]** 12/14 95/23

**interrupt [1]** 31/1

**intertwined [1]** 52/15

**intervene [5]** 77/22 77/23 78/9 78/14 83/19

**intervened [4]** 76/14 78/7 84/11 88/15

**intervention [1]** 78/7

**intrinsic [4]** 45/4 45/6 45/9 45/10

**invalidity [6]** 11/7 12/19 19/1 72/2 72/10 93/21

**invention [1]** 23/5

**involve [2]** 35/7 111/10

**involved [11]** 25/11 27/7 34/9 36/11 37/4 38/6 43/13 43/21 47/11 67/2 67/5

**involvement [1]** 43/20

**IPR [16]** 42/5 43/22 44/6 44/8 44/17 44/20 44/25 46/1 46/4 48/2 51/5 51/17 51/20 52/3

52/21 53/6

**IPR [1]** Document 6

**IPRs [17]** 47/4 47/8 47/11 47/13 47/21 47/25 48/9 48/18 48/20 48/21 48/24 49/15 49/18 50/15 51/2 51/11 67/20

**irrelevant [1]** 89/16

**is [387]**

**isn't [4]** 20/17 40/4 65/9 110/13

**issue [73]** 4/23 6/11 6/14 6/15 7/5 7/24 9/20 9/23 10/14 10/17 12/11 12/14 18/7 22/8 22/10 24/3 32/5 35/16 37/8 37/15 38/21 41/17 41/18 41/25 43/18 43/18 49/19 50/23 51/23 57/3 58/5 58/10 63/25 65/10 66/10 70/1 71/4 74/2 74/2 78/23 78/25 79/2 80/23 83/10 83/12 83/21 83/22 84/8 86/9 87/4 89/19 90/15 91/2 91/14 91/22 93/18 95/10 95/12 96/9 97/22 97/23 98/10 98/24 99/3 101/11 102/6 104/7 111/4 111/11 111/14 114/7 115/20 116/8

**issued [3]** 11/3 46/12 119/1

**issues [17]** 18/2 21/2 21/16 22/1 37/23 61/6 61/9 61/12 62/10 67/19 75/8 75/10 81/25 82/1 82/9 83/10 84/7

**it [311]**

**it's [102]** 6/11 7/21 8/7 12/4 16/4 16/19 20/18 20/19 22/2 24/17 24/19 25/7 27/14 28/21 29/19 29/21 30/10 30/10 30/14 33/1 33/24 34/1 34/15 35/10 38/11 38/25 39/1 40/25 42/11 44/7 45/3 45/6 47/5 47/15 47/17 48/5 48/6 48/17 49/3 49/3 49/7 49/7 49/11 49/11 50/2 52/3 52/9 53/4 55/1 55/13 55/14 57/5 57/8 59/2 64/14 67/1 68/7 68/8 69/10 69/11 70/6 70/13 71/2 72/17 73/19 73/22 73/23 78/1 80/2 80/6 81/20 90/10 91/10 91/18 92/25 94/13 94/21 95/14 98/10 99/10 99/18 101/5 103/3 104/24 106/1

107/5 107/23 107/24 108/1 112/5 112/13 112/19 114/1 114/12 116/4 117/20 117/22 122/18

**ITC [1]** 117/5

**its [5]** 27/1 57/9 68/1 114/4 118/14

**IV [33]** 4/19 4/24 7/4 7/5 16/19 38/1 42/23 50/1 51/16 51/18 51/21 54/2 56/8 56/19 57/6 78/11 80/18 88/2 88/13 89/1 91/2 92/19 93/9 93/23 94/25 96/17 101/24 104/14 108/7 116/21 117/11 120/15 122/15

**IV's [6]** 15/8 54/4 56/3 81/4 84/17 84/20

**J**

**Jack [1]** 33/16

**January [1]** 56/21

**JOHN [4]** 2/11 3/11 3/12 37/4

**jokingly [1]** 52/17

**JONATHAN [2]** 2/11 54/2

**judge [18]** 1/16 32/7 32/20 37/25 38/18 43/25 49/24 50/14 50/23 52/9 73/4 73/21 95/13 95/21 103/2 119/17 119/18 119/20

**Judge Albright [2]** 95/13 95/21

**judges [7]** 10/25 116/9 118/3 119/17 119/22 120/10 121/12

**judgment [13]** 5/6 10/25 56/12 61/7 84/23 85/16 101/9 102/2 113/17 113/20 114/2 114/6 118/12

**judicial [18]** 64/12 64/21 67/13 69/13 71/12 71/15 74/16 75/2 75/24 81/2 82/3 102/20 115/3 115/10 119/15 119/24 120/11 121/21

**judicially [1]** 118/21

**July [2]** 1/11 118/21

**July 1st [1]** 118/21

**Jumara [3]** 90/7 90/9 113/4

**jump [1]** 4/10

**June [5]** 15/12 85/21 101/2 114/9 114/23

**June 12 [5]** 15/12 85/21 101/2 114/9 114/23

**jurisdiction [10]** 75/20 76/17 76/21 78/11 88/20 89/17

89/22 90/12 90/16

**jurisdictions [2]** 63/17 76/22

**just [117]** 5/12 7/10 7/11 7/13 7/22 8/7 8/9 10/13 12/20 13/17 14/6 15/5 15/10 16/17 17/15 18/13 19/11 20/18 20/20 21/22 22/15 23/20 24/17 24/22 27/1 27/14 30/10 35/4 35/11 36/19 37/23 38/4 39/8 39/21 40/1 40/4 40/9 40/19 40/25 41/10 42/22 45/19 46/1 46/15 46/22 47/16 47/20 48/5 49/3 49/4 49/11 49/11 50/5 50/15 50/18 50/24 51/15 52/8 52/9 52/15 53/4 53/13 55/10 57/11 59/1 59/17 60/1 60/18 60/18 60/21 63/23 64/21 66/15 67/1 68/13 69/20 70/8 70/20 73/8 74/23 75/4 83/8 85/6 85/8 85/11 94/18 94/22 95/14 96/8 98/23 100/25 101/14 101/21 103/8 104/10 104/24 105/6 107/4 107/10 108/5 108/7 108/17 109/17 109/24 110/2 110/14 112/15 112/16 113/2 113/10 115/18 116/14 117/1 120/9 121/4 121/25 123/12

**justice [1]** 87/8

**justify [1]** 122/24

**K**

**K [1]** 2/11

**KAREN [2]** 1/21 3/5

**KASH [4]** 2/3 3/3 3/5 84/4

**KASOWITZ [3]** 2/10 3/12 35/22

**Katz [1]** 62/13

**keep [6]** 19/4 19/10 20/16 30/19 48/23 84/10

**KELLER [5]** 1/20 1/21 3/1 3/5 21/8

**Kelley [1]** 64/24

**key [1]** 61/8

**kind [12]** 4/10 5/11 8/8 11/13 11/14 34/25 49/9 49/23 52/16 68/21 68/22 96/9

**kinds [1]** 22/9

**King [1]** 1/14

**knew [2]** 17/3 38/16

**know [123]** 4/18 4/23 7/13 8/7 8/25 9/8 11/10 11/21 12/23 12/25 13/17 13/19 14/15 17/10 17/16 18/3 19/12

21/1 21/6 21/7 22/2 22/11 23/11 23/16 24/1 25/10 25/16 25/19 28/10 30/7 30/9 30/19 31/13 31/15 32/1 32/22 34/10 35/9 35/20 36/22 36/23 36/25 37/3 37/5 37/8 37/8 39/24 42/3 42/7 42/8 42/10 42/11 42/17 44/16 44/18 44/19 47/17 49/13 53/3 57/15 68/24 70/14 71/19 73/6 73/22 76/9 77/2 77/5 81/11 81/11 82/18 84/16 84/22 85/2 85/13 85/16 86/18 88/22 90/6 90/18 91/3 94/7 94/11 95/5 95/7 95/17 97/4 97/14 98/7 98/10 99/16 100/22 100/25 102/8 103/18 104/5 105/6 108/11 108/16 109/6 109/9 109/10 111/3 115/17 115/18 116/11 116/11 116/14 118/2 118/4 119/22 120/17 120/18 120/23 121/16 121/17 122/15 122/17 123/3 123/4

**knowing [2]** 23/13 25/14

**knowledgeable [1]** 36/6

**known [9]** 20/16 21/8 37/5 48/6 48/10 49/7 67/8 77/3 79/8

**knows [6]** 38/10 43/15 57/12 79/13 91/20 119/19

**kudos [1]** 22/7

**L**

**L.P [1]** 64/24

**lack [1]** 71/15

**laid [1]** 57/17

**land [1]** 83/6

**language [14]** 15/16 25/17 25/20 28/1 28/16 28/16 28/18 31/5 32/20 39/8 53/9 94/9 109/22 109/23

**last [5]** 32/13 34/14 51/19 52/19 54/10

**lastly [1]** 111/7

**late [1]** 13/15

**later [8]** 9/2 38/19 38/19 56/11 57/8 58/2 64/17 119/8

**later-filed [1]** 64/17

**law [42]** 37/6 38/25 47/14 49/2 59/2 59/10 59/14 59/21 59/21 60/5 60/14 61/25 62/1 62/2

**law... [28]** 62/5
62/17 62/23 63/8
63/14 63/19 64/3
65/2 69/1 78/1
79/17 79/17 81/11
83/20 90/23 96/2
96/7 96/12 100/9
101/6 106/15 106/16
106/21 107/20
107/21 108/2 110/7
112/25
**Laws [1]** 63/8
**lawsuit [3]** 4/14
47/23 89/24
**lawsuits [1]** 107/18
**lawyer [3]** 39/16
99/16 117/6
**lawyers [18]** 6/2
23/4 23/12 24/23
25/11 28/24 39/1
39/5 39/6 39/24
40/7 40/13 41/4
41/5 48/19 117/16
120/17 122/16
**lay [2]** 66/22
120/25
**lead [4]** 44/20 46/7
69/17 108/3
**leads [1]** 67/12
**least [7]** 6/9 21/12
44/4 70/12 104/2
120/12 120/18
**leave [2]** 42/15
100/18
**left [2]** 36/15
104/2
**legal [4]** 18/2
44/24 49/22 59/18
**legitimacy [2]** 9/12
10/2
**legitimate [1]**
41/14
**less [4]** 4/10 14/9
52/18 52/21
**let [17]** 10/19
13/22 20/1 20/6
29/13 29/16 34/10
44/23 51/6 59/1
59/17 87/15 94/25
96/1 110/16 112/24
117/24
**let's [26]** 4/16 9/4
10/17 22/23 25/17
26/19 26/20 26/25
28/24 37/18 37/19
43/16 55/18 60/18
61/23 75/11 84/2
85/8 94/22 98/13
98/19 100/18 101/21
105/6 116/7 116/8
**letter [5]** 17/12
32/17 38/3 43/7
47/19
**level [1]** 80/25
**LG [1]** 118/11
**license [3]** 10/14
10/16 20/14
**licenses [3]** 13/12
17/19 21/15
**light [3]** 54/7
85/13 87/7
**like [44]** 5/7 9/4
9/9 11/9 11/10
12/20 18/24 19/1
19/9 23/3 23/10

26/13 28/5 28/5
30/7 30/8 30/20
34/21 35/21 36/3
36/10 37/25 38/14
41/11 45/3 46/13
48/11 48/17 49/17
52/17 54/12 61/22
62/9 67/11 69/20
72/24 76/22 79/6
82/10 86/14 88/11
105/14 106/9 117/3
**likely [2]** 119/5
122/18
**limitations [2]**
70/6 70/12
**limited [5]** 3/24
41/14 43/15 43/20
85/5
**limiting [1]** 35/4
**limits [1]** 43/17
**line [5]** 52/9 94/12
96/6 99/23 105/7
**lines [3]** 8/19 26/2
44/22
**listing [1]** 83/7
**literally [1]** 97/13
**literature [1]**
52/19
**litigant [2]** 64/21
67/13
**litigate [11]** 5/23
6/3 6/16 6/20 6/23
7/4 8/4 8/4 115/8
117/6 120/7
**litigated [2]** 6/7
70/5
**litigating [1]**
115/4
**litigation [25]**
30/8 34/9 36/25
46/3 46/6 47/5
47/13 51/9 51/18
52/6 69/15 69/22
76/11 80/8 82/10
83/16 83/18 94/3
97/5 108/20 110/4
110/8 114/8 115/13
116/10
**litigations [1]**
80/12
**litigators [2]** 21/9
34/6
**little [9]** 7/3
37/23 53/1 88/14
92/19 101/10 101/24
103/22 118/8
**live [5]** 54/24
67/24 76/10 107/2
112/18
**living [1]** 112/15
**LLC [4]** 1/6 1/7
3/25 25/2
**LLP [3]** 2/3 2/8
2/10
**local [2]** 6/6 6/10
**located [1]** 81/20
**location [2]** 80/24
81/10
**locations [1]** 76/4
**logic [3]** 42/8
84/15 99/21
**long [3]** 8/1 41/24
62/15
**longer [1]** 29/2
101/6
**look [18]** 22/6

25/17 28/20 38/20
60/3 62/11 62/14
49/19 63/3 65/3
71/19 91/4 94/6
107/8 111/25 115/21
116/23 119/7
**looked [5]** 32/18
38/22 89/9 92/3
103/16
**looking [4]** 23/17
27/19 34/17 34/19
**looks [4]** 52/17
61/5 62/8 92/21
**lopsided [1]** 49/3
**lose [2]** 47/25
73/13
**losers [1]** 38/16
**loss [1]** 72/9
**lost [2]** 72/15
114/17
**lot [6]** 11/4 32/19
35/8 52/19 99/21
120/15
**loud [1]** 4/22
**Ltd [2]** 64/13 64/13
**Luckily [1]** 29/3
**lunch [1]** 118/1

## M

**made [15]** 6/9 7/5
9/4 10/20 42/14
53/14 73/7 96/7
96/11 96/17 110/23
111/8 112/1 112/7
114/1
**MADELINE [2]** 2/4
3/4
**mails [1]** 18/24
**main [2]** 8/20 91/2
**maintain [2]** 8/17
87/20
**maintains [1]** 81/17
**major [1]** 110/20
**majority [2]** 50/12
112/3
**make [31]** 5/3 9/3
14/15 18/25 20/19
31/23 34/13 39/6
39/20 40/19 44/9
51/3 59/19 64/2
68/3 68/4 75/9 85/9
86/20 88/5 98/19
100/21 108/11
108/17 108/18
109/19 110/14
110/14 111/21
117/24 120/6
**maker [2]** 91/21
91/22
**makers [1]** 92/10
**makes [6]** 4/10
45/24 53/1 109/1
120/13 123/2
**making [3]** 58/7
60/10 90/4
**managing [3]** 3/24
25/2 118/4
**mandamus [6]** 92/6
98/2 104/1 118/25
119/8 119/10
**manner [1]** 11/22
**manufacturer [10]**
17/24 58/5 61/7
62/9 87/22 91/13
97/6 97/8 98/25
99/4

**manufacturer's [1]**
93/9
**manufacturers [7]**
97/15 101/22 101/23
101/25 102/14
102/18 115/19
**manufacturing [1]**
115/16
**many [12]** 6/13 7/7
25/6 47/20 69/16
79/16 79/22 89/5
89/6 90/1 109/4
122/8
**March [1]** 56/23
**March 28 [1]** 56/23
**markets [1]** 109/4
**Markman [1]** 45/15
**material [5]** 26/8
26/9 27/1 27/2 27/6
**materials [1]** 22/18
**math [2]** 67/10 68/8
**Matt [1]** 84/3
**matter [29]** 12/17
27/9 27/11 27/20
28/3 29/11 33/19
35/4 35/15 39/2
39/10 40/15 41/1
41/8 44/24 76/21
94/21 101/6 106/15
106/16 106/21
107/20 107/21 110/7
112/25 112/25
113/16 116/3 117/2
**matters [1]** 121/18
**MATTHEW [2]** 2/3 3/3
**max [1]** 106/9
**may [23]** 11/10
19/16 24/18 33/6
40/23 44/20 49/18
51/24 54/1 54/13
54/15 55/9 55/16
55/16 66/25 67/9
70/14 70/15 79/5
87/5 87/5 115/20
118/4
**maybe [9]** 8/6 34/16
35/7 36/9 38/6 68/4
68/9 122/23 123/1
**Mazzant [3]** 73/22
119/22 121/12
**me [72]** 3/2 3/11
4/7 4/10 5/9 5/12
5/22 6/5 7/8 8/4
8/12 10/19 10/20
13/22 15/11 25/18
27/18 29/14 29/16
31/19 32/9 32/18
32/23 33/15 34/5
36/13 38/12 38/21
44/2 44/3 44/23
45/15 46/23 50/6
50/23 51/6 52/15
52/25 59/1 59/17
61/25 62/20 62/22
63/1 65/8 66/11
87/15 88/6 89/18
94/25 95/9 95/20
96/1 99/24 103/5
103/16 106/24
107/19 107/22
110/16 112/1 112/8
112/24 113/7 115/20
115/22 116/25 117/7
117/24 120/12
120/22 122/5
**mean [33]** 8/6 13/19

15/2 16/2 16/8 16/9
17/19 17/20
21/1 24/25 28/1
28/2 28/20 30/7
30/17 31/9 31/18
34/3 34/16 35/3
35/6 35/9 39/17
45/14 49/3 55/8
72/1 96/7 98/24
106/9 120/23 122/14
**meaning [4]** 14/12
58/1 81/23 83/13
**meaningful [1]**
63/14
**means [5]** 16/8
45/22 99/17 99/18
109/2
**meant [5]** 14/18
15/1 42/10 57/18
62/7
**meatier [1]** 88/12
**mechanically [1]**
64/18
**mechanism [1]** 83/3
**meet [11]** 3/15
18/21 20/14 36/16
54/6 57/19 74/24
82/23 100/16 106/16
110/6
**member [1]** 3/25
**members [1]** 25/2
**memo [1]** 30/18
**mention [3]** 86/16
95/22 95/23
**mentioned [4]** 23/2
40/4 93/10 122/11
**merely [2]** 57/22
57/23
**Merial [1]** 64/13
**merits [1]** 8/23
**meshugaas [1]** 85/1
**met [4]** 40/9 40/25
65/24 74/19 117/14
**Microsoft [3]** 4/2
4/3 4/6
**might [8]** 23/17
34/10 41/11 52/23
62/20 69/1 104/1
114/11
**militates [1]** 81/1
**mind [4]** 24/2 41/11
44/15 117/9
**mindful [1]** 53/1
**mine [1]** 6/8
**minimize [1]** 80/25
**minute [2]** 48/6
55/18
**minutes [1]** 29/3
106/9
**mirrors [1]** 11/16
**miscommunication [1]**
93/15
**missing [1]** 105/2
**misspeaks [1]** 45/21
**mix [1]** 122/5
**Mobility [1]** 90/3
**model [1]** 35/24
**modify [1]** 28/7
**mogul [1]** 101/18
**moment [2]** 14/6
90/3
**monetize [1]** 36/1
**monetized [1]** 35/25
**month [1]** 14/9
**months [4]** 51/19
56/11 57/6 57/8

**M**

moon [1]   36/23
more [19]   3/23 5/7
5/7 19/16 20/21
36/13 38/4 43/19
44/22 53/2 67/10
68/9 95/10 97/15
101/24 103/21
103/23 114/11
121/22
moreover [5]   67/12
72/7 72/17 76/25
79/25
morning [13]   2/24
2/25 3/6 3/8 3/9
10/7 10/8 18/10
26/13 46/25 53/24
53/25 84/3
Morris [2]   33/12
33/13
most [17]   13/11
23/15 23/21 24/10
26/16 30/7 34/5
35/6 35/17 65/21
75/17 76/2 81/12
119/23 120/6 120/13
122/5
motion [59]   10/5
18/17 19/18 19/23
20/2 20/8 53/9
53/19 53/20 53/22
54/4 55/13 55/14
56/2 56/3 56/19
56/23 57/2 57/10
60/6 63/4 63/22
65/23 65/24 69/3
73/11 81/18 87/15
88/10 88/18 91/3
93/1 94/3 96/25
98/16 98/18 98/19
98/22 100/4 100/4
100/5 100/8 100/18
100/19 106/20 107/7
107/9 112/23 112/24
113/12 113/13
113/13 115/2 115/9
115/24 118/22 119/3
119/9 121/8
motions [7]   8/3
8/15 56/17 57/3
103/4 118/20 123/13
movable [1]   110/13
move [11]   9/24
19/14 19/24 20/1
21/5 21/14 21/22
65/17 72/2 76/13
94/22
moved [7]   19/20
71/25 78/20 84/22
104/15 118/16
118/18
moving [2]   19/10
20/16
Mr. [27]   3/7 6/2
6/7 6/12 8/9 18/12
21/1 21/7 21/7
21/23 21/24 27/17
30/4 32/4 33/23
35/13 37/12 39/23
40/12 50/7 50/8
51/22 52/17 54/8
79/13 84/6 94/3
Mr. Blumenfeld [1]
33/23
Mr. Desmarais [1]
37/12

Mr. Downing [1]
54/8
Mr. Farnan [12]   3/7
6/2 6/12 8/9 21/7
21/23 21/24 50/8
51/22 52/17 54/8
79/13
Mr. Farnan's [1]
6/7
Mr. Hoeschen [6]
21/1 21/7 30/4 32/4
40/12 50/7
Mr. Waldrop [2]
84/6 94/3
Mr. Warren [3]
27/17 35/13 39/23
Ms. [1]   21/8
Ms. Keller [1]   21/8
much [8]   18/5 23/14
34/13 36/23 84/1
87/19 94/21 120/9
multiple [12]   31/20
31/21 57/3 57/4
63/3 80/22 82/6
83/14 92/14 92/14
97/15 104/6
multiplicity [1]
71/12
must [1]   12/9
my [68]   3/5 3/16
3/17 4/5 4/18 5/12
5/24 6/4 6/5 8/8
8/12 8/13 8/21 8/21
9/1 9/12 9/16 9/16
10/2 11/3 11/6
11/24 12/25 16/11
16/13 16/14 22/8
22/15 28/7 28/14
28/20 31/23 33/22
34/1 34/4 41/11
44/4 44/8 45/17
46/16 52/13 54/1
54/23 66/21 67/10
68/8 68/12 88/4
91/9 91/9 100/6
101/11 103/23
106/12 107/16
107/25 111/8 111/25
112/1 112/7 112/7
112/23 114/17
120/16 121/19
122/20 123/13 124/4
myself [1]   101/16

**N**

N [1]   2/20
nail [1]   18/14
name [1]   54/2
named [1]   25/1
namely [1]   57/21
narrow [5]   34/8
41/2 42/2 42/15
53/6
narrowed [1]   44/6
narrowing [4]   43/15
44/5 45/25 46/8
NATHAN [3]   1/21 3/1
10/9
nature [1]   22/15
NDCA [2]   119/13
119/14
necessary [1]   54/6
need [5]   3/14 21/14
40/8 86/1 122/4
needed [1]   66/9
negative [1]   99/2

negotiate [1]   28/18
never [7]   13/22 14/13
15/9 89/8
new [2]   20/3 37/25
next [7]   36/25
39/12 41/17 44/10
45/24 77/9 79/23
Nichols [2]   33/12
33/13
nine [5]   57/6 57/7
111/9 111/15 111/19
nine months [1]
57/6
no [61]   1/4 6/7 7/9
7/9 7/16 7/16 10/1
11/24 13/6 14/12
15/5 18/23 20/13
20/13 20/19 21/2
25/13 29/2 30/10
33/24 37/18 38/9
38/16 40/21 41/4
41/22 41/25 42/18
46/20 47/15 48/25
50/1 60/7 60/9
63/13 63/18 68/14
70/15 73/20 74/10
76/3 77/3 77/14
77/14 79/8 88/25
91/16 91/16 91/16
91/16 101/6 102/13
102/17 107/17 108/7
108/18 108/20
110/23 114/11
120/23 121/2
nobody [1]   38/11
nodding [1]   24/20
non [28]   3/24 11/7
11/11 11/17 11/21
11/25 12/4 12/12
18/6 18/22 22/13
39/22 56/12 58/20
71/23 71/25 84/23
93/17 93/18 93/21
99/12 112/19 113/17
113/20 113/24 114/3
115/17 116/4
non-Hatch-Waxman [2]
11/7 11/17
non-infringement
[19]   11/11 11/21
11/25 12/4 12/12
18/6 18/22 22/13
56/12 71/23 71/25
84/23 93/17 93/18
93/21 113/17 113/20
113/24 114/3
non-managing [1]
3/24
non-precedental [1]
115/17
non-precedential [3]
99/12 112/19 116/4
non-protected [1]
39/22
non-Viasat [1]
58/20
none [5]   74/6 74/10
83/8 85/22 85/24
nonparty [1]   27/7
normal [7]   11/17
12/19 17/17 17/17
17/23 20/17 42/18
Northern [3]   118/13
118/25 119/2
Northwest [1]   123/3

not [145]
notable [1]   9/3
note [8]   15/5 52/16
61/13 87/19 90/11
91/11 94/25 98/11
noted [4]   21/24
77/4 93/16 118/2
notes [1]   124/4
nothing [4]   5/7
35/2 79/21 110/5
notice [1]   56/6
novel [1]   6/5
November [1]   56/7
November 11 [1]
56/7
now [68]   4/10 6/11
7/7 7/15 8/18 12/15
13/11 16/12 17/5
20/3 20/10 21/4
22/4 22/14 22/23
24/8 24/12 38/22
47/4 49/21 53/11
57/1 59/10 59/14
61/13 61/17 62/14
65/5 66/25 68/17
69/8 69/20 70/20
71/11 71/14 73/15
74/6 76/13 81/8
83/7 84/16 84/24
85/2 85/19 88/12
88/16 90/11 92/19
93/21 96/16 97/2
98/9 98/13 98/14
100/3 100/22 101/1
105/9 105/16 112/6
113/13 114/17 116/7
117/1 117/18 117/21
118/15 119/3
nuance [1]   101/24
nub [1]   25/23
Number [2]   93/24
119/7
Number 105 [1]
119/7
numbers [2]   103/21
103/22

**O**

O [1]   2/20
object [1]   84/14
objection [1]   9/17
obligations [2]
31/21 31/24
obviously [6]   61/8
88/2 88/24 89/3
96/10 119/10
occur [4]   61/10
61/17 82/15 117/17
occurred [3]   85/1
94/20 95/24
occurring [3]   87/22
92/5 103/24
occurs [1]   122/18
odd [1]   36/19
off [10]   8/2 42/12
43/16 43/16 47/13
50/10 61/19 70/8
80/12 103/22
offered [1]   90/11
office [1]   31/23
77/3 81/18
offices [4]   76/4
76/16 79/8 80/14
Official [1]   124/7
often [1]   52/12
oh [8]   4/21 30/16

34/1 36/23 54/19
87/3 107/25
okay [66]   5/20 7/11
9/19 10/18 17/8
18/8 20/9 20/23
21/20 22/16 26/1
26/7 26/9 26/21
31/9 37/14 41/17
43/9 48/11 48/23
49/16 52/1 53/10
59/16 60/25 61/20
62/25 63/9 64/1
69/23 72/12 73/6
73/21 74/5 78/16
79/4 79/15 83/23
86/19 86/22 87/24
87/25 88/8 90/10
90/25 94/24 96/1
96/15 96/20 97/3
98/9 98/20 99/14
101/20 102/25
104/17 104/24
105/12 106/4 109/15
110/12 110/25
111/17 111/22
114/16 120/14
once [3]   36/22
42/14 89/4
one [66]   4/2 4/5
4/18 6/7 7/3 10/1
22/10 24/18 32/6
37/3 37/16 37/18
38/1 38/2 38/9 38/9
38/12 39/17 40/24
42/3 46/17 49/17
50/4 50/5 57/15
58/9 58/19 61/10
63/22 67/10 67/16
68/8 69/10 70/12
70/25 71/1 71/2
71/7 71/8 71/10
74/22 80/24 83/12
84/8 84/12 84/13
88/6 94/1 94/2 94/4
95/10 95/22 97/22
99/9 99/10 105/1
105/2 107/18 108/6
108/6 111/9 111/13
111/15 115/19
117/19 122/8
one's [1]   20/19
one-fourth [2]
67/10 68/8
ones [5]   28/1 47/7
49/14 56/13 120/17
only [44]   11/7
11/21 14/24 15/7
15/7 15/13 15/25
17/2 24/20 26/23
28/21 28/23 29/24
30/24 31/2 36/24
39/13 43/20 48/7
48/15 49/7 49/7
57/14 58/6 60/12
61/11 67/16 71/3
71/17 71/20 71/22
71/25 72/20 72/23
72/25 73/14 77/1
79/7 80/24 84/8
93/16 97/22 105/22
110/4
open [1]   121/10
opened [1]   16/12
opening [1]   43/16
operative [1]   57/13
opinion [4]   32/7

opinion... [3]   42/23 112/14 112/19
opinions [1]   42/6
opportunity [2]   54/25 83/19
opposed [3]   9/23 18/18 60/5
opposing [1]   98/14
opposite [1]   89/18
opposition [4]   63/4 88/21 96/24 119/9
option [1]   84/13
oral [5]   1/12 6/14 73/15 116/25 123/12
order [80]   3/15 3/16 3/18 4/11 4/24 5/1 5/18 5/22 5/24 6/4 6/9 6/19 6/20 7/6 7/15 7/17 7/18 7/24 8/5 8/12 8/13 8/13 8/17 8/19 8/21 8/21 8/24 10/13 10/15 10/22 11/1 11/4 11/6 11/14 12/22 12/23 12/25 13/9 13/19 13/24 15/4 15/16 15/22 15/25 16/10 16/20 17/9 17/17 17/22 19/3 19/5 20/17 20/18 22/9 22/12 22/24 23/1 25/15 37/16 39/13 39/15 39/17 39/17 39/19 40/8 40/16 41/6 41/9 41/19 43/4 46/12 47/9 48/14 48/19 51/16 53/13 94/12 119/1 119/1 123/12
ordered [5]   14/10 15/1 46/11 95/12 95/21
orders [8]   16/11 16/14 19/18 22/15 31/20 39/24 47/6 50/10
ordinary [1]   4/25
orient [1]   55/10
original [3]   75/19 77/6 105/5
other [45]   6/1 6/6 8/15 9/7 14/21 15/5 19/20 21/25 22/1 22/1 24/24 37/19 39/10 50/20 53/11 59/17 66/13 66/22 67/2 67/17 68/12 68/19 73/2 76/4 86/24 87/11 87/11 89/10 97/16 98/10 98/22 99/3 99/10 102/13 102/17 103/14 105/16 108/8 108/8 109/1 113/7 113/10 118/3 118/17 119/18
otherwise [6]   15/14 15/16 31/17 34/11 64/22 116/6
ought [1]   22/14
our [53]   11/21 14/18 17/12 18/17 19/2 19/17 20/8 23/4 23/9 23/15

23/17 32/7 32/11 41/25 52/2 54/4 55/3 59/24 61/8 61/9 61/12 62/9 63/4 63/12 63/22 63/22 63/24 65/23 65/24 84/15 84/22 84/24 85/16 85/18 86/16 87/21 88/3 88/21 92/22 94/12 95/4 95/22 96/24 99/10 110/10 110/20 110/21 111/8 111/11 117/9
outs [2]   49/15 50/8
outside [16]   24/17 24/19 24/23 26/23 28/23 29/25 30/6 32/2 32/10 33/4 33/6 35/23 41/14 107/18 108/20 110/24
outweigh [2]   113/8 113/8
over [16]   9/18 21/15 33/15 40/13 70/3 78/11 91/15 91/15 94/24 95/17 95/17 97/7 101/11 117/12 117/12 117/16
overall [1]   53/4
overarching [1]   84/7
overlap [2]   87/23 102/22
overlapping [1]   67/19
override [1]   87/22
oversimplifying [1]   60/17
own [4]   3/23 34/4 37/12 76/6
owned [1]   4/6
owner [2]   58/3 97/7
ownership [1]   3/20

P

P [1]   2/20
page [16]   25/20 25/21 32/13 32/19 43/8 43/25 44/3 44/10 45/20 45/24 63/7 64/6 64/7 64/14 64/25 96/24
Page 1039 [1]   64/25
Page 1299 [1]   64/14
Page 1341 [1]   64/7
Page 1345 [1]   64/6
Page 17 [1]   25/20
Page 18 [1]   25/21
Page 29 [1]   32/13
Page 33 [1]   43/8
Page 37 [1]   43/25
Page 49 [1]   45/20
Page 5 [1]   63/7

Page 6 [1]   96/24
Pages [1]   67/7
Pana... [2]   67/7 103/10
Pantech [1]   118/11
paper [1]   51/20
papers [4]   8/1 33/17 46/16 78/17
paragraph [8]   13/9 15/15 15/24 16/21 43/10 113/25 114/1 114/1
Paragraph 3 [1]   15/24
Paragraph 4 [2]   13/9 15/15
Paragraph 67 [1]   113/25
Paragraph 72 [1]   114/1
Paragraph 76 [1]   114/1
parallel [2]   121/19 121/24
parent [1]   3/22
parse [1]   53/5
part [19]   6/2 16/13 22/8 34/15 35/3 42/4 43/6 45/1 45/2 45/3 45/6 68/18 97/17 98/19 100/6 106/12 116/13 120/5 121/21
participate [7]   36/17 47/9 48/2 48/15 50/16 51/2 51/10
participated [2]   6/13 48/12
participating [1]   50/19
participation [6]   9/1 41/21 41/23 41/24 50/15 51/4
particular [9]   3/24 10/25 34/12 34/15 36/18 36/20 39/9 90/4 109/16
particularly [4]   4/13 30/5 31/19 31/25
parties [17]   12/14 12/17 12/23 14/6 14/7 14/12 14/19 14/25 16/20 22/7 23/1 28/17 80/17 81/22 121/17 121/23 121/24
parties' [1]   4/18
partner [4]   3/5 25/2 31/11 91/10
partnership [1]   3/24
party [6]   15/25 16/22 67/22 81/11 81/25 116/22
party's [1]   89/22
pass [1]   54/15
past [1]   52/3
patent [55]   11/4 12/24 13/13 16/1 24/23 25/10 27/8 30/8 30/12 30/14 31/13 31/15 31/17 32/15 32/23 32/24 33/14 34/11 36/3

36/10 36/24 37/13 37/4 47/4 48/2 52/14 56/15 56/15 58/3 62/5 64/3 70/21 70/22 92/21 93/4 97/7 97/22 97/23 97/23 97/25 98/2 98/3 98/5 98/24 103/16 105/2 111/9 111/13 111/13 113/18 113/21 113/23 116/10
patentee [3]   12/21 17/18 17/24
patents [40]   19/9 21/25 23/5 23/11 23/17 27/8 34/6 34/18 35/18 35/21 35/25 37/5 37/9 41/9 56/9 56/18 58/20 71/4 80/21 82/8 86/8 86/9 86/9 87/2 87/4 97/16 98/10 102/12 104/11 104/16 104/20 104/21 105/5 105/9 105/23 106/4 114/3 115/5 120/5 120/12
pay [1]   69/8
peg [2]   27/23 27/25
pending [10]   4/7 8/4 9/10 18/18 53/11 53/21 66/25 80/20 83/1 123/13
people [13]   28/23 36/6 39/5 42/4 42/9 45/14 47/8 47/12 47/16 74/7 90/18 99/20 117/5
per [1]   16/21
percent [6]   3/23 67/11 68/8 68/14 112/3 112/4
perfectly [2]   98/8 122/21
perhaps [2]   10/21 93/15
period [3]   4/4 5/2 23/6
permissible [1]   78/9
permits [1]   64/16
person [1]   55/19
personal [4]   76/17 76/21 78/10 89/17
personally [1]   41/5
perspective [1]   4/18
persuaded [2]   52/8 115/12
petition [1]   118/24
petitioner [1]   42/5
phone [4]   30/15 35/9 93/4 120/1
phrase [1]   26/2
PI [1]   57/9
picked [2]   17/2 48/20
pictures [2]   92/25 93/1
piecemeal [1]   22/5
pile [1]   46/16
pinning [1]   35/15
pivoted [1]   96/17
place [4]   27/2 79/9

79/10 113/6
plaintiff [22]   1/4 2/6 3/2 4/15 4/16 9/8 9/24 10/10 12/2 22/18 27/6 39/6 47/10 47/23 48/19 48/25 54/12 65/18 72/14 89/4 89/23 91/15
plaintiff's [4]   45/22 75/18 79/9 113/6
plaintiffs [5]   83/9 89/5 89/6 89/12 89/15
planning [1]   16/20
platform [1]   75/18
play [1]   20/6
playing [1]   20/13
pleasant [1]   89/19
please [6]   2/24 54/1 54/16 54/19 55/23 114/16
plenty [1]   7/20
plus [1]   59/5
podium [2]   4/20 52/1
point [38]   15/12 16/17 21/4 21/13 22/2 25/18 39/12 42/23 44/6 46/21 51/16 51/25 62/17 63/1 63/23 64/5 65/16 67/3 72/12 72/15 78/10 86/18 88/4 96/14 98/1 104/3 107/16 109/25 111/8 111/11 112/1 112/1 112/3 112/7 112/7 112/17 116/17 118/6
pointed [1]   6/8
pointing [2]   94/1 94/4
points [4]   13/2 75/8 97/19 117/25
poor [1]   98/3
portal [3]   92/20 93/3 93/5
portion [1]   42/24
pose [1]   31/3
poses [1]   25/15
posit [1]   96/5
position [10]   13/23 14/2 14/11 16/3 44/16 54/4 59/2 65/21 66/4 73/3
positions [3]   53/4 72/6 74/21
positive [1]   33/3
possession [3]   68/1 81/20 95/4
possible [1]   18/4
post [6]   41/21 46/1 51/10 52/12 53/7 95/11
post-grant [4]   41/21 46/1 52/12 53/7
post-granted [1]   51/10
posture [1]   54/11
potential [7]   33/18 36/22 36/23 44/4 72/6 82/7 118/3

**P**

potentially [3]
31/16 53/1 115/6
power [1] 47/24
practical [1] 117/2
practice [8] 34/4
34/7 38/25 39/21
39/22 40/2 47/21
49/13
precedence [3] 97/7
98/25 99/4
precedental [1]
115/17
precedential [7]
99/12 99/19 107/5
112/14 112/19 116/4
116/5
precise [1] 60/1
preclude [1] 39/9
preeminent [1]
23/11
preference [1]
10/12
preferences [1]
118/3
preferred [1] 64/20
prejudice [4] 22/17
117/22 122/12
122/22
preliminary [14]
8/19 9/10 53/21
56/24 93/1 98/17
99/25 100/3 102/24
114/10 115/8 116/7
120/24 121/8
premature [1] 22/2
premise [2] 15/21
15/21
prepared [2] 65/8
120/7
presence [2] 75/20
76/9
present [4] 36/17
54/23 74/10 75/16
presented [1] 62/10
presiding [1] 9/17
press [1] 44/21
pressed [1] 102/5
presumably [3] 25/9
90/17 102/7
pretty [6] 29/9
34/2 47/3 73/25
101/18 122/16
prevail [1] 53/6
prevailed [3] 91/23
92/1 92/2
prevalence [2] 47/4
48/18
prevent [6] 34/24
36/8 85/14 90/18
90/20 110/9
prevents [1] 23/3
previewed [1] 20/7
Previous [1] 89/24
previously [1] 56/5
pride [1] 90/4
primarily [1] 74/1
prime [1] 38/21
principal [1] 79/10
principle [2] 50/24
60/11
prior [2] 43/21
44/14
probably [8] 5/24
5/25 29/7 33/14
55/20 91/20 117/20

120/18
**problem [3]**
35/3 48/18
problematic [1]
41/1
problems [1] 19/5
procedural [2] 8/3
85/1
procedure [5] 12/6
18/14 42/21 55/10
69/2
proceed [11] 5/3
54/7 61/22 80/22
101/7 116/1 116/12
119/5 119/12 120/13
122/6
proceeded [2] 72/13
80/19
proceeding [5] 53/7
54/11 78/14 82/2
124/5
proceedings [8]
2/22 41/21 44/25
45/16 51/10 82/7
122/1 123/18
proceeds [1] 70/18
process [1] 5/8
processes [1] 52/12
produced [4] 21/22
27/6 28/10 81/18
product [3] 36/3
58/6 58/17
production [4]
10/14 10/16 13/11
15/17
products [21] 13/8
14/20 14/23 23/13
23/18 27/23 28/8
35/14 35/14 36/4
36/7 58/9 61/9
61/12 62/11 66/20
67/18 86/11 110/17
110/20 114/4
prohibit [1] 29/25
prohibited [1]
32/10
prohibition [1]
33/23
projected [1] 55/15
projects [1] 23/13
promote [3] 64/11
75/2 75/24
promoted [1] 81/3
promoting [1] 71/12
promptly [1] 18/3
proposal [4] 39/2
43/11 45/22 45/23
propose [2] 40/6
42/13
proposed [10] 17/9
35/13 36/14 38/10
42/1 43/19 43/23
46/10 104/20 105/8
proposing [3] 34/21
34/22 43/22
proposition [2]
42/20 50/21
prosecute [1] 36/11
prosecution [15]
23/9 40/18 41/19
41/23 42/7 43/12
45/1 45/12 45/21
47/2 50/9 52/8
52/14 52/25 53/10
protected [5] 26/8
26/9 27/1 39/13

39/2
**protections [1]**
46/21
protective [14]
10/15 22/23 23/1
31/20 37/16 39/13
39/23 41/19 43/4
46/12 47/5 48/13
50/9 53/13
proves [1] 111/11
provide [5] 13/4
13/15 13/25 33/10
76/18
provided [5] 13/14
66/7 70/6 92/25
115/21
provider [1] 95/7
provides [1] 70/4
providing [1] 92/9
provision [10]
24/18 28/12 28/15
28/25 29/5 29/24
40/4 43/23 46/17
86/10
provisions [1]
29/22
pry [1] 49/9
PTAB [1] 52/5
PTO [1] 52/20
public [1] 82/5
purely [3] 3/18 4/9
121/6
purported [1] 66/6
purpose [3] 8/21
85/15 107/8
purposes [9] 45/3
65/20 66/13 76/11
78/14 79/8 82/3
86/23 109/22
put [11] 14/8 17/10
30/18 45/14 59/8
74/19 94/14 94/24
100/12 100/24
113/22
puts [1] 83/9
putting [1] 101/11

**Q**

quarters [1] 68/9
question [19] 5/12
5/13 9/12 10/1
45/20 60/2 78/1
88/22 88/25 96/2
96/6 96/8 101/17
104/9 113/14 114/3
115/5 122/8 122/20
questioning [1]
44/1
questions [4] 18/13
94/2 106/7 120/20
quick [2] 9/9
117/25
quickly [1] 21/6
21/17 87/15
quite [1] 16/4
quo [1] 8/17
quote [7] 3/22 65/9
114/3 119/4 119/6
119/11 119/15
quoting [1] 3/22

**R**

R [3] 2/20 124/6
124/7
raise [1] 5/25
raised [5] 6/1

16/19 18/24 91/2
93/24 96/16
raising [1] 65/13
ran [2] 74/9 119/10
rarely [1] 48/8
rather [5] 7/15
8/13 107/11 107/12
113/19
re [27] 58/12 65/19
65/25 67/23 74/2
81/21 88/11 91/3
91/4 91/4 91/6 91/8
91/8 91/12 93/6
97/21 98/20 98/23
103/14 103/17 107/2
107/3 107/4 111/7
111/9 112/11 118/5
reached [1] 14/6
reaction [1] 11/24
read [8] 16/3 23/17
28/24 32/16 62/14
96/10 114/13 116/3
reading [4] 7/12
14/24 97/1 113/11
reads [1] 34/24
ready [2] 8/2 62/24
real [3] 22/17
32/20 50/21
reality [1] 6/6
realize [5] 10/20
10/21 11/11 22/14
60/18
really [22] 6/7
9/13 10/22 13/18
22/14 26/13 33/8
34/19 34/23 35/16
37/22 38/20 38/25
40/4 42/2 48/17
61/3 87/17 99/16
120/4 122/24 123/1
rearguing [1] 96/14
reason [7] 18/5
35/20 41/4 50/19
76/6 90/17 113/22
reasonable [1] 40/6
reasoning [1] 17/16
reasons [6] 38/8
38/24 57/17 120/5
122/24 123/2
rebuttal [1] 106/8
recall [3] 90/3
94/5 103/22
receive [1] 36/2
received [2] 29/1
29/6
receives [4] 26/4
26/8 27/5 34/9
recess [1] 55/22
recipient [1] 41/12
recognize [1] 36/5
record [15] 45/4
45/7 45/8 45/9
58/23 92/6 96/10
104/11 105/17
105/21 110/15 113/2
115/21 119/25 121/1
records [1] 81/10
red [1] 63/17
reflected [1] 49/12
regard [4] 14/16
99/25 100/1 100/22
regarding [6] 28/18
41/20 61/9 61/12
63/19 84/9
regardless [2] 16/9
80/22

regularly [1] 36/17
**related [7]** 4/14
27/8 27/14 27/18
28/8 28/12 30/24
31/2 34/25 35/13
56/18 58/20 59/5
66/5 70/10 87/12
108/12 119/12
relates [5] 58/11
67/1 80/3 83/13
108/15
relating [2] 27/9
39/3
relative [1] 15/7
relatively [1]
42/21
relevant [10] 17/1
46/17 59/18 59/21
59/22 67/4 68/12
79/7 81/19 81/19
relied [2] 39/18
57/15
relief [6] 83/4
98/9 98/12 98/14
98/15 98/17
relies [1] 50/2
reluctance [1]
116/16
reluctant [2] 116/8
116/14
rely [6] 49/22
49/22 49/24 50/2
58/8 58/13
relying [4] 99/5
99/7 99/8 99/9
remarkably [1] 6/12
remedy [1] 83/4
remember [3] 25/4
29/2 31/10
remote [1] 109/3
repeat [1] 114/17
rephrase [1] 99/1
reply [2] 63/13
63/24
reported [1] 63/16
REPORTER [2] 124/1
124/7
represent [5] 39/6
49/13 52/5 54/2
102/8
representative [1]
76/19
represented [2]
52/2 104/4
request [2] 82/17
98/14
requested [3] 16/21
18/6 32/24
require [5] 9/25
20/25 22/3 64/22
116/21
required [4] 5/4
13/24 15/24 57/20
requirement [4]
17/22 17/23 74/19
110/7
requirements [2]
74/25 100/17
requiring [1] 51/16
researches [1]
90/15
reseller [1] 57/22
resellers [1] 57/23
resolution [7]
14/17 18/3 60/5
82/15 83/1 87/9

**resolution... [1]**
103/17

**resolve [13]**  8/24
58/10 61/11 61/23
62/10 66/9 68/2
70/11 84/9 84/20
87/12 87/13 115/20

**resolved [8]**  6/25
61/6 61/9 70/10
75/5 82/24 84/18
112/4

**resolving [2]**  58/10
112/4

**resounding [1]**
117/14

**respect [10]**  32/14
32/22 43/14 71/17
71/20 71/23 76/8
81/22 120/3 120/10

**respected [1]**  74/15

**respectfully [2]**
82/17 91/7

**respond [2]**  22/20
62/25

**response [1]**  28/7

**responses [3]**  42/5
84/6 95/23

**responsibility [1]**
94/15

**restroom [1]**  55/20

**result [1]**  116/5

**results [1]**  72/6

**return [2]**  42/17
79/6

**review [1]**  46/1

**reviewed [2]**  31/8
33/5

**revised [1]**  53/13

**rid [1]**  88/11

**right [121]**  3/6 8/6
10/3 11/2 11/19
12/1 12/22 16/15
19/16 21/24 22/4
22/21 22/23 24/5
24/12 25/21 26/4
26/12 26/17 26/25
27/2 29/19 37/2
37/12 40/11 40/22
41/15 45/11 46/19
46/22 46/24 48/10
49/19 50/1 50/3
50/20 51/1 51/23
52/7 53/10 53/15
53/19 55/8 55/24
59/3 59/7 59/10
59/11 60/3 60/23
62/21 64/2 65/11
66/20 68/7 68/16
70/20 71/9 71/18
71/22 71/24 72/1
73/16 77/16 78/3
78/17 84/1 85/9
86/13 86/22 87/6
88/6 88/7 89/7
90/21 93/21 94/5
96/22 97/1 97/1
97/9 97/10 98/13
98/14 99/24 100/3
101/13 102/4 103/7
103/12 103/14
103/24 104/10
104/12 104/19
104/22 105/8 105/9
105/18 106/1 108/4
109/8 110/25 111/12

112/9 112/13 112/15
115/13 115/16
116/6 116/23 117/1
117/2 117/21 119/3
119/21 120/8 121/3
122/25 123/14
123/24

**risk [11]**  23/8
39/16 44/4 45/25
46/3 46/9 48/5 48/6
49/6 49/7 122/7

**road [1]**  28/21

**Rockstar [7]**  91/15
98/2 118/9 118/13
118/14 118/16
119/10

**Rockstar's [2]**
119/3 119/8

**room [2]**  42/16
120/17

**root [1]**  69/25

**rooted [1]**  80/2

**route [1]**  69/25

**routine [1]**  99/15

**routinely [2]**  35/22
50/8

**RPR [1]**  124/7

**rubber [1]**  28/21

**rule [20]**  6/5 6/10
8/14 28/17 57/13
57/13 64/4 64/10
64/16 64/19 73/8
82/16 100/4 107/11
112/22 114/18 115/1
115/2 115/15 119/3

**ruled [3]**  73/4
118/21 119/18

**rules [2]**  6/6 22/20

**ruling [5]**  8/2
102/6 102/8 102/20
119/2

**rulings [1]**  53/14
115/7 123/13

**rush [1]**  19/25

──────────

**S**

**s [3]**  2/3 2/20
124/6

**said [51]**  7/11 8/9
14/19 18/23 20/3
20/14 21/7 21/23
23/20 23/21 23/25
26/12 26/17 26/22
29/3 30/4 38/19
39/23 43/12 43/20
45/16 48/14 52/16
60/21 63/13 66/3
66/15 79/6 84/6
86/20 87/2 91/15
92/3 92/7 92/17
93/20 94/7 94/9
94/18 96/2 96/18
98/2 111/24 112/10
116/24 119/2 119/11
119/17 119/18
119/20 119/24

**sake [2]**  26/20
60/18

**same [22]**  13/14
15/3 17/16 23/8
25/3 36/4 37/11
40/17 57/3 60/22
62/11 63/20 74/17
80/21 82/8 82/9
89/24 95/15 96/18
103/18 104/21 105/5

**Samsung [3]**  104/5

118/11 118/14
29/21 29/25 30/15
35/7 35/10 109/3
109/3

**satisfy [2]**  3/16
81/5

**saw [3]**  18/18 85/16
85/17

**say [45]**  7/18 7/25
8/24 15/13 16/15
17/14 19/15 20/9
26/25 27/22 28/12
28/25 31/6 31/14
32/16 36/21 36/23
41/22 41/24 47/22
48/23 51/13 51/22
54/22 60/21 61/25
63/3 63/10 66/25
68/7 73/1 78/16
86/9 88/3 91/4
91/12 94/13 100/13
101/5 101/8 103/8
103/18 104/20
116/18 121/22

**saying [19]**  7/9
7/22 7/22 14/22
16/13 34/4 39/15
39/18 43/12 45/20
71/1 71/19 72/19
84/11 106/21 107/24
108/2 110/11 123/4

**says [30]**  9/8 12/25
13/9 13/20 15/16
26/7 29/22 29/23
29/24 30/13 31/12
32/14 37/12 39/2
39/13 39/19 45/22
50/8 62/12 62/17
64/9 65/5 69/7 69/9
81/4 97/4 98/23
106/25 107/22
115/18

**schedule [4]**  12/15
12/18 73/23 105/11

**scheduled [2]**  73/18
73/19

**scheduling [13]**
10/22 11/1 11/3
11/9 15/6 15/22
15/24 16/10 16/20
17/17 22/12 56/5
94/12

**schematics [2]**
23/16 23/25

**scope [8]**  40/6
41/19 44/5 44/13
84/24 101/2 109/23
114/21

**scratch [1]**  68/25

**screen [2]**  54/18
55/15

**screens [1]**  45/15

**scrutinized [1]**
48/9

**seated [2]**  2/24
55/23

**second [2]**  12/9
15/11 32/13 37/2
43/10 46/23 55/13
62/20 75/3 84/16
88/7 94/24

**section [3]**  13/13
17/22 97/3

**Section 4 [1]**  17/22

**see [25]**  22/17

26/12 32/25 33/9
41/2 43/10 43/14
49/15 52/18 52/21
56/11 57/5 70/12
71/13 75/1 89/9
103/17 105/15
108/21 115/7 117/15
120/9 121/20 121/24
122/23

**seeing [2]**  23/4
37/24

**seek [1]**  11/11

**seeking [5]**  5/5
56/24 77/24 77/25
116/20

**seeks [3]**  53/9
113/17 113/19

**seem [1]**  94/4

**seems [4]**  34/2
35/11 52/25 95/2

**seen [2]**  38/9 40/10

**sell [3]**  109/3
110/17 110/19

**semiconductors [1]**
33/24

**sense [5]**  18/25
20/19 120/6 120/13
123/2

**sensible [1]**  11/22

**sentence [1]**  26/5

**separate [1]**  118/10

**September [1]**  4/4

**September of [1]**
4/4

**Serco [1]**  64/24

**serve [3]**  14/12
17/6 17/6

**served [8]**  14/22
15/9 15/18 16/4
22/20 35/23 82/12
85/20

**service [1]**  15/7

**services [3]**  28/12
29/1 76/18

**serving [1]**  15/2

**Servs [1]**  64/24

**set [6]**  55/12 56/1
57/11 59/23 61/14
68/17

**setting [2]**  56/4
84/25

**settled [2]**  98/7
104/2

**seven [4]**  26/2
47/13 48/4 118/9

**sever [2]**  56/17
57/2

**several [2]**  38/3

**shall [1]**  27/7

**share [1]**  42/6

**SHAW [2]**  1/20 3/1

**shelf [1]**  70/8

**ship [1]**  109/3

**ships [2]**  85/3 85/4

**shoes [1]**  94/14

**shopping [2]**  74/8
90/21

**short [1]**  106/13

**shorter [1]**  61/20

**should [41]**  5/17
8/18 11/25 16/19
19/19 36/17 41/22
41/24 48/7 51/21
54/5 56/2 59/19
60/12 63/22 65/4
65/7 65/23 65/24

26/12 32/25 33/9
49/15 52/18 52/21
56/11 57/5 70/12
71/13 75/1 89/9
103/17 105/15
108/21 115/7 117/15
120/9 121/20 121/24
122/23

**seeing [2]**  23/4
37/24

**seek [1]**  11/11

**seeking [5]**  5/5
56/24 77/24 77/25
116/20

**seeks [3]**  53/9
113/17 113/19

**seem [1]**  94/4

**seems [4]**  34/2
35/11 52/25 95/2

**seen [2]**  38/9 40/10

**sell [3]**  109/3
110/17 110/19

**semiconductors [1]**
33/24

**sense [5]**  18/25
20/19 120/6 120/13
123/2

**sensible [1]**  11/22

**sentence [1]**  26/5

**separate [1]**  118/10

**September [1]**  4/4

**September of [1]**
4/4

**Serco [1]**  64/24

**serve [3]**  14/12
17/6 17/6

**served [8]**  14/22
15/9 15/18 16/4
22/20 35/23 82/12
85/20

**service [1]**  15/7

**services [3]**  28/12
29/1 76/18

**serving [1]**  15/2

**Servs [1]**  64/24

**set [6]**  55/12 56/1
57/11 59/23 61/14
68/17

**setting [2]**  56/4
84/25

**settled [2]**  98/7
104/2

**seven [4]**  26/2
47/13 48/4 118/9

**sever [2]**  56/17
57/2

**several [2]**  38/3

**shall [1]**  27/7

**share [1]**  42/6

**SHAW [2]**  1/20 3/1

**shelf [1]**  70/8

**ship [1]**  109/3

**ships [2]**  85/3 85/4

**shoes [1]**  94/14

**shopping [2]**  74/8
90/21

**short [1]**  106/13

**shorter [1]**  61/20

**should [41]**  5/17
8/18 11/25 16/19
19/19 36/17 41/22
41/24 48/7 51/21
54/5 56/2 59/19
60/12 63/22 65/4
65/7 65/23 65/24

68/19 69/1 69/8
70/11 78/19 79/1
83/6 84/11 84/19
91/5 97/9 102/21
102/21 115/19
116/23 119/12
119/19 119/20
119/23

**shouldn't [3]**  44/14
121/20 121/25

**show [7]**  19/17 32/9
40/7 54/17 95/3
106/24 107/22

**showing [1]**  54/6

**shows [2]**  3/17
52/15

**Shutte [1]**  113/5

**side [7]**  24/16 34/7
37/12 37/19 59/17
89/18 111/21

**sidelines [1]**  48/20

**sides [2]**  7/20
96/10

**sign [2]**  12/25
50/10

**signed [1]**  12/23

**significant [2]**
77/2 79/19

**silence [1]**  117/14

**similar [1]**  91/11

**simple [1]**  94/13

**simply [3]**  15/16
28/17 88/3

**since [6]**  38/1 38/9
40/10 57/6 101/21
113/9

**single [1]**  122/16

**sir [1]**  71/8

**sit [1]**  114/16

**sitting [3]**  34/11
40/13 56/14

**situation [4]**  34/8
87/17 87/21 103/13

**six [11]**  47/13 48/4
51/19 56/9 56/13
71/3 104/11 105/4
105/8 111/24 112/5

**six months [1]**
51/19

**skilled [1]**  116/10

**skis [1]**  101/11

**slide [24]**  55/11
56/4 57/17 65/17
67/3 68/23 70/11
70/12 71/13 71/14
72/18 75/15 75/16
76/14 76/25 77/8
77/9 79/6 79/24
80/5 80/17 81/8
82/4 83/7

**Slide 13 [1]**  80/5

**Slide 14 [1]**  80/17

**Slide 15 [1]**  81/8

**Slide 16 [1]**  82/4

**Slide 17 [1]**  83/7

**Slide 2 [2]**  55/11
56/4

**Slide 3 [1]**  57/17

**Slide 4 [1]**  65/17

**Slide 5 [4]**  68/23
70/1 70/12 71/13

**Slide 6 [2]**  71/14
72/18

**Slide 7 [1]**  65/17

**Slide 8 [3]**  75/15

**S**

Slide 8... [2] 75/16 77/8
Slide 9 [1] 76/14
slides [2] 54/13 77/6
slight [2] 42/21 100/21
slightly [1] 43/19
smart [2] 117/4 122/17
so [186]
software [2] 92/9 104/8
sole [1] 104/8
solely [1] 26/20
solutions [1] 109/4
some [21] 3/20 5/2 18/19 21/22 30/15 31/10 35/9 52/4 54/13 69/24 70/4 84/5 86/17 88/12 95/2 95/23 101/16 102/20 122/13 122/24 123/1
somebody [3] 11/10 30/13 117/6
someone [6] 29/3 31/23 34/9 35/21 48/8 49/8
something [15] 7/21 12/24 15/2 16/19 18/15 28/4 28/19 34/21 36/9 36/11 49/9 95/14 96/10 110/2 117/20
sometimes [2] 48/3 50/11
somewhat [1] 7/8
somewhere [1] 15/10
soon [1] 102/6
sorry [15] 4/21 30/22 31/1 43/8 45/5 45/10 46/15 50/2 61/21 77/14 86/4 89/13 91/25 102/15 108/24
sort [6] 23/10 35/13 35/13 84/7 95/2 102/20
sorts [1] 42/22
sought [4] 93/16 114/2 114/6 114/22
sound [1] 31/18
sounds [4] 9/4 26/13 28/5 49/17
source [4] 24/3 58/6 58/15 58/16
sources [4] 58/8 58/18 66/19 83/14
Southwest [44] 56/8 56/16 57/7 57/22 58/1 67/7 70/15 71/16 76/4 80/8 81/15 81/23 85/4 85/6 85/11 87/10 87/23 93/17 93/20 93/23 94/7 94/8 95/13 95/20 102/1 102/12 102/18 103/9 104/12 104/21 105/2 105/10 105/17 105/24 107/18 108/9 108/20 110/5 110/9 110/17 110/24 111/2 111/4 111/5

**Southwest's [3]** 56/3 57/1 96/21
space [1] 38/4
specific [4] 65/7 65/8 84/5 93/7
specifically [5] 24/1 62/6 64/25 65/16 93/10
specificity [1] 28/16
spotted [1] 22/7
Spread [1] 22/11
squared [1] 17/5
squarely [1] 119/16
stage [1] 55/13
stand [1] 7/17
standing [6] 6/8 14/16 21/16 21/22 22/3 71/19
stands [2] 98/21 111/8
Stark [6] 32/20 37/4 37/25 38/18 43/25 52/9
Stark's [1] 32/7
start [4] 18/15 18/17 84/6 112/24
started [6] 6/3 6/19 7/12 37/24 55/21 83/18
starters [1] 32/17
starting [2] 20/11 68/25
starts [1] 122/15
statement [6] 3/16 3/19 3/23 24/25 67/14 68/3
states [3] 1/1 1/16 56/7
status [4] 8/17 81/5 89/23 110/10
statutory [1] 100/17
stay [26] 48/21 53/20 53/23 54/5 55/7 56/3 56/17 56/20 57/2 72/20 73/11 73/12 74/22 75/1 75/8 75/10 82/18 82/25 93/12 100/5 100/18 107/21 113/13 115/25 116/22 118/22
stay/dismiss [2] 75/8 75/10
stayed [2] 98/4 112/2
staying [5] 5/2 66/13 82/13 116/13 116/13
stays [2] 20/21 72/24
stenographic [1] 124/4
step [2] 94/14 95/3
stick [2] 19/12 82/16
still [5] 44/7 44/8 44/21 115/2 115/8
stipulate [1] 47/16
stipulated [1] 47/5
stock [2] 4/3 4/5
stop [5] 39/5 39/21 58/22 66/20 68/11
stopped [2] 38/13 38/15

**stranger [1]** 76/3
strategies [2] 45/20 45/18
Street [1] 1/14
strikes [4] 36/13 113/7 120/12 122/5
stronger [1] 44/7
study [1] 7/21
stuff [3] 20/10 20/16 88/12
subject [15] 27/9 27/11 27/20 28/3 28/15 29/11 31/19 31/20 33/19 35/4 39/2 41/1 63/7 76/17 76/21
submit [6] 8/7 8/18 49/11 53/13 74/22 99/15
subsequent [1] 117/17
subsequently [1] 15/1
substantial [3] 79/19 88/22 88/25
substantially [2] 92/14 113/8
substantive [4] 8/3 16/12 18/12 63/18
subsumed [1] 88/4
such [2] 31/16 110/8
sudden [1] 22/1
sue [3] 36/10 77/15 89/9
sued [6] 35/18 36/4 77/12 77/18 84/13 123/3
sues [1] 17/24
sufficient [1] 62/12
suggest [3] 28/8 41/4 52/20
suggesting [1] 44/16
suggestion [1] 28/14
suggests [1] 52/22
suing [3] 36/1 122/15 122/15
suit [23] 14/21 20/1 57/16 60/13 62/3 62/4 66/12 72/24 74/6 82/23 87/21 87/22 92/17 93/14 97/5 97/7 97/11 97/12 98/25 99/4 106/17 106/22 122/25
suits [2] 117/17 119/4
supplemental [2] 93/19 95/11
supplier [1] 104/8
suppliers [11] 67/5 80/23 103/9 103/10 103/14 103/15 103/24 104/4 104/10 111/5 111/6
support [1] 107/8
supports [2] 17/16 82/1
suppose [1] 28/24
supposed [5] 30/16 30/17 30/18 31/10 31/14

**sure [15]** 5/15 31/7 55/8 85/9 86/20 94/21 99/10 108/18 108/18 109/19 110/14 110/14
surprised [1] 7/4
surprising [1] 7/8
suspect [1] 28/18
switch [1] 42/11
sympathetic [1] 4/12
system [6] 74/11 92/16 108/22 108/25 109/3 115/5
systems [6] 24/7 27/14 61/17 86/17 114/5 114/7

**T**

T [1] 43/5
Tab [1] 25/20
Tab 5 [1] 25/20
table [4] 3/2 42/4 43/16 57/11
tackle [2] 3/14 117/21
tactical [1] 47/15
take [19] 4/25 5/7 8/1 22/5 24/9 43/16 44/17 46/16 53/3 55/18 62/20 65/15 94/15 95/9 95/19 98/25 112/21 119/18 119/20
taken [1] 55/22
takes [3] 97/7 99/4 113/11
taking [1] 39/5
talk [16] 7/25 29/11 31/17 43/17 49/2 53/12 53/22 58/3 66/15 66/21 66/23 74/7 75/23 80/5 83/3 83/8
talked [8] 68/20 74/2 74/23 88/14 88/21 92/19 94/12 95/6
talker [1] 4/22
talking [9] 3/19 28/22 54/9 69/2 69/3 72/22 77/10 92/22 92/24
talks [2] 74/16 93/4
target [1] 36/24
TC [1] 76/6
team [3] 6/2 6/8 42/4
tech [2] 23/24 23/25
technical [3] 23/23 24/6 26/18
technological [1] 35/1
technology [10] 70/1 70/2 81/16 84/10 85/17 85/18 95/8 108/11 108/15 109/17
tee [1] 96/9
telecommunications [3] 35/20 35/6 35/7

**tell [10]** 5/12 19/24 19/25 31/14 32/23 61/4 65/8 103/1 105/13 117/1
telling [5] 16/7 33/15 61/25 75/17 107/19
tells [1] 62/22
temporal [1] 29/17
termination [1] 23/6
terms [12] 15/22 21/1 24/13 44/7 44/13 49/21 50/9 53/2 60/9 61/4 75/2 83/5
test [2] 38/14 49/5
testament [1] 66/11
Texas [83] 56/17 56/24 57/1 66/25 67/6 67/17 67/20 70/2 70/5 71/3 71/4 71/11 72/3 72/4 72/10 72/15 72/20 72/23 74/9 75/3 75/6 75/21 76/3 76/4 76/6 76/10 76/11 76/15 76/19 77/12 77/16 77/19 77/23 78/2 78/11 80/2 80/3 80/6 80/7 80/12 80/13 80/14 80/14 80/20 81/3 81/16 81/18 81/24 82/2 82/3 82/8 82/15 83/1 84/18 84/20 85/18 88/4 88/14 88/17 89/2 92/13 93/11 93/12 93/18 94/2 94/20 101/3 104/15 114/8 114/23 115/13 115/22 118/10 118/16 118/17 118/18 118/21 118/22 119/4 119/5 119/11 120/1 121/18
than [16] 3/23 4/10 5/7 14/9 36/14 36/21 62/1 67/10 84/17 89/10 97/15 101/24 103/24 108/8 109/1 113/10
thank [34] 3/13 4/17 4/22 10/4 17/13 18/8 18/9 20/23 20/24 21/20 37/20 40/11 46/22 49/16 53/17 53/18 54/20 54/24 55/25 65/12 65/13 75/12 84/1 86/22 88/9 106/10 110/22 110/25 112/9 112/20 120/19 123/6 123/8 123/10
that [610]
that's [102] 4/14 5/13 6/22 6/23 6/25 7/1 7/18 7/21 7/25 8/9 8/11 9/2 11/2 13/13 15/13 16/10 19/20 20/12 20/22 22/2 22/5 23/21 23/25 25/17 25/23 26/4 26/15 29/7

**that's ...** [74]   30/3
32/9 32/19 33/22
34/16 35/3 36/8
36/11 37/8 39/1
39/11 39/17 40/1
40/1 43/16 46/20
48/15 48/21 49/12
50/19 50/23 51/1
51/3 51/18 51/23
53/21 55/7 56/14
57/15 57/21 58/22
62/12 62/25 64/23
65/2 65/21 66/16
70/3 70/25 73/3
77/2 78/23 78/24
79/2 80/1 83/6
84/10 85/10 86/12
86/19 86/20 86/21
89/3 89/7 94/16
94/19 99/13 103/18
104/8 105/4 105/20
107/6 107/11 107/16
108/3 109/24 110/3
110/14 110/20
115/13 119/6 119/23
120/25 121/21
**their** [58]   5/12
5/18 5/22 7/12 8/12
14/7 14/11 17/5
17/5 24/16 24/20
30/13 30/19 30/23
31/11 39/2 42/6
42/11 42/16 42/24
43/11 47/10 47/19
51/17 56/23 58/10
61/14 61/15 65/20
66/4 70/7 74/3
79/17 80/13 82/24
84/14 84/24 84/25
85/2 85/2 85/17
85/19 87/2 88/5
88/13 92/15 98/14
105/11 106/17 107/2
107/7 107/9 107/21
112/16 112/16
116/12 118/4 119/25
**theirs** [1]   85/20
**them** [49]   3/4 5/1
5/3 5/14 8/1 8/12
13/4 16/16 18/22
19/14 25/15 30/11
34/10 34/24 35/9
35/19 36/1 36/16
36/16 36/22 38/25
41/7 42/5 47/25
53/12 54/15 54/17
55/19 59/7 61/16
67/1 67/24 71/7
71/8 76/20 84/2
84/13 85/16 89/9
92/12 95/7 102/9
105/10 108/10
117/12 119/17 120/2
120/3 120/7
**then** [58]   7/18 8/14
9/16 9/22 12/11
12/19 18/21 18/24
19/7 19/18 19/20
19/24 20/2 20/3
20/8 22/19 25/14
26/1 27/4 28/11
29/13 35/17 35/25
38/1 38/18 42/16
42/17 44/10 47/24
48/13 49/1 53/13

59/1 62/21 63/22
63/23 73/2 76/1
83/2 87/9 88/23
90/25 93/8 97/9
98/6 98/20 100/18
102/11 104/24
105/22 108/4 111/7
114/9 114/18 117/25
118/14 119/8 120/15
**theories** [2]   48/25
49/1
**theory** [3]   12/9
15/8 87/16
**there** [119]   6/9
6/13 12/18 18/5
18/19 19/15 19/25
21/5 21/13 21/23
24/18 25/8 29/17
32/10 34/20 36/21
38/3 39/8 40/4
40/14 40/23 41/22
41/24 41/24 42/10
42/14 43/18 43/22
46/2 46/3 46/17
47/8 47/14 47/17
48/12 49/8 52/13
52/13 56/9 58/22
59/3 60/9 66/19
66/20 67/4 67/9
67/19 68/11 68/19
70/9 70/12 71/3
72/5 72/14 75/9
75/16 76/5 76/9
77/3 77/12 79/2
79/8 80/20 80/22
83/15 83/20 85/1
87/20 88/24 89/6
91/24 93/15 93/15
94/25 95/12 95/23
96/23 97/15 97/16
97/16 97/21 97/22
98/10 99/3 101/23
101/25 102/13
102/17 103/14
103/15 103/21
103/23 103/25
103/25 104/2 104/3
104/6 104/11 108/7
108/19 111/5 111/6
111/8 111/13 111/15
112/2 112/5 112/7
112/19 113/2 113/2
114/24 115/3 115/20
119/6 120/4 121/11
121/18 122/12
**there's** [54]   9/23
11/12 13/2 15/5
20/13 20/13 21/2
25/1 25/6 38/16
41/4 44/22 49/17
52/18 58/8 58/18
60/7 63/13 63/17
67/6 67/6 67/6 68/9
70/15 74/10 74/21
75/19 76/21 84/8
86/8 87/8 88/22
92/25 94/11 95/20
97/15 97/22 98/23
101/22 101/24
102/20 105/2 105/8
105/22 108/18 110/5
111/3 112/6 113/23
114/11 115/12
115/18 118/6 120/9
**Thereafter** [2]
56/16 56/19

**these** [43]   13/10
15/21 15/24 15/25
15/25 15/10
17/6 17/17 17/23
22/3 22/9 22/18
24/22 25/11 35/7
36/4 40/7 40/13
42/22 45/16 47/24
52/11 52/15 52/18
57/13 58/24 59/18
60/21 65/8 69/20
70/13 74/1 76/8
76/13 92/3 92/7
102/11 103/4 115/4
121/20 121/25
122/16
**they** [223]
**they'd** [1]   41/9
**they'll** [2]   7/17
23/15
**they're** [19]   5/23
5/24 16/7 23/14
23/17 24/20 28/9
30/15 31/10 38/14
71/19 73/13 73/13
76/16 79/20 87/3
89/5 92/22 92/23
**they've** [8]   4/13
15/9 22/18 85/19
89/8 89/12 89/14
113/22
**thing** [20]   3/14
11/3 19/20 37/3
37/25 38/9 40/9
47/16 48/10 49/12
49/17 55/7 71/14
75/17 84/16 92/22
100/24 103/19
105/16 118/6
**things** [26]   13/21
18/20 19/10 20/5
20/6 21/22 23/19
39/18 42/22 52/15
53/11 58/16 61/23
69/16 69/17 74/15
74/17 74/22 83/5
84/5 91/11 92/20
95/5 111/3 120/16
120/18
**think** [162]
**thinking** [1]   30/14
**third** [23]   58/4
59/14 60/4 60/14
62/1 62/22 63/8
63/18 67/22 67/22
68/20 69/1 69/9
75/6 74/16 79/17
80/11 81/11 81/22
81/25 83/2 96/4
113/5
**third-party** [1]
67/22 81/11 81/25
**this** [267]
**those** [33]   9/13
9/16 13/5 15/2
19/10 23/16 24/8
31/24 33/13 34/13
44/22 46/3 56/10
56/18 58/20 61/16
70/14 74/13 76/22
84/17 91/17 92/16
93/5 94/9 95/5
97/18 97/19 98/4
102/21 109/18
110/24 115/25
120/14

**though** [6]   6/13 8/6
15/7 90/23 91/16
105/23
**thought** [9]   11/2
16/10 19/16 20/7
28/3 29/11 101/13
114/17 121/14
**threat** [2]   108/7
110/8
**threatened** [1]
107/17
**threats** [3]   108/20
110/4 110/23
**three** [15]   23/6
29/18 33/16 33/17
47/12 48/3 57/19
58/24 59/4 60/8
67/18 68/9 74/22
114/13 120/10
**three-fourths** [1]
67/18
**three-quarters** [1]
68/9
**threshold** [5]   18/2
21/2 21/2 61/24
113/14
**through** [11]   5/8
20/2 32/18 48/24
58/24 76/1 76/13
90/7 90/8 101/16
113/3
**thrown** [1]   104/14
**tie** [1]   39/3
**time** [29]   4/4 4/25
5/2 5/7 6/14 7/20
8/14 13/14 14/9
14/25 15/3 19/7
22/20 31/20 31/22
45/15 47/10 47/23
54/23 62/15 90/11
90/13 95/10 99/21
103/25 104/13 112/5
117/8 123/9
**times** [8]   13/6 48/4
63/3 79/16 79/22
89/5 89/7 90/1
**today** [9]   3/11 8/15
10/11 53/14 67/15
90/5 90/13 94/13
123/13
**told** [3]   18/22 19/5
85/19
**too** [10]   29/7 36/23
42/2 46/18 52/9
68/12 72/18 90/2
120/9 122/8
**took** [1]   119/10
**top** [2]   82/7 103/22
**torture** [1]   101/16
**totally** [3]   34/7
95/1 120/3
**touch** [1]   69/20
**touching** [1]   8/23
**tough** [1]   39/6
**towards** [1]   18/3
**transcript** [3]
32/10 43/3 124/4
**transfer** [43]   53/20
53/23 54/5 56/3
56/20 64/17 69/3
75/4 75/8 75/11
75/14 75/25 76/20
76/23 77/12 77/25
78/20 78/24 80/15
80/18 81/13 82/2
82/6 82/14 82/20

83/3 88/10 88/18
88/24 90/24 100/4
100/5 100/8 100/14
112/24 113/12
118/16 118/18
118/20 118/23 119/3
119/5 119/14
**transferring** [3]
13/12 81/6 81/7
**tribunal** [1]   117/7
**tried** [1]   20/12
**triggered** [1]   15/25
**true** [10]   12/3
25/17 40/18 49/14
62/12 99/13 104/13
110/3 115/20 124/3
**truth** [1]   19/8
**try** [3]   28/18 61/19
116/16
**trying** [11]   17/9
19/13 19/13 20/5
24/22 36/8 39/3
39/4 39/5 53/5
112/16
**turn** [5]   42/12
43/25 87/15 93/7
96/1
**turned** [1]   21/15
**Turning** [1]   88/10
91/2
**turns** [1]   92/20
**two** [44]   3/25 7/2
9/13 9/16 13/2 23/2
24/18 29/3 31/10
38/19 49/1 49/2
56/8 56/11 56/13
56/18 57/25 63/16
71/3 74/21 77/6
80/20 84/7 84/11
84/12 86/15 101/25
104/1 105/22 106/9
110/4 111/2 111/19
112/5 113/22 115/5
116/9 117/25 119/8
119/17 120/5 120/12
121/17
**type** [2]   10/23 46/7

---

U

**U.S** [2]   110/20
124/8
**ultimate** [1]   3/22
**ultimately** [5]
44/20 46/7 46/12
73/9 99/24
**umbrella** [1]   71/20
**uncertain** [1]   13/6
**unclear** [1]   70/6
**under** [29]   13/24
15/28 15/22 15/24
22/20 24/12 42/7
46/2 57/14 57/20
59/25 60/8 60/14
63/21 65/22 71/20
72/24 75/14 75/15
78/1 78/1 78/6
79/16 87/16 90/17
92/16 93/5 106/18
113/1
**undermined** [2]
57/14 60/13
**understand** [11]
16/2 34/3 42/8
60/16 70/21 78/10
84/14 95/1 110/11
116/15 117/16

**U**

understanding [2]   9/25 60/20
understands [1]   67/4
understood [7]   9/15 14/5 14/19 21/18 41/16 50/18 103/6
underway [1]   80/21
undisputed [2]   24/13 91/13
undue [1]   52/23
unduly [1]   28/5
unfair [3]   47/17 47/22 49/6
unique [3]   54/8 58/7 62/5
uniqueness [1]   54/10
UNITED [3]   1/1 1/16 123/3
universally [1]   47/5
unjust [1]   85/14
unless [9]   8/24 10/12 12/6 15/13 64/20 93/12 106/6 120/19 120/22
unlike [4]   58/7 67/23 81/21 102/5
unquote [1]   114/5
until [3]   6/25 19/22 57/9
unused [1]   34/12
unwillingness [1]   74/3
unworkable [1]   42/20
up [23]   7/17 12/5 12/16 15/10 26/2 28/13 28/19 29/20 29/20 45/14 46/14 54/15 55/19 55/20 88/6 90/12 93/22 96/9 104/1 110/2 119/7 122/24 123/1
upon [4]   23/17 57/15 58/13 119/11
us [21]   4/23 13/6 13/11 14/14 18/1 19/5 19/24 20/1 20/8 20/15 23/14 40/8 61/16 67/1 84/13 84/24 85/15 85/19 95/18 102/5 115/4
use [10]   11/14 39/9 39/13 39/19 39/22 40/14 41/7 55/20 81/16 109/12
used [3]   36/6 65/6 109/18
user [1]   93/3
using [3]   35/10 42/9 99/1

**V**

v [1]   1/5
vague [1]   28/5
valid [1]   6/4
validity [9]   6/4 44/7 48/2 67/19 72/5 73/1 73/14 74/4 94/11
valuable [1]   36/7
value [1]   14/15
variety [1]   116/12
various [5]   1/5 13/10 91/21 91/21 92/20
vast [2]   50/12 112/3
vehicle [1]   87/12
vehicles [5]   27/15 61/18 85/3 85/4 86/16
VENTURES [18]   1/6 1/6 3/11 6/19 18/11 23/10 30/1 32/8 35/22 37/11 37/21 43/4 43/11 44/1 47/1 77/11 78/3 86/2
Ventures' [1]   43/6
venue [1]   76/22
versus [7]   32/8 43/5 49/6 53/6 70/7 93/23 115/19
very [44]   4/4 12/14 13/13 21/17 22/19 23/25 28/9 34/8 34/25 40/25 42/11 48/5 57/12 58/13 66/1 66/2 69/4 75/14 79/18 79/18 82/8 84/1 87/19 91/8 91/10 91/10 94/13 103/1 103/4 103/4 106/8 106/8 109/24 109/25 109/25 116/8 116/8 116/9 116/10 116/11 116/14 116/4 118/6 122/18
via [2]   13/7 28/13
VIASAT [55]   1/3 3/2 10/10 23/3 34/18 37/1 50/2 54/6 56/12 56/22 57/9 57/15 57/19 58/20 61/17 66/24 67/6 67/24 70/4 70/6 70/10 70/14 70/16 71/20 76/2 76/9 76/14 77/1 77/10 77/15 77/18 77/22 80/7 80/14 81/4 84/4 84/17 86/25 88/2 91/5 92/23 92/24 93/3 94/8 102/1 102/10 103/8 103/9 108/8 109/17 110/16 114/4 115/4 115/23 117/11
Viasat's [14]   23/13 27/22 27/23 28/8 36/3 53/9 79/10 80/9 81/17 81/18 84/10 86/10 92/15 114/4
view [4]   84/24 85/2 85/2 103/4
violate [5]   40/8 40/16 41/6 41/9 48/13
violated [2]   15/3 39/15
violating [1]   39/16
violation [1]   48/7
VLSI [2]   6/3 6/8

**W**

wait [5]   34/14
102/15 102/15
102/1 91/22 91/22
wait [1]   19/22 56/22
waive [3]   8/25 9/11 9/17
WALDROP [5]   2/11 3/12 54/2 84/6 94/3
walk [2]   58/23 76/1
walked [1]   6/15
walking [1]   23/12
walks [2]   30/13 31/11
walled [1]   47/13
Walmart [1]   50/3
want [70]   4/15 5/13 5/16 5/25 6/20 6/23 7/1 7/4 7/12 7/13 7/13 7/18 7/21 7/24 7/25 8/11 8/11 16/15 17/14 18/13 19/2 19/11 20/3 20/15 22/7 25/18 26/2 26/4 26/5 26/18 27/4 27/16 27/24 27/25 39/20 40/19 47/9 51/3 51/13 53/5 63/10 67/24 75/9 77/12 82/25 83/8 84/6 84/12 85/8 86/20 90/8 93/7 97/14 106/5 106/24 108/7 108/17 108/18 109/19 109/24 110/1 110/13 119/17 120/4 120/11 120/22 121/4
wanted [15]   5/22 16/17 16/19 18/22 20/17 37/17 42/23 54/22 54/24 56/1 57/11 60/1 78/13 84/12 90/19
wants [3]   19/10 90/6 119/7
warrants [1]   46/9
WARREN [16]   2/3 2/3 2/3 2/4 3/3 3/3 3/3 3/3 3/4 3/5 27/17 35/13 39/23 84/4 84/4 84/4
was [96]   4/3 5/12 6/13 7/7 9/4 10/13 11/20 11/22 14/9 15/1 16/22 17/2 17/11 18/15 18/17 19/23 19/25 26/13 28/4 28/4 29/11 30/4 32/7 32/10 32/23 32/24 33/17 33/18 33/20 37/4 37/4 37/4 37/11 37/24 37/25 39/7 39/11 43/5 44/5 45/16 49/14 50/12 50/18 50/24 51/4 52/9 53/5 53/6 56/1 58/11 58/16 62/5 66/7 66/9 66/10 69/14 75/25 83/18 84/15 86/12 88/24 89/1 91/9 91/12 91/13 91/22 93/8 93/15 94/25 95/12 97/21 97/22
98/1 98/8 103/15 103/22 104/2 104/13 111/8 111/13 111/13 111/15 111/19 111/23 111/23 111/24 112/2 112/11 113/1 115/21 118/15 119/1 119/9 121/22
wasn't [6]   38/21 89/19 90/15 96/14 100/23 101/11
Waxman [2]   11/7 11/17
way [21]   10/20 25/14 27/11 29/24 34/24 35/9 41/1 41/2 42/15 43/14 61/11 68/24 80/15 86/18 88/1 89/9 96/19 99/11 117/21 119/24 122/6
ways [2]   86/15 116/12
we [296]
we'll [12]   6/18 8/4 8/4 8/7 8/25 20/14 20/16 22/20 72/4 75/23 76/1 115/7
we're [25]   5/22 7/19 13/3 13/10 18/25 19/4 19/6 19/9 20/9 20/21 22/6 28/22 57/7 67/15 69/2 70/3 71/19 72/19 72/22 76/6 78/22 86/24 91/16 91/17 120/10
we've [12]   10/5 15/12 19/17 21/21 41/4 53/19 53/20 54/9 110/23 114/11 114/13 117/16
web [2]   93/3 93/4
website [1]   110/21
weeks [1]   52/19
weigh [3]   49/4 49/6 82/6
weighed [1]   121/5
weighs [1]   81/6
well [41]   7/2 8/16 9/6 11/10 11/15 12/8 13/2 16/6 18/15 18/20 19/9 19/16 20/3 21/8 25/13 25/16 26/17 29/15 33/7 35/12 37/10 44/23 47/3 51/3 55/14 57/12 60/20 62/13 72/5 80/18 89/11 90/24 91/9 94/18 98/13 101/1 102/19 103/18 105/6 107/10 116/12
went [2]   104/1 113/3
were [42]   8/8 9/11 10/13 13/17 16/20 18/19 19/13 19/13 20/6 20/7 33/15 38/16 43/22 50/19 56/8 56/9 61/15 62/10 68/25 68/25 69/5 72/14 89/2 92/6 103/14 103/15 103/21 103/21
103/23 103/24
4/2 104/3 104/6 108/2 108/9 109/11 114/24 116/5 117/17 117/21 119/4
weren't [2]   18/20 20/5
Western [11]   57/1 72/19 72/23 75/5 75/22 76/15 76/16 89/2 93/11 93/11 95/13
what [123]   4/10 4/15 5/13 5/16 6/11 6/22 7/1 7/11 7/13 7/16 7/22 8/7 8/8 8/9 8/11 8/25 9/4 9/8 9/8 10/19 11/14 11/24 14/19 14/24 14/25 16/9 16/10 16/18 17/19 19/14 19/17 20/7 20/9 20/15 21/4 21/6 23/20 24/1 25/19 26/19 27/11 27/16 27/20 28/10 28/10 28/20 28/25 29/2 31/12 31/12 32/23 32/24 33/9 33/18 34/3 34/16 34/23 35/4 35/17 36/5 36/8 36/14 39/1 39/11 39/15 39/16 39/25 40/1 45/16 47/3 49/10 50/7 50/22 51/3 51/18 53/5 53/6 56/5 60/10 60/21 61/25 65/4 68/6 69/6 69/9 69/14 70/3 70/6 70/10 73/3 73/21 75/1 75/2 83/1 84/6 85/2 86/18 86/19 94/13 97/10 98/2 98/7 98/20 99/17 100/25 103/3 105/6 107/7 107/7 108/3 109/2 110/11 113/25 114/22 117/16 119/21 120/25 122/14 122/24 123/4
what's [8]   5/21 19/1 30/9 47/4 72/2 72/24 98/3 122/17
whatever [3]   85/1 87/11 87/22
wheels [1]   19/12
when [34]   4/13 6/14 11/3 11/13 14/9 16/20 17/3 19/7 19/18 19/25 20/1 22/19 25/10 31/23 32/17 40/3 40/24 42/17 48/8 52/13 52/24 62/8 74/13 85/20 86/8 90/18 97/4 99/3 103/16 114/9 115/14 115/15 115/21 121/21
where [41]   9/8 11/17 12/18 17/10 17/18 17/24 18/6 18/7 21/5 21/13 25/18 25/23 28/21 32/1 32/16 32/19

**W**

where... **[25]** 32/24
34/14 38/7 41/13
42/11 43/20 44/7
47/16 48/2 62/16
63/13 66/22 70/13
72/19 72/20 76/7
81/3 81/17 81/19
83/3 83/6 88/20
88/25 91/5 103/21
**Whereupon [1]** 55/22
**whether [11]** 61/5
61/15 77/11 81/20
88/22 104/8 113/14
115/4 117/13 121/20
121/25
**which [69]** 11/7
13/10 14/4 14/5
23/17 28/9 29/10
34/9 35/22 36/14
36/20 41/13 43/14
43/18 46/7 49/6
50/6 52/12 52/22
56/13 56/21 58/4
58/12 58/13 59/19
60/15 63/4 63/6
63/24 64/25 65/17
65/18 65/22 65/23
66/3 66/4 66/22
67/3 67/14 67/23
68/12 68/21 70/9
70/14 70/21 71/15
74/2 74/23 76/7
76/11 80/12 82/5
82/6 82/12 84/9
85/15 86/25 88/10
91/3 93/8 93/11
96/24 99/8 100/8
101/25 114/10
117/10 117/21
122/18
**while [2]** 18/17
55/14
**who [22]** 24/15
24/24 25/8 26/3
26/8 27/5 31/7
33/13 34/9 37/1
41/12 42/10 48/12
70/14 91/24 94/2
94/4 117/7 117/16
119/17 119/18
119/20
**who's [1]** 33/16
**whole [4]** 39/12
42/21 47/2 91/22
**whom [2]** 21/12
116/9
**why [31]** 4/20 12/5
12/6 12/9 12/11
22/2 29/10 35/12
38/25 39/19 44/14
51/7 53/12 53/22
56/2 59/25 60/4
65/8 66/16 66/20
69/8 72/9 74/7 76/1
76/6 94/19 97/17
102/16 113/22
117/15 123/2
**Wi [2]** 27/13 70/2
**Wi-Fi [2]** 27/13
70/2
**will [77]** 4/21 7/17
9/1 9/22 9/25 10/10
13/19 18/12 21/4
21/5 22/10 22/11
24/3 27/20 32/4

35/18 35/18 35/23
37/8 41/2 41/25 42/3
42/17 43/3 43/13
52/7 55/12 55/18
55/19 55/21 56/11
58/3 58/10 58/19
58/23 61/9 61/10
61/13 63/11 63/22
63/23 64/5 65/14
65/15 65/17 67/17
68/4 68/9 68/11
68/11 69/25 70/17
71/11 82/10 83/15
84/18 84/20 84/20
90/10 90/16 91/11
97/19 99/15 100/21
102/7 103/8 103/20
112/21 114/17 115/7
116/16 116/16 117/1
117/9 117/22 119/21
122/18 123/12
**willing [5]** 9/11
9/24 50/24 72/25
78/22
**Wilmington [1]** 1/14
**win [5]** 59/25 60/8
60/13 67/24 91/5
**wish [1]** 46/4
**within [6]** 5/18
8/13 23/5 41/23
65/9 68/6
**without [4]** 40/12
117/22 122/12
122/22
**witnesses [10]** 66/9
67/25 68/1 80/24
81/9 81/12 81/19
81/25 82/1 95/5
**won't [3]** 8/14
98/21 117/13
**WOODALL [2]** 2/4 3/4
**word [1]** 22/11
**words [3]** 24/24
27/5 50/20
**work [6]** 23/14 24/7
36/7 37/1 42/5
120/18
**workable [1]** 42/2
**working [1]** 99/16
**works [3]** 55/15
95/18 104/15
**world [6]** 33/15
39/3 70/9 107/2
112/16 112/19
**worried [1]** 95/9
**worry [1]** 23/9
**worth [3]** 23/14
103/3 116/19
**would [124]** 4/7
4/25 5/7 7/25 8/1
8/9 8/18 9/12 12/18
14/14 17/3 19/15
23/3 23/20 24/8
24/11 26/10 27/13
27/22 28/4 28/7
28/12 29/25 30/1
30/11 31/3 33/8
34/5 34/20 34/24
35/2 35/6 35/9
35/20 36/21 39/9
40/15 40/24 41/2
41/3 41/6 42/4 42/5
42/6 42/16 43/20
44/11 44/12 44/16
44/18 44/19 44/21
46/12 47/3 47/7

47/13 47/14 47/14
47/22 47/22 48/23
51/5 51/22 52/16
52/25 54/12 59/7
65/22 68/7 69/5
69/20 72/13 74/8
75/24 76/23 78/12
78/13 79/3 80/9
80/21 80/25 82/14
82/24 85/13 85/14
87/3 87/9 87/18
87/19 94/6 94/19
95/10 96/23 99/23
100/8 100/13 100/19
101/13 102/12 107/8
108/3 109/18 111/20
111/25 112/4 112/11
113/4 113/7 114/2
114/22 115/2 115/6
115/10 117/3 119/5
121/4 121/10 121/13
121/16 121/18
121/23 122/2 122/12
122/23
**wouldn't [5]** 20/10
49/13 112/11 116/25
117/7
**Wow [1]** 33/22
**wrench [1]** 104/14
**wrestle [1]** 68/22
**writing [1]** 19/4
**written [3]** 79/16
79/22 96/11
**wrong [3]** 6/5 35/8
38/20
**wrote [1]** 29/3

**Y**

**yeah [24]** 5/10 8/10
10/16 15/20 17/21
24/8 29/7 29/10
29/23 29/24 35/16
38/13 45/11 46/14
50/1 77/14 99/20
100/12 100/12
101/14 111/20
112/15 112/18
122/24
**years [6]** 7/7 23/6
29/18 31/10 33/17
48/21
**yes [69]** 6/21 10/24
14/1 21/19 24/10
24/14 25/5 25/22
26/6 26/24 27/3
27/21 30/3 32/6
32/21 40/17 43/2
45/2 45/13 45/18
51/6 51/9 51/12
53/16 53/17 54/16
54/19 55/4 59/6
59/9 59/13 59/13
59/15 59/20 60/24
61/2 63/11 71/6
71/8 72/11 72/16
75/12 77/7 77/13
77/17 77/20 78/4
85/10 85/11 85/11
86/14 87/25 89/6
89/25 101/4 104/23
105/4 105/19 105/25
106/3 106/18 107/13
109/7 109/14 109/19
109/21 110/19
114/15 114/20
**yet [7]** 21/3 22/4

28/24 73/4 73/5
73/7 73/8
**you [389]**
**you'd [1]** 48/13
**you'll [3]** 56/6
57/5 105/16
**you're [24]** 12/1
13/20 18/25 26/13
33/3 33/15 49/1
49/15 50/1 71/1
77/15 79/20 89/4
94/1 94/5 98/12
98/13 100/25 101/5
106/21 107/19
109/19 123/5 123/7
**you've [13]** 12/1
13/20 24/13 25/17
26/22 41/13 49/1
65/6 73/7 86/19
87/2 89/21 89/21
**your [460]**

**Z**

**zero [1]** 25/15
**ZTE [2]** 104/5
118/11