# EXHIBIT A

| | |
|---|---|
| Subject: | Re: Viasat Inc. v. Intellectual Ventures I, LLC, Case No. 25-56 (D. Delaware) |
| Date: | 5/13/2025 11:08 AM |
| From: | "ThucMinh Nguyen" <TNguyen@kasowitz.com> |
| To: | "Karen Keller" <kkeller@shawkeller.com> |
| Cc: | "Matt Warren" <matt@warrenkashwarren.com>, "John Downing" <JDowning@kasowitz.com>, "Intellectual Ventures" <IntellectualVentures@kasowitz.com>, "Michael Farnan" <mfarnan@farnanlaw.com>, "Brian Farnan" <bfarnan@farnanlaw.com>, "SKViasat" <SKViasat@shawkeller.com>, "25-56@cases.warrenlex.com" <25-56@cases.warrenlex.com> |

Counsel,

We understand from your e-mails that Viasat now intends to assert invalidity in this case. Please let us know if our understanding is incorrect.

IV accepts Viasat's proposed schedule without further edits. Please send us the final versions for approval prior to filing.

Regards,
Minh

> On May 13, 2025, at 7:20 AM, Karen Keller <kkeller@shawkeller.com> wrote:

> Thank you for your email.  This action should follow the Court's form order, rather than depart from the form by giving Defendants extra interrogatories regarding non-infringement.  Although Defendants assert that invalidity is not at issue, it would be following denial of the pending motion to dismiss.   It makes no sense to separate invalidity from the other issues in the case.  Moreover, as the invalidity contentions deadline requires only a submission by Plaintiff, Defendants will not suffer any prejudice.

> Our deadline to submit the scheduling order is at noon ET today; please send back your portions as soon as possible, so that we can prepare the filing.

> Karen

> **From:** ThucMinh Nguyen <TNguyen@kasowitz.com>
> **Date:** Tuesday, May 13, 2025 at 10:08 AM
> **To:** Matt Warren <matt@warrenkashwarren.com>
> **Cc:** John Downing <JDowning@kasowitz.com>, Intellectual Ventures <IntellectualVentures@kasowitz.com>, Michael Farnan <mfarnan@farnanlaw.com>, Brian Farnan <bfarnan@farnanlaw.com>, Karen Keller <kkeller@shawkeller.com>, SKViasat <SKViasat@shawkeller.com>, 25-56@cases.warrenlex.com <25-56@cases.warrenlex.com>

**Subject:** Re: Viasat Inc. v. Intellectual Ventures I, LLC, Case No. 25-56 (D. Delaware)

Counsel,

Could you please provide the basis for including an invalidity contentions deadline in the proposed schedule, given that invalidity is not part of the case?

Regards,

Minh

On May 12, 2025, at 1:27 PM, Matt Warren
<matt@warrenkashwarren.com> wrote:

**ALERT: THIS IS AN EXTERNAL EMAIL.** DO NOT CLICK ON
ANY LINK, ENTER A PASSWORD, OR OPEN AN
ATTACHMENT UNLESS YOU KNOW THAT THE MESSAGE
CAME FROM A SAFE EMAIL ADDRESS.

I.V. counsel:

Attached please find a draft proposed scheduling order. We accepted
your dates. We haven't talked about deposition or RFA limits, so we took a
stab at those. We also flagged for you to enter your proposed Paragraphs
5 and 6. The rest should be self-explanatory, although of course please let
us know if it is not. Thank you for your continued time and courtesy in this
matter.

Best Regards,
Matt Warren

--
Matt Warren    matt@warrenkashwarren.com    +1 (415) 895-2928

<1.docx>

ThucMinh Nguyen
Kasowitz Benson Torres LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065

Tel.   (650) 453-5420
Fax.  (650) 362-9302
TNguyen@kasowitz.com

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.

# EXHIBIT B

| | |
|---|---|
| Subject: | Viasat Inc. v. Intellectual Ventures I, LLC, Case No. 25-56 (D. Delaware) |
| Date: | 5/13/2025 11:38 AM |
| From: | "Matt Warren" <matt@warrenkashwarren.com> |
| To: | "John Downing" <jdowning@kasowitz.com>, "Kasowitz Benson Intellectual Ventures Team" <intellectualventures@kasowitz.com>, "Brian Farnan" <bfarnan@farnanlaw.com>, "Michael Farnan" <mfarnan@farnanlaw.com> |
| Cc: | "Karen E. Keller" <kkeller@shawkeller.com>, "Shaw Keller Viasat Team" <skviasat@shawkeller.com>, "Viasat Inc. v. Intellectual Ventures I LLC" <25-56@cases.warrenlex.com> |

I.V. Counsel:

I write in response to ThucMinh's email of earlier today, in which she said: "We understand from your e-mails that Viasat now intends to assert invalidity in this case. Please let us know if our understanding is incorrect." I am not sure why this matters either generally or specifically now, but to avoid any miscommunication, I will repeat our view of the most likely course of events: following denial of the motion to dismiss, I.V. would assert infringement claims under at least Fed. R. Civ. P. 13(a). Once that occurs, Viasat would defend against those claims by all means available, including invalidity. Thus, our schedule aligns with the Court's form order, which includes invalidity contentions.

In general, we prefer to allow the parties' pleadings and submissions to explain their views, rather than engage in informal back-and-forth discussions; we are happy to provide this email as a one-time courtesy to you, but otherwise will await the events of the case as they develop.

Thank you for your continued time and courtesy in this matter.

Best Regards,
Matt Warren


--

Matt Warren     matt@warrenkashwarren.com     +1 (415) 895-2928

# EXHIBIT C

| | |
|---|---|
| **From:** | Brian Farnan |
| **Sent:** | Monday, June 23, 2025 4:01 PM |
| **To:** | Nate Hoeschen; Michael J. Farnan |
| **Cc:** | Karen Keller |
| **Subject:** | RE: Viasat, Inc. v. Intellectual Ventures I LLC, No. 25-56 (D. Delaware) |

Nate,

We do not agree that there is a ripe discovery dispute for the Court to address. At most, ViaSat is raising a dispute related to the timing of the production of license materials. However, we addressed this during the meet and confer as follows:

- We explained that IV has not yet asserted patent claims and the deadline regarding the assertion of the claims is not applicable. We identified an email that we sent to ViaSat regarding invalidity contentions.
- Notwithstanding this, we agreed to produce licenses within a reasonable scope and produce the licenses once the agreements' notice provisions are complied with.
- We agreed to produce documents related to IV's standing to assert the DJ patents.
- We agreed to provide case law regarding negotiation materials.
- We agreed to update our responses to RFPs 12-14.

With regards to the discovery dispute, we asked ViaSat to identify any prejudice that we could address related to the production of these materials and ViaSat did not identify any. In view of the above, there does not appear to be ripe dispute for the Court to address and your email does not identify any actual dispute. Please explain what discovery dispute ViaSat seeks to raise with the Court or please confirm that you will withdraw it.

Regards,
Brian

---

**From:** Brian Farnan
**Sent:** Monday, June 23, 2025 3:55 PM
**To:** 'Nate Hoeschen' <nhoeschen@shawkeller.com>; Michael J. Farnan <mfarnan@farnanlaw.com>
**Cc:** Karen Keller <kkeller@shawkeller.com>
**Subject:** RE: Viasat, Inc. v. Intellectual Ventures I LLC, No. 25-56 (D. Delaware)

Hi Nate – we need a bit more time. I was in trial. Thanks

---

**From:** Nate Hoeschen <nhoeschen@shawkeller.com>
**Sent:** Monday, June 23, 2025 2:13 PM
**To:** Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan <mfarnan@farnanlaw.com>
**Cc:** Karen Keller <kkeller@shawkeller.com>
**Subject:** FW: Viasat, Inc. v. Intellectual Ventures I LLC, No. 25-56 (D. Delaware)

Brian and Michael,

I hope you had a nice weekend. Per the below and attached I plan to send the email below to chambers today requesting a conference on the license production issue (the second bullet point in the attached).

1

Good Morning Mr. Shyer,

I hope you're doing well.   Pursuant to paragraph 12 of the Scheduling Order in the above-captioned action (D.I. 45), I am writing to inform the Court that the parties have a discovery dispute and to request a conference to resolve the dispute. Viasat would like to request that this dispute be heard at the hearing currently set for July 11, 2025 and any argument be included in the same letter briefing as the protective order dispute discussed below.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Please let me know by 4:00 if you would like me to include your position on the briefing/hearing

---

**From:** Kai Schelly <kai@warrenkashwarren.com>
**Sent:** Friday, June 20, 2025 3:52 PM
**To:** Jonathan K. Waldrop <jwaldrop@kasowitz.com>; Kasowitz Benson Intellectual Ventures Team <intellectualventures@kasowitz.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan <mfarnan@farnanlaw.com>
**Cc:** Karen Keller <kkeller@shawkeller.com>; SKViasat <SKViasat@shawkeller.com>; Viasat, Inc. v. Intellectual Ventures I LLC <25-56@cases.warrenlex.com>
**Subject:** Viasat, Inc. v. Intellectual Ventures I LLC, No. 25-56 (D. Delaware)

Counsel:

Attached please find a letter from Matthew S. Warren.  Please let me know if you do not receive this attachment in good order.

Best,
Kai Schelly

--
Kai Schelly    kai@warrenkashwarren.com    +1 (415) 895-2971

# EXHIBIT D

# KASOWITZ BENSON TORRES LLP

Jonathan K. Waldrop
Direct Dial: (650) 453-5425
Direct Fax: (650) 362-2445
JWaldrop@kasowitz.com

333 TWIN DOLPHIN DRIVE, SUITE 200
REDWOOD SHORES, CALIFORNIA 94065
(650) 453-5170
FAX: (650) 453-5171

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEW YORK
NEWARK
SAN FRANCISCO
WASHINGTON DC

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

April 9, 2025

**VIA EMAIL**

Matt Warren
2261 Market Street No. 606
San Francisco CA 94114
matt@warrenkashwarren.com
+1 (415) 895-2928

> Re:  *Viasat, Inc. v. Intellectual Ventures I LLC and Intellectual Ventures II LLC,*
> Civil Action No. (D. Del. 25-cv-00056)

Counsel,

We write regarding your declaratory judgment action, which is based on purported infringement allegations against products licensed under the HPE and Extreme licenses. IV served its preliminary infringement contentions and its amended infringement contentions to American Airlines and Southwest Airlines, respectively, on March 28, 2025. IV served corrected amended infringement contentions for the '326 and '469 patents in the Southwest case on April 1, 2025.

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████

We believe that this additional information fully addresses the concern that your client raised with regards to the '326 patent and its position on patent exhaustion. Accordingly, please confirm that ViaSat will dismiss its declaratory judgment claim related to its patent exhaustion claims with regards to the '326 patent. We are free to meet-and-confer to discuss any remaining issues. Additionally, we have proposed providing the licenses directly to you under an NDA so that you can analyze the agreements with regards to the technology at issue.

# KASOWITZ BENSON TORRES LLP

Matt Warren
April 9, 2025
Page 2


       Please let us know if your client wants to review the agreements.

             Sincerely,

Jonathan K. Waldrop

Enclosures
JKW

# EXHIBIT E

1

1                    UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF DELAWARE

3

4    IPLEARN LLC                    :    CA NO. 11-825-RGA

5                                   :    October 23, 2012

6              Plaintiff,           :

7                                   :    8:30 O'clock a.m.

8    v.                             :

9                                   :

10   BEELINE ACQUISITION CORP, ET   :

11   AL                             :

12                                  :

13             Defendants,          :

14   . . . . . . . . . . . . . . . . . . . . . . . . . . .

15

16

17           TRANSCRIPT OF MOTION FOR PROTECTIVE ORDER

18           BEFORE THE HONORABLE RICHARD G. ANDREWS

19                  UNITED STATES DISTRICT JUDGE

20

21

22   APPEARANCES:

23

24   For Plaintiff:      CONNOLLY GALLAGHER

25                       BY:  ARTHUR G. CONNOLLY, III, ESQ

```
 1          THE COURT:  Fredricka, okay.  Thanks.

 2          I did read the papers.  It seems to me that the harm is

 3   to some extent and the risks that are involved in the

 4   acquisition of the patents is not of the same magnitude as to

 5   when you're doing patent prosecution.  There's the ability to do

 6   some shaping of claims.

 7          I think it's safe to point out that IpLearn makes about

 8   the patents that are in existence.  They are out there and that

 9   is what tips the balance here.

10          I would not extend the prosecution bar to include

11   patent acquisition activities.

12          As I said, I don't think what Oracle has or has not

13   done in other cases makes any difference.

14          I don't think the fact that there's agreement should be

15   a patent prosecution bar should make any difference either.

16        When the parties agree on things, I am not going to hold

17   that against them because I would like them to agree on things.

18          So, I don't include patent acquisition in the proposed

19   order, all right?

20          MR. GROSSMAN:  May I address that one issue really

21   quickly?

22          THE COURT:  What issue?

23          MR. GROSSMAN:  The issue of whether or not you can

24   shape claims in connection with patent activity.

25          THE COURT:  Say that again.
```

# EXHIBIT F

1

1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                                - - -

4

PERSONALIZED MEDIA              :    CIVIL ACTION
5    COMMUNICATIONS, LLC,             :
                                      :
6                   Plaintiff,        :
                                      :
7        vs.                          :
                                      :
8    AMAZON.COM, INC., AMAZON         :
     WEB SERVICES, LLC,               :
9                                     :
                    Defendants.   :    NO. 13-1608 (RGA)
10

11                               - - -

12                              Wilmington, Delaware
                                Friday, March 21, 2014
13                              1:09 o'clock, p.m.

14                               - - -

15   BEFORE:   HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.

16                               - - -

17   APPEARANCES:

18              FARNAN LLP
                BY:  BRIAN E. FARNAN, ESQ. and
19                   MICHAEL FARNAN, ESQ.

20                        -and-

21

22

23

24                             Valerie J. Gunning
                               Official Court Reporter
25

54

1    competitive decision-maker for the client, that I can't

2    exempt him, and I think he's really the only individual that

3    we've had any attempt to make a counsel-by-counsel showing

4    on.  I don't think I can exempt him from patent prosecution

5    bar, and so while I think there's some potential injury to

6    PMC, I don't think it outweighs the potential injury to

7    Amazon caused by the possibility of inadvertent use of the

8    confidential information.

9              So I'm not going to grant the exemption.  And so

10   I took my papers back with me and I left them back there.

11   Let me just try to say what I thought about the other ones.

12             In terms of the patent acquisition, I think the

13   risk there is very slight, and so I'm not going to -- I

14   think it was Amazon wanting something barring activity

15   involved in the patent acquisition.  I'm not going to do

16   that.

17             In terms of the lines of print, you know, I see

18   there are nine patents here, but I have seen in the past

19   smaller numbers than the number that the firm, or that the

20   plaintiffs want, the 200 pages, and so I'm going to go with

21   the 200 pages for right now, but that is not a hard and fast

22   number.  And so when you think you're getting there and you

23   need to get more, if you all can't work it out between you,

24   come back and ask me and it won't take much of a showing,

25   and you can quote me on this, I'm sure you will, it won't

# EXHIBIT G

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


GRAPHICS PROPERTIES              )
HOLDINGS, INC.,                  )
                                 )
    Plaintiff,                   )   Civil Action
                                 )   No. 12-210-LPS
v.                               )
                                 )
ASUS COMPUTER INTERNATIONAL,     )
INC., ASUS TECHNOLOGY PTE LTD.,  )
and ASUSTEK COMPUTER INC.,       )
                                 )
    Defendants.                  )
--------------------------------------------------------------
GRAPHICS PROPERTIES              )
HOLDINGS, INC.,                  )
    A Delaware Corporation,      )
                                 )
    Plaintiff,                   )   Civil Action
                                 )   No. 12-1394-LPS
v.                               )
                                 )
GOOGLE, INC.,                    )
    A Delaware Corporation,      )
                                 )
    Defendant.                   )
--------------------------------------------------------------
GRAPHICS PROPERTIES              )
HOLDINGS, INC.,                  )
    A Delaware Corporation,      )
                                 )
    Plaintiff,                   )   Civil Action
                                 )   No. 12-1395-LPS
v.                               )
                                 )
HEWLETT-PACKARD COMPANY,         )
    A Delaware Corporation,      )
                                 )
    Defendant.                   )
--------------------------------------------------------------

2

```
GRAPHICS PROPERTIES              )
HOLDINGS, INC.,                  )
    A Delaware Corporation,      )
                                 )
    Plaintiff,                   )   Civil Action
                                 )   No. 12-1397-LPS
v.                               )
                                 )
LENOVO GROUP LTD.,               )
    A Chinese Company,           )
                                 )
LENOVO HOLDING COMPANY, INC.,    )
    A Delaware Company,          )
                                 )
LENOVO (UNITED STATES) INC.,     )
    A Delaware Corporation,      )
                                 )
    Defendants.                  )
-------------------------------------------------------
GRAPHICS PROPERTIES              )
HOLDINGS, INC.,                  )
                                 )
    Plaintiff,                   )   Civil Action
                                 )   No. 13-864-LPS
v.                               )
                                 )
ASUS COMPUTER INTERNATIONAL,     )
INC.,                            )
                                 )
    Defendant.                   )
```

                    Tuesday, July 1, 2014
                    12:52 p.m.

                    844 North King Street
                    Wilmington, Delaware


BEFORE:   The HONORABLE LEONARD P. STARK, CHIEF JUDGE
          United States District Judge


                *DISCOVERY TELECONFERENCE*

5

1    cases, one of which is 12-2010-LPS, and there's

2    various related cases.  We're here on three

3    issues.  I thought it would be helpful in this

4    case for me to share my thoughts with you

5    initially and focus your presentations,

6    hopefully, as a result.

7              So there are three issues.  In

8    terms of the page limits on printing source

9    code, my inclination is to side with Google and

10   limit that to a hard limit of 500 pages,

11   provided that Google will respond reasonably to

12   requests for additional pages, including by

13   meeting and conferring in good faith to resolve

14   any disputes without further judicial

15   intervention.

16             That seems to me like it would be

17   a reasonable outcome and a reasonable

18   accomodation in balancing the need to adequately

19   protect Google's highly valuable source code,

20   while at the same time permitting plaintiff to

21   adequately prepare its case.  So that's my

22   inclination on the printing source code issue.

23             On the acquisition bar I'm

24   inclined to side with GPH, which means I'm

6

1    inclined to reject the acquisition bar, which is

2    what I have done on some recent occasions, and

3    it's what I understand to be the general

4    practice in this district and other courts.

5                It seems to me that the risks that

6    an acquisition bar is seeking to address are

7    more attenuated than the risks involved in

8    patent prosecution.  The proposed bar here

9    strikes me as too broad, and it seems

10   inconsistent that defendants aren't worried

11   about barring defense counsel in the way same

12   they're seeking to bar plaintiff's counsel.  So

13   that's my inclination on the second issue.

14               The third one about export limit

15   is where things are less clear to me.  Google is

16   proposing some pretty strict limits.  It's

17   unclear to me why any of Google's information

18   will need to leave the country for any reason in

19   connection with this case, but if it has to, I'm

20   unsure whether all of Google's information

21   really needs the full level of protection that

22   Google is proposing.

23               So let's start with that third

24   issue because that's the one where things are

38

```
1              MR. SCHECTER:  Your Honor, may I

2    briefly respond to that?

3              THE COURT:  It's not necessary.

4    I'm going to adhere to my inclination and not

5    adopt the acquisition bar here.  I'm just not

6    persuaded that it's warranted under the

7    circumstances as they present themselves here.

8    So the protective order that you present to me

9    should not contain the acquisition bar.

10             I do want to get a cleaned up,

11   agreed upon version of the protective order.  I

12   know there's a holiday this week.

13             Mr. Valentine, when would it be

14   reasonable for me to have you submit that to us?

15             MR. VALENTINE:  Could we have,

16   perhaps, one week from today?

17             THE COURT:  Mr. Schecter, is that

18   agreeable to you?

19             MR. SCHECTER:  That's fine, Your

20   Honor.  I don't see any reason why we couldn't

21   turn this around to you more quickly than that.

22   I don't know why we couldn't get it to you by

23   close of business tomorrow.

24             THE COURT:  Mr. Valentine?
```

# EXHIBIT H

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF DELAWARE
 2

 3      DoDots Licensing Solutions, )
        LLC,                        )
 4                                  )
                     Plaintiff,     )
 5                                  ) C.A. No:
        v.                          ) 18-cv-00098-MN
 6                                  )
        Lenovo Holding Co., Inc,    )
 7      et al,                      )
                                    )
 8                   Defendants.    )

 9

                   United States District Court
10                 844 King Street
                   Wilmington, Delaware
11
                   Teleconference
12                 Tuesday August 6, 2019
                   2:00 p.m.
13

14      BEFORE:  THE HONORABLE MARYELLEN NOREIKA
                 United States District Court Judge
15

16      APPEARANCES: (Via telephone)

17        BRIAN E. FARNAN, ESQ.
          FARNAN, LLP
18           and
          PERRY GOLDBERG, ESQ.
19        PROGRESS, LLP
           For the Plaintiff
20
          RENEE MARIE MOSLEY, ESQ.
21        RICHARDS LAYTON & FINGER, P.A.
           and
22        CHARANJIT BRAHMA, ESQ.
          OSCAR A. FIGUEROA, ESQ.
23        TROUTMAN SANDERS
            For the Defendants
24
```

```
1    side out, and we would with much rather reduce
2    the circle of attorneys or other individuals who
3    receive highly-confidential information, and
4    that would be a much better way to prevent the
5    inadvertent disclosure.
6              So if that's really their concern,
7    we could simply not send highly-confidential
8    information to people who shouldn't be receiving
9    it or don't want to receive it.  But that is not
10   really a flaw with the acquisition bar.  The
11   purpose of the acquisition bar is to prevent
12   people who actually (inaudible) access to
13   highly-confidential information from misusing it
14   or acquiring patents that they will then use
15   (inaudible) Lenovo in this exact field.
16             THE COURT:  Okay.  So here's what
17   I'm going to do, I'm going to reject that the
18   patent acquisition bar that's proposed.  I think
19   that the risk is slight.  I don't think it's
20   workable to suggest that Delaware counsel who
21   would have to sign pleadings or sign summary
22   judgment briefs referring to highly-confidential
23   information shouldn't have access to the
24   information that they are representing to the
```

```
 1      Court is accurate.

 2                  So I think that Defendant had the

 3      burden here to show that there was a real risk.

 4      All I've heard is that there may be some risk

 5      but that it's slight, so I'm not going to impose

 6      the patent acquisition bar, which I think is

 7      also consistent with the cases that were cited

 8      to me in the papers.

 9                  So with that are there any other

10      issues that we need to address?

11                  MR. FARNAN:  Not for the

12      Plaintiff, Your Honor.

13                  MR. BRAHMA:  None from the

14      Defendants, Your Honor.

15                  THE COURT: Okay.  Thank you.  I

16      would ask that you all redo the Protective Order

17      and submit it to us within a week.  Okay.

18      Thanks very much.

19                  ALL RESPOND:  Thank you.

20          (Teleconference concluded at 2:13 p.m.)

21

22

23

24
```

# EXHIBIT I

1

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                IN AND FOR THE DISTRICT OF DELAWARE

 3                             - - -

 4

 5    INTELLECTUAL VENTURES I LLC   :   CIVIL ACTION
      and INTELLECTUAL VENTURES     :
      II LLC,                       :
 6                                  :
                     Plaintiffs,    :
 7                                  :
          vs.                       :
 8                                  :
      CANON INC.; CANON U.S.A.,     :
 9    INC.; OLYMPUS CORPORATION;    :
      OLYMPUS CORPORATION OF THE    :
10    AMERICAS, OLYMPUS AMERICA     :
      INC. and OLYMPUS IMAGING      :
11    AMERICA, INC.,                :
                                    :
12                   Defendants.    :   NO. 11-792 (SLR)

13                             - - -

14
                         Wilmington, Delaware
15                       Tuesday, December 18, 2012
                         10:55 o'clock, a.m.
16
                               - - -
17
      BEFORE:  HONORABLE SUE L. ROBINSON, U.S.D.C.J.
18
                               - - -
19

20

21

22

23
                                Valerie J. Gunning
24                              Official Court Reporter
25
```

4

1   a place as any to start or whether plaintiff has some issues

2   that we need to address in addition.

3          MR. KELLMAN:  Your Honor, we can go through the

4   defendants' issues.  That's fine.

5          THE COURT:  Okay.  All right.  Well, I guess the

6   first broad issue is the protective order?

7          MR. PENSABENE:  That's correct, your Honor.

8          THE COURT:  All right.

9          MR. PENSABENE:  As we've laid out in our letter

10  to the Court, there are really four issues relating to the

11  protective order, all revolving around the prosecution bar

12  and the patent acquisition bar.

13         THE COURT:  Which you say that last as though

14  this has been around a long time.  I've only seen it in the

15  last couple of months, and I, frankly, don't understand it

16  and don't understand why anyone thinks it's appropriate.

17  But we will get to that when we get to that.

18         MR. PENSABENE:  I can address that right away,

19  your Honor.

20         THE COURT:  All right.

21         MR. PENSABENE:  The patent acquisition bar,

22  you're correct, is a relatively new thing in protective

23  orders, but I think that's more a function of fact that

24  patent litigation has evolved and continues to evolve and

25  that you do have entities, such an as IV, Acacia, et cetera,

1    which are in the business of going out, acquiring patents

2    for the purpose of asserting them against as many companies

3    as they possibly can.

4            The idea is, is that having had access to

5    Canon's confidential information, information that's not

6    publicly available about our products, the attorneys who

7    have access to that information should not then be allowed

8    to go out, shop for patents, and inadvertently even use that

9    information in deciding which patents to purchase and which

10   ones not to purchase.

11           We, quite frankly, are a little confused that IV

12   is even fighting on this issue because the exact issue of

13   the patent acquisition bar was, in fact, litigated in this

14   court before Judge Stark.

15           THE COURT:  But I've rejected it in every

16   protective order I've had that suggested it.  So...

17           MR. PENSABENE:  That may be the case, your

18   Honor.  We recognize that.  But, again, I think that -- and

19   I'm not familiar with every case in which your Honor has

20   addressed that, but, again, I think --

21           THE COURT:  I don't address it.  I just cross it

22   out because I don't think it merits addressing in any kind

23   of written order.

24           So I mean, to me, once again, the bar is

25   confusing the issue of whether the patents that are being

1    issued by the Patent and Trademark Office are valid and

2    enforceable and should be given any value with the issue

3    that you're really talking about.

4           And, quite frankly, I'm assuming that patents,

5    when they issue, are valuable, and I don't -- I just see it

6    as such a --

7           MR. PENSABENE:  If I may, your Honor, I think a

8    good analogy might help.

9           THE COURT:  I doubt it.

10          MR. PENSABENE:  If you'll bear with me and give

11   me the chance.

12          The reason why you have protective orders, for

13   example, is to avoid and prevent a competitor who actually

14   makes products from using your confidential technical

15   information in developing their products.  You don't want

16   them to take an unfair advantage of that.

17          In the case of IV and companies like it, I'd

18   submit that IV does not make products, no secret about that.

19   Their product, what they do is acquire patents.  Their

20   product is acquiring patents and licensing them.

21          So the same reasoning that applies as to why you

22   don't want a competitor's engineers having access to the

23   confidential information and being able to use that in the

24   products, I think the same arguments would apply to IV, and

25   not allowing them to use it in their products, i.e.,

7

1    building their patent portfolio.  You would allow them to go

2    out, selectively pick which patents they want to acquire in

3    their efforts to assert them against companies such as

4    Canon.

5              THE COURT:  I find that a very cynical view of

6    the world, but I don't know whether we want to do issue by

7    issue.  If we want to do issue by issue, then I would like

8    to hear from plaintiffs' counsel on that particular

9    paragraph.

10              MR. PENSABENE:  Sure.

11              MR. KELLMAN:  Good morning, your Honor.

12              THE COURT:  Good morning.

13              MR. KELLMAN:  Well, I'm not sure I have a lot

14    to say about it in light of your comments.  The acquisition

15    bar is a relatively brand-new thing we started hearing

16    about lately, and, quite frankly, I don't understand

17    either.

18              We have an obligation as counsel in this case to

19    look at all sorts of highly confidential information on a

20    daily basis for lots of different clients.  It's sort of the

21    nature of what we do for a living, and we're bound by

22    protective orders in the case not to use them in

23    inappropriate ways.  There are lots of things we could

24    do inappropriately, but we don't.  That's because we are

25    here and, if we do, we suffer the consequences for doing

1    that.

2              As far as advising, this is not an IV-specific

3    clause.  This is actually a clause that they are looking to

4    attack our firm from being able -- this is a professional

5    attack on us to be able to prevent us from doing our

6    professional responsibility with respect to other clients,

7    not just Intellectual Ventures.

8              If I'm representing a large company that is

9    different in nature from Intellectual Ventures, that has

10   products that are out on the marketplace and is competing

11   with those products, I would still get -- gain access to

12   information.  If I wanted to use it inappropriately, I

13   certainly could by looking the vast portfolios of another

14   large company and trying to assert those, but I don't.  And

15   our firm does not do that.

16             There's no particular reason to go way beyond

17   what we already, what the protective order already does,

18   which is say you cannot use the information other than in

19   this particular lawsuit.  So we won't, and we will abide

20   by that.  There's no reason to add extra protections in

21   there that don't allow the law firms to go and do their

22   own work.

23             THE COURT:  I agree.  I'm not ready to think

24   this is necessary in our world and I will not embrace it in

25   this case.

# EXHIBIT J

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF DELAWARE

 3    INTELLECTUAL VENTURES I LLC,, :
                                    :C.A. No. 12-193-LPS
 4            Plaintiff,            :
                                    :JURY TRIAL DEMANDED
 5         v.                       :
                                    :
 6    AT&T MOBILITY LLC, AT&T       :
      MOBILITY II LLC, NEW CINGULAR :
 7    WIRELESS SERVICES, INC., SBC  :
      INTERNET SERVICES, INC., AND  :
 8    WAYPORT, INC.,,               :
                                    :
 9            Defendants.           :
      _____:
10                                  :
      INTELLECTUAL VENTURES II LLC, :
11                                  :C.A. No. 13-1631-LPS
              Plaintiff,            :
12                                  :JURY TRIAL DEMANDED
           v.                       :
13                                  :
      AT&T MOBILITY LLC, AT&T       :
14    MOBILITY II LLC, NEW CINGULAR :
      WIRELESS SERVICES, INC., SBC  :
15    INTERNET SERVICES, INC., AND  :
      WAYPORT, INC.,                :
16                                  :
              Defendants.           :
17    _____:
                                    :
18    INTELLECTUAL VENTURES I, LLC, :
                                    :C.A. No. 13-1632-LPS
19            Plaintiff,            :
                                    :JURY TRIAL DEMANDED
20         v.                       :
                                    :
21    T-MOBILE USA, INC., AND       :
      T-MOBILE US, INC.,            :
22                                  :
              Defendants.           :
23

24
```

```
1
2    INTELLECTUAL VENTURES II,      :
     LLC,                           :
                                    : C.A. No. 13-1633-LPS
3           Plaintiff,              :
                                    : JURY TRIAL DEMANDED
4        v.                         :
                                    :
5    T-MOBILE USA, INC., AND        :
     T-MOBILE US, INC.,             :
6                                   :
            Defendants.             :
7                                   :
     ─────────────────────────      :
8                                   :
     INTELLECTUAL VENTURES I,       :
9    LLC,                           :
                                    : C.A. No. 13-1634-LPS
10          Plaintiff,              :
                                    : JURY TRIAL DEMANDED
11       v.                         :
                                    :
12   NEXTEL OPERATIONS, INC.,       :
     and SPRINT SPECTRUM, L.P.,     :
13                                  :
            Defendants.             :
14   ─────────────────────────      :
                                    :
15   INTELLECTUAL VENTURES II,      :
     LLC,                           :
16                                  : C.A. No. 13-1635-LPS
            Plaintiff,              :
17                                  : JURY TRIAL DEMANDED
         v.                         :
18                                  :
     NEXTEL OPERATIONS, INC.,       :
19   and SPRINT SPECTRUM, L.P.,     :
                                    :
20          Defendants.             :
     ─────────────────────────      :
21
22
23
24
```

3

```
 1    INTELLECTUAL VENTURES I,      :
      LLC,                          :
 2                                  : C.A. No. 13-1636-LPS
             Plaintiff,            :
 3                                  : JURY TRIAL DEMANDED
         v.                         :
 4                                  :
      UNITED STATES CELLULAR        :
 5    CORPORATION,                  :
                                    :
 6           Defendant.             :
                     _____:
 7                                  :
      INTELLECTUAL VENTURES II,     :
 8    LLC,                          : C.A. No. 13-1637-LPS
                                    :
 9           Plaintiff,            : JURY TRIAL DEMANDED
                                    :
10       v.                         :
                                    :
11    UNITED STATES CELLULAR        :
      CORPORATION,                  :
12                                  :
             Defendant.             :
13

14

15            Thursday, June 5th, 2014
              1:31 p.m.

16            Teleconference
              Chambers of Judge LEONARD P. STARK

17

18            844 King Street
              Wilmington, Delaware

19

20    BEFORE:     THE HONORABLE LEONARD P. STARK,
              United States District Court Judge

21

22

23

24
```

46

1   weight into inconsistencies, we also have

2   different standards being applied in both

3   forums.

4                Thank you, Your Honor.

5                THE COURT:  Okay.  Thank you.  Let

6   me give you my rulings on the two issues.  I'll

7   talk first about the proposed acquisition bar.

8                Here, the defendants' proposal is

9   rejected.  The plaintiff's alternative proposal

10  in their letter is adopted and should be

11  included in the protective order presented to me

12  for my signature.

13               I, of course, reviewed everything

14  carefully before the call and listened with

15  great interest to both sides' arguments on the

16  issue, and I just, at the end, continue to, in

17  this case, share the plaintiff's concerns about

18  the ambiguity and the breadth of what the

19  defendants have proposed.

20               I understand defendants have

21  engaged in an iterative process and narrowed

22  from where they started, and I appreciate that.

23  That's as it should be, but I think we still

24  ended up in a place that is still too ambiguous

47

1    and too broad here and really does risk having a

2    profound and negative and ultimately, I think,

3    unwarranted impact on plaintiff's counsel and

4    their ability to practice in this area in future

5    cases with other clients.

6              The risk, in my mind, of the

7    inadvertent use of defendants' confidential

8    information to advise IV or any other client on

9    the acquisition of patents that might then be

10   asserted against defendants is just too

11   attenuated a risk.  Notwithstanding what I

12   understand about the business model, I just

13   nonetheless think that risk is too attenuated to

14   justify the imposition of the vague and broad

15   preclusion on plaintiff's counsel here.

16             And there I do continue,

17   notwithstanding the very persuasive comments

18   made by Ms. Jacobs.  Nonetheless, I can't shake

19   this sense that if the defendants are -- are

20   fully and entirely as concerned with this risk

21   as they are positing, that they wouldn't want to

22   bind one another's counsel to something like

23   what they have proposed to bind plaintiff's

24   counsel to.

48

1           I recognize all the protections

2    that have been taken in the course of this case

3    and the effort to sever the cases and all that

4    in an effort to protect defendants from one

5    another, but it just seems to me it is, if not

6    as likely, still likely enough that competitors,

7    such as the defendants are, might in the

8    future -- and we're talking about a provision

9    with no time limit on it -- may come to acquire

10   a patent that they wish to assert against one of

11   their now codefendants in this case, and the

12   idea that defendants' counsel would be free to

13   advise their client to do that in a way that

14   plaintiff's counsel is not just doesn't seem

15   warranted to me under the circumstances here.

16           And the only other thing I would

17   add is, of course I don't think that there's any

18   binding authority on this point.  I'm asked to

19   make a discretionary case-by-case decision.  I

20   looked at what Judge Robinson and Judge Andrews

21   have done, as was cited in the papers.  I was

22   reminded, of course, what I had done in the IV

23   versus Alterra case, and all I can say there is

24   my recollection is in that earlier case it

49

1    wasn't -- it really wasn't the focus of what was

2    in dispute, in my mind at least in that case.

3    And I've had occasion in this case to think it

4    through much more carefully, and I think I've

5    reached the right decision in this case.

6                    Finally, on the question of the

7    prosecution bar, here I am going to adopt the

8    plaintiff's proposal.  I still do have this

9    concern about the risk of strategic narrowing

10   amendments, even in the context of a post-grant

11   review here in IPR, and I just think that there

12   is -- even under the circumstances here, there

13   is a risk that those conversations that

14   litigation counsel wish to have the freedom to

15   have with IPR counsel could be informed by

16   confidential information of defendants that

17   litigation counsel have had access to, which

18   could ultimately lead to that type of strategic

19   narrowing that I am concerned with.

20                   And so I think there is that risk,

21   and I think that warrants the protection that

22   the defendants have proposed.

23                   And on the other side of the

24   ledger, I don't -- I don't think what I'm doing

# EXHIBIT K

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF DELAWARE

 3    INTELLECTUAL VENTURES I & :
      II, LLC,                   :  No. 13-453-SLR-SRF
 4              Plaintiffs,      :  UNDER SEAL
                                 :
 5                               :
      v.                         :
 6                               :
      TOSHIBA CORPORATION,       :
 7    et al.                     :
                Defendants.      :
 8

 9                    Tuesday, May 12, 2015
                      2:00 p.m.
10
                      Discovery Review Hearing
11                    Courtroom of Judge Sherry R. Fallon

12                    844 King Street
                      Wilmington, Delaware
13

14       BEFORE:   THE HONORABLE Sherry R. Fallon,
                   United States District Court Magistrate
15

16       APPEARANCES:

17
                      FARNAN LLP
18                    BY:  BRIAN FARNAN, ESQ.

19                                    -and-

20                    DESMARAIS LLP
                      BY:  JON HOHENTHANER, ESQ.
21                    BY:  ANDREW HEINZ, ESQ.
                      BY:  SEAN DOLYE, ESQ.
22                    BY:  DAVID O'STEEN, ESQ.

23                        On behalf of Plaintiffs

24
```

2

1        APPEARANCES CONTINUED:

2                    DLA PIPER
                     BY:  DENISE KRAFT, ESQ.
3                    BY:  CARRIE WILLIAMSON, ESQ.
                     BY:  MARK FOWLER, ESQ.
4
                          On behalf of Defendants
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1        protective order in this case is reasonable, so

 2        I will allow that language.

 3                      With regard to the patent

 4        assertion and acquisition bar and the

 5        competitive decision-making bar, I'm going to

 6        deny Toshiba's request to include its proposed

 7        language for those bars to be included in the

 8        protective order in this case.  And that is

 9        because of my concerns that you're really going

10        outside and far outside of the concerns of

11        confidentiality in this case.

12                      I'm satisfied that the

13        confidentiality provisions that are contained in

14        Section 2 of the proposed protective order are

15        sufficient to bar these attorneys from using

16        confidential information for purposes outside of

17        this litigation.  It will be a Court order.  It

18        will be enforceable by the Court.  In addition,

19        it has been mentioned by IV's counsel there are

20        ethical rules which come into play as well.  And

21        there has to come a point where the Court

22        balances the need for preserving confidentiality

23        and sensitive business information against

24        restraining or restricting parties from choosing
```

```
 1        their counsel or having counsel represent
 2        certain parties.
 3                    I'm just concerned that the
 4        protections become overbroad and too restrictive
 5        beyond the intent of the confidentiality
 6        provisions which are to do just that, keep a lid
 7        on the information that's produced in a
 8        particular litigation so that it's not used for
 9        improper purposes.  And I feel that there are
10        sufficient protections in this protective order
11        as drafted to make it clear that those materials
12        should not be used by attorneys for purposes
13        outside of this litigation.  So that is my
14        ruling on each of the individual bars that we
15        have been discussing.
16                    There are further issues with
17        regard to language contained in the proposed
18        protective order and I believe they relate to
19        circuit schematics, source code, disposition of
20        source code at the end of the case and
21        disclosures to experts or investigating experts,
22        being able to determine whether experts have
23        conflict in other cases.
24                    So why don't we address those
```