IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VIASAT, INC., | ) | |
| | ) | |
|      Plaintiff/Counter | ) | |
|      Defendant, | ) | |
| | ) | |
|     v. | ) | C.A. No. 25-056-CFC |
| | ) | |
| INTELLECTUAL VENTURES I LLC | ) | |
| and INTELLECTUAL VENTURES II | ) | |
| LLC, | ) | |
| | ) | |
|      Defendants/Counter- | ) | |
|      Plaintiff. | ) | |

**BRIEF IN SUPPORT OF VIASAT, INC.'S MOTION FOR
JUDGMENT ON THE PLEADINGS UNDER 35 U.S.C. § 101**

<table>
<tr><td></td><td>Karen E. Keller (No. 4489)</td></tr>
<tr><td></td><td>Nathan R. Hoeschen (No. 6232)</td></tr>
<tr><td></td><td>SHAW KELLER LLP</td></tr>
<tr><td>OF COUNSEL:</td><td>I.M. Pei Building</td></tr>
<tr><td>Matthew S. Warren</td><td>1105 North Market Street, 12th Floor</td></tr>
<tr><td>Erika H. Warren</td><td>Wilmington, DE 19801</td></tr>
<tr><td>Madeline A. Woodall</td><td>(302) 298-0700</td></tr>
<tr><td>WARREN KASH WARREN LLP</td><td>kkeller@shawkeller.com</td></tr>
<tr><td>2261 Market Street, No. 606</td><td>nhoeschen@shawkeller.com</td></tr>
<tr><td>San Francisco, CA, 94114</td><td>*Attorneys for Plaintiff/Counterclaim-*</td></tr>
<tr><td>(415) 895-2940</td><td>*Defendant Viasat, Inc.*</td></tr>
</table>

Dated: January 6, 2026

## **TABLE OF CONTENTS**

**Pages**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iv

NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND AND STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . 2

A.    The '469 Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B.    The '469 Patent Prosecution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

C.    The Asserted Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.    The Asserted Claims are Directed to a Business Idea . . . . . . . . . . . . . . . . 9

    A.    The Asserted Claims are Directed To An Abstract Idea . . . . . . . . . . 10

    B.    The '469 Specification Confirms It Claims an
        Abstract Idea . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C.    Specifying a Remote Environment Does Not Render the
        Asserted Claims Patent Eligible . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

    D.    This Court and the Federal Circuit Have Repeatedly Found
        Similar Claims to be Directed to Abstract Ideas . . . . . . . . . . . . . . . 16

II.    The '469 Patent Claims Lack Any Additional Inventive Concept . . . . . . . .18

    A.    The Asserted Claims Recite Routine, Generic Components . . . . . . . 18

    B.    This Court and the Federal Circuit Have Repeatedly Found
        Similar Claims Fail *Alice* Step Two . . . . . . . . . . . . . . . . . . . . . . . . .19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

– i –

## <u>TABLE OF AUTHORITIES</u>

*Cases*                  **Pages**

*Aegis 11 S.A. v. Tte Tech., Inc.*,
 C.A. No. 19-1165, 2020 WL 4050415 (D. Del. July 20, 2020) . . . . . . . . . . . . 21

*Aegis 11 S.A. v. Belkin Int'l, Inc.*,
 C.A. Nos. 19-1161, 19-1165, 2020 WL 5405928 (D. Del. Sept. 9, 2020) . . 21, 22

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
 838 F.3d 1253 (Fed. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Alice Corp. v. CLS Bank Int'l*,
 573 U.S. 208 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*,
 569 U.S. 576 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re AuthWallet, LLC*,
 C.A. No. 22-1842, 2023 WL 3330298 (Fed. Cir. May 10, 2023) . . . . . . . . . . 16

*Beteiro, LLC v. DraftKings Inc.*,
 104 F.4th 1350 (Fed. Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cleveland Clinic Found. v. True Health Diagnostics*,
 760 F. App'x 1013 (Fed. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*ChargePoint, Inc. v. SemaConnect, Inc.*,
 920 F.3d 759 (Fed. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-14, 18, 19

# TABLE OF AUTHORITIES

*(continued)*

|  | |
|---|---|
| *Cases* | **Pages** |

*Data Engine Techs. LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9, 11

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
  955 F.3d 1317 (Fed. Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*In-Depth Test, LLC v. Maxim Integrated, Prods., Inc.*,
  C.A. No. 14-887, 2018 WL 6617142 (D. Del. Dec. 18, 2018) . . . . . . . . . . . .7, 8

*Mayo Collaborative Servs. v. Prometheus Lab'ys., Inc.*,
  566 U.S. 66 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 18, 19

*Media Content Prot. LLC v. Realtek Semiconductor Corp.*,
  C.A. No. 20-1247-CFC, 2025 WL 2105785 (D. Del. July 28, 2025) . . . . . . . . .10

*Media Content Prot., LLC v. Intel Corp.*,
  C.A. No. 20-1243-CFC, 2025 WL 3281776 (D. Del. Nov. 25, 2025). . . . . . . . .16

*Mobile Acuity Ltd. v. Blippar Ltd.*,
  110 F.4th 1280 (Fed. Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Prism Techs. LLC v. T-Mobile USA, Inc.*
  696 F. App'x 1014 (Fed. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19, 20

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Smartflash LLC v. Apple Inc.*,
  680 F. App'x 977 (Fed. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 16, 17

*Smartflash LLC v. Apple Inc.*,
  C.A. No. 13-447, 2015 WL 661174 (E.D. Tex. Feb. 13, 2015) . . . . . . . . . . . . . 17

## TABLE OF AUTHORITIES
*(continued)*

*Cases* **Pages**

*SmileDirectClub, LLC v. Candid Care Co.*,
  505 F. Supp. 3d 340 (D. Del. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 21

*Surgetech, LLC v. Uber Techs. Inc.*,
  700 F. Supp. 3d 181 (D. Del. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 21

*In re TLI Commc'ns. LLC Pat. Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14, 15, 17

*W. Express Bancshares, LLC v. Green Dot Corp.*,
  816 F. App'x 485 (Fed. Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wyeth v. Stone*,
  30 F. Cas. 723 (C.C.D. Mass. 1840) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Statutes*

35 U.S.C. § 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 7

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff and counterclaim-defendant Viasat, Inc. ("Viasat") filed this declaratory action for non-infringement of U.S. Patent Nos. 7,324,469 (the "'469 patent") and 8,027,326 on January 14, 2025, against defendants and counterclaim-plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC ("I.V."). On February 20, 2025, I.V. moved to dismiss, stay or transfer this action under Fed. R. Civ. P. 12(b)(1) and 28 U.S.C. § 1404. D.I. 13. On July 11, 2025, the Court denied I.V.'s motion. D.I. 60. On July 25, 2025, I.V. filed its answer and counterclaims. D.I. 65.

Viasat hereby moves under Fed. R. Civ. P. 12(c) for judgment on the pleadings because the asserted claims of the '469 patent are unpatentable under 35 U.S.C. § 101. The pleadings are closed, and trial is set for November 15, 2027.[1]

---

[1] Anuvu Corporation also filed a declaratory judgment action against I.V., *Anuvu Corp. v. Intellectual Ventures I LLC*, C.A. No. 25-124-CFC (D. Del.) ("*Anuvu v. I.V.*"), pending before this Court. On July 11, 2025, the Court encouraged the parties to consolidate this action and *Anuvu v. I.V.* for purposes of judicial economy. D.I. 60. On October 14, 2025, this Court entered its amended scheduling order regarding this action and *Anuvu v. I.V.*, following the parties' coordination. D.I. 80; *Anuvu v. I.V.*, D.I. 28.
Upon the Court's disposition of I.V.'s motion to dismiss in *Anuvu v. I.V.* (D.I. 12), Anuvu will file a notice of joinder in this motion.

## SUMMARY OF ARGUMENT

The '469 patent seeks to monopolize a business idea:  charging people money to use the internet by installing generic, commercially available wireless network components—any router, any dish, any user device—in a "remote location a [sic] experiencing a relatively high volume of transient traffic."  Put differently, the asserted claims recite the economic practice of charging money for access to a resource in places where people may not already have that resource.

None of the asserted claims of the '469 patent adds any inventive step, instead reciting generic components performing their ordinary functions:  the claimed wireless networking is performed by any commercially available equipment using published wireless standards.  And the patent claims the charging-people-money part solely in results-focused language:  the system must simply be "capable of authenticating a subscription account."  Nowhere do the claims or specification set forth technical improvements to connectivity or authentication.  Because the '469 patent concerns an abstract idea, and the asserted claims fail to add any inventive step, they are directed to patent-ineligible subject matter, and Viasat respectfully requests the Court enter judgment on the pleadings on asserted claims of the '469 patent.

## BACKGROUND AND STATEMENT OF FACTS

**A.    The '469 Patent**

U.S. Patent No. 7,324,469 to W. David Wilson is titled "Satellite distributed high speed internet access."  Declaration of Erika H. Warren Ex. 1 ("'469 patent"). According to the specification:

> The present invention provides rural 'Hotspots' (such as Wi-Fi access, for example) to enable wireless and hardwired, satellite distributed Internet access for anyone with a PC or other web-ready device (wireless ready or cabled) and a valid credit card.

'469 patent at 1:34-38.  The patent does not claim to have invented satellite hotspots or subscription-based satellite hotspots.  Indeed, the specification acknowledges the existence and benefits of high-speed satellite internet connectivity, but concludes that these benefits are "not easily accessible unless one has a wireless ready PC, and their own satellite dish and transceiver or is located in or near a city with providers who sell access subscriptions to their equipment."  *Id.* at 1:21-24.  The claimed invention of the '469 patent is thus "establishing and operating" satellite hotspots in "remote" or "rural" locations that "experience[] a relatively high volume of transient traffic," including "rest areas, restaurants, truck stops, rural hotels, conference centers, motels and state park lodges."  *Id.* at 1:42-52.  The specification, which spans fewer than six columns, provides no technical details regarding challenges unique to any "rural" or "remote" locations

or how to overcome them, and does not explain why or how installation of a satellite internet hotspot at a "rural hotel" (which would be covered by the patent) differs from installation of the same system in an urban hotel (which is not covered). The patentee simply relies on the knowledge of those skilled in the art to use generic hardware components and established IEEE protocols for wireless connectivity in the claimed "remote" or "rural" locations. Although the patent title includes "high speed," nothing in the specification or claims concerns improvements to speed of data transfer or processing, whether using satellites or otherwise.[2]

Each of the patent figures generally depicts an internet hotspot communicating with a satellite. Figure 1 shows a wired internet hotspot communicating with a satellite. '469 patent, Fig. 1.



FIG.1

---

[2] Viasat disputes that the '469 patent describes any valid invention, but will not burden the Court with repeated references to "purported claims" or a "purported invention" in its briefing.

**B.    The '469 Patent Prosecution**

The '469 patent claims priority to a series of provisional applications filed

starting on September 29, 2003, No. 60/507,022.  Because prosecution predated

*Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014), the examiner did not consider

the issues now before this Court.  During prosecution, the examiner issued a single

office action, rejecting all claims as anticipated or obvious over a Viasat patent,

U.S. Patent No. 6,894,990 to Agarwal.  Warren Decl. Ex. 2.[3]  Although Agarwal

largely concerns different

technology, the examiner cited its

general description of satellite

networks, concluding that it

disclosed the basic concepts of the

'469 and that any undisclosed

features were "well known in



FIG. 1

regular Internet network[s]."  *Id.* Ex. 2 at 3 ¶ 4.  The examiner cited Figure 1 of

Agarwal, which depicts a remote internet hotspot communicating with a satellite.

---

[3] It is well established that courts may consider "public records" such as
prosecution histories on a motion for judgment on the pleadings.  *See, e.g.*,
*Cleveland Clinic Found. v. True Health Diagnostics*, 760 F. App'x 1013, 1018
(Fed. Cir. 2019) (citing *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999,
1008 n.2 (Fed. Cir. 2018)).

*Id.* Ex. 2 at 2 ¶ 2; *see also id.* Ex. 3.  The examiner concluded that Agarwal

disclosed the elements of the independent claims, and rendered obvious all the

other claims because "it would have been obvious to one having ordinary skill in

the art at the time the invention was made to use the these [sic] features system in

Agarwal's invention to improve use of Internet via satellite network."  *Id.* Ex. 2 at 3

¶ 4.

In response, the patentee amended the claims to add elements regarding

payment such as "creating a subscription account," "purchasing by the user . . .

access time using a credit card" and the "subscriber access unit" of claim 24.

Warren Decl. Exs. 4, 5.  The examiner issued the '469 patent as amended.

## C.  The Asserted Claims

I.V. asserts claims 24, 25, 26, 28, and 32 of the '469 patent in this action.

The sole asserted independent claim, claim 24, provides:

An Internet Hotspot comprising:

a satellite dish communicating with the Internet via one or more data
links with a satellite;

at least one router operatively coupled to the satellite dish;

a subscriber access unit operatively coupled between the satellite dish
and the at least one router, the subscriber access unit being capable of
authenticating a subscription account associated with a user prior to
allowing the user access to the Internet; and

a web-ready device operatively coupled to the at least one router, the web-read device having a browser application operating thereon for accessing the Internet;

wherein the satellite dish, at least one router and the subscriber access unit are located in a remote location a [sic] experiencing a relatively high volume of transient traffic;

wherein the user may authenticate the subscription account and access the Internet at the remote location by establishing a data connection between the web-ready device and the router.

'469 patent at 8:24-43.  The asserted dependent claims add generic limitations concerning the various connections, including that they may be "simultaneous" (claim 26) "wired" (claim 25) or "wireless" (claims 25, 28, and 32), and that the "wireless connection is one of an 802.11a wireless area network, an 802.11b wireless area network, an 802.11g wireless area network, and an 802.11n wireless area network" (claim 32).  Because the asserted dependent claims are substantially similar to claim 24 and linked to the same ineligible concept, claim 24 is representative of the asserted claims.  *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290-91 (Fed. Cir. 2024).

## ARGUMENT

A party may move under Fed. R. Civ. P. 12(c) for judgment on the pleadings "[a]fter pleadings are closed—but early enough not to delay trial."  *In-Depth Test, LLC v. Maxim Integrated, Prods., Inc.*, C.A. No. 14-887-CFC, 2018 WL 6617142, at *3 (D. Del. Dec. 18, 2018) (alteration in original) (quoting Fed. R. Civ. P. 12(c)).

– 7 –

"Regional circuit law governs the Court's review of motions for judgment on the pleadings in patent cases," but "[p]atent eligibility, governed by 35 U.S.C. § 101, is evaluated according to Federal Circuit law, and presents 'a question of law, based on underlying facts.'" *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355 (Fed. Cir. 2024) (quoting *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018)). "Patent eligibility under § 101 is a question of law suitable for resolution on a motion for judgment on the pleadings." *In-Depth Test*, 2018 WL 6617142, at *3; *see e.g.*, *Surgetech, LLC v. Uber Techs. Inc.*, 700 F. Supp. 3d 181, 182 (D. Del. 2023).

The asserted claims are unpatentable under 35 U.S.C. § 101 because they claim an abstract idea and fail to describe an inventive concept. "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). The Court first determines whether the claims are "directed to a patent-ineligible concept," and, if they are, whether the elements of the claims provide a sufficient "inventive concept" to transform the abstract idea into a patent-eligible application"—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"

*Alice*, 573 U.S. at 217-18 (alteration in original) (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys., Inc.*, 566 U.S. 66, 72-73 (2012)).

The asserted claims of the '469 patent are directed to the business idea of charging "subscribers" for access to the internet by placing a hotspot in a "remote location a experiencing a relatively high volume of transient traffic." The claims recite generic network hardware the patentee acknowledged to be commercially available ('469 patent at 5:4-25; 6:7-13; 8:36-39) and a "subscriber access unit" that need only be "capable of authenticating a subscription account," without claiming any particular process for performing that authentication. *Id.* at 8:29-32.

## I.     The Asserted Claims are Directed to a Business Idea

*Alice* step one examines the claim language and intrinsic record "to determine if the claim's 'character as a whole' is directed to excluded subject matter." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016). Under *Alice* step one, the Court considers whether the "'focus' of the claims" or "their 'character as a whole'" is directed to an abstract idea. *See, e.g.*, *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016); *see also Affinity Labs*, 838 F.3d at 1257 ("the 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art'").

Here, the focus of the claims is the age-old economic practice of charging people money for access to a resource. Where resources are scarce or would be otherwise unavailable—such as internet access in "remote" locations—people are willing to pay for them. Paying for scarce resources is a "'fundamental economic practice long prevalent in our system of commerce' and, as such, is a patent ineligible abstract idea." *W. Express Bancshares, LLC v. Green Dot Corp.*, 816 F. App'x 485, 487 (Fed. Cir. 2020) (quoting *Alice*, 573 U.S. at 219). "The Supreme Court and [the Federal Circuit] consistently hold that 'fundamental economic practice[s]' are not patent eligible." *Id.* at 486 (second alteration in original) (quoting *Alice*, 573 U.S. at 219) (collecting cases). And the Federal Circuit has "repeatedly found the concept of controlling access to resources via software to be an abstract idea." *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020) (collecting cases); *see also Smartflash LLC v. Apple Inc.*, 680 F. App'x 977, 982-83 (Fed. Cir. 2017); *Media Content Prot. LLC v. Realtek Semiconductor Corp.*, C.A. No. 20-1247-CFC, 2025 WL 2105785, at *3 (D. Del. July 28, 2025).

## A.    The Asserted Claims are Directed To An Abstract Idea

The '469 patent describes various economic advantages of providing "remote" or "rural" hotspots, and then concludes with results-focused claims that

– 10 –

would preempt the idea of charging people money for access to the Internet. Indeed, the asserted claims use precisely the "essentially result-focused, functional" language found to be a "frequent feature of claims held ineligible under § 101, especially in the area of using generic computer and network technology to carry out economic transactions." *Elec. Power*, 830 F.3d at 1356.

Claim 24 recites generic hardware components like "a satellite dish communicating with the Internet via one or more data links with a satellite," without providing any disclosure or solution for achieving those "one or more data links" for communicating with the Internet. '469 patent 8:25-26. The "subscriber access unit"—seemingly the "claimed advance over the prior art"—is disclosed in purely results-focused language, *supra*, further confirming the focus of the claims is ineligible. *Affinity Labs*, 838 F.3d at 1257. Indeed, each of the elements of "communicating," "authenticating," and "establishing a data connection" are recited in functional terms to perform only routine tasks. '469 patent 8:25-26, 28-32, 40-43. So too the claimed "router" and "web-ready device," which the specification confirms are generic components. *E.g.*, *id.* at 4:29-30 ("[u]ser web-enabled devices, such as PC 20, laptop computer 22 and PDA"); *id.* at 5:7-10 (router can be cabled or wireless). And the specification relies on a person of ordinary skill's knowledge of standards for wired and wireless connectivity and

authentication. *E.g.*, *id.* at 5:19-23 ("The Ethernet wireless access point 40 can

employ a security protocol of a type that is known to persons skilled in the art, such

as the 802.11b security protocol, or any subsequent or future versions of the 802.11

standard.").

Requiring tangible components such as commercially available network

equipment does not alter the fact that the claims are directed to "an art or principle

in the abstract, and not for any particular method or machinery." *ChargePoint, Inc.*

*v. SemaConnect, Inc*., 920 F.3d 759, 769 (Fed. Cir. 2019) (quoting *Wyeth v. Stone*,

30 F. Cas. 723, 727 (C.C.D. Mass. 1840)); *see also ChargePoint*, 920 F.3d at 770

("In short, the inventors here had the good idea to add networking capabilities to

existing charging stations to facilitate various business interactions.  But that is

where they stopped, and that is all they patented.").  The asserted claims of the '469

patent are directed to the economic practice of limiting access to a resource (the

Internet) to "anyone with a PC or other web-ready device (wireless ready or

cabled) and a valid credit card or prepaid coupon." '469 patent, Abstract; *see also*

*id.* at 1:36-38.  One wishing to practice the invention simply "install[s]" generic

components at the rural or remote location (*id.* at 1:49-56; 1:21-24) where

"[a]nyone in transit, such as salesmen, executives, truckers and private individuals"

is less likely to have access to the existing Internet, compared to if they were "near

a city with providers who sell access subscriptions to their equipment." *Id.* at

1:23-38.

**B.    The '469 Specification Confirms It Claims an Abstract Idea**

The '469 patent's specification also focuses on the economic benefits

conferred by the invention rather than any technical benefits, further confirming

that the patent is directed to an ineligible business idea. *See ChargePoint*, 920 F.3d

at 768-73.  For instance, the specification notes that the hotspots should be

deployed where supply is constrained but demand is likely to be reasonably high:

"'Hotspots' would best be located in areas that experience high volume transient

traffic, such as rest area, restaurants, truck stops, rural hotels, conference centers,

motels and state park lodges." '469 patent at 3:52-55.  To make more money, the

patent instructs you to advertise:  "signage can announce the availability of access

to internal network ports." *Id.* at 3:61-62.  It explains that you should not give

service away for free—"the user may browse the web until the prepaid access time

runs out" (*id.*, Abstract)—but provides no *technical* disclosure regarding how to

regulate a user's connection once established.  And the specification repeatedly

emphasizes that you should charge for the service:  "credit card billing may [sic]

performed by an existing merchant service and the existing merchant service may

be reciprocal with other Internet subscription providers nationwide." *Id.* at 2:2-5.

But the patent provides no *technical* detail relating to credit-card billing or processing user purchases, instead confirming that "credit card billing may [sic] performed by an existing merchant service" which "may be reciprocal with other Internet subscription providers nationwide." *Id.* Most importantly, the asserted claims and specification repeatedly reference the idea that Internet access is limited to only those users who have paid for a subscription—"[i]nternet access is granted upon activation of a valid credit card, or existing valid account" (*id.* at 4:5-7)—but fail to provide any *technical* detail concerning how to limit or grant internet access, or how to "activate" a valid credit card or account. Instead, the claimed "subscriber access unit" is a generic component "capable of authenticating a subscription account associated with a user prior to allowing the user access to the Internet." *E.g.*, *id.* at 2:5-8, 8:29-32. The "specification's emphasis" on economic rather than technical advantages "underscores that [the claim] is directed to an abstract concept." *ChargePoint*, 920 F.3d at 769 (alteration in original) (quoting *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016)).

### C.    Specifying a Remote Environment Does Not Render the Asserted Claims Patent Eligible

"[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *ChargePoint*, 920 F.3d at 769 (alterations in original) (quoting

– 14 –

*Alice*, 573 U.S. at 222). Placing conventional networking components in "a remote location" does not render the claims eligible. The asserted claims are silent on any technical improvements that could provide or improve connectivity in a "remote" location, or a location "experiencing a relatively high volume of transient traffic." For example, the claims do not require any special configuration of hardware or software intended to address "transience." The claims do not describe any particular methods of handling data packets, switching, or any other technical measures to improve connectivity, relying instead on a POSITA's familiarity with then-existing components and standards. The asserted claims likewise do not require any special hardware or software intended to address "remote-ness"—for example, the patent claims no particular satellite dish configuration, requiring only that "a satellite dish communicat[e] with the Internet via one or more data links with a satellite." '469 patent at 8:25-26. Limiting paid hotspots to a "particular environment" does "not make the claims any less abstract for the step 1 analysis." *TLI Commc'ns*, 823 F.3d at 613; *see also id.* at 612 ("The specification does not describe a new telephone, a new server, or a new physical combination of the two."); *see also SmileDirectClub, LLC v. Candid Care Co.*, 505 F. Supp. 3d 340, 343, 349 (D. Del. 2020) (Connolly, J.) (finding a "business model" failed to provide "any technical improvements").

### D.    This Court and the Federal Circuit Have Repeatedly Found Similar Claims to be Directed to Abstract Ideas

Both this Court and the Federal Circuit have repeatedly found similar claims to be directed to patent-ineligible abstract ideas.  For example, this Court recently held the claims of a patent concerning authorization processes directed to an abstract idea where

> neither claim 1 nor anything else in the #809 patent's specification explains how the claimed device is configured to achieve the claimed authenticated content transfer and because claim 1 relies instead on generic components (i.e., a transmitter with memory and a processor) behaving conventionally, the claim is directed to the abstract idea of authenticated content transfer.

*Media Content Prot. LLC v. Intel Corp.*, C.A. No. 20-1243-CFC, 2025 WL 3281776, at *5 (D. Del. Nov. 25, 2025) (finding the patent in suit covered the abstract idea of combining "multiple generic steps" for authentication "without 'speak[ing] to specific or technical problems and solutions'" (alteration in original) (quoting *In re AuthWallet, LLC*, C.A. No. 22-1842, 2023 WL 3330298, at *4 (Fed. Cir. May 10, 2023)).

In *Smartflash*, the asserted patents claimed "Data Storage and Access Systems," generally "relate[d] to a portable data carrier for storing and paying for data and to computer systems for providing access to data to be stored."  680 F. App'x at 978.  Similar to the '469, the claimed system required the user to "request content" via "access terminals" and "provide payment information such as credit

card or bank account information." *Id*. at 979.  Once "the payment is validated, the requested content is provided to the content access terminal 118 by a content access web server." *Id.*  The Federal Circuit affirmed the district court's finding that, at *Alice* step one, "the asserted claims [a]re directed to the abstract idea of 'conditioning and controlling access to data based on payment.'"  *Id.* at 982 (quoting *Smartflash LLC v. Apple Inc.*, C.A. No. 13-447, 2015 WL 661174, at *8 (E.D. Tex. Feb. 13, 2015)).

And in *Prism Technologies LLC v. T-Mobile USA, Inc.*, the Federal Circuit held that claims reciting "receiving identity data," "confirming the authenticity of the identity data," and, "if authorized, permitting access to the requested resources" were "directed to the abstract idea of 'providing restricted access to resources.'" 696 F. App'x 1014, 1017 (Fed. Cir. 2017) (citing *TLI Commc'ns*, 823 F.3d at 613). As in *Prism*, the asserted claims can be distilled to "determining whether the device identified is authorized to access the resources requested" and, if the user has a valid credit card, "permitting access to the requested resources." *Prism*, 696 F. App'x at 1017.  Like the patents in *Smartflash* and *Prism*, the asserted claims of the '469 patent lack any details on how to achieve the results of each limitation, but rather recite the idea of providing paid hotspots in remote locations.

## II.     The '469 Patent Claims Lack Any Additional Inventive Concept

"Where a claim is directed to an abstract idea, the claim must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *ChargePoint*, 920 F.3d at 773 (alterations in original) (quoting *Alice*, 573 U.S. at 221).  The "additional features cannot simply be 'well-understood, routine, conventional activit[ies]' previously known to the industry." *Id.* (alteration in original).  "*Mayo* made clear that transformation into a patent-eligible application requires 'more than simply stating the abstract idea while adding the words "apply it."'" *Alice*, 573 U.S. at 221 (alterations omitted) (quoting *Mayo*, 566 U.S. at 72).  The asserted '469 patent claims lack any additional limitations that "transform" the claimed business idea into patent-eligible subject matter, and thus fails *Alice* step two.

### A.     The Asserted Claims Recite Routine, Generic Components

Claim 24 lacks any improvement to computer functionality.  *See supra* § I.C.  Each of the components is described in generic and results-driven terms:  the claim recites a satellite dish, a router, a web-ready device, and a "subscriber access unit"—described only by its capability—that are "located" in a "remote location a experiencing a relatively high volume of transient traffic."  '469 patent at 8:24-43.  Aside from the idea of placing a hotspot in an economically advantageous location,

– 18 –

the claims recite "no more than the sort of 'perfectly conventional' generic computer components employed in a customary manner" the Federal Circuit has repeatedly found insufficient to "transform" the idea under *Alice* step two. *See, e.g.*, *Prism*, 696 F. App'x at 1018.

The lack of a transformative 'inventive concept' is confirmed by the prosecution history. The patentee's original claims recited a remote satellite hotspot, and were rejected as disclosed in the *high-level description* of satellite networks in an IP multicasting patent. *See supra* Warren Decl. Exs. 2, 3. In response, the patentee added limitations to specify that the remote satellite hotspot is paid, including the "subscriber access unit" of claim 24. *Id*. Exs. 4, 5. But the patentee did not claim any particular manner—novel or otherwise—in which a "subscriber access unit" can "authenticat[e] a subscription account," instead requiring only that it be "capable of" doing so. '469 patent at 8:28-32. This is precisely the sort of "apply it" claiming *Mayo* prohibits. *See, e.g*., *ChargePoint*, 920 F.3d at 774-75 ("the claims do nothing to improve how charging stations function" but "merely add generic networking capabilities to those charging stations and say 'apply it'").

The asserted dependent claims recite further and increasingly generic limitations without technical improvements. For example, asserted claim 26 adds

"wherein a plurality of users may access the Internet simultaneously at the remote location by respectively establishing data connections with the router via their web-ready devices," but provides no technical detail on how those simultaneous data connections are established or improved.  Asserted claim 32 adds that the "wireless connection is one of" any published 802.11 standard.  The asserted dependent claims are substantially the same as claim 24, and similarly lack any transformative inventive concept.

## B.    This Court and the Federal Circuit Have Repeatedly Found Similar Claims Fail *Alice* Step Two

The Federal Circuit has repeatedly found claims such as these to lack an inventive step.  For example, in *Prism*, the Federal Circuit found claims patent-ineligible under *Alice* step two where

> The asserted claims merely recite a host of elements that are indisputably generic computer components.  *See* '345 patent col. 34 ll. 17-42 (claim 1) (requiring an 'authentication server,' 'access server,' 'Internet Protocol network,' 'client computer device,' and 'database').

696 F. App'x at 1017; *see id.* at 1018 ("Viewed as an ordered combination, the asserted claims recite no more than the sort of 'perfectly conventional' generic computer components employed in a customary manner that we have previously held insufficient to transform the abstract idea into a patent-eligible invention.").

Courts in this District, including this one, have agreed.  For example, in *SmileDirectClub*, this Court found claims reciting a workflow for "teleorthodontics," the "abstract idea of connecting patients with orthodontists remotely," patent-ineligible.  505 F. Supp. 3d at 349-53.  In particular, the Court found that the claims reciting components like "an intraoral scanner," "one or more intraoral scanning site computing systems," and "equipment configured to produce a plurality of aligners" fail step two insofar as they "simply take[] an abstract idea and provide[] several ways in which a business could 'apply it' using routine scanning technology, generic computers, and routine communication technology." *Id.* at 345, 352.  So too in *Surgetech*, where a court in this District found that claims reciting elements of "receiving, from each of the plurality of online distribution channels in real time via the computerized network, sale data" and "processing the sale data by carrying out calculations to obtain a performance rating" fail *Alice* step two.  700 F. Supp. 3d at 187-89.  In particular, the *Surgetech* court held that "the Asserted Claims simply state that a performance indicator *should* be determined but does not tell a person of ordinary skill in the art ('POSA') what calculation to perform, how to perform that calculation, or how or when to adjust the performance rating beyond offering simple concepts in the dependent claims." *Id*. at 187; *see also Aegis 11 S.A. v. Tte Tech., Inc*., C.A. No. 19-1165,

2020 WL 4050415, at *8 (D. Del. July 20, 2020) (finding claims including "mutual authentication" which is "performed by generating at least one random number by each of the network and the mobile station" fail *Alice* step two), *R. & R. adopted*, 2020 WL 5405928 (D. Del. Sept. 9, 2020).

The '469 patent fares no better.  The claims recite placing routine networking components in a "remote" or "rural" location, and then limiting access to authorised users by "authenticating a subscription account," without reciting any novel manner of performing that authentication.  Providing paid access to a resource such as the Internet is a well-understood economic practice and thus ineligible under Section 101.

## <u>CONCLUSION</u>

For the reasons stated above, the Court should enter judgment for Viasat on the pleadings as to the '469 patent.

/s/ Nathan R. Hoeschen
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiff/Counterclaim Defendant Viasat, Inc.*

OF COUNSEL:
Matthew S. Warren
Erika H. Warren
Madeline A. Woodall
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, CA, 94114
(415) 895-2940


Dated: January 6, 2026

## CERTIFICATE OF COMPLIANCE

I hereby confirm that this brief complies with the type and number limitations set forth in the November 10, 2022 Standing Order Regarding Briefing in All Cases. I certify that this document contains 4,795 words, which were counted using the word count feature in Microsoft Word, in 14-point Times font. The word count does not include the cover page, tables, or the counsel blocks.

*/s/ Nathan R. Hoeschen*
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiff/Counterclaim Defendant Viasat, Inc.*

Dated: January 6, 2026

– 24 –