IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VIASAT, INC., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| | ) | C.A. No. 25-056-CFC |
| v. | ) | |
| | ) | |
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants/Counter-Plaintiff, | ) | |

**DEFENDANTS/COUNTER PLAINTIFF INTELLECTUAL VENTURES I
LLC AND INTELLECTUAL VENTURE II LLC'S
BRIEF IN OPPOSITION TO VIASAT, INC.'S MOTION FOR
<u>JUDGMENT ON THE PLEADINGS UNDER 35 U.S.C. § 101</u>**

OF COUNSEL:

Jonathan K. Waldrop
Marcus A. Barber
John Downing
Heather S. Kim
ThucMinh Nguyen
Jonathan H. Hicks
KASOWITZ LLP
101 California Street
Suite 3950
San Francisco, CA 94111

Brian E. Farnan (No. 4089)
Michael J. Farnan (No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for
Defendants/Counter-Plaintiff,
Intellectual Ventures I LLC and
Intellectual Ventures II LLC*

jwaldrop@kasowitz.com
mbarber@kasowitz.com
jdowning@kasowitz.com
hkim@kasowitz.com
tnguyen@kasowitz.com
jhicks@kasowitz.com

Paul G. Williams
KASOWITZ LLP
1230 Peachtree Street, N.E.
Suite 2445
Atlanta, GA 30309
(404) 260-6080
pwilliams@kasowitz.com


Dated: February 3, 2026

## **TABLE OF CONTENTS**

I.    NATURE AND STAGE OF THE PROCEEDINGS ......................................1

II.   SUMMARY OF ARGUMENT ......................................................................1

III.  BACKGROUND AND STATEMENT OF FACTS ......................................2

    A.    Background ...........................................................................................2

    B.    The '469 Patent ...................................................................................3

    C.    The '469 Patent Prosecution History ..................................................5

IV.   LEGAL STANDARD ..................................................................................6

V.    ARGUMENT ...............................................................................................8

    A.    The '469 Patent Is Not Directed to an Abstract Idea under *Alice*
        Step One ................................................................................................8

        1.    The Asserted Claims Are Directed to a Specific
             Technological Solution ................................................................8

        2.    Viasat Relies on Impermissibly High-Level Descriptions of
             the Claims and Ignores Specification Details ...........................11

    B.    *Alice* Step Two: The Claims Include An Inventive Concept ..............15

VI.   CONCLUSION ...........................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) ................................................................... 17, 21

*Ancora Techs., Inc. v. HTC Am., Inc.*,
  908 F.3d 1343 (Fed. Cir. 2018) ...................................................................... 15

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) ................................................................... 14, 17

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ................................................................... 18, 20

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) ...................................................................... 10

*Contour IP Holding LLC v. GoPro, Inc.*,
  113 F.4th 1373 (Fed. Cir. 2024) ........................................................ 7, 8, 11, 13

*Cooperative Ent'mt Inc. v. Kollective Tech., Inc.*,
  50 F.4th 127 (Fed. Cir. 2022) ........................................................................ 7

*CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*,
  15 F.4th 1091 (Fed. Cir. 2021) .............................................................. 8, 14, 19

*Data Engine Techs. LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018) ........................................................................ 6

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) .................................................................... 9, 11

*Fundamental Innovation Sys. Int'l LLC v. Anker Innovations Ltd.*,
  No. CV 21-339-RGA, 2025 WL 459916 (D. Del. Feb. 11, 2025) .............. 12, 15

*Guada Techs. LLC v. Vice Media, LLC*,
  341 F.Supp.3d 390 (D. Del. Sep. 17, 2018) ................................................ 16, 17

*Smartflash LLC v. Apple Inc.*,
  680 F. App'x 977 (Fed. Cir. 2017) .................................................................. 14

ii

*Media Content Prot. LLC v. Intel Corp.*,
    C.A. No. 20-1243-CFC, 2025 WL 3281776 (D. Del. Nov. 25,
    2025) ......................................................................................................13

*Nielsen Co. (US), LLC v. Hyphametrics, Inc.*,
    No. CV 23-136-GBW, 2025 WL 2051443 (D. Del. July 22, 2025) ...............6, 7

*Prism Technologies LLC v. T-Mobile USA, Inc.*,
    696 F. App'x 1014 (Fed. Cir. 2017) ......................................................13, 14, 15

*Prolitec Inc. v. ScentAir Technologies, LLC*,
    770 F.Supp.3d 730 (D. Del. Mar. 13, 2025).......................................................16

*Ravgen, Inc. v. Natera, Inc.*,
    2024 WL 150960 (W.D. Tex. 2024)...................................................................20

*Rich Media Club LLC v. Duration Media LLC*,
    681 F. Supp. 3d 1032 (D. Ariz. 2023) ...............................................................11

*SmileDirectClub, LLC v. Candid Care Co.*,
    505 F. Supp. 3d 340 (D. Del. 2020)...................................................................21

*Surgetech, LLC v. Uber Techs. Inc.*,
    700 F. Supp. 3d 179 (D. Del. 2023)...................................................................21

*Throughtek Co., Ltd. v. Reolink Innovation Inc. et al.*,
    2024 U.S. Dist. LEXIS 20139 (D. Del. Feb. 5, 2024).........................................7

**Statutes**

35 U.S.C. § 101 ..........................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).............................................................................7, 17

Fed. R. Civ. P.  12(c).......................................................................................6

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff and counterclaim-defendant Viasat, Inc. ("Viasat") filed this declaratory action for non-infringement of U.S. Patent Nos. 7,324,469 ("'469 Patent") and 8,027,326 ("'326 Patent") on January 14, 2025, against Defendants and Counterclaim-Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "IV"). The Court issued the current scheduling order on October 2, 2025. D.I. 78. The parties exchanged infringement contentions (October 9, 2025) and invalidity contentions (November 20, 2025), and the fact discovery cutoff will not occur until October 8, 2026. *Id*. Viasat served its opening claim construction brief on January 29, 2026, IV is expected to serve its answering brief on February 26, 2026, and the claim construction hearing is currently scheduled for May 2026. *Id*. Trial is not scheduled for Viasat until November 2027. *Id*.

## II.     SUMMARY OF ARGUMENT

The Court should deny Viasat, Inc.'s ("Viasat") Motion for Judgment on the Pleadings ("Motion" or "Mot.") in its entirety. As shown, the '469 Patent is patentable because it is not directed to an abstract idea and its claims recite an inventive concept. Accordingly, it is patent-eligible under 35 U.S.C. § 101. Specifically, claim 24 of the '469 Patent, which claims priority to September 2003, recites an "Internet hotspot" that provides satellite-distributed Internet access to users using a specific network architecture described in the specification. As

1

described by the specification, this invention presents a specific improvement over then-available technologies available for Internet access. At the time of the invention, virtually no Internet access was available to individuals when traveling, especially in remote or rural areas. But the technological solution of the '469 Patent allowed users to access the Internet using an established hotspot, subject to a subscription.

Viasat resorts to an egregiously over-abstracted description of the focus of the '469 Patent to explain away this improvement as merely the abstract idea of "paying for a resource," asserting that the claims comprise only "results-focused language" and lack any technical improvements. But the prosecution history and specification make clear that Viasat's arguments are flawed and should be rejected by this Court.

## III.    BACKGROUND AND STATEMENT OF FACTS

### A.    Background

On January 14, 2025, Viasat filed a complaint for declaratory judgment that Viasat does not directly or indirectly infringe the '469 Patent and the '326 Patent. D.I. 1 at 1. IV responded with an answer and counterclaims on July 25, 2025. *See generally* D.I. 65. In its answer and counterclaims, IV pled that the '469 Patent is "valid, enforceable, and patent eligible under Section 101 of the Patent Act" because it provided an "improved satellite distributed high-speed Internet Hotspot" that "address technical problems and are inherent and derive from prior art methods and

systems involving the problems of distributed Internet Hotspots." D.I. 65 at ¶ 45. IV further pled that the '469 Patent specifically addresses this technical problem, and other technical problems, "with a technical solution that is described in the specification and captured" by claim 24. *Id*. IV pled that the recited elements of claim 24 were "novel and non-obvious and recite[d] elements and steps that were not routine or conventional at the time of the invention, either individually or in combination." *Id*.

## B.    The '469 Patent

The asserted claims of the '469 Patent are directed to an improvement to technology for providing Internet access via satellite in remote locations, utilizing satellite Internet technology in combination with a specific network architecture including a "subscriber access unit" that provides a specific structural access control architecture in the satellite hotspot pathway. Specifically, independent claim 24 claims:

> An Internet Hotspot comprising:
>
> > a satellite dish communicating with the Internet via one or more data links with a satellite;
> >
> > at least one router operatively coupled to the satellite dish;
> >
> > a subscriber access unit operatively coupled between the satellite dish and the at least one router, the subscriber access unit being capable of authenticating a subscription account associated

3

> with a user prior to allowing the user access to the Internet; and
>
> a web-ready device operatively coupled to the at least one router, the web-read device having a browser application operating thereon for accessing the Internet;
>
> wherein the satellite dish, at least one router and the subscriber access unit are located in a remote location a experiencing a relatively high volume of transient traffic;
>
> wherein the user may authenticate the subscription account and access the Internet at the remote location by establishing a data connection between the web-ready device and the router.

The specification explains the benefits of the claimed invention. At the time of the invention, access to the Internet was limited, particularly for people traveling: "[a]nyone in transit, such as salesmen, executives, truckers and private individuals has virtually no access while traveling, especially in rural areas. Even in populated areas, one must find a hard-wired commercial access point to get to the Internet. This is ***time consuming, costly and severely limits the benefits of the Internet*** in most areas of the country." '469 Patent at 1:24-30 (emphasis added). As the specification explains, "[t]he 'Hotspots' can be located anywhere there is 120 volt electricity available or access to the sun for a solar panel and enough space to house the transceiver and mount a satellite dish." *Id*. at 1:38-41. The specification also describes that the claimed invention allows a user to pay for a subscription to use the hotspot or for a specific amount of access time. *Id*. at 1:58-66.

Specifically, the '469 Patent teaches a "subscriber access unit" for user authentication, accounting, and traffic management, and provides a detailed explanation for how it functions in the exemplary embodiment. *Id*. at 4:39-65. In short, the '469 Patent teaches a specific solution to the problem of how an Internet service provider, for example, can offer Internet access services in remote locations, including being paid for doing so by its subscribers.

### C.    The '469 Patent Prosecution History

The application for the '469 Patent was filed in September 2004. In June 2007, it received a non-final rejection on the grounds that they were anticipated (original claims 1 and 35) or obvious (original claims 2-34 and 36-46). Ex. A (6/15/2007 non-final rejection). But regarding the obviousness determinations, the examiner merely stated, "these features are well known in regular Internet network." The examiner provided no explanation or documentary evidence for this conclusion, as required under the MPEP at the time. Ex. B (9/17/2007 applicant arguments).

The applicant amended the claims, including then-pending claim 35 (now claim 24) as shown below, to recite various limitations including the "subscriber access unit" and "web-ready device" that are operatively coupled with the other recited elements in a specific manner to form the "Internet Hotspot." Ex. C (9/17/2007 amendments). Upon consideration of the amended claims and arguments submitted therewith, the examiner allowed both the amended independent claims

and the dependent claims which had previously been rejected as obvious over the referenced prior art (Ex. D (10/25/2007 NOA)). The examiner did not provide any reasons for allowance and thus never specified whether the claims that had previously been rejected under § 103(a) were allowed solely due to the amendments to the independent claims or also because the examiner could not substantiate the prior determination that the claimed features were "well known" at the time.

## IV.    LEGAL STANDARD

"The Third Circuit reviews the grant of judgment on the pleadings de novo, accept[ing] all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw[ing] all reasonable inferences in favor of the non-moving party." *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018) (quoting *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 390 (3d Cir. 2012)) (internal quotation marks omitted). "Patent eligibility can be determined on the pleadings under Rule 12(c) when there are no factual allegations that, when taken as true, prevent resolving the eligibility question as a matter of law." *Id.*

Courts apply the two-step *Alice* test to determine whether patent claims are patent-eligible. At step one, courts consider "whether the claims at issue are directed to [a] patent-ineligible concept such as an abstract idea." *Nielsen Co. (US), LLC v. Hyphametrics, Inc.*, No. CV 23-136-GBW, 2025 WL 2051443, at *2 (D. Del. July

22, 2025) (quoting *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355 (Fed. Cir. 2024)) (internal quotation marks omitted). "To determine the focus of the claimed advance at *Alice* step one, we look to whether the claims are directed to a specific means or method that improves the relevant technology rather than simply being directed to a result or effect that itself is the abstract idea." *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379 (Fed. Cir. 2024) (internal quotation marks omitted); *see also Throughtek Co., Ltd. v. Reolink Innovation Inc. et al.,* No. 23-218-GBW-SRF, 2024 U.S. Dist. LEXIS 20139, at *12 (D. Del. Feb. 5, 2024) ("'specific technologic modifications to solve a problem or improve the functioning of a known system' take the [ ] patent claims out of the realm of abstraction"). If the court concludes that the claims are not directed to a patent-eligible concept, the court will proceed to step two and "consider[] the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Nielsen*, 2025 WL 2051443, at *2. The Federal Circuit has repeatedly recognized that "[d]etermining whether the [invention] is well-understood, routine, or conventional is a question of fact that cannot be resolved at the Rule 12(b)(6) stage." *See, e.g., Cooperative Ent'mt Inc. v. Kollective Tech., Inc.,* 50 F.4th 127, 133 (Fed. Cir. 2022) (citations omitted).

## V.    ARGUMENT

### A.    The '469 Patent Is Not Directed to an Abstract Idea under *Alice* Step One

#### 1.  The Asserted Claims Are Directed to a Specific Technological Solution

The claims of the '469 Patent are directed to a "specific means or method" that improves the technology for providing satellite Internet access in remote areas through a specific structural access control architecture in the satellite-to-hotspot pathway. *See Contour IP Holding LLC*, 113 F.4th at 1379. As noted above, in remote areas, or simply areas through which an individual is traveling, there was, at the time the application to the '469 Patent was filed, "virtually no access" to the Internet, and finding a "hard-wired commercial access point" was "***consuming, costly and severely limit[ed] the benefits of the Internet*** in most areas of the country." *See supra* Section III.B. Accordingly, the '469 Patent teaches an invention that includes a specific architecture that can be deployed in remote locations to provide subscribers with satellite internet access. This invention comprises a specific configuration of network equipment and a "subscriber access unit operatively coupled between the satellite dish and the at least one router, the subscriber access unit being capable of authenticating a subscription account associated with a user prior to allowing the user access to the Internet." '469 Patent at cl. 24.

The Federal Circuit's ruling in *CosmoKey Solutions GmbH & Co. KG v. Duo Security LLC*, 15 F.4th 1091 (Fed. Cir. 2021) is instructive here. That court rejected

the district court's holding that the claims were directed to "the verification of identity to permit access to transactions." *Id.* at 1097. It concluded that "the claims and written description suggest that the focus of the claimed advance is activation of the authentication function, communication of the activation within a predetermined time, and automatic deactivation of the authentication function, such that the invention provides enhanced security and low complexity with minimal user input." *Id.* So here, the claims are directed to an advancement in the technology for providing access to internet services, made possible by the specific structure of the satellite internet hotspot, including the subscriber access unit, which allows the provider of the hotspot to authenticate whether the would-be user of the hotspot has a subscription for the service before allowing access to the Internet. *See* '469 Patent at Fig. 1, 4:1-67. As described by the specification, the subscriber access unit performs specific, detailed functions. *Id.* at 4:47-65. Further, as in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), the claims here "do not broadly and generically claim 'use of the Internet' to perform an abstract business practice." *Id.* at 1258. Instead, they claim a solution for remote satellite internet access including a specific arrangement of hardware, namely the incorporation of the "subscriber access unit operatively coupled between the satellite dish and the at

least one router."[1] The asserted claims are not directed to the abstract idea of "paying for access to a resource," as Viasat contends, but instead to a particular network architecture for providing satellite-distributed Internet connectivity through an Internet hotspot.

At *Alice* step one, the question is whether the claim is directed to a specific technological configuration rather than merely a business objective. Here, the claim's structure identifies precisely where authentication is enforced—between the satellite terminal and the router—and thus describes a concrete access-control architecture, not merely "charging people money." Courts applying *Alice* step one must focus on the "specific means or method" recited in the claims and avoid describing the invention at an impermissibly high level of abstraction divorced from the claim language itself. Here, the claimed advance is not the business notion of subscription payment, but the specified architecture, including interposition of a subscriber access unit between the satellite dish and router to authenticate the user before permitting access to the Internet.

---

[1] Viasat relies on *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019) to argue the '469 Patent is directed to an "ineligible business idea." Mot. at 12-14. But Viasat ignores that in *ChargePoint*, "the specification never suggests that the charging station itself is improved from a technical perspective, or that it would operate differently than it otherwise could." *Id*. at 768. Here, in contrast, the problem is the lack of availability of internet access in remote areas due to technical limitations—a problem for which the '469 Patent invention provides a technical solution.

## 2. Viasat Relies on Impermissibly High-Level Descriptions of the Claims and Ignores Specification Details

Ignoring much of the specification, Viasat describes the focus of the claims as "the age-old economic practice of charging people money for access to a resource" in an attempt to portray the '469 Patent as abstract and patent-ineligible. Mot. at 10. As an initial matter, the mere fact that the '469 Patent responds in part to a business challenge—how to provide satellite internet in remote locations and charge for access—does not render the claims ineligible under Section 101. As established in *DDR Holdings*, claims that "address a business challenge … particular to the internet," as opposed to "recit[ing] a fundamental economic or longstanding commercial practice" are not abstract. *Id.* at 1257; *see also Rich Media Club LLC v. Duration Media LLC*, 681 F. Supp. 3d 1032, 1040 (D. Ariz. 2023) ("the claims at issue are necessarily rooted in computer technology in order to overcome a problem unique to computer networks in the context of Internet advertising").

Furthermore, in even arriving at this purported claim focus, Viasat engages in a high degree of abstraction, which the Federal Circuit has repeatedly cautioned against. *See Contour IP Holding*, 113 F.4th at 1379-80 (courts "must avoid describing the claims at a high level of abstraction, divorced from the claim language itself" and criticizing a lower court decision because that court's decision "characterizes the claims at an impermissibly high level of generality"). Viasat's extremely broad description of the claims as directed to controlling access to

11

resources (by charging for them) (Mot. at 10) omits that the '469 Patent, in fact, describes a technological solution for *how* to provide internet access—including by using a novel "subscriber access unit" that was unequivocally not included in the prior art, as shown by the prosecution history. *See supra* Sections III.B and III.C. Indeed, Viasat's argument and overly abstract description duplicates the arguments rejected by this District in *Fundamental Innovation Systems International LLC v. Anker Innovations Ltd.*, No. CV 21-339-RGA, 2025 WL 459916, at *4 (D. Del. Feb. 11, 2025) (rejecting description of claims as directed to "controlling access to resources" where claim improved on technology for charging mobile devices).

Viasat also asserts that the specification "provides no technical disclosure regarding how to regulate a user's connection once established" and "fail[s] to provide any technical detail concerning how to limit or grant internet access." *Id*. This is wrong. Contrary to Viasat's description of the "subscriber access unit" as merely a "generic component 'capable of authenticating a subscription account associated with a user prior to allowing the user access to the Internet,'" Mot. at 14, the specification details how the subscriber access unit functions in the provision of an Internet hotspot. '469 Patent at 4:46-65. And as claim 25 itself provides, this unit is specifically "operatively coupled between the satellite dish and at least one router, the subscriber access unit being capable of authenticating a subscription account associated with a user prior to allowing the user access to the Internet." *Id.* at cl. 24.

Even if all components of the claimed invention were known and conventional at the time of the invention, this still would not be sufficient to render the claims ineligible under Section 101. *See Contour IP Holding LLC*, 113 F.4th at 1380 (noting that even if a claim "employ[s] known or conventional components that existed in the prior art at the time of the invention," that does not by itself "necessarily mean that the claim is *directed to* an abstract idea at step one").

Nor does Viasat's reliance on *Media Content Prot. LLC v. Intel Corp.*, C.A. No. 20-1243-CFC, 2025 WL 3281776 (D. Del. Nov. 25, 2025), *Smartflash LLC v. Apple Inc.*, 680 F. App'x 977 (Fed. Cir. 2017), and *Prism Technologies LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017 (Fed. Cir. 2017), aid it in establishing that the '469 Patent claims are abstract. *See* Mot. at 16-17. In *Media Content*, the Court held that the claim at issue was directed to "a process for authenticated content transfer," and reasoned that "[c]ontent transfer, even if based on meeting a condition, is similarly an abstract idea and not an improvement to computer functionality." *See Media Content*, 2025 WL 3281776, at *3. Claim 24 is materially different. It does not merely recite an authentication result untethered to network structure. Instead, it requires a subscriber access unit operatively coupled between the satellite dish and the router that authenticates the subscription account "prior to allowing the user access to the Internet." '469 Patent at cl. 24. This is an architectural limitation defining a specific access-control gateway within the hotspot network path.

13

Moreover, the specification provides an exemplary implementation in which the subscriber access unit is preprogrammed with the radius server IP address, uses radius client software to direct the user connection, presents an SSL login, validates credentials and remaining minutes, and denies access absent authorization. '469 Patent at 4:47-5:3. Unlike the claims in *Media Content*, claim 24 is rooted in a concrete satellite hotspot configuration that restricts network routing until authentication occurs. As in *Bascom*, the inventive concept lies in the ordered placement of the access-control mechanism at a specific location in the network pathway.

The claims at issue in *Smartflash* similarly involved the "conditioning and controlling access to data based on payment." 680 F. App'x at 984. While the '469 Patent claims recite authentication by the subscriber access unit, their focus is on the provision of satellite Internet access to subscribers in remote locations—a challenge unique to the Internet—through hotspots that incorporate a "subscriber access unit" in a particular configuration with the other claimed hardware components. Viasat's citation to *Prism* also fails based on the distinction drawn by the Federal Circuit in *CosmoKey*. There, the court distinguished *Prism* by explaining that "the claims recited generic steps typical of any conventional process for restricting access, including such processes that predated computers." 15 F.4th at 1096. The claims here, in contrast, provide an improvement that is directly related to the limitations of

14

the claims. *See Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348–49 (Fed. Cir. 2018) (invention not directed to abstract idea where claimed method "specifically identifies how … functionality improvement is effectuated" through structures at particular locations that interact with other components in specific ways); *see also Fundamental Innovation*, 2025 WL 459916, at *4 (distinguishing *Prism* on ground that claims were directed to improvements in mobile device charging technology).

### B.    *Alice* Step Two: The Claims Include An Inventive Concept

This Court need not reach step two of the *Alice* test, given that the '469 Patent claims are not directed to an abstract idea. Nevertheless, the asserted claims contain an inventive concept that render them patent-eligible under *Alice* step two.

As an initial matter, Viasat's motion is premature for multiple reasons and cannot be resolved at *Alice* step two, including at least because there are both factual and claim construction disputes that preclude affirmatively ruling on Viasat's motion. *See, e.g., supra* at Section III.A. Fact discovery has only just begun in this matter, the cutoff for fact discovery is not until October 8, 2026, and the current trial date is November 2027, more than a year and a half away.[2] There has been limited third party discovery, which IV anticipates will be relevant to whether the '469 Patent recites "conventional" and "generic" components. IV further anticipates

---

[2] D.I. 78 at 2-3.

that expert discovery, which is not expected to begin until November 19, 2026, will yield additional relevant discovery regarding the patentability of the '469 Patent under § 101. To the extent the Court would rule on Viasat's Motion, it would do so without the benefit of this discovery, as well as without the benefit of resolving pending claim construction disputes, as described below.

Further, while Viasat alleges that the '469 Patent recites "conventional" and "generic" components, it presents no evidence to support these allegations—at a minimum, discovery is required to resolve these factual disputes. *See Prolitec Inc. v. ScentAir Technologies, LLC*, 770 F.Supp.3d 730, 746-47 (D. Del. Mar. 13, 2025) (denying motion for summary judgment on patent eligibility where genuine issues of material fact existed regarding whether the asserted patent lacked an inventive concept under *Alice* step two and where court could not conclude that accused infringer had shown by clear and convincing evidence that the claimed invention was well understood, routine, or conventional); *see also Guada Techs. LLC v. Vice Media, LLC*, 341 F.Supp.3d 390, 399-400 (D. Del. Sep. 17, 2018) (denying a motion to dismiss on § 101 grounds where factual disputes existed regarding whether the claimed "jumping" and "keyword searching" elements were "well-understood, routine and conventional"). The court in *Guada Technologies* further noted that the motion was more appropriate at the summary judgment stage: "[T]here exists a factual dispute as to whether the purported inventive concepts were 'well-

understood, routine and conventional' in 2002 … Defendant may re-raise the issue at summary judgment." *Guada Techs.* 341 F.Supp.3d at 400.

There is also ongoing claim construction, where the parties dispute the meaning of multiple claim terms recited in claim 24.[3] Viasat filed its opening brief on January 29, 2026, the parties have yet to file answering, reply, and sur-reply briefs, and the hearing on claim construction is not scheduled until May 2026.[4] Taken together, this confirms that Viasat's motion is premature because there are, at a minimum, factual disputes as to whether the '469 Patent asserted claims recite "well-understood, routine, or conventional" concepts and "cannot be resolved at the Rule 12(b)(6) stage." *See Aatrix*, 882 F.3d at 1128.

Viasat's *Alice* step two argument consists of little more than repeated assertions that the claims only recite components "described in generic and results-driven terms." Mot. at 18. As explained above, this is an oversimplification of the claims and ignores the specification. *See supra* Section V.A. In any event, as with *Alice* step one, even the fact that all limitations of a claim only recite generic components does not bar the conclusion that the claims nevertheless contain an inventive concept. *See Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,

---

[3] D.I. 88 at 4-6 (joint claim construction chart including the parties' positions for the disputed terms "a satellite dish" and "location."

[4] D.I. 78 at 1-2.

827 F.3d 1341, 1349 (Fed. Cir. 2016) (holding patent described inventive concept despite agreeing with the district court "that the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself").

Regardless, at least the limitation reciting a "subscriber access unit operatively coupled between the satellite dish and the at least one router" provides an inventive concept—a specific structural component of the claimed Internet hotspot that improves the provision of Internet access to subscribers. All evidence in the record supports the conclusion that the use of such a "subscriber access unit" in the context of providing Internet access via a hotspot was not well-known, routine, and conventional. *Cf. Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018) ("The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional."). The prosecution history shows that the examiner concluded that the amended claims were not anticipated or obvious. Indeed, the initial rejection of the claims for obviousness was not renewed upon the amendment of claim 24 (originally claim 35) as follows:[5]

---

[5] Viasat argues that the Applicant's claim amendments in response to a reference cited by the examiner (Agarwal) added "elements regarding payment such as 'creating a subscription account,' 'purchasing by the user … access time using a credit card' and the 'subscriber access unit' of claim 24." Mot. at 6. Viasat's gross mischaracterization is directly contradicted by the scope of the actual amendments to claim 24, which are shown in the screenshot above and include the subscriber

35. (Currently Amended)    An Internet Hotspot comprising:

a satellite dish ~~installed in a remote location experiencing a relatively high volume of transient traffic, and the satellite dish~~ communicating with the Internet via <u>one or more</u> data link<u>s</u> with a satellite;

at least one router operatively coupled to the satellite dish ~~and installed in the remote location~~;

<u>a subscriber access unit operatively coupled between the satellite dish and the at least one router, the subscriber access unit being capable of authenticating a subscription account associated with a user prior to allowing the user access to the Internet; and</u>

<u>a web-ready device operatively coupled to the at least one router, the web-ready device having a browser application operating thereon for accessing the Internet;</u>

<u>wherein the satellite dish, the at least one router and the subscriber access unit are located in a remote location experiencing a relatively high volume of transient traffic;</u>

wherein a <u>the</u> user may <u>authenticate the subscription account and</u> access the Internet at the remote location by establishing a data connection <u>between the</u> web-ready device and <u>with the router.</u> ~~via a user's web-ready device.~~

The prosecution history demonstrates that the limitations were not well known at the time of the invention. Thus, as in *CosmoKey*, the "claimed steps were developed by the inventor[s], are not admitted prior art, and yield certain advantages over the described prior art." *CosmoKey*, 15 F.4th at 1098–99 (finding claim patent-eligible because the "particular arrangement of steps in claim 1 provides a technical improvement over conventional authentication methods"). And per the specification, previously, "[e]ven in populated areas," a person was required to "find

---

access unit, web-ready device, and other limitations relating to these newly recited elements.

a hard-wired commercial access point to get to the Internet. This is time consuming, costly and severely limits the benefits of the Internet in most areas of the country." '469 Patent at 1:27-30.

The claims of the '469 Patent provide an alternative means of Internet access, an Internet hotspot, to subscribers in remote locations through the specific combination and arrangement of limitations—a clear improvement over prior technology. This improvement, by itself, is enough to preclude dismissal on Section 101 grounds at this stage of the case, particularly where Viasat cites no evidence that the combination of elements was routine and conventional. *See Berkheimer,* 881 F.3d at 1369 (Fed. Cir. 2018) ("The improvements in the specification, to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities."); *Ravgen, Inc. v. Natera, Inc.,* No. 1:20-cv-00692-ADA, 2024 WL 150960, at *2 (W.D. Tex. 2024) ("[A]side from attorney argument, [Defendant] does not cite any evidence that the combination of the claimed elements was routine and conventional."). Viasat's arguments regarding the "conventional" nature of the limitations or order combination of the claims suggest, at most, a fact dispute that cannot be resolved on

the pleadings.[6] *See Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121, 1127 (Fed. Cir. 2018).

Viasat's reliance on *SmileDirectClub, LLC v. Candid Care Co.*, 505 F. Supp. 3d 340 (D. Del. 2020) and *Surgetech, LLC v. Uber Techs. Inc.*, 700 F. Supp. 3d 179 (D. Del. 2023) is unavailing. Mot. at 21. In *SmileDirectClub*, the Court concluded that the claims were directed to "the abstract idea of connecting patients with orthodontists remotely." *Id*. at 349. Rather than any technical improvement, the patent merely claimed the same orthodontic methods, simply performed remotely over the Internet. *Id.* The end result for the patient was the receipt of orthodontic aligners. And in *Surgetech*, the Court noted that the patents at issue "do not cite to a technological problem, but one of human inefficiency that could be solved by automation," and that the problem was not one that was "inherent to the Internet." *Surgetech, LLC v. Uber Techs. Inc.*, 700 F. Supp. 3d 179, 185 (D. Del. 2023). As the Court made clear, "just because the Internet permits access to a large pool of data channels from which to pull information does not render the issue of organizing and analyzing said information a technological problem." *Id.* at 186. In concluding that the patent lacked an inventive concept, which the patentee asserted was the "performance rating," the Court noted that this was merely a "vague metric …

---

[6] Viasat points to no record evidence from the specification or prosecution history that the dependent claims, alone or in combination, were well-known, routine, and conventional at the time of the invention.

primarily implementing the economic principle of supply and demand." *Id.* at 188. Put simply, both these cases involved claims that boiled down to nothing more than performing normal human activities with a computer or via the Internet. In contrast, the claims of the '469 Patent contain limitations that are directly tied to a technological problem—how to provide Internet access to subscribers via a satellite-distributed Internet hotspot.

## VI.   CONCLUSION

For the foregoing reasons, IV respectfully requests that the Court deny Viasat's motion in its entirety.

OF COUNSEL:

Jonathan K. Waldrop
Marcus A. Barber
John Downing
Heather S. Kim
ThucMinh Nguyen
Jonathan H. Hicks
KASOWITZ LLP
101 California Street
Suite 3950
San Francisco, CA 94111
jwaldrop@kasowitz.com
mbarber@kasowitz.com
jdowning@kasowitz.com
hkim@kasowitz.com
tnguyen@kasowitz.com
jhicks@kasowitz.com

Paul G. Williams
KASOWITZ LLP
1230 Peachtree Street, N.E.
Suite 2445
Atlanta, GA 30309
(404) 260-6080
pwilliams@kasowitz.com

Dated: February 3, 2026

*/s/ Michael J. Farnan*
Brian E. Farnan (No. 4089)
Michael J. Farnan (No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Defendants/Counter-Plaintiff, Intellectual Ventures I LLC and Intellectual Ventures II LLC*